**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **JANET HOWARD, <u>et al.</u>** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 05-1968** |
| | ) | |
| **CARLOS M. GUTIERREZ,** | ) | |
| **Secretary, United States Department of** | ) | **JUDGE JOHN D. BATES** |
| **Commerce,** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **Defendant.** | ) | |
| | ) | |

<u>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**</u>
<u>**ALL INDIVIDUAL CLAIMS, TO DISMISS CERTAIN CLASS CLAIMS,**</u>
<u>**AND TO STRIKE ALL CLASS CLAIMS**</u>

Plaintiffs, by and through undersigned counsel, hereby submit Plaintiffs' Opposition to Defendant Department of Commerce's Motion to Dismiss All Individual Claims, Motion to Dismiss Certain Class Claims (that exceed the scope of the administrative class complaint), and its premature "Motion to Strike" All Class Claims (for failure to meet the requirements for class certification under Federal Rule of Civil Procedure 23).

## I.      INTRODUCTION

### A.      Procedural History at the EEOC

#### 1.      The Howard Class Complaint

After years of suffering racial discrimination, Janet Howard, an African-American female and a Commerce employee since 1983, contacted an EEO Counselor.  She filed a timely class

complaint on February 22, 1995 ("<u>Howard</u> Complaint"), alleging that the DOC[1] engaged in race discrimination against a class of African-American employees who worked for the DOC in the metropolitan area of Washington, D.C.  Exhibit A to Defendant's Motion to Dismiss (hereinafter "D's Exhibit A").

Specifically, the <u>Howard</u> Complaint alleges that the DOC has maintained a system of racially discriminatory and subjective employment practices with respect to promotions (both competitive and career ladder), awards, performance ratings, career-enhancing work assignments, timely training for advancement, and job assignments.  D's Exhibit A (<u>Howard</u> Complaint at 1-4).  The gravamen of the <u>Howard</u> Complaint is that the DOC's subjective decision-making has prevented African-Americans from advancing according to their merit. That subjective decision-making has led, and continues to lead, to discriminatory promotion denials and other discriminatory employment decisions that adversely affect job advancement, including performance evaluations, job assignments, training, awards and recognition.

**2.     Reliance of Class Members Since 1995 on the Pendency of the Class Action**

Since 1995, a great amount of publicity has surrounded this lawsuit.  A Web site regarding this class action matter against the DOC has been created (http://communities.msn.com/feldf); rallies have been held throughout the District of Columbia; fundraising efforts have been ongoing for years to support the litigation; and there have been extensive communications between Ms. Howard and class members, and between the Department of Commerce and class members.

---

[1]   Throughout this brief, Department of Commerce is referred to as "DOC," "Commerce," "Agency" or "Defendant."

In a letter from Leroy J. Warren, Jr., Chairman of the NAACP Federal Sector Task Force to William Daley, Secretary of Commerce, dated September 16, 1999, Warren describes the complaints received by the NAACP of race discrimination at the DOC:

> The NAACP has for many years been the recipient of a number of very serious allegations of [rampant employment discrimination routinely faced by many racial minorities employed by the Department of Commerce] . . . . Today's Protest Demonstration is being conducted because of the non-responsiveness of senior Commerce officials to what the Task Force strongly believes are legitimate complaints of employment discrimination, racism, abuse of authority, and an overall lack of equality and justice within Commerce. ***The EEO program at Commerce is basically malfunctioning and inoperative***.

(Letter dated September 16, 1999 from Leroy J. Warren, Jr., Chairman, NAACP Federal Sector Task Force, to William Daley, Secretary of Commerce) (emphasis in original).

Given the history of publicity of the <u>Howard</u> matter, it is reasonably certain that hundreds if not thousands of absent class members have relied on the pendency of this class action.

### 3.    Administrative Decisions Regarding Class Certification

Five years after the filing of the February 22, 1995 class charge with the EEOC, on July 20, 2000, in an exhaustive and scholarly opinion, the Office of Federal Operations ("OFO") provisionally certified a department-wide class composed of:

> African-American, non-supervisory employees and former employees of the Agency's [Department of Commerce] Headquarters' offices in the metropolitan area of Washington, D.C., who allegedly have been denied career advancement to one or more white collar positions in the agency's Headquarters' offices at grade levels GS-9 through GS-15, or equivalent level white collar non-GS positions, and who may have been denied related promotional opportunities[2] in those same

---

[2]    The OFO clarified that "[r]elated promotional opportunities include training, assignments, details, awards, etc., that would have enhanced a class member's qualifications for promotion to such a position, whether the promotion would have been a career ladder promotion, a competitive promotion, or an accretion of duties promotion." <u>Id.</u> at 10.

offices based on their race during the period of time beginning two years prior to
the filing of the class complaint on February 22, 1995, and continuing to the date
a final determination is rendered on the class complaint claim.

P's Exhibit A (July 20, 2000 OFO Decision, at 10).  The OFO found that the "class complaint
states a claim that the agency has delayed and limited, and continues to delay and limit, the
career advancement of class members because of their race."  Id.  The OFO certified this class
because "existing information suggests that significant numbers of African-American employees
have been denied advancement to [GS-9 through GS-15 or equivalent] positions and, thus, that
common questions of fact and law exist as to those positions."  Id.

The EEOC held that the class complaint satisfied the commonality requirement, given
that it appeared that "common standards govern agency promotion and performance appraisal
decisions in the Washington, D.C. metropolitan area."  Id. at 11.  Such common standards
include:  the agency's issuance of a Department Administrative Order (DAO), implementing the
federal merit promotion policy agency-wide; and the agency's promulgation of agency-wide
principles governing the issuance of performance appraisals.  The Commission also found that
the complainant possessed the same interest and suffered the same injury as the members of the
class, and that numerosity and adequacy were satisfied.  Id. at 10, 14.

In addition, the Commission took administrative notice of the information in the EEOC's
Annual Report on the Employment of Minorities, Women and People with Disabilities in the
Federal Government for the Fiscal Year 1998 ("EEOC Report"), which documented the
following:

a.       The average white collar grade for the agency's white employees was 10.60, while the average white collar grade for the agency's black employees was 8.78.  EEOC Report, Table I-16.

b.       The discrepancies in grade level were also evident in professional positions where the average grade for white agency professional employees in FY 1998 was 12.77 while the average grade for black agency professional employees was 11.62.  EEOC Report, Table I-17.

c.       The percentage of black employees in the agency's white collar positions GS-9 and above in FY 1998 declines as the grade level increases.  In contrast, the percentage of white employees in the agency's white collar positions increased in the higher graded positions.

The Commission also noted that the record contains:

d.       Several affidavits and over forty unsworn survey forms that were completed in September 1998 which indicate that numerous individual class members believe they have been denied advancement-related opportunities based on their race.

e.       Hundreds of race discrimination complaints agency-wide.

On December 17, 2002, in a 53-page brief, the DOC moved to narrow coverage of the class by eliminating approximately 85% of the class members from the class.  In response, Plaintiffs' prior counsel filed a one-and-one-half page opposition.

On August 20, 2003, in a one-page order ("Decertification Order"), Judge Varice Henry granted Defendant's Motion to Redefine the Class, without offering any rationale or factual support.  This decision completely disregarded the careful analysis by the OFO, and cavalierly swept aside the OFO's metropolitan-wide class ruling.  The Decertification Order virtually eliminated the entire class previously certified by the OFO by excising five of the 15 bureaus of

the OFO-certified class (removing approximately 4500 of the 5300 class members[3]) and confining the class to Commerce's African-American employees in Washington, D.C. proper.

At the end of 2003, Plaintiffs' prior counsel withdrew, and Plaintiffs' current counsel subsequently entered their appearances. After receiving word from the DOC that it planned to send notice to class members notifying them that they were excluded from the class, Plaintiffs' counsel requested leave to file a motion to reconsider Judge Henry's Decertification Order, which Judge Kravetz granted in January 2004.

On March 4, 2004, Plaintiffs moved for reconsideration of the Decertification Order and reinstatement of the OFO's certification of a D.C. metropolitan-wide class of African-American DOC employees.[4] That Motion, and its hundreds of pages of accompanying exhibits, demonstrates the likelihood that Plaintiffs will be able to successfully obtain class certification in this case after appropriate discovery.

**B.    Plaintiffs' First Amended Class Action Complaint Nullifies Defendant's Motions to Dismiss Individual Claims and Certain Class Claims**

Plaintiffs submit herewith a Motion to File a First Amended Class Action Complaint ("Amended Complaint"), which addresses and renders moot many of the issues raised by Defendant regarding the alleged deficiencies of the Complaint currently on file. Plaintiffs' Amended Complaint names only the three proper class representatives in this District, thus voiding the venue issues set forth in Defendant's Motion; redefines the class to explicitly

---

[3]   These numbers represent a snapshot of African-American employees in the 15 bureaus as of October 1, 2003.

[4]   Plaintiffs' Brief in support of their Motion for Reconsideration of Judge Henry's Decertification Order, Or In The Alternative, Their Motion To Subclass The D.C. Metropolitan Bureaus before the EEOC ("Ps' EEOC Brief"), without its accompanying Appendix of exhibits, is attached to this Opposition as P's Exhibit B.

conform to the scope of the administrative complaint; and modifies the named Plaintiffs' claims to reflect only allegations not barred on the basis of timeliness or *res judicata*.

