

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Office of Federal Operations**
**P.O. Box 19848**
**Washington, D.C. 20036**



| | |
|---|---|
| Janet Howard, *et al.* )<br>    Complainant, )<br> )<br>            v. )<br> )<br>William M. Daley, )<br>Secretary, )<br>Department of Commerce, )<br>    Agency. )<br>_____ ) | Appeal No.   01994518<br>Agency No.   95-55-0278 |

## DECISION

The complainant filed an appeal with this Commission from an agency decision, dated April 16, 1999, which disqualified her from serving as agent for a proposed class.[1]  The Commission accepts the complainant's appeal pursuant to 64 Fed. Reg. 37,644, 37,659 (1999) (to be codified at 29 C.F.R. § 1614.405).  For the reasons set forth below, it is the decision of the Commission to deny a motion to intervene filed by two class members; to reverse the agency's disqualification of the complainant from serving as class agent; and to provisionally certify the class complaint.

## ISSUES PRESENTED

The following issues are presented in this appeal: (1) whether the agency was authorized by EEOC regulation to issue a decision disqualifying the complainant as class agent; (2) whether Administrative Judge 2 properly remanded class complaint 1 to the agency to hold in abeyance pending the identification of a new class agent, rather than issuing a decision on class certification; and (3) whether class complaint 1 satisfies the commonality, typicality, numerosity, and adequacy of representation class complaint requirements.

## BACKGROUND

The complainant named in the case caption contacted an EEO Counselor on October 21, 1994, and filed a timely class complaint, dated February 22, 1995 (hereinafter referred to as class complaint 1).  Therein, she alleged discrimination based on race and retaliation against a class of African-

_____

[1]On November 9, 1999, revised regulations governing the EEOC's federal sector complaint process went into effect.  These regulations apply to all federal sector EEO complaints pending at any stage in the administrative process.  Consequently, the Commission will apply the revised regulations found at 64 Fed. Reg. 37,644 (1999), where applicable, in deciding the present appeal.  The regulations, as amended, may also be found at the Commission's website at www.eeoc.gov.

American employees who worked for the agency in the metropolitan area of Washington, D. C. Class complaint 1 alleged that the complainant and all other class members had been discriminated against based on race (African American) in the area of promotions, awards, performance ratings, career enhancing work assignments, timely training for advancement, and resource support readily available to the majority.[2]   The agency forwarded class complaint 1 to the EEOC for a recommendation by an administrative judge on acceptance or dismissal.  After obtaining additional information from the parties, Administrative Judge 1 recommended that the agency dismiss class complaint 1 on grounds that it did not meet any of the four requirements set forth in 29 C.F.R. §1614.204(a). By decision of August 7, 1995, the agency accepted the recommendation and dismissed class complaint 1.

On appeal, the complainant and class member H, through counsel, contended that Administrative Judge 1 erred by seeking information from the class which was almost exclusively in the possession of the agency and which the agency had not provided them.[3]   Counsel clarified the gravamen of the complaint and contended that the information that had been obtained showed that class certification was appropriate.  Specifically, counsel indicated that the gravamen of class complaint 1 was that the agency's subjective decision making had prevented African-Americans as a group from advancing according to their merit, through discriminatory promotion denials and other discriminatory employment decisions that adversely affected job advancement, including performance evaluations, job assignments, training, awards and recognition.   Counsel also clarified that the proposed class included only those African-American employees who worked in the Washington, D.C., area and who were denied promotions and other opportunities related to career advancement because of their race.

In response, the agency contended that, having failed to use the plethora of information at their disposal, the agents may not demand yet another chance for class certification.  The agency also contended that Administrative Judge 1 correctly found that class complaint 1 did not satisfy the prerequisites for a class complaint, and that the complaint should be dismissed for failure to cooperate with the agency's attempts to obtain information about the informal class complaint.

In its appellate decision, *Howard et al. v. Department of Commerce*, EEOC Appeal No. 01956455 (June 4, 1997), *request for reconsideration denied*, 05970855 (October 24, 1997), the Commission found that the adequacy of representation criterion had been satisfied because law firm 1, with prior class action experience, had been retained to represent the proposed class.  The Commission remanded class complaint 1 to be forwarded to the administrative judge to determine whether it

---

[2]The complaint listed the complainant named in the case caption above and two other class members, Joan Hall (hereinafter referred to as class member H) and Edward Reed (hereinafter referred to as class member R) as class agents.   However, only the complainant signed the February 22, 1995 formal class complaint.

[3]Counsel noted that class member R had withdrawn from serving as class agent.

3                                                    #01994518

met the commonality, typicality, and numerosity prerequisites for a class complaint after supplementation of the record.

On remand, class complaint 1 was assigned to Administrative Judge 2 who requested both parties to provide her with all submissions previously filed with the EEOC's Washington Field Office and Office of Federal Operations because the agency had not provided her with a copy of the record. Administrative Judge 2 also required the parties to update and supplement, where necessary, their responses to Administrative Judge 1's April 12, 1995 Request for Information (RFI). Both parties submitted information in response. In addition, the complainant notified Administrative Judge 2 that the class was no longer represented by law firm 1 and indicated that she expected that law firm 2 would soon represent the class. By letter dated October 13, 1998, law firm 2 notified Administrative Judge 2 and the agency that it would be representing the complainant, as class agent, in seeking class certification of non-supervisory African-American employees in the agency's Headquarters offices. On October 14, 1998, in response to an October 7, 1998 conference call, the complainant and class member H filed statements explaining why each believed she should continue to serve as sole class agent.[4] The complainant's statement contained, among other things, an unsworn allegation that law firm 1 no longer represented the class because class member H had embezzled $4000 which had been entrusted to the complainant and class member H to pay the class legal expenses and for which class member H and the complainant were jointly and severally responsible.