### C. Commerce Improperly Presents Evidence In Support of Its Premature Pre-Discovery Motion to Strike Class Claims

Commerce's attack on Plaintiffs' class claims under Rule 23, with copious exhibits including over a dozen declarations with attachments, amounts to a pre-discovery Motion to Decertify rather than a "Motion to Strike," as styled by Defendants. As discussed below, Defendant's massive presentation itself underscores the need for in-depth discovery before consideration of the appropriateness of class certification. Likewise, preliminary evidence obtained from Defendant in the administrative forum, now years out of date and insufficient, demonstrates the need for comprehensive discovery to allow the Court to conduct the type of "rigorous analysis" prescribed by the Supreme Court for a class certification determination. See General Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 161 (1982).

As stated by the D.C. Circuit in Wagner v. Taylor in the context of a motion for class certification:

> [Falcon] clearly did not foreclose all across-the-board class certifications, **nor did it suggest that determinations thereon should turn on the skill with which pertinent allegations in the pleadings are crafted**. The fact that the complaint of a plaintiff aspiring for the post of class representative is cast in terms too broad to satisfy Falcon's prescriptions hardly justifies outright disapproval of class status while further effort holds out some discernible prospect of achieving compliance. It may be possible, for example, for the plaintiff to accumulate **through discovery** the information needed to make a "specific presentation" incorporating the elements called for by Rule 23. Additionally, the situation may prompt the District Court to exercise its broad discretion to redefine and reshape the proposed class to the point that it qualifies for certification under Rule 23.

836 F.2d 578, 589-90 (D.C. Cir 1987)(emphasis added). Thus, controlling precedent dictates that Plaintiffs be allowed the flexibility both to redefine their claimed class, as they have done in their Amended Complaint, and pursue discovery to gather supporting evidence. Such a course of

action allows the court to "remain faithful to the fundamental purpose of Title VII to stamp out employment discrimination." Id. at 590.

### D. Plaintiffs' First Amended Class Action Complaint States a Claim Under Federal Rule of Civil Procedure 23 and Defeats Defendant's Motion to Strike All Class Claims

Plaintiffs' Amended Complaint states class claims sufficient to withstand a motion to dismiss on the pleadings under Federal Rule of Civil Procedure 12(b)(6). The Amended Complaint alleges that Commerce's uniform policies regarding performance appraisals, promulgated by Headquarters and applicable across Bureaus, affect promotions and related promotional opportunities for positions at GS-9 through GS-15 or equivalent level white collar non-GS positions. First Amended Class Action Complaint ("FAC") at ¶ 2. The performance appraisals allow for a broad range of managerial discretion and excessive subjectivity and therefore serve as a conduit for race discrimination, which results in a disparate impact on African-Americans in violation of Title VII. FAC at ¶ 3. Dr. David Martin, a Professor of Management and Human Resources Management at the Kogod School of Business Administration of American University, has concluded that the DOC's performance appraisal system is "probably the worst system [he has] critiqued." FAC at ¶ 109-14.

Plaintiffs also allege that statistical evidence demonstrates that African-American employees of Commerce are grossly underrepresented in GS-9 through GS-15 levels, and that overwhelming anecdotal evidence illustrates Departmental race discrimination in advancement and promotion. FAC at ¶ 115-22. For example, Plaintiff Janet Howard was once informed by her supervisor that the promotion she was in line for was traditionally reserved for "white males." FAC at ¶ 6. These allegations clearly state a claim under Federal Rule of Civil Procedure 12(b)(6) for a putative class action under Rule 23; Defendant's attempt to introduce

factual evidence beyond the pleadings and argue the merits of Plaintiffs' claims must be rejected as improper and premature.

## II.    OPPOSITION TO MOTION TO DISMISS ALL INDIVIDUAL CLAIMS

Defendant asserts that the claims of each of the named Plaintiffs should be dismissed as a matter of law as either failing to satisfy Title VII's venue requirement, or being otherwise deficient.   First, because Plaintiffs' First Amended Complaint eliminates all named plaintiffs who do not satisfy the venue requirements of Title VII, Plaintiffs need not respond to Defendant's contention that nine of the twelve class representatives should be dismissed or transferred for improper venue.   Second, the claims of Plaintiffs Janet Howard and Joyce Megginson, who together represent the redefined class in the First Amended Complaint, have been modified to eliminate Defendant's concerns regarding *res judicata* and timeliness issues.

As an initial matter, even if the individual claims of the remaining named Plaintiffs were flawed, Plaintiffs should be allowed to substitute class members with viable claims as new class representatives.   The D.C. Circuit has held that, where a named plaintiff does not have live claims, a court may respond by permitted substitution of a new class representative, and "[s]uch action is especially appropriate" where the deficiencies with original class representatives' claims are of an individual rather than a classwide nature.   In re Richard Thornburgh, 869 F.2d 1503, 1509 (D.C. Cir. 1989) (citing several cases in the D.C. Circuit as well as the Supreme Court[5]).   A number of other courts have substituted new class representatives after finding the claims of the original class representatives to be lacking.   See, e.g., Davis v. Bethlehem Steel

---

[5]   Samuels v. District of Columbia, 770 F.2d 184, 193 n.5 (D.C. Cir. 1985); Basel v. Knebel, 551 F.2d 395, 397 n.1 (D.C. Cir. 1977); Swan v. Stoneman, 635 F.2d 97, 102 n.6 (2d Cir. 1980); Silva v. Vowell, 621 F.2d 640, 650 (5th Cir. 1980), cert. denied, 449 U.S. 1125 (1981); Rivers v. Califano, 86 F.R.D. 41, 45-46 (S.D.N.Y. 1980)

Corp., 600 F.Supp. 1312, 1323 (D. Md. 1985) (holding that although the original class representatives failed to timely file their EEO charges, this would not "effect [sic] the viability of the class action" and ordering plaintiffs to substitute new class representatives); Hassine v. Jeffes, 846 F.2d 169, 176 n.3 (3d Cir. 1988) (new class representatives substituted for class representatives who were no longer representative of class members); In re Telectronics Pacing Systems, Inc., 172 F.R.D. 271, 283 (S.D. Ohio 1997) (substituting new class members and holding that new class members need not have filed individual actions to be representative of the class). Thus, any hypothetical deficiencies in the allegations of the remaining class representatives would not automatically render this putative class action untenable.

### A.    Venue is Proper for Each of the Named Plaintiffs in the Amended Complaint

As noted above, Plaintiffs' First Amended Complaint eliminates the nine Plaintiffs not employed by Commerce in its District of Columbia offices, whom Defendant argues must conform to the specific venue requirements of Title VII. Plaintiffs concurrently seek to amend their Complaint to simplify this action and promote a more expeditious resolution on the merits.

Plaintiffs' removal of named class representatives from Commerce offices outside the District of Columbia (Barbara Loretz, Queen Jones, Colonel Lovett, Anthony Washington, Jeanette Devins, Dennis Gosier, Phillippe Morris, Williams Burns, and Michele Peyton) does not in any way affect the nature of the class of plaintiffs claimed here. "Because class actions do not necessarily require the presence of a class member before the court for an adjudication of his/her rights and liabilities, venue restrictions are not determinative of the ability of the court to hear the action with respect to all members of the class." United States & EEOC v. Trucking Employers, Inc., 72 F.R.D. 98, 100 (D.D.C. 1976). Further, "[v]enue in a class action suit is proper for the entire class if it is proper for the named plaintiffs." Dukes v. Wal-Mart Stores, Inc., 2001 WL

1902806, at *4 (N.D. Cal. 2001) (quoting <u>Dunn v. Sullivan</u>, 758 F. Supp. 210 (D. Del. 1991)( explicitly finding that two properly venued class representatives could represent a class of plaintiffs from various states nationwide)); <u>see also</u> <u>U.S. ex rel. Sero v. Preiser</u>, 506 F.2d 1115, 1129-30 (2d Cir. 1974), <u>cert. denied</u>, 421 U.S. 921 (1975); <u>Appleton Elec. Co. v. Advance-United Expressways</u>, 494 F.2d 126, 139-40 (7th Cir. 1974).

Plaintiffs Janet Howard, Joyce Megginson and Tanya Ward Jordan worked or have worked in Commerce operating units located in Washington, D.C., and the discrimination alleged by Ms. Howard, Ms. Megginson and Ms. Ward Jordan occurred in Washington, D.C. <u>See</u> FAC. at ¶¶ 41-61, 62-73, and 74-96. Thus, they meet the venue requirements of Title VII.[6] These two class representatives may represent a class which includes Commerce bureaus in Washington, D.C., Maryland and Virginia, given the nature of Plaintiffs' disparate impact claims and the uniform impact of Defendant's discriminatory performance evaluation practices upon African-Americans in the metropolitan D.C. area.