On November 23, 1998, Administrative Judge 2 ordered the parties to show cause why she should not: (1) dismiss a March 22, 1995 class complaint signed by class members H (hereinafter referred to as class complaint 2), on the ground that it stated the same claims set forth in class complaint 1, dated February 22, 1995; and (2) disqualify the complainant and/or class member H from serving as class agent on the ground that they have not shown that they will fairly and adequately protect the interests of the class. Responses were filed by the complainant, the agency, and class member H. In addition, class member R notified Administrative Judge 2 that he intended to remain as one of the class agents.

Administrative Judge 2's Remand

On March 24, 1999, Administrative Judge 2 issued a decision recommending dismissal of class complaint 2 on the grounds that it stated the same claims that were raised in class complaint 1. Administrative Judge 2 also found that even though the complainant and class members H and R had been referred to as class agents for class complaint 1, the complainant in fact was the only individual to hold class agent status for class complaint 1, because she alone signed the complaint as required by 29 C.F.R. § 1614.204(c)(1). Administrative Judge 2 further found, however, that the complainant should be replaced as class agent because she had not shown that she would

---

[4]The complainant, not law firm 2, filed the October 14, 1998 statement.

4                                                                    #01994518

adequately represent the interests of the class as class agent.[5] Specifically, Administrative Judge 2 found that the complainant unilaterally decided to exclude class member H from the litigation of the complaint even though class member H had played a critical role in prosecuting the complaint from its inception.[6] Administrative Judge 2 stated that although class member H did not officially hold the status of class agent, she was not just any member of the class, but rather, she was the President of the Commerce Committee for African-American Concerns (hereinafter referred to as the CCAAC), which Administrative Judge 2 viewed as the organization of agency employees which initiated class complaint 1.   Administrative Judge 2 also opined that the complainant, as Treasurer of CCAAC, had seized control of class complaint 1 from the CCAAC President, and, thereby, effectively disenfranchised the members of the CCAAC who had been funding the litigation.

Administrative Judge 2 gave a second reason for disqualifying the complainant from serving as class agent. Specifically, Administrative Judge 2 determined that at a minimum the complainant had not been candid with class member H or with the EEOC regarding the processing of class complaint 1. Administrative Judge 2 found that the complainant had concealed from class member H her efforts to secure legal representation for the putative class; had led Administrative Judge 2 to believe that class member H had consented to having EEOC communicate directly with the complainant instead of class member H; had offered different reasons on different occasions as to why class member H should not have a role in the class complaint; and, as Treasurer of CCAAC, may possibly bear some responsibility for the alleged misuse of litigation funds. Administrative Judge 2 indicated, however, that it appeared the complainant had been effective in publicizing the complaint and garnering support for it from agency employees and civil rights organizations. She indicated that she did not intend to foreclose the complainant from continuing in this role. Administrative Judge 2 then remanded class complaint 1 to the agency for 45 calendar days pending identification by the CCAAC of another agent who would adequately represent the interests of the putative class. Administrative Judge 2 indicated that upon identification of another agent, the agency should transmit the case to her office so that EEOC may resume processing of class complaint 1 as required by the Commission's prior decision on class complaint 1. Alternatively, Administrative Judge 2 indicated that if CCAAC failed to identify another agent within the 45-day time frame, the agency could dismiss the complaint pursuant to 29 C.F.R. § 1614.107(g).

---

[5]Administrative Judge 2 noted that the Commission's prior decision found only that law firm 1, which no longer represented the class, satisfied the adequacy of representation requirement.

[6]Administrative Judge 2 found that the complainant had withheld information from class member H regarding the processing of the complaint; had requested that all communications from the EEOC regarding the complaint be directed to her rather than to class member H; and had interviewed and retained an attorney to represent the class without consulting class member H, even though the two had shared this responsibility in the past.

Agency Decision

By decision of April 16, 1999, the agency adopted Administrative Judge 2's recommendation that class complaint 2 be dismissed on the ground that it stated the same claims raised in class complaint 1. The agency adopted Administrative Judge 2's finding that class member H was not a class agent for class complaint 1 because only the complainant had signed class complaint 1.[7] Finally, the agency adopted Administrative Judge 2's finding that the complainant be disqualified as class agent for class complaint 1. The agency then held that the putative class should be afforded an opportunity to select a new class agent(s) who could meet the regulatory requirements. The agency indicated that it would hold class complaint 1 in abeyance for 45 calendar days from the date of the decision, April 16, 1999, for the class to designate a new class agent(s). The decision further indicated that if the class did not notify the agency of one or more new class agent(s) within the 45-day time frame, class complaint 1 would be dismissed pursuant to 29 C.F.R. § 1614.107(g). The agency mailed copies of its decision to the complainant, the complainant's attorney, and class member H.