In light of Plaintiffs' decision to remove Plaintiffs Loretz, Jones, Lovett, Washington, Devins, Gosier, Morris, Burns, and Peyton as class representatives, transfer of venue would be wholly improper under Rule 21. The same is true for dismissal. The Rule states in relevant part that "[m]isjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." Fed. R. Civ. P. 21; <u>see also</u> <u>infra</u> (plaintiffs may substitute

---

[6]  A Title VII action may be brought "in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office." 42 U.S.C. § 2000e-5(f)(3).

proper class representatives).  Plaintiffs may proceed with class representatives who work or have worked in Commerce's Washington, D.C. headquarters and class members from bureaus in Washington, D.C., Maryland and Virginia.

**B.    Individual Claims for Howard, Megginson, and Ward Jordan are Proper**

**1.    Janet Howard's Claims**

Defendant mistakenly characterizes the status of several of Janet Howard's 21 administrative complaints against the Department of Commerce.  While Plaintiffs recognize that Ms. Howard is precluded from pursuing the claims alleged in those EEO charges which have been resolved either by settlement agreement, failure to timely file in federal court or due to the operation of the principle of *res judicata*, Ms. Howard does in fact have several administrative complaints upon which she can proceed in this litigation.[7]  Moreover, because Ms. Howard may reference time-barred allegations as background evidence for her claims of discrimination, their inclusion in the Amended Complaint is appropriate.  See Pleasants v. Allbaugh, 285 F.Supp.2d 53, 55 (D.D.C. 2003) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 105 (2002) and concluding that evidence of time-barred discrimination claims is admissible as background in proving timely claims).

Howard 6 is Ms. Howard's class charge, which gave rise to this action.  See Defendant's Exhibit A.  Howard 6 alleges discrimination in promotions, assignment of duties, performance evaluations and awards on the basis of race.  Contrary to Defendant's statements, Howard 6 did include individual allegations in that claim.  From the language of the EEOC charge Ms. Howard filed, it is plain that the allegations contained therein refer not only to a class but also to Ms. Howard herself.

_____

[7] Plaintiffs use the same system for identifying Ms. Howard's EEO complaints as did Defendant, i.e., referencing them in chronological order of filing.

Howard 14, 15, 17, 19, 20 and part of Howard 18 are all still valid, ripe charges for purposes of this litigation. Howard 14 (Agency No. 00-67-03254) alleges failure to provide training based on race. Howard 15 (Agency No. 01-67-00128) alleges failure to promote based on race. Howard 17 (Agency No. 02-67-00037) alleges discrimination in performance appraisals based on race. Howard 19 (Agency No. 04-67-00078) alleges discrimination in the granting of training and awards based on race. Howard 20 (Agency No. 05-67-00075) alleges discrimination in the granting of awards on the basis of race. The EEOC has determined that Howard 14, 15, 16, 19 and 20 should be dismissed without prejudice and held in abeyance pending a determination on certification of the federal class. By order of Administrative Law Judge Joel Kravetz of the EEOC, Howard 18 was also dismissed and held in abeyance with the exception of the failure to accommodate claim therein, which was dismissed because of the pendency of Howard v. Evans, 04-cv-0756 (PLF), brought under the Rehabilitation Act. Claims contained in these six EEOC charges are therefore ripe and litigable here, and Ms. Howard is a proper named Plaintiff.

### 2.    Joyce Megginson's Claims

On December 12, 1997, Ms. Megginson filed a lawsuit alleging retaliation in violation of Title VII. D's Exhibit DD. Her complaint did not include any counts of race discrimination.[8] Thus, only claims of retaliation that existed prior to December 12, 1997 must be excluded from this action. Because Plaintiffs' First Amended Complaint alleges only acts of racial

---

[8]    Defendant incorrectly asserts that "Megginson previously asserted the same claims pled here" in her 1997 civil action alleging retaliation (D's Br. at 54, emphasis added), without pointing out that in fact Megginson has never previously asserted claims of race discrimination in any civil action.

discrimination taken by Defendant against Ms. Megginson (see FAC at ¶ 62-73), and the class alleged does not include those retaliated against for protected activity under Title VII, no issue remains regarding any claims of retaliation barred by *res judicata*.

### 3.    Tanya Ward Jordan's Claims

Tanya Ward Jordan's claims are not precluded as *res judicata*, as claimed by Defendant. The District Court for the District of Columbia dismissed Ms. Ward Jordan's Title VII claims of race discrimination on August 11, 2005 <u>with prejudice</u> for failure to exhaust administrative remedies. On August 22, 2005, Ms. Ward Jordan received a final agency decision and notice of right to sue in that matter. <u>See</u> P's Exh. C (excerpted right to sue letter dated Aug. 22, 2005). On October 7, 2005, Ms. Ward Jordan appealed that decision to the D.C. Circuit, arguing that her as yet unripe claims should have be dismissed <u>without prejudice</u>, thus allowing her to exhaust any remaining administrative remedies and refile her suit. The Circuit Court summarily affirmed the District Court on March 13, 2006. Ms. Ward Jordan filed a petition for rehearing of that decision on March 28, 2006. On May 25, 2006, the United States Court of Appeals for the District of Columbia Circuit issued an Order rendered upon consideration of the petition for panel rehearing. The Order stated in relevant part: "ORDERED that the petition be denied, but that the district court's order be modified to reflect that the dismissal of appellant's Title VII claims, for failure to exhaust administrative remedies, was <u>without prejudice</u>." Therefore, pursuant to this Court's holding in <u>Delgado v. Ashcroft</u>, because the class action was filed on October 5, 2005, within ninety days after Ms. Ward Jordan received her right to sue, Ms. Ward Jordan's claims may be properly included in this lawsuit. 368 F.Supp.2d 3 (D.D.C. 2004) (holding that the filing of a class action tolls the statute of limitations for members of the class and citing <u>Crown, Cork & Seal Co., Inc. v. Parker</u>, 462 U.S. 345 (1983)).

### III.    OPPOSITION TO MOTION TO DISMISS THE CLASS CLAIMS THAT EXCEED THE SCOPE OF THE ADMINISTRATIVE COMPLAINT

Defendant acknowledges that the administrative class charge filed with the EEOC encompassed allegations of:

- racial discrimination in promotion

- and related promotional opportunities

- on behalf of current and former African-American,

- non-supervisory (at grade levels GS-9 through GS-15, or equivalent level white collar non-GS positions),

- salaried employees

- of the Department's offices [bureaus]

- in the metropolitan area of Washington, D.C.

D's Brief at 61. Plaintiffs' Amended Complaint reflects this exact class claim as set forth in the administrative charge, and therefore cannot be challenged on the grounds Defendant sets forth in its Motion to Dismiss for exceeding the scope of the administrative complaint. Plaintiffs' Amended Complaint states no separate claims of discriminatory hiring, discriminatory placement upon hire, disparate pay, or racially hostile environment, all of which Defendant challenges in its Motion. Plaintiffs' amended claims do not include supervisory employees, wage grade employees, SES employees, foreign service officers, members of NOAA's Uniformed Corps, or Commerce employees across the country and throughout the world beyond those in the metropolitan D.C. area (which includes Washington, D.C. and adjacent areas in Maryland and Virginia), also contested by Defendant. Thus, the Amended Complaint renders Defendant's concerns moot.

## IV.    OPPOSITION TO MOTION TO STRIKE ALL CLASS CLAIMS

### A.    Plaintiffs Should be Allowed Ninety Days from the Filing of Their First Amended Complaint to Comply with Local Rule 23.1(b)

Local Rule 23.1(b) states:

> Within 90 days after the filing of a complaint in a case sought to be maintained as a class action, unless the court in the exercise of its discretion had extended this period, the plaintiff shall move for certification . . . that the case may be so maintained.

Plaintiffs' First Amended Complaint, which in good faith narrows the class certification sought here and results in no prejudice to Defendant, will be the only complaint on record if allowed by the Court. Plaintiffs' motion for class certification must relate to the filing of this redefined action, and therefore Local Rule 23.1(b) should not preclude Plaintiffs' filing of their class certification motion, or a motion to extend the time for such a filing, within 90 days of the filing of the First Amended Complaint.

### B.    FRCP 6(b) Excuses Plaintiffs' Non-Compliance With Local Rule 23.1(b)

Plaintiffs filed their Complaint in this matter on October 5, 2005, and served the U.S. Attorney's Office on October 12, 2005. Defense counsel subsequently requested and obtained Plaintiffs' counsel's courteous consent to **five** motions to extend the time it had to respond to Plaintiffs' Complaint (originally December 12, 2005) to January 11, 2006, February 13, 2006, February 27, 2006, March 3, 2006 and March 17, 2006. Defendant therefore had a total of three additional months beyond those prescribed by Federal Rule of Civil Procedure 12(a)(3)(A) in which to respond to Plaintiffs' Complaint. Defendant now argues that Plaintiffs' failure to move for class certification under Rule 23(c)(1) within 90 days after the filing of their complaint forecloses their ability to bring class claims.