Appeal Contentions

Law firm 2, on behalf of the complainant, timely filed the instant appeal from the agency's April 16, 1999 decision. The complainant contends that Administrative Judge 2, and the agency in adopting Administrative Judge 2's decision, misstated the facts and misapplied the law. The complainant also contends that Administrative Judge 2 erroneously placed the selection of the class agent in the hands of the agency and foreclosed the most vigorous proponent of the class from prosecuting the action on behalf of the class. In support of the complainant's adequacy to serve as representative, the complainant submits several exhibits, including affidavits from the Vice President, Blacks in Government Commerce Chapter (BIGCC), and the person elected Vice President of CCAAC in 1996. The complainant also submits the signatures of 170 class members indicating support for the complainant as class agent.

In response, the agency contends that Administrative Judge 2 correctly addressed whether the complainant has the personal characteristics and integrity necessary to act as a fiduciary in representing the proposed class. The agency contends that, although the complainant levied the charge of embezzlement against class member H, the complainant was the treasurer of CCAAC and therefore bore responsibility for the group's finances. The agency also contends that the complainant's failure to provide information to class member H was more egregious than the failure to inform an individual class member because class member H was the President of CCAAC, she accompanied the complainant to class counseling, and was named as a class agent in class complaint 1. The agency further questions the extent to which the signers of the petition and the financial supporters were informed as to Administrative Judge 2's specific concerns

---

[7]The agency did not address Administrative Judge 2's finding that, for the same reason, class member R was not a class agent for class complaint 1.

regarding the complainant's adequacy to serve as class agent. Finally, the agency contends that this appeal is nothing more than an attempt to salvage the complaint of a person who already has lost her individual complaint in United States District Court.

## ANALYSIS AND FINDINGS

Denial of Motion for Intervention Filed by Class Members H and R

The Commission does not have any record of an appeal filed by class members H or R from the April 16, 1999 decision. However, law firm 3 has filed a motion on behalf of class members H and R to intervene as putative class agents, and to urge that the Commission dismiss this appeal because it is an unauthorized interlocutory appeal from a non-final order.

Class members H and R contend they now are the putative class agents with responsibility for class representation because the agency timely received their new agent designation on Monday, June 7, 1999. They contend that their class agent designation was timely filed because class member H did not receive the agency's decision until April 22, 1999, and the 45th day following the date of receipt fell on Sunday, June 6, 1999.

In response, the agency contends, among other things, that class members H and R did not timely designate themselves as class agents, because the agency's decision specifically instructed the putative class to designate a new class agent within 45 days from "the date of this decision." The 45th day following the date of the decision, April 16, 1999, was Monday, May 31, 1999. Law firm 3 had notice of the April 16, 1999 decision as indicated by its May 6, 1999 letter to the agency in which it notified the agency of its representation on behalf of class members H and R and indicated that it would provide a designation of class agents on or before the deadline the decision specified.

The Commission denies the motion for intervention filed by class members H and R because the agency does not have the authority under 29 C.F.R. § 1614.204 to establish its own procedure for choosing a class agent. However, even if the agency had the authority to set up such a procedure, it does not appear that class members H and R satisfied the requirements of the agency's procedure by timely filing their class agent designations within 45 calendar days of the date of the agency's decision.

Commission Jurisdiction to Address this Appeal

Although not raised by either party, a threshold question that must be addressed is the Commission's authority to accept this appeal. As law firm 3 correctly points out, EEOC Regulation 29 C.F.R. Part 1614 does not specifically authorize an interlocutory appeal from an administrative judge's decision to disqualify a class agent.

7                                                    #01994518

However, the Commission has the inherent authority to enforce its Part 1614 Regulations and has exercised this authority in response to various violations. *See, e.g.*, *DaCosta v. Department of Education*, EEOC Appeal No. 01995992 (February 25, 2000) (agency sanctioned for failure to investigate a complaint as required by Commission regulation); and *Edwards v. United States Postal Service*, EEOC Request No. 05950708 (October 31, 1996) (Commission authority to remedy a violation of 29 C.F.R. § 1614.605(b)(2) by awarding official time without a finding of discrimination). The Commission also is authorized by 29 C.F.R. § 1614.503 to enforce its decisions and orders. *See Terrell v. Department of Health and Human Services*, EEOC Request No. 04950018 (November 7, 1996) (awarding attorney's fees and costs for filing a petition for enforcement following the agency's failure to comply with the Commission's order to conduct a supplemental investigation within 90 days); *Stull v. Department of Justice*, EEOC Appeal No. 01942827 (June 15, 1995) (upholding an award of attorney's fees and costs incurred in an attempt to have an adverse inference drawn where the agency failed to comply with an administrative judge's order to produce documents). The Commission exercises its inherent authority in the instant case to correct the agency's unauthorized issuance of a decision disqualifying the complainant as class agent.

Reversal of the Agency's Unauthorized Issuance of a Decision Disqualifying the Complainant As Class Agent

Administrative Judge 2 remanded class complaint 1 to the agency with instructions that the complaint be held in abeyance for 45 calendar days. Under the terms of the remand, the agency was required to return the complaint to Administrative Judge 2 if another class agent was identified within 45 calendar days, or, if not, to dismiss the complaint pursuant to 29 C.F.R. § 1614.107(g). In addition, the EEOC regulation in effect at the time of the agency's decision, 29 C.F.R. § 1614.204(7), authorized the agency to accept or dismiss a class complaint, but did not authorize the agency to issue a decision disqualifying the class agent. The regulation currently in effect, 64 Fed. Reg. 37,644, 37,658 (1999) (to be codified at 29 C.F.R. § 1614.204(7)), and applicable to this appeal, also does not authorize the agency to issue a decision disqualifying the class agent. Accordingly, it is the decision of the Commission to MODIFY the agency's April 16, 1999 decision by REVERSING its disqualification of the complainant as class agent for class complaint 1. The agency's decision to dismiss class complaint 2, which has not been appealed, remains the final decision of agency on class complaint 2.