Under Rule 6(b), where the specified period for the performance of an act has elapsed, a district court may enlarge the period and permit the tardy act where the omission is the "result of excusable neglect."[9]    As noted by the Supreme Court when interpreting the comparable Bankruptcy Rule 9006(b), in applying Rule 6(b), the Courts of Appeals have generally recognized that "excusable neglect" may extend to inadvertent delays.  Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership, 507 U.S. 380, 392-92 (1993) (noting that "excusable neglect" is a somewhat "elastic concept" and is not limited strictly to omissions caused by circumstances beyond the control of the movant).    The Supreme Court held that the determination of whether there has been "excusable neglect" is an equitable one, "taking account of all relevant circumstances surrounding the party's omission."  Id. at 395.  The Court stated that the factors included (1) the danger of prejudice to the nonmovant, (2) the length of delay and its impact on the efficient administration of judicial proceedings, (3) the reason for delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith.  Id.  The determination of whether excusable neglect has been demonstrated is committed to the sound discretion of the trial court.  Id.

---

[9] Federal Rule of Civil Procedure 6(b) provides:

> (b) Enlargement. When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect; but it may not extend the time for taking any action under Rules 50(b) and (c)(2), 52(b), 59(b), (d) and (e), 60(b), and 74(a), except to the extent and under the conditions stated in them.

Plaintiffs' failure to file a motion for class certification within the time period prescribed by the local rule resulted from excusable neglect. Under the first factor in in <u>Pioneer</u>, the failure to follow the local rule did not prejudice Defendant.[10] This case was treated as a class action throughout its ten-year history at the administrative level and Defendant has been generally aware of the scope of the class; this is not a case where the plaintiffs have caught the defendant unaware. The second factor also weighs in favor of a finding of excusable neglect. <u>Howard, et al. v. Gutierrez</u> is at the very earliest stages of litigation in this Court, and any delay has had no negative impact on the judicial proceedings. Moreover, as set forth more fully below, a motion for certification almost certainly would not have been decided any earlier even if it had been timely filed. Given the very early posture of the case, Defendant will have ample opportunity to confront the class allegations. As for the third and fourth factors, Plaintiffs' good faith, generous consent to Defendant's five motions for extensions on its response to the Complaint should not operate to deprive Plaintiffs of the opportunity to move for class certification.

## C.    Defendant Has Waived Its Administrative Exhaustion Argument

Defendant asserts that Plaintiff Howard failed to timely contact an EEO counselor on her administrative class Complaint, and that the prerequisites to suit on her class claims have therefore not been satisfied. D's Brief at 62. Since Commerce never before raised this defense during the more than ten years the class charge remained pending at the EEOC, it has been waived.

In <u>Brown v. Marsh</u>, the D.C. Circuit addressed the question of whether a Title VII action which had been pending in the administrative and judicial systems for ten years should be dismissed on the ground that the plaintiff had failed to meet timeliness requirements in the EEO

---

[10] Defendant does not claim to be prejudiced, but rather simply urges strict application of the rule on its face with no further discussion. <u>See</u> D's Brief at 61-62.

process and thus had failed to exhaust administrative remedies.  777 F.2d 8 (D.C. Cir. 1985).

The Court held that "[e]xhaustion is required in order to give federal agencies an opportunity to

handle matters internally whenever possible and to ensure that the federal courts are burdened

only when reasonably necessary."     Brown at 14.     The Court explained that, with the

administrative filing requirements, "Congress wanted to give each agency 'the opportunity as

well as the responsibility to right any wrong that it might have done.'"  Id.

 For the Department of Commerce, the time to right wrongs came and went long ago.  As

the Brown Court stated:

> [P]laintiff would be substantially and unfairly prejudiced if dismissal on
> exhaustion grounds were permitted at this excessively late date . . . [The D.C.
> Circuit] has . . . stressed . . . that judges slight the legislatures' central command if
> they fail to recall that Title VII was devised as a measure that would be kept
> accessible to individuals untrained in negotiated procedural labyrinths.

Id.  Over the past eleven years, numerous aggrieved Commerce employees have relied on the

pending class action.  This matter has, in the words of the Brown Court, been "extensively

pursued" at both the administrative and judicial levels for more than a decade.  Commerce

waived any objection it may have had to Janet Howard's participation in the administrative

process long ago.

 Defendant also cannot distinguish the defendant's conduct in Bowden v. U.S., 106 F.3d

433, 438-39 (D.C. Cir. 1997), from its own failure to raise the affirmative defense for the ten

years this action remained pending at the EEOC.  In Bowden, the defendant agency, which as

here bore the burden of pleading and proving the affirmative defense of failure to exhaust, waited

too long to challenge the timeliness of the plaintiff's compliance with the applicable thirty-day

complaint filing requirement, and thus waived it.  Id. at 437, 438.  In coming to this conclusion,

the D.C. Circuit noted:

> [t]o begin with, the agency never raised the thirty-day time limit during the administrative proceedings.  Although agencies do not waive a defense of untimely exhaustion merely by accepting and investigating a discrimination complaint, [cites omitted], we have suggested that if they not only accept and investigate a complaint, but also decide it on the merits – all without mentioning timeliness - their failure to raise the issue in the administrative process may lead to waiver of the defense when the complainant files suit. [cites omitted] **Because the INS responded to the merits of Bowden's complaint without ever questioning its timeliness, we think the agency now has no legitimate reason to complain about a judicial decision on the merits.**  Had it been concerned that information needed to resolve Bowden's complaint was stale or that deciding his case would upset settled expectations – traditional objectives of statutes of limitations – it could easily have raised the thirty-day limitation during the administrative process.   What we have repeatedly stated regarding Title VII exhaustion requirements applies here as well: They are 'practical and pragmatic . . . and should not be invoked when [they] serve[ ] no practical purpose.' [cites omitted] [emphasis added]

Bowden, 106 F.3d at 438-39.  The Court noted that the INS also did not raise the timeliness issue either in response to Bowden's district court suit or his subsequent case in the Court of Claims, and asserted contradictory responses in these two actions which prolonged the resolution of the plaintiff's claims.  Id. at 439.

Defendant's argument that its own ten-year delay in raising a failure to exhaust should be ignored because it asserted the timeliness defense "at its first judicial opportunity," and was "in no way responsible for the length of time that this matter languished in the administrative process" (D's Br. at 63) is unavailing.  The principles stated by the D.C. Circuit in Brown and Bowden regarding the fundamental purpose of administrative exhaustion foreclose Defendant's ability to assert the exhaustion defense here.

### D.    Consideration of Factual Class Certification Issues at the Complaint Stage Is Premature and Improper

The "rigorous analysis" required for consideration of class certification here demands a comprehensive review of the facts, to be gathered in the discovery process.  See Falcon, 457 U.S. at 161; Bradford v. Sears, Roebuck & Co., 673 F.2d 792, 795-98 (5th Cir. 1982) (cited by the

D.C. Circuit in <u>Wagner</u>, 836 F.2d at 589) (reversing District Court for failure to develop adequate information concerning facts of the case before ruling on class certification when the pleadings raised serious questions of commonality and typicality).  To strike class allegations before discovery commences in this Title VII class action lawsuit would be to completely divest Plaintiffs of their claims without allowing them the opportunity to investigate and prove those claims.  <u>See, e.g.</u>, <u>Alexander v. F.B.I.</u>, 971 F.Supp. 603 (D.D.C. 1997) (denying the defendants' motion to strike the class action allegations and deferring a decision on plaintiffs' motion for class certification until plaintiffs had an opportunity to take discovery); <u>Yaffe v. Powers</u>, 454 F.2d 1362, 1366 (1st Cir. 1972) ("To pronounce finally, prior to allowing any discovery, the non-existence of a class or set of subclasses, when their existence may depend on information wholly within defendants' ken, seems precipitate and contrary to the pragmatic spirit of Rule 23."); <u>Briggs v. Aldi, Inc.</u>, 218 F.Supp.2d 1260, 1265 (D. Kan. 2002) (the appropriate time to address whether a plaintiff has met the requirements necessary to maintain a class action is after the plaintiff has filed a motion for class certification, not the 12(b)(6) dismissal stage; <u>Branch, et al. v Reynolds Metals Co.</u>, 1972 WL 266, at *1 (E.D. Va. 1972) (preliminarily certifying a class and noting that placing plaintiffs' counsel in the "anomalous position of not being able to sustain its class conclusions for lack of evidentiary support, yet unable to adduce such support by reason of its inability to prove class standing" would "be a perversion of the liberal spirit of the federal discovery rules.").

Defendant states that its own "declarations establish conclusively that the various bureaus' discrete hiring, appraisal, promotion, and compensation systems are characterized by numerous objective processes" (D's Br. at 72-73), and proceeds to list a series of alleged supporting statements from various witnesses (D's Br. at 73-74).  However, Plaintiffs' class

claims are based almost exclusively upon facts and statistics in Defendant's sole possession and control. To date, Plaintiffs have not had the opportunity to depose any of these witnesses or request documents relevant to these contentions. Any information Plaintiffs obtained during proceedings on the administrative level is now incomplete and outdated. Many events may have occurred which may strengthen Plaintiffs' claims and allow them to more fully flesh out the discriminatory practices employed at Commerce. In addition, updated statistical data may reinforce the data in Plaintiffs' possession to provide further support for class certification – class certification Plaintiffs sought and obtained from the OFO in 2000. Plaintiffs must be allowed the opportunity to obtain information to support their allegations before the Court considers the appropriateness of class status.