Administrative Judge 2's Remand to the Agency Improper

The Commission also finds that Administrative Judge 2 erred in remanding class complaint 1 to the agency to permit CCAAC to designate a new class agent. The EEOC regulation in effect at the time of the agency's decision, 29 C.F.R. § 1614.204(7), authorized an administrative judge to transmit to the agency a written recommendation on whether to accept or dismiss a class complaint. It did not authorize a remand of the class complaint for any other purpose. Similarly, the regulation currently in effect, 64 Fed. Reg. 37,644, 37,658 (1999) (to be codified at 29 C.F.R. § 1614.204(7), and applicable to this appeal, authorizes an administrative judge to transmit to the

#01994518

agency a decision to accept or dismiss a class complaint. Moreover, it was not proper for Administrative Judge 2 to authorize CCAAC to designate a new agent. First, there is no indication in the record that the complainant sought EEO class complaint counseling as a representative of CCAAC. Second, even if the complainant had attempted to file the complaint on behalf of CCAAC, under 29 C.F.R. Part 1614, unlike the Commission's prior regulation, 29 C.F.R. Part 1613, only aggrieved persons, not organizations, may file discrimination complaints.[8] Finally, Administrative Judge 2 was instructed by the Commission's prior Order in this case to determine whether class complaint 1 satisfied the commonality, typicality, and numerosity class complaint requirements.

Having reversed the agency's disqualification of the complainant as class agent for class complaint 1, and having determined that Administrative Judge 2 improperly remanded class complaint 1 instead of issuing a class certification decision, the Commission next addresses whether the requirements for a class complaint have been satisfied.[9]

<u>Class Complaint Requirements</u>

EEOC Regulation 29 C.F.R. §1614.204(a)(1) defines a class as a group of employees, former employees or applicants for employment who allegedly have been, or are being, adversely affected by an agency personnel management policy or practice that discriminates against the group on the basis of their race, color, religion, sex, national origin, age, or disability. EEOC Regulation 29 C.F.R. §1614.204(a)(2), modeled upon Rule 23 of the Federal Rules of Civil Procedure, defines four requirements that must be satisfied for a class complaint to be certified: (i) the class is so numerous that a consolidated complaint of the members of the class is impractical; (ii) there are questions of fact common to the class; (iii) the claims of the agent of the class are typical of the claims of the class; and (iv) the agent of the class, or, if represented, the class representative, must fairly and adequately protect the interests of the class. EEOC Regulation 29 C.F.R. §1614.204(d)(2) provides that a class complaint may be dismissed if it does not meet the four requirements of a class complaint or for any of the procedural grounds for dismissal set forth in 29 C.F.R. §1614.107.

The purpose of the commonality and typicality requirements is to ensure that the class agents possess the same interest and suffer the same injury as the members of the class. *General Telephone Company of the Southwest v. Falcon*, 457 U.S. 147, 156 (1982); *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1979). Class complainants are not required to prove the merits of their claims at the class certification stage; however, they are required to

---

[8]*Compare* 29 C.F.R. §1614.105(a) with 29 C.F.R. §1613.212 (1991).

[9]The Commission has the authority to address the class certification question on appeal even though the parties have not raised the issue. *See Charles v. Department of the Navy*, EEOC Request No. 05880259 (November 29, 1988).

4.

provide more than bare allegations that they satisfy the class complaint requirements. *Mastren v. United States Postal Service*, EEOC Request No. 05930253 (October 27, 1993). Factors to be considered include whether the practice at issue affects the whole class or only a few employees, the degree of local autonomy or centralized administration involved, and the uniformity of the membership of the class in terms of the likelihood that the members' treatment will involved common questions of fact. *Id.* It is important to resolve the requirements of commonality and typicality prior to addressing numerosity in order to determine the appropriate perimeters and the size of the membership of the resulting class. *Harris v. Pan American World Airways*, 74 F.R.D. 24, 15 F.E.P. Cases 1640, 1646 (N.D. Cal. 1977).

The correct focus in determining whether the class is sufficiently numerous for certification purposes is on the number of persons affected by the agency's allegedly discriminatory practices and who thus may assert claims. *Moten v. Federal Energy Regulatory Commission*, EEOC Request No. 05960233 (April 8, 1997). The numerosity requirement of Rule 23 imposes no absolute limit for the size of a class complaint, but rather, requires an examination of the facts of each case. *General Telephone Co. v. EEOC*, 446 U.S. 318, 330 (1980). In addition to number, other factors such as the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim, are relevant to the determination of whether the numerosity prerequisite of Rule 23 has been met. *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981). The fact that potential class members no longer are employed by the defendant employer, or that those employees who remain may have a natural fear or reluctance to bring an action on an individual basis, may also be significant factors when deciding whether the numerosity requirement has been satisfied. *Arkansas Education Association v. Board of Education, Portland, Arkansas School District*, 446 F.2d 763, 765-766 (8th Cir. 1971) (declining to overturn the certification of a class of 20 teachers and former teachers alleging salary discrimination based on race).