**E.      Plaintiffs' Complaint, as Amended, Alleges Facts Which Satisfy Rule 23**

In their pending First Amended Class Action Complaint, Plaintiffs have pled every required element for a proper class of African-American, non-supervisory employees and former employees of DOC's bureaus in the metropolitan area of Washington, D.C., who have been denied career advancement to one or more white collar positions at grade levels GS-9 through GS-15, or equivalent level white collar non-GS positions, and who may have been denied related promotional opportunities in those same offices based on their race during the period of time beginning two years prior to the filing of the administrative class complaint on February 22, 1995. FAC at ¶ 41-182. As discussed more fully below, Plaintiffs properly allege in their Amended Complaint that the DOC's uniform performance evaluation practices, which allow an excessive amount of subjectivity, have resulted in an adverse impact on the advancement of African-American employees as compared to white employees. These classic disparate impact

allegations clearly meet the requirements to state a claim for a class action under Federal Rules of Civil Procedure 12(b)(6) and 23.

### 1.    Legal Standard Under Rule 12(b)(6): Well-Pleaded Allegations Must be Accepted as True

As Defendant recognizes, a class action complaint must allege "facts from which [a] district court could reasonably infer that the mandatory prerequisites of Fed. R. Civ. P. 23(a) [have] been met." Smith v. Transworld Systems, Inc., 953 F.2d 1025, 1033 (6th Cir. 1992). However, a court will not dismiss a complaint under Rule 12(b)(6) for failure to state a claim, as Defendant requests here, unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to the relief requested. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 45-46 (1957). When considering a motion to dismiss, the court must look only to the four corners of the complaint, accept the allegations in the complaint as true, construing them in favor of the pleader, and then evaluate the legal viability of the allegations contained therein.[11] See Fed. R. Civ. P. 12(b)(6); Cruz v. Beto, 405 U.S. 319, 322 (1972) (per curiam); Doe v. U.S. Dep't of Justice, 753 F.2d 1092, 1102 (D.C. Cir. 1985) (for the purposes of a motion to dismiss for failure to state a claim upon which relief can be granted, "the factual allegations of the complaint must be taken as true, and any ambiguities or doubts concerning the sufficiency of the claim must be resolved in favor of the pleader"); see also Holy Land Foundation for Relief & Development v.

---

[11]  Like consideration of a motion to dismiss for failure to state a claim, a class certification determination neither requires nor permits courts to determine the merits. See, e.g., In re Lorazepam & Clorazepate Antitrust Litig., 202 F.R.D. 12, 21 (D.D.C. 2001); Wagner v. Taylor, 836 F.2d 578, 587 (D.C. Cir. 1987) (the court is not authorized to conduct a preliminary inquiry on the merits to justify class certification).

Ashcroft, 333 F.3d 156, 165 (D.C. Cir. 2003) (same).

     "[A] complaint must be read broadly to determine whether it provides the defendant with fair notice of the claim and presents a claim which would, if proved, entitle the claimant to relief." Grogan v. General Maintenance Serv. Co., 763 F.2d 444, 449 (D.C. Cir. 1985); see also Stokes v. Cross, 327 F.3d 1210, 1215 (D.C. Cir. 2003) (internal citation omitted). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheur v. Rhodes, 416 U.S. 232, 236 (1974) (overruled on other grounds). Moreover, in evaluating whether a complaint will withstand a Rule 12(b)(6) motion, a court must assume the truth of plaintiff's "well-pleaded allegations." Albright v. Oliver, 510 U.S. 266, 268 (1994).

     Disregarding the standard for a motion under Rule 12(b)(6), Defendant improperly provides its carefully-manicured and incomplete version of the evidence to the Court through a factual recitation covering forty pages of its brief and citing to hundreds of pages of exhibits. Relying upon this presentation, Defendant prematurely attempts to obtain a decision on the merits regarding the precise degree of centralization and subjectivity of policies alleged by Plaintiffs to cause a disparate impact on African-Americans. See Orlowski v. Dominick's Finer Foods, Inc., 172 F.R.D. 370, 373-74 (N.D. Ill. 1997) (court found commonality in promotion process during class certification proceedings where degree of centralized decision-making could not be definitively determined without performing full merits inquiry). Plaintiffs' allegations here, that overly subjective performance evaluations promulgated by Commerce Headquarters and applied across Bureaus resulted in a disparate impact upon the promotions and related promotional opportunities of a defined class of African-Americans, suffice to state a class claim under Rule 12(b)(6). See Morgan, 169 F.R.D. at 156 (commonality requirement can be met

where the company combines "subjective, decentralized system of decisionmaking" with personnel policies that are "uniform throughout the country and are promulgated by the national corporate office").

### 2.    Rule 23 Requirements

Parties seeking to maintain a class action must satisfy all of the prerequisites for class certification under Rule 23(a) and at least one subsection of Rule 23(b).  Rule 23(a) requires that: (1) the class be so numerous that joinder of all the members is impracticable; (2) questions of law or fact be common to the class; (3) the claims or defenses of the representative parties be typical of the class; and (4) the representative parties fairly and adequately protect the interests of the class.  Fed.R.Civ.P. 23(a).  Under Rule 23(b)(2), the party opposing the class also must have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as  whole.  Fed.R.Civ.P. 23(b)(2).  Under Rule 23(b)(3), a class action is appropriate where questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Fed.R.Civ.P. 23(b)(3).

### 3.    Plaintiffs Adequately Allege Numerosity

Defendant does not contest the satisfaction of the numerosity requirement under Rule 12(b)(6): that the "class [be] so numerous that joinder of all members is impracticable . . ."  Fed. R. Civ. P. 23(a)(1).  Plaintiffs allege a class of hundreds of putative members, clearly too numerous to make joinder practicable.  FAC at ¶ 167; see also Ps' EEOC Brief at 55-56.

### 4.    Plaintiffs Adequately Allege Commonality and Typicality

"The commonality and typicality requirements of Rule 23(a) tend to merge."  Falcon, 457

U.S. at 157 n.13.  Plaintiffs must bridge the gap between their individual claims and the existence of a class which has the same interests and has suffered the same injury.  Id. at 157.  To do this in the context of a Rule 12(b)(6) challenge, they must allege the existence of questions of law or fact common to the class, and claims or defenses of the representative parties typical of the class.  See Rule 23(a)(2) & (a)(3).

### (a)    Plaintiffs State a Claim for Commonality

The discriminatory aspect of the selection procedure for promotions alleged by Plaintiffs involves the common component of the use of excessively subjective performance appraisals, which adversely affect the overall selection of African-Americans for vacant GS-9 through GS-15 or equivalent level white collar non-GS positions, as well as the selection of African-Americans to be trained for and receive employment-enhancing work experience, training and awards.  Commerce's Office of the Secretary requires that all 30,000-plus DOC employees (except certain management) be reviewed annually on standard evaluation forms.  FAC at ¶ 100; see also DAO-430, Section 3.01(b), (App. B, Ex. 16); DAO 202-250 Section 6,  (App. B, Ex. 12); OHRM website (App. C, Ex. 9,17,32).  Thus, Plaintiffs have identified in their Amended Complaint a specific practice within Commerce that has an adverse impact on African-Americans, consistent with the disparate impact theory of discrimination under Title VII.  See Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 656 (1989) (a plaintiff is "'responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities,'" quoting Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 994 (1988)); compare Smith v. City of Jackson, Miss., 544 U.S. 228 (2005) (plaintiffs failed to allege more than simply the fact of a disparate impact on older workers).

The Supreme Court has acknowledged that a disparate impact class action can be based

upon an employer's subjective hiring and promotion practices. <u>Watson</u>, 487 U.S. at 990 ("disparate impact analysis is in principle no less applicable to subjective employment criteria than to objective or standardized tests. In either case, a facially neutral practice, adopted without discriminatory intent, may have effects that are indistinguishable from intentionally discriminatory practices."); <u>see also</u> <u>McReynolds v. Sodexho Marriott Services, Inc.</u>, 208 F.R.D. 428 (D.D.C. 2002) (finding that plaintiffs' anecdotal evidence of discriminatory hiring, statistical proof that African-Americans were underrepresented in higher-echelon positions, and the company's subjective employment and promotion criteria all raised common and predominating issues warranting class certification); <u>District Council 37, AFSCM v. New York City Dep't of Parks & Recreation</u>, 113 F.3d 347, 351 (2nd Cir. 1997) ("[D]isparate impact claims can also be used to challenge subjective employment practices . . ."); <u>Bergal v. Metropolitan Waste Control Comm.</u>, 873 F.2d 1166 (8th Cir. 1989) (per curiam) (disparate impact analysis may be applied to subjective decision making); <u>Griffen v. Carlin</u>, 755 F.2d 1516, 1523 (11th Cir. 1985) ("use of the disparate impact theory to challenge the end result of multi-component selection processes and to challenge subjective elements of those processes is appropriate"); <u>Williams v. Colorado Springs Sch. Dist.</u>, 641 F.2d 835, 839-42 (10th Cir. 1981) (adverse impact standards of proof must be applied in a class case alleging the adverse impact of the employer's allegedly subjective hiring and promotion practices); <u>Thomas v. Lufkin Indust., Inc.</u>, 187 F.R.D. 267, 279 (E.D. Tex. 1999) ("Allegations of similar discriminatory employment practices, such as the use of entirely subjective personnel processes that operate to discriminate, satisfy the commonality and typicality requirements of Rule 23(a)."); <u>Shores v. Publix Super Markets, Inc.</u>, 1996 U.S. Dist. LEXIS 3381, at *18 (M.D. Fla. 1996) (granting plaintiffs' motion for class certification and holding that "allegations of similar discriminatory employment practices, such as the use of

entirely subjective personnel processes that operate to discriminate," satisfy 23(a)'s commonality and typicality requirements).    Moreover, "[a]s is now well recognized, the class action commonality criteria are, in general, more easily met when a disparate impact rather than a disparate treatment theory underlies a class action."  Stastny v. Southern Bell Tel. & Tel. Co., 628 F.2d 267, 274 n.10 (4th Cir. 1980).