In order to satisfy the adequacy of representation criterion, the class representative should have no conflicts with the class and should have sufficient legal training and experience to pursue the claim. *Byrd v. Department of Agriculture*, EEOC Request No. 05900291 (May 30, 1990). Competency of counsel is particularly important for the protection of the rights of class members. *Foster v. Department of the Navy*, EEOC Request No. 05920483 (December 23, 1992).

Provisional Certification of Class Complaint 1

After a review of the entire record, including the appeal submissions of the parties, the Commission finds that class complaint 1 should be certified as a class complaint on a provisional basis. *See Moten, supra.* The Commission certifies the class complaint provisionally in light of the agency's representation that the agency, as organized in 1995, had no fewer than fourteen personnel offices. The record does not indicate whether the agency continues to have fourteen personnel offices, and, if so, how many of these personnel offices have responsibility for the personnel actions at issue in this case. If more than one personnel office services the agency's headquarters offices in the metropolitan area of the District of Columbia, it is possible that the

alleged discrimination occurs in offices serviced by one personnel office but not in offices serviced by another personnel office. The record also does not disclose how much autonomy, if any, the agency's individual Headquarters' offices exercise in the personnel matters at issue in this class complaint, and whether the amount of autonomy varies from one office to another. It appears that the agency has exclusive control of this information which has not yet been provided to the complainant and the Commission. While such information could be important, particularly as it pertains to the commonality and typicality class complaint requirements, it is the decision of the Commission not to delay the processing of class complaint 1 any further based on mere speculation as to the potential effect of such information. However, the Commission's Remand Order specifies that after completion of discovery pursuant to 29 C.F.R. § 1614.204(f), one or both parties may move to narrow the coverage of the class complaint and/or to establish additional subclasses. *See Hines, et al. v. Department of the Air Force*, EEOC Request No. 05940917 (January 29, 1996) (an administrative judge has the latitude to redefine a class, subdivide it, or recommend dismissal if it is discovered that there is no longer a basis to proceed as a class complaint).

The Commission finds that the class should be defined as composed of African-American, non-supervisory employees and former employees of the agency's Headquarters' offices in the metropolitan area of Washington, D.C., who allegedly have been denied career advancement to one or more white collar positions in the agency's Headquarters' offices at grade levels GS-9 through GS-15, or equivalent level white collar non-GS positions, and who may have been denied related promotional opportunities in those same offices, based on their race during the period of time beginning two years prior to the filing of the class complaint on February 22, 1995, and continuing to the date a final determination is rendered on the class complaint claim. Related promotional opportunities include training, assignments, details, awards, etc., that would have enhanced a class member's qualifications for promotion to such a position, whether the promotion would have been a career ladder promotion, a competitive promotion, or an accretion of duties promotion.

The Commission limits the class to employees who have been denied career advancement opportunities related to white collar positions at grade levels GS-9 through GS-15, or equivalent level white collar non-GS positions, because existing information suggests that significant numbers of African-American employees have been denied advancement to such positions and, thus, that common questions of fact and law exist as to those positions. The Commission limits the class claim to discrimination based on race because the record does not indicate that significant numbers of class members have allegedly been retaliated against based on their prior EEO activity.

The Commission finds that the class complaint states a claim that the agency has delayed and limited, and continues to delay and limit, the career advancement of class members because of their race. The complaint identifies a number of means by which the agency accomplishes the alleged career advancement discrimination, including discriminatory selection decisions, discriminatory performance appraisals, and discriminatory denials of awards, career enhancing work assignments, and timely training for advancement. Subsequent submissions identify other

mechanisms such as lower grade-level placements at hire, delays in awarding career ladder promotions, and promoting white employees based on accretion of duties, thereby, foreclosing competitive selections. However, the Commission finds that the means by which the agency allegedly accomplishes the alleged career advancement discrimination should not be treated as independent claims of discrimination under 29 C.F.R. Part 1614. *See* EEOC Management Directive (MD) 110, as revised (November 9, 1999), Example 3 and Practice Tip at 5-7. Instead, proven instances, if any, in which white employees have been given preferential treatment over African-American employees in ways that facilitated their career advancement, *e.g.*, in the provision of developmental training, career-enhancing assignments, outstanding performance appraisal ratings, and awards, should be treated as relevant evidence supporting the class claim of career advancement discrimination. *See Lee v. Department of the Army*, EEOC Appeal No. 01990384 (February 23, 2000).

Commonality

Based on the existing record, the Commission finds that class complaint 1 satisfies the class complaint commonality requirement. The agency has acknowledged that it has issued a Department Administrative Order (DAO) implementing the federal merit promotion policy agency-wide. The agency admittedly also has promulgated agency-wide principles governing the issuance of performance appraisals. Thus, it appears that common standards govern agency promotion and performance appraisal decisions in the Washington, D.C. metropolitan area. In addition, the Commission takes administrative notice of the information set forth in the Equal Employment Opportunity Commission's *Annual Report on the Employment of Minorities, Women and People with Disabilities in the Federal Government for the Fiscal Year* [FY] *1998* to find that there exist questions of fact and law in common to the members of the class as to whether the agency has denied African-American employees career advancement opportunities to white-collar positions, GS-9 through GS-15 and equivalent non-GS grades, due to their race. For example, the average white collar grade for the agency's white employees in FY 1998 was 10.60 and for the agency's black employees was 8.78. Table I-16. The discrepancies in grade level were also evident in professional positions where the average grade for white agency professional employees in FY 1998 was 12.77 while the average grade for black agency professional employees was 11.62. Table I-17. An examination of Table I-10 reveals that the percentage of black employees in the agency's white collar positions GS-9 and above in FY 1998 declines as the grade level increases.[10] For example, in FY 1998 black employees held 41.69% if GS-7 positions, 36.93% of GS-8 positions, 27.05% of GS-9 positions, and 27.15% of GS-10 positions. The declines were even greater in typically professional level positions in the agency where in FY 1998 black employees held only 13.51% of GS-11 positions, 14.25% of GS-12 positions, 9.60% of GS-13 positions, 7.02% of GS-14 positions, and 4.41% of GS-15 positions. In contrast, the percentage of white employees in the agency's white collar positions increased in the higher graded positions. For example, in 1998 white employees occupied 59.02% of GS-9 positions, 76.61% of GS-11