Defendant attempts to limit Plaintiffs' ability to use an employer's subjective practices as a basis for stating a claim of a common question of law or fact under the Rule 23 commonality prong to those circumstances where plaintiffs have alleged that a company utilizes practices that are completely subjective.  D's Brief at 72-74.[12]  However, "courts have long recognized that the deliberate and routine use of excessive subjectivity is an 'employment practice' that is susceptible to being infected by discriminatory animus."[13]  Dukes v. Wal-Mart Stores, Inc., 222

_____

[12]  Notably, every one of the decisions cited by Defendant was rendered after discovery.  See D's Brief at 74 (citing Vuyanich v. Republic Nat'l Bank of Dallas, 723 F.2d 1195 (5th Cir. 1984) (examining a post-discovery class cert decision); Wilkins v. University of Houston, 654 F.2d 388 (5th Cir. 1981) (same); Garcia v. Veneman, 211 F.R.D. 15 (D.D.C. 2002) (same); Int'l Union v. LTV Aerospace & Defense Co., 136 F.R.D. 113 (N.D. Tex. 1991) (same); Califano v. Yamasaki, 442 U.S. 682 (1979) (same); McCarthy v. Kleindeinst, 741 F.2d 1406 (D.C. Cir. 1984) (ruling on class cert after some discovery); Hartman v. Duffey, 19 F.3d 1459 (D.C. Cir. 1994) (examining a class cert ruling which was issued after discovery); Wagner v. Taylor, 836 F.2d 578 (D.C. Cir. 1987) (same); Cooper v. Southern Co., 390 F.3d 695, 704, 715 (11th Cir. 2004) (same); Bacon v. Honda of America Mfg., Inc., 370 F.3d 565, 571-72 (6th Cir. 2004) (same); Bradford v. Sears, Roebuck & Co., 673 F.2d 792, 794-95 (5th Cir. 1982) (reexamining a class cert decision and holding that district court had to hold an evidentiary hearing before granting class certification); Stastny v. Southern Bell Tel. & Tel. Co., 628 F2d 267, 278-79 (4th Cir. 1980) (examining class cert decision that was made post-discovery)).

[13]  Excessive subjectivity in employment decisions is traditionally viewed with skepticism by courts, as subjectivity is often a convenient pretext for discriminatory practices.  Cook v. Billington, 1992 WL 276936, *5 (D.D.C. 1992) (citing Moore v. Hughes Helicopters, Inc., 708 F.2d 475, 481 (9th Cir. 1983); Payne v. Travenol Laboratories, Inc., 673 F.2d 798, 824 (5th Cir.

F.R.D. 137, 149 (N.D. Cal. 2004) (emphasis added); <u>McReynolds</u>, 349 F.Supp.2d at 20 (holding that excessive subjectivity in evaluation and promotion criteria leads to "[g]reater possibilities for abuse" and that courts must be sensitive to possible bias arising from subjectivity) (internal citation omitted); <u>Stewart v. Rubin</u>, 948 F.Supp. 1077, 1088 (D.D.C. 1996) (granting class certification and holding that commonality was present because "[a]ll of the allegations . . . arise from the Defendant's alleged discriminatory employment policies and practices which allegedly rely upon excessive subjectivity in the employment-related decision-making process . . . [which] apply nationwide to all class members."); <u>Cook v. Billington</u>, 1992 WL 276936, *5 (D.D.C. 1992) (granting partial summary judgment to plaintiffs because "plaintiffs . . . presented evidence of a specific employment practice - namely, some subjectivity in the measurement of qualifying criteria during the first two stages of the Library's competitive selection process, and pronounced subjectivity in both the establishment and measurement of criteria during the interview stage," and quoting plaintiffs' expert, who stated that "if you have excessive subjectivity, some element of racial bias in a process is almost guaranteed.").

Defendant's additional argument, that resolution of Plaintiffs' discrimination claims would require a "highly individualized factual inquiry" contrary to the effective management of a class action (D's Brief at 75), misses the point of a disparate impact class claim. Plaintiffs' allegations necessitate no such inquiry on the merits. As the class agents here challenge the use of common discriminatory components per se, and not merely the individualized manifestations of their use, the fact that the common components may vary or be applied somewhat differently by various individual decision-makers is of no legal consequence. <u>See</u> <u>Morgan</u>, 169 F.R.D. at 356 (decentralized decision-making does not defeat certification of a class; the personnel policies

_____

1982), <u>cert. denied</u>, 459 U.S. 1038 (1983); <u>Nanty v. Barrows Co.</u>, 660 F.2d 1327, 1334 (9th Cir. 1981) (overruled on other grounds)).

at issue "include the subjective, decentralized system of decision-making which the plaintiffs allege is discriminatory.")

McReynolds stresses that to adopt "defendant's view of the commonality test would preclude class certification . . . against any company that has decentralized its personnel policies . . . . This position would permit companies to escape Title VII class actions by minimizing the amount of control that they exercise over individual managers." 208 F.R.D. at 443-44, n.23. Commerce's arguments urge precisely such a strategy. Indeed, decentralization may strengthen the need for class certification because it demonstrates that the contested policies, practices, and procedures are so loose and subjective that the promotional decisions made pursuant to them can vary from one decision-maker to another. See McReynolds at 443-44; Cox v. American Cast Iron Pipe Co., 784 F.2d 1546, 1557-58 (11th Cir.), cert. denied, 479 U.S. 883 (1986).

Here, Plaintiffs adequately allege an excessively subjective performance evaluation process which causes a disparate impact on promotions and promotion-related opportunities for African-Americans. Statistical and anecdotal allegations further bolster Plaintiffs' ability to state a claim for class relief under the disparate impact theory of race discrimination and satisfy the Rule 12(b)(6) standard for stating a claim of commonality under Rule 23.

First, Plaintiffs allege that performance appraisal ratings are recognized by the federal government as being "very important to the career of a Federal civil service employee." FAC at ¶ 105; see also Office of Human Resources Management website, managers/how_eval_performance.htm at 1, (App. C, Ex. 9). Commerce's Office of Human Resources Management website states:

> [Performance appraisals] are used in a variety of critically important ways. For example, performance ratings have an impact during a reduction-in-force (RIF). **A performance rating is also a factor in making promotion selections, and in most cases in determining who will receive a performance award. . . . In**

**short, the performance rating that you give an employee can have a major impact on the employee's career.**

Id. at ¶ 106 (emphasis added).  Emphasizing the importance of the results of the appraisal process, the website notes that **the results "are to be used as a basis for training, rewarding, reassigning, promoting, reducing in grade, retaining, or removing employees**." Id. at ¶ 107. The DOC mandates the use of performance standards at either five or two rating levels.  "For bureaus using five rating levels, the standards . . . are generic and cannot be changed." Id. at ¶ 108.

Second, Plaintiffs' allegations include the opinion of one of the nation's leading experts in performance appraisal systems, Dr. David Martin.  For years, Dr. Martin has assisted several federal agencies with preparing and implementing their performance appraisal systems, and he has decades of experience in teaching, publishing books and articles, consulting, and training employees (including hundreds of federal employees) in the area of performance appraisals. FAC at ¶ 109.  After reviewing performance appraisal "standards" at the DOC,[14] Dr. Martin concluded that Commerce's performance appraisal system permits an excessive amount of subjectivity, allowing raters to inject bias and discrimination in the ratings. Id. at ¶ 112.  Dr. Martin concluded that the DOC's performance appraisal system is "probably the worst system [he has] critiqued." Id. at ¶ 114.