---

[10]Table I-10 includes equivalent non-GS positions together with the GS positions.

#01994518

positions, 76.93% of GS-12 positions, 80.48% of GS-13 positions, 81.76% of GS-14 positions, and 88.60% of GS-15 positions. These grade level differences were even more pronounced when class complaint 1 was filed in FY95 and during the two-year period preceding the complaint filing. Table I-10. The record also contains several affidavits and over forty unsworn survey forms that were completed in September 1998 which indicate that numerous individual class members believe they have been denied advancement-related opportunities, including promotions, awards, outstanding performance appraisal ratings, and enhancing work assignments, based on their race. The record further indicates that from October 1992 to August 1998, African-American employees filed 492 formal complaints of discrimination alleging discrimination based on race (African-American) including 108 complaints involving the Patent and Trademark Office (PTO), 103 complaints involving the Bureau of the Census (CENSUS), 100 complaints involving the National Oceanic and Atmospheric Administration (NOAA), 48 complaints involving the Office of the Secretary (O/S), 32 complaints involving the International Trade Administration (ITA), 27 complaints involving the National Telecommunications & Information Administration (NTIA), and the remainder involving seven other agency offices. In finding that the commonality requirement for a class complaint has been satisfied provisionally, the Commission recognizes that the class agent and law firm 2 have not had access to pre-certification discovery. *Hines, et al. v. Department of the Air Force*, EEOC Request No. 05940917 (January 29, 1996). The Commission also recognizes that the cited information involves nation-wide statistics which may or may not precisely reflect the situation in the agency's Headquarters' offices. However, the agency has exclusive possession of this information which it has not yet provided to the complainant and the Commission.[11]

Typicality

The Commission also finds that the complainant, a GS-11 Export Compliance Specialist in the Bureau of Export Administration (BXA), allegedly possesses the same interest and has suffered the same injury as the members of the class. Specifically, she is an African American who has been employed by the agency in a Headquarters' office in the Washington, D.C., metropolitan area for over fifteen years but has not advanced beyond the GS-11 level, even though her job series allegedly has growth potential to the GS-14 level and she has applied for several GS-12 Export Compliance Specialist vacancies. The complainant also alleges that based on her race she has been denied training and lateral career enhancing positions, has not been provided career enhancing assignments, and has been given inferior performance appraisals. Therefore, the Commission finds that the class agent satisfies the class complaint typicality requirement.

_____

[11]The Commission further recognizes that a statistical analysis of promotion decisions would be relevant to a determination on the merits of the class claim. *See also*, 29 C.F.R. § 1607.4 which sets forth some of the record-keeping requirements applicable to federal agencies. 29 C.F.R. § 1607.2A.

#01994518

The agency contends that this appeal is nothing more than an attempt to salvage the complaint of a person who already has lost her individual complaint in United States District Court, citing *Janet Howard v. William Daley, Secretary, U.S. Dep't. of Commerce*, Civil Action No. 97-2877 (D.D.C. March 30, 1999). Therein, the court granted the agency's motion for summary judgment, finding that the complainant had failed to prove that the agency's articulated reasons for her October 1996 overall performance rating of "fully successful" were a pretext for retaliation. The Commission finds no merit in the agency's appeal contention. A finding of discrimination in class complaint 1 could not alter the court's findings on the complainant's 1996 performance appraisal in as much as the court's findings are binding on both parties under the doctrines of *res judicata* and collateral estoppel.

In addition, if the agency believed that the complainant's 1996 performance appraisal claim raised the same claim as class complaint 1, the agency was obligated to hold the complainant's individual complaint in abeyance pending disposition of the class complaint. *See Green v. Social Security Administration*, EEOC Appeal No. 01984387 (November 24, 1999). EEOC Management Directive (MD) 110 (October 22, 1992) at 7-3, as minimally revised by EEOC MD 110 (November 9, 1999), at 8-4, has consistently provided that an individual complaint that is filed before or after the class complaint is filed and that comes within the definition of the class claim(s), will be subsumed within the class complaint.

The Commission also finds that the fact that the complainant failed to prove that the agency issued her a "fully successful" performance appraisal rating in 1996 in retaliation for her prior EEO activity, does not render the complainant's current discrimination claims atypical of the class complaint claims. As indicated above, the gravamen of class complaint 1 is that the agency's subjective decision making has prevented African-Americans as a group from advancing according to their merit, through discriminatory promotion denials and other discriminatory employment decisions that have adversely affected job advancement, including performance evaluations, job assignments, training, and awards. While performance evaluations are specified as one mechanism by which the agency prevents African-Americans from advancing according to their merit, the thrust of the class complaint is the discriminatory non-advancement of African-Americans. The complainant's non-advancement was not at issue in the complainant's civil action.[12]

However, if on remand, discovery discloses that the complainant does not have any unresolved individual claims of discrimination, then law firm 2 would be required to designate a new class agent or agents, which the administrative judge should approve if the typicality requirement were satisfied.