Plaintiffs thirdly allege that statistical evidence reveals that a disproportionate number of African-American employees are denied access to advancement and higher-paying positions

---

[14]  Dr. Martin reviewed examples of performance reviews from Census (Samuel Reynolds, 1996-1999), Headquarters/Office of the Secretary (Janet Howard, 1995-96), Headquarters/Office of Human Resource Management (John Austin, 1998), and the Patent and Trademark Office (John Kuong, 2000).  FAC at ¶ 110.

within the Department of Commerce.  Statistics show that, for example, in 1998, the percentage of African-Americans in GS levels five through fifteen declined at DOC as the GS level increased, while the percentage of white employees increased as the GS levels increased.  FAC at ¶ 115.  The percentage of African-Americans at GS-11 was 13.51%, at GS-12 the percentage was 14.25%, and at GS-13 the percentage dropped significantly to 9.6%.  Id.  The percentage of white employees at GS-11 was 76.61%, at GS-12, it was 76.93%, and at GS-13 it jumps up to 80.48%.  Id.

The data set forth in the Amended Complaint illustrates the dramatic disparity between African-Americans and white employees at DOC as GS level increases, when viewed by groupings, i.e., GS 5-8, GS 9-12, and GS 13-15 (Id. at ¶ 122):

| GS Level | African-American | White |
|----------|-----------------|-------|
| GS-5 - GS-8 | 35.9% | 57.3% |
| GS-9 - GS-12 | 20.2% | 69.5% |
| GS-13 - GS-15 | 7.1% | 83.3% |

Fourth, significant anecdotal evidence from DOC's African-American employees confirms that class members are routinely denied promotions because of their race and subjected to a racially hostile work environment.  FAC at ¶ 144-159.  For example, Class Representative Howard overheard her white superior tell a white employee, "You're tall and blonde, you'll do well here."  Id. at ¶ 45.  In addition, "Buckwheat" was one term of endearment a DOC supervisor bestowed on an African-American employee.  Id. at ¶ 153.

Dennis Gosier, a Chief Steward and EEO representative since 1993, has personally attempted to assist more than 100 African-Americans redress discrimination suffered at the DOC.  Id. at ¶ 145-47.  According to Gosier, white managers frequently deny African-

Americans advancement with subjective, negative assessments, such as "not having shown leadership." Id. at ¶ 146. In addition, managers will single out an employee's supposedly negative performance despite having the same performance exhibited by white employees. Id. Mr. Gosier has witnessed a pattern and practice of discrimination in promotions against African-Americans that has resulted in the following:

    i.   Denying African-American employees' promotions to higher GS levels at the Census Bureau;
    ii.   Showing preferential treatment to whites in promotional opportunities;
    iii.   Denying African-Americans adequate or appropriate training necessary to advance to the next level;
    iv.   Moving African-American to different positions at the same level which hinders progression to the next GS level; and
    v.   Arbitrary and subjective negative personnel reviews of African-Americans that have resulted in thwarting of employment advancement.

Id. at ¶ 147.

These allegations serve to state a claim under Rule 12(b)(6) for common questions under the facts or law under the commonality prong of Rule 23. Fed.R.Civ.P. 23(a)(2).

### (b)    Plaintiffs State a Claim for Typicality

To adequately allege typicality under Rule 12(b)(6), plaintiffs must state that the named class representatives claim to have suffered similar injuries from the same or similar employment practices as did members of the class. See Wagner v. Taylor, 836 F.2d 578, 591 (D.C. Cir. 1987) (considering class certification under Rule 23). For example, an unsuccessful applicant for one particular job can challenge discriminatory hiring for different job categories where "the primary practices used to discriminate in the different categories are themselves similar." Hartman, 19 F.3d at 1471.

Here, the named Plaintiffs' claims of promotional discrimination are typical of the class. Ms. Howard, Ms. Megginson, and Ms. Ward Jordan allege that they applied for and were denied

promotions to vacancies at the GS-9 through GS-15 level at Commerce, although they were qualified for these positions. They also claim that African-American Commerce employees were disadvantaged in the areas of awards, performance ratings, career-enhancing work assignments, timely training for advancement, and job assignments. Thus, their claims arise from the same events or course of conduct as the claims of the class, and those claims will proceed under the same legal theory: namely, the adverse impact of the Defendant's subjective performance evaluation practices upon African-Americans' promotions and related promotional opportunities. Additionally, the DOC's defense in this case, as in any disparate impact case, will involve common questions of fact and law, focusing on the common question of whether the Defendant is able to "demonstrate that the challenged practice is job related for the position in question and consistent with business necessity." 42 U.S.C. Section 2000e-2(k)(1)(A)(i).

Directly contrary to Defendant's arguments, mere factual variations do not destroy typicality. D's Brief at 77-79 (criticizing plaintiffs' allegations as atypical because they did not work in each of the Bureaus covered by the class, they are not members of the "predominant" job classification at each Bureau, and their claims concern few supervisors in "relatively uncommon" positions rather than a common group of managers). That a plaintiff's job is not identical to that of other class members does not make the plaintiff's claims atypical. "Typicality is not defeated because of the varied promotional opportunities at issue, or the differing qualifications of plaintiffs and class members." Wagner, 836 F.2d at 591 (internal quotation omitted); see also Advocate Health Care v. Mylan Labs, Inc., 202 F.R.D. 12, 27 (D.D.C. 2001) (differences among class members do not mandate a finding of atypicality, as long as the claims arise out of the same legal or remedial theory; class members need not be clones of each other). See also In re Vitamins Antitrust Litig., 209 F.R.D. 251, 261 (D.D.C. 2002) ("There is nothing in

Rule 23(a)(3) which requires the named plaintiffs to be clones of each other or other class members."); <u>Senter v. General Motors Corp.</u>, 532 F.2d 511 (6th Cir. 1976); <u>Anderson v. Garner</u>, 22 F.Supp.2d 1379, 1385 (N.D. Ga. 1997) ("The requirement may be satisfied 'even though varying fact patterns support the claims or defenses of individual class members.'"); <u>Kornberg v. Carnival Cruise Lines, Inc.</u>, 741 F.2d 1332, 1337 (11th Cir. 1984) (stating that "a sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same . . . pattern or practice and are based on the same legal theory"); 7A Wright, Miller & Kane, Federal Practice and Procedure, Section 1764, at 235-41; <u>compare</u> <u>KAS v. Financial General Bankshares, Inc.</u>, 105 F.R.D. 453, 461 (D.D.C. 1984), <u>aff'd</u>, 796 F.2d 508 (1986) (where the legal or factual position of the representative is "markedly different" than that of the class, it is not typical).

As stated by the D.C. Circuit in <u>Wagner</u>: "[T]he fact that the jobs performed by the named plaintiffs are, in some sense, unique, is not a bar to their being class representatives. If it were, no class of professional employees could ever be certified." <u>Id.</u>, citing <u>Meyer v. Mac Millan Publishing Co.</u>, 95 F.R.D. 411, 414 (S.D.N.Y. 1982) and <u>Paxton v. Union Nat'l Bank</u>, 688 F.2d 552, 562 (8th Cir. 1982) (holding that "[t]ypicality is not defeated because of the varied promotional opportunities at issue, or the differing qualifications of plaintiffs and class members."); <u>Adames v. Mitsubishi Bank, Ltd.</u>, 133 F.R.D. 82, 91 (E.D.N.Y. 1989) ("[t]he named plaintiffs need not possess the same qualifications or have the same employment status as the purported class members.") The relevant consideration is not the uniqueness of the named plaintiffs' positions, but rather "whether [the named plaintiffs] suffered injury from a specific discriminatory promotional practice of the employer in the same manner that the members of the proposed class did, and whether [the named plaintiffs] and the class members were injured in the

same fashion by a general policy of employment discrimination." <u>Wagner</u>, 836 F.2d at 591.

In <u>Wagner</u>, the D.C. Circuit determined that the named plaintiff satisfied the typicality requirement where he claimed that the defendant conducted its performance evaluations "in a discriminatory manner, producing a disproportionate share of low ratings for black employees." <u>Wagner</u> at 591.  Wagner also averred that he applied for and was refused promotions and that his chances for future promotion were dim because of his race.  <u>Id.</u>  The Court determined that:

> Along with other employees of the defendant, Wagner is subject to performance analyses, and is exposed to possible adverse consequences if the results of the analyses are lowered for discriminatory reasons.  Though Wagner is a member of an "elite" service,[15] he has an interest, like all other members of the class, in being fairly evaluated.  If Wagner's allegations are true, his individual claim of promotional discrimination is typical of the claims of those who would comprise the proposed class.

Defendant also fails to comprehend the nature of Plaintiffs' disparate impact claim when it protests that no Plaintiff alleges that any individual "from the Office of the Secretary or OHRM had anything to do with the decisions of which they complain."  D's Brief at 79.  As understood by the D.C. Circuit in <u>Wagner</u>, Rule 23 does not require such allegations when Plaintiffs allege a common practice such as overly subjective and discriminatory performance evaluations which operate to adversely affect the class. <u>Wagner</u>, 836 F.2d at 591.

The named Plaintiffs also seek the same relief for themselves as they do for the class, including injunctive and declaratory judgments and back and front pay.  Moreover, the Plaintiffs will present exactly the same evidence at trial on the merits whether there is one class trial or scores of individual trials, including the same historical, anecdotal, and statistical evidence.

Because the named class representatives allege similar injuries from the same or similar

---

[15]  Wagner, who held a Senior Executive Service position, sought to represent all Interstate Commerce Commission African-American professional, technical, and administrative employees in positions graded GS-9 and above, and all black applicants for those positions.  <u>Id.</u> at 583, 590.

employment practices as members of the class, these allegations serve to state a claim of common questions under the facts or law under Rule 23(a)(2).