------------------------------------------------

[12]The Commission notes that the complainant proceeded without an attorney in her civil action.

Numerosity

The Commission finds that the class as defined above satisfies the numerosity requirement for a class complaint. Over forty African-American non-supervisory employees of the agency's Headquarters' offices in the metropolitan area of Washington, D.C., completed survey forms wherein they alleged that they have been denied career advancement to one or more white collar positions at the GS-9 through GS-15 and equivalent grade levels, and/or related promotional opportunities, based on their race during the period of time beginning two years prior to the filing of the class complaint on February 22, 1995. That the number of class members is greater than 40 is indicated by the filing of over 400 individual complaints of racial discrimination filed by African-American employees alleging discrimination based on race from February 1993 to August 1998. While the Commission does not presume that all of these complainants were filed by Headquarters' employees, it appears that a significant number of the complaints involved Headquarters' employees. If not, the agency, which has exclusive control over this information, easily could have informed the complainant and the Commission. These numbers also do not reflect the number of class members who have not filed individual complaints and who have not completed survey forms for fear of retaliation by agency officials.

Adequacy of Representation

Based on the existing record, the Commission finds that the complainant has satisfied the adequacy of representation requirement. First, the record does not demonstrate that the complainant has a conflict with the class. It is true that the complainant and class member H, who initially worked closely with the complainant in the processing of class complaint 1, no longer work well together. However, as Administrative Judge 2 correctly found, only the complainant signed class complainant 1 and, therefore, only the complainant was properly designated as the class agent. Thus, the complainant properly sought legal representation for the class without consulting class member H. Contrary to the opinion of Administrative Judge 2, the fact that class member H served as President of CCAAC gave her no more right to information concerning the processing of the class complaint, or input into choosing a legal representative, than any other class member. As discussed above, under 29 C.F.R. Part 1614 only aggrieved persons, not organizations, may file discrimination complaints. The Commission also observes that the complainant did not withhold information from the class. In fact, Administrative Judge 2 specifically recognized that the complainant has been effective in publicizing the class complaint and in garnering support for it from agency employees and civil rights organizations, and suggested that she continue in that role. Second, at the time of the complainant's disqualification, she was represented by law firm 1 which has experience in administrative and judicial class litigation.

In disqualifying the complainant from service as class agent, Administrative Judge 2 opined that the complainant may possibly bear some responsibility for an alleged misuse of litigation funds by class member H, because the complainant had served as Treasurer of CCAAC. However, the record does not contain any evidence that class member H embezzled litigation funds. *Compare Darms v. McCullough Oil Corp.*, 720 F.2d. 490, 493 (1983) (uncontroverted evidence that one

4.

of the named plaintiffs negligently misapplied funds collected for litigation support). The record also does not contain even a bare allegation, much less evidence, that the complainant failed to carry out her responsibilities as Treasurer of CCAAC. The record also does not contain evidence of misrepresentation and irresponsibility comparable to that relied upon by the court in Smyth v. Carter, 168 F.R.D. 28, 33-34 (W.D. Vir. 1996), to find that the plaintiffs would not be adequate representatives of a proposed class.

## CONCLUSION

It is the decision of the Commission to REVERSE the agency's disqualification of the complainant from serving as class agent for class complaint 1; to provisionally certify a class; to REMAND the class complaint to the EEOC's Washington Field Office for further processing pursuant to 29 C.F.R. § 1614.204(f) *et seq.*; to ORDER the agency to notify class members of the provisional class certification; to ORDER the agency to transfer a complete class complaint record to the EEOC's Washington Field Office; and to ORDER the agency to hold in abeyance individual complaints filed by class members raising one or more claims subsumed in class complaint 1.

## ORDER

1.  The Commission hereby CERTIFIES a class composed of African-American, non-supervisory employees and former employees of the agency's Headquarters' offices in the metropolitan area of Washington, D.C., who allegedly have been denied career advancement to one or more white collar positions in the agency's Headquarters' offices at grade levels GS-9 through GS-15 levels, or equivalent level white collar non-GS positions, and who may have been denied related promotional opportunities in those same offices based on their race during the period of time beginning two years prior to the filing of the class complaint on February 22, 1995, and continuing to the date a final determination is rendered on the class complaint claim. Related promotional opportunities include training, assignments, details, awards, etc., that would have enhanced a class member's qualifications for promotion to such a position, whether the promotion would have been a career ladder promotion, a competitive promotion, or an accretion of duties promotion.

2.  The Commission REMANDS the class complaint to the EEOC's Washington Field Office for assignment to an administrative judge and further processing pursuant to 29 C.F.R. § 1614.204(f) *et seq.*

16                                                                    #01994518

3.    The Commission ORDERS the agency to notify potential class members[13] of the provisional class certification as required by 29 C.F.R. § 1614.204(e) within fifteen (15) calendar days of the date this decision becomes final.