### 5.    Plaintiffs State a Claim of Adequate Representation of The Class

Rule 23(a)(4) permits certification of a class only if "the representative parties will fairly and adequately protect the interests of the class." This adequacy of representation requirement focuses on "concerns about the competency of class counsel and conflicts of interest." <u>Falcon</u>, 457 U.S. at 157 n.13.

No legitimate question exists here regarding current class counsel's competence and its means to prosecute this case as a class action. As alleged in Plaintiffs' Amended Complaint, Plaintiffs' counsel in this matter have significant nationwide experience in litigating employment discrimination class actions and are highly qualified to prosecute the claims of the class. FAC at ¶ 174. For years, they have successfully represented other classes in both the employment discrimination field and in other areas of Federal and state litigation; for example, David Sanford has been lead class counsel in over 25 class actions nationwide during the past seven years. <u>Id.</u> The attorneys now representing Plaintiffs have sufficient time and skill to vigorously prosecute the class claims in the case at bar. <u>Id.</u>

Additionally, there are no conflicting interests between the Class Agent and the proposed class. First, as set forth above, Plaintiffs' allegations in the First Amended Class Action Complaint do not fail as a matter of law. <u>See</u> D's Brief at 80. Second, the Amended Complaint renders moot Defendant's complaints about the named Plaintiffs' failure to hold positions above the GS-14 level and thus their ability to represent supervisory employees, since the alleged class does not include supervisors, but rather only a class of GS-9 through GS-15 or equivalent employees. <u>See</u> D's Brief at 81; FAC at ¶ 1. Third, because the alleged class does not include

supervisors, the Amended Complaint nullifies Defendant's arguments about Plaintiffs who claim discrimination by supervisors who were members of the putative class.  See D's Brief at 82. Thus, Plaintiffs state a claim of adequate representation under Rule 23(a)(4).

### 6.    Plaintiffs Adequately Allege Facts to Satisfy Rule 23(b)

In addition to the four requirements of Rule 23(a), the Court must consider whether Plaintiffs' Amended Complaint states facts sufficient to satisfy the requirements of any of the subsections of Rule 23(b), of which subsections (b)(2) and (3) are relevant to this case.

### (a)    Plaintiffs State a Claim for Certification Under Rule 23(b)(2)

Rule 23(b)(2) has two requirements: the defendant's conduct must be "generally applicable" to the class, and final injunctive or declaratory relief must be requested for the class. Wright, Miller, & Kane, Federal Prac. & Proc., Section 1775 at 448-49 (1986).  As held by the U.S. Supreme Court in Falcon, itself a Rule 23(b)(2) class action, the judicial economy and efficiency in cases such as this, where class members are adversely affected by a common procedure, make certification under Rule 23(b)(2) particularly compelling:

> Class relief is "peculiarly appropriate" when the issues involved are common to the class as a whole and when they "turn on questions of law applicable in the same manner to each member of the class."  For in such cases, "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23."

Falcon, 457 U.S. at 155 (internal citations omitted).

The facts alleged here fall squarely within the parameters of a Rule 23(b)(2) class action. First, DOC's alleged agency-wide subjective decision-making process applies to the class as a whole and injunctive and declaratory relief is not only appropriate, but essential.  Rule 23(b)(2) was specifically adopted to govern civil rights cases such as this one.  Amchem Prods., Inc. v.

<u>Windsor</u>, 521 U.S. 591, 615 (1997).  Back pay is considered class-wide "equitable" relief for which Rule 23(b)(2) certification was designed.  <u>See, e.g.</u>, <u>Hartman v. Powell</u>, No. 00-5356, 2001 WL 410461, at *2 (D.C. Cir. Mar. 15, 2001) (holding that settlement that provided individualized <u>Teamsters</u> hearings before Special Master to decide individual class members' back pay claims is "consistent with class certification under Rule 23(b)").  Significantly, courts have routinely awarded class-wide back pay damages without the need for individualized hearings.  <u>See, e.g.</u>, <u>Hartman v. Wick</u>, No. 77-2019, 1988 U.S. Dist. LEXIS 14908, at *4 (D.D.C. Apr. 15, 1988); <u>Trout v. Garrett</u>, 780 F. Supp. 1396, 1407-08 (D.D.C. 1991).

Therefore, because Plaintiffs allege conduct by Defendant generally applicable to the class, and request final injunctive or declaratory relief for the class, Plaintiffs state a claim for a 23(b)(2) class action.

### (b)    Plaintiffs State a Claim for Certification Under Rule 23(b)(3)

Plaintiffs likewise allege facts sufficient for certification under Rule 23(b)(3), which states that an action can be maintained as a class action when "the court finds that the questions of law or fact common to the members of the class predominates over any questions affecting only individual members, and that a class action is superior to other available methods  for the fair and efficient adjudication of the controversy."  Fed.R.Civ.P. 23(b)(3).  "In determining whether common questions of law or fact predominate, liability issues are the primary focus."  <u>In re Vitamin Antitrust Litig.</u>, Nos. MISC 99-197(TFH), MDL 1285, 2001 WL 856292, at *4 (D.D.C. July 23, 2001).  Additionally, the common issues do not have to have to be dispositive of the litigation.  <u>In re Lorazepam & Clorazepate Antitrust Litig.</u>, 202 F.R.D. at 29.  An issue will predominate when an element of the claim will be proven on a "simultaneous, class-wide basis."  <u>Id.</u>

Plaintiffs' alleged class action satisfies the predominance requirement because common liability and damages issues discussed above concerning the DOC's subjective decision-making in connection with performance evaluations constitute major elements of the class members' claims and will shift the burden to the DOC to adduce evidence that business necessity justified utilization of the forms at issue.  See Smith v. Jackson, 125 S.Ct. 1536, 1546 (2005) (under the business necessity test, the employer must show that there are other ways for the employer to achieve its goals that do not result in a disparate impact on a protected class).  If Plaintiffs prove their disparate impact theory of discrimination, then only limited individualized hearings, if any, might occur.  See International Bhd. of Teamsters v. United States, 431 U.S. 324, 361-63 (1977); Segar v. Smith, 738 F.2d 1249, 1285 (D.C. Cir. 1984).

Plaintiffs' allegations also meet the requirements of superiority; utilizing the class action device here would save judicial resources and prevent the likelihood of inconsistent verdicts. Hundreds of members comprise the putative class.  Without certification of a class, individual plaintiffs would be obliged to bear the cost and risk of individual trials on liability and remedy, burdening the judicial system and presenting the potential for inconsistent verdicts.  See, e.g., In re Lorazepam & Clorazepate Antitrust Litig., 202 F.R.D. at 31; Lewis v. National Football League, 146 F.R.D. 5, 8 (D.D.C. 1992).  Given that Plaintiffs' allegations indicate that common issues on liability and damages would predominate and a class action is superior to hundreds of individual adjudications, Plaintiffs state a claim for certification under Rule 23(b)(3).[16]

V.    CONCLUSION

Plaintiffs' First Amended Class Action Complaint effectively eliminates the infirmities claimed by Defendant regarding venue, the scope of the class in relation to the administrative

---

[16] The subcategories of Rule 23(b) are not mutually exclusive.  A class may be certified under more than one category.  See Eubanks v. Billington, 110 F.3d 87, 91 (D.C. Cir. 1997).

charge, and timeliness or *res judicata* issues.  Most importantly, the law fully supports Plaintiffs'

disparate impact class allegations; to precipitously strike class allegations before discovery

commences, after a ten-year history in the administrative process which includes a class

certification by the OFO relied upon by countless individuals, would be completely contrary to

the pragmatic spirit of Rule 23 and the principles of the civil rights laws.  Plaintiffs respectfully

request that the Court accept their First Amended Class Action Complaint and deny Defendant's

Motion.


Dated: June 8, 2006                        Respectfully submitted,

                                           SANFORD, WITTELS & HEISLER, LLP
                                           By:     /s/   Laura C. Fentonmiller
                                           David W. Sanford, D.C. Bar No. 457933
                                           Laura C. Fentonmiller, D.C. Bar No. 450813
                                           Shayna M. Bloom, MD Bar, Admitted Pro Hac Vice
                                           2121 K Street, NW
                                           Suite 700
                                           Washington, D.C. 20037
                                           Telephone: (202) 942-9124
                                           Facsimile:  (202) 628-8189

                                           Grant Morris, D.C. Bar No. 926253
                                           LAW OFFICES OF GRANT E. MORRIS
                                           2121 K Street, NW
                                           Suite 700
                                           Washington, D.C. 20037
                                           Telephone: (202) 661-3510
                                           Facsimile:  (202) 628-8189

                                           *Attorneys for the Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2006, a copy of the foregoing was filed electronically. Notice of filing will be sent to the following parties by operation of the Court's electronic filing system. The parties may access this filing through the Court's system.

Peter S. Smith
Megan Rose
U.S. Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530


_____/s/ Laura C. Fentonmiller_____
Laura C. Fentonmiller