4.    The Commission ORDERS the agency to transmit a complete copy of the class complaint 1 record to the Washington Field Office within fifteen (15) calendar days of the date this decision becomes final.   The record shall include a copy of the notice sent to class members, a description of the means used to notify the class members, a list of all class members who were notified and the means by which they may be contacted inexpensively by the class agent or class representative without an invasion of their personal privacy, *e.g.*, via agency E-mail or by office telephone.

5.    After completion of discovery pursuant to 29 C.F.R. § 1614.204(f), one or both parties may move to narrow the coverage of the class complaint and/or to establish additional subclasses.   *See Hines, et al. v. Department of the Air Force*, EEOC Request No. 05940917 (January 29, 1996) (an administrative judge has the latitude to redefine a class, subdivide it, or recommend dismissal if it is discovered that there is no longer a basis to proceed as a class complaint).   If additional subclasses are established, law firm 2 shall designate appropriate subclass agents who are willing to serve, and move for their approval by the administrative judge prior to the hearing on, or resolution of, class complaint 1. The administrative judge's rulings on such motions shall not be the subject of an interlocutory appeal.

## IMPLEMENTATION OF THE COMMISSION'S DECISION (K1199)

Compliance with the Commission's corrective action is mandatory.  The agency shall submit its compliance report within thirty (30) calendar days of the completion of all ordered corrective action. The report shall be submitted to the Compliance Officer, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036. The agency's report must contain supporting documentation, and the agency must send a copy of all submissions to the complainant.  If the agency does not comply with the Commission's order, the complainant may petition the Commission for enforcement of the order. 29 C.F.R. § 1614.503(a). The complainant also has the right to file a civil action to enforce compliance with the Commission's order prior to or following an administrative petition for enforcement. *See* 64 Fed. Reg. 37,644, 37,659-60 (1999) (to be codified and hereinafter referred to as 29 C.F.R.

---

[13]Potential class members include all African-American, non-supervisory employees and former employees of the agency's Headquarters' offices in the metropolitan area of Washington, D.C., who could have been denied career advancement to one or more white collar positions in the agency's Headquarters' offices at grade levels GS-9 through GS-15, or equivalent level white collar non-GS levels, during the period of time beginning two years prior to the filing of the class complaint on February 22, 1995, and continuing to the date of the class notification.

4

§§ 1614.407, 1614.408), and 29 C.F.R. § 1614.503(g). Alternatively, the complainant has the right to file a civil action on the underlying complaint in accordance with the paragraph below entitled "Right to File A Civil Action." 29 C.F.R. §§ 1614.407 and 1614.408. A civil action for enforcement or a civil action on the underlying complaint is subject to the deadline stated in 42 U.S.C. § 2000e-16(c)(Supp. V 1993). If the complainant files a civil action, the administrative processing of the complaint, including any petition for enforcement, will be terminated. *See* 64 Fed. Reg. 37,644, 37,659 (1999) (to be codified and hereinafter referred to as 29 C.F.R. § 1614.409).

## STATEMENT OF RIGHTS - ON APPEAL

## RECONSIDERATION (M0300)

The Commission may, in its discretion, reconsider the decision in this case if the complainant or the agency submits a written request containing arguments or evidence which tend to establish that:

1.    The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2.    The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests to reconsider, with supporting statement or brief, MUST BE FILED WITH THE OFFICE OF FEDERAL OPERATIONS (OFO) WITHIN THIRTY (30) CALENDAR DAYS of receipt of this decision or WITHIN TWENTY (20) CALENDAR DAYS OF RECEIPT OF ANOTHER PARTY'S TIMELY REQUEST FOR RECONSIDERATION. *See* 64 Fed. Reg. 37,644, 37,659 (1999) (to be codified and hereinafter referred to as 29 C.F.R. § 1614.405); Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), 9-18 (November 9, 1999). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. *See* 64 Fed. Reg. 37,644, 37,661 (1999) (to be codified and hereinafter referred to as 29 C.F.R. § 1614.604). The request or opposition must also include proof of service on the other party.

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. *See* 29 C.F.R. § 1614.604(c).

18                                    #01994518

## COMPLAINANTS' RIGHT TO FILE A CIVIL ACTION (R0400)

This is a decision requiring the agency to continue its administrative processing of your complaint. However, if you wish to file a civil action, you have the right to file such action in an appropriate United States District Court <u>WITHIN NINETY (90) CALENDAR DAYS</u> from the date that you receive this decision.    In the alternative, you may file a civil action <u>AFTER ONE HUNDRED AND EIGHTY (180) CALENDAR DAYS</u> of the date you filed your complaint with the agency, or filed your appeal with the Commission. If you file a civil action, **YOU MUST NAME AS THE DEFENDANT IN THE COMPLAINT THE PERSON WHO IS THE OFFICIAL AGENCY HEAD OR DEPARTMENT HEAD, IDENTIFYING THAT PERSON BY HIS OR HER FULL NAME AND OFFICIAL TITLE.** Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. **Filing a civil action will terminate the administrative processing of your complaint.**

## RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. *See* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). **The grant or denial of the request is within the sole discretion of the Court.** Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").

FOR THE COMMISSION:

JUL 2 0 2000
_____
DATE

_____
Carlton M. Hadden, Acting Director
Office of Federal Operations

19                                    #01994518

## CERTIFICATE OF MAILING

For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days of mailing.  I certify that the decision was mailed to the complainant, the complainant's representative, and the agency on:

JUL 2 0 2000
_____
**DATE**

_____
**Equal Employment Assistant**