UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JANET HOWARD, <u>et al.</u>, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-1968 (JDB) |
| | ) | |
| CARLOS M. GUTIERREZ, Secretary, | ) | |
| United States Department of Commerce, | ) | |
| | ) | |
| Defendant. | ) | |
| ──────────────────────────── | ) | |

## <u>DEFENDANT'S REPLY IN SUPPORT OF RENEWED MOTION TO DISMISS ALL INDIVIDUAL CLAIMS, TO DISMISS CLASS CLAIMS, AND TO STRIKE ALL CLASS CLAIMS</u>

Defendant Carlos Gutierrez, in his capacity as Secretary, United States Department of Commerce, respectfully submits his reply in support of his renewed motion to dismiss and to strike class claims, Document No. 35.  Nothing in Plaintiffs' Opposition to Defendant's Renewed Motion to Dismiss (Opposition), Document No. 41, remedies their failure to state a claim upon which relief could be granted.  In fact, Plaintiffs' Opposition makes important concessions that require dismissal of this case and highlights that Plaintiffs' claims have all along been fundamentally and irreparably flawed.  Notwithstanding Plaintiffs' recent efforts to cure the infirmities in their Complaint by amending it to redefine the putative class in this case, Plaintiffs' First Amended Complaint should be dismissed because, <u>inter alia</u>, they failed to exhaust their administrative remedies and their putative class action fails to comply with Fed. R. Civ. P. 23 and the Court's Local Rules.

**ARGUMENT**

**A.    Defendant's Arguments Were Properly Raised in a Motion to Dismiss.**

Plaintiffs repeatedly argue that Defendant has made improper summary judgment arguments and that Defendant relies on facts outside of the four corners of the Amended Complaint.  Opp. at 3.  Plaintiffs also complain that they have not had the opportunity to take discovery as to their class claims.  Opp. at 4.  The Court of Appeals has made clear that exhaustion arguments properly are raised in Fed. R. Civ. P. 12(b)(6) motions to dismiss.  Kizas v. Webster, 707 F.2d 524 (D.C. Cir. 1983) (affirming dismissal for failure to exhaust); Gordon v. National Youth Work Alliance, 675 F.2d 356, 360 (D.C. Cir. 1982) ("the proper method for raising a [Title VII] defense of [statute of] limitation is a motion under Rule 12(b)(6).").

In addition, this Court's Local Rules explicitly provide for motions to strike class claims. LCvR 23.1(b) ("A defendant may move at any time to strike the class action allegations or to dismiss the complaint.").  See also Coggins v. NAACP, 170 F.R.D. 80 (D.D.C. 1997) (striking class claims).  Moreover, as explained in more detail below, Defendant's exhaustion arguments are predicated on undisputed facts such as the date on which Plaintiff Howard first sought EEO counseling, the date of the filing of her EEO complaint and the EEO complaint itself.  Similarly, Defendant's motion to strike the class claims is based primarily on legal reasons, the allegations set forth in the Amended Complaint and the procedural posture of this case.[1]

_____

[1] Of course, pursuant to Fed. R. Civ. P. 12(c), the Court could treat certain arguments in Defendant's motion pursuant to the standard for a grant of summary judgment.  Fed. R. Civ. P. 56.  The result would be the same.  Both sides have had the opportunity to submit exhibits or attachments with their papers and have done so.  Plaintiffs have not specifically identified the discovery they need and they certainly have not argued that they need discovery on the exhaustion issues, the foundation for which are undisputed government records.  Moreover, Plaintiffs opposed Defendant's motion without filing a Fed. R. Civ. P. 56(f) affidavit.  See

**B.**    **Plaintiffs' Opposition Memorandum Effectively Concedes Certain Issues and Claims and Thus Their Amended Complaint Must Be Dismissed.**

Plaintiffs' Opposition altogether fails to address certain of Defendant's arguments, some of which are dispositive of this case.  Perhaps most importantly, Plaintiffs fail to address adequately the untimeliness of Ms. Howard's 1995 administrative complaint.  Opp. at 12-14, 38-39.  In fact, Plaintiffs never mention, let alone rebut, Defendant's explanation that the performance appraisals Ms. Howard claims she was challenging in her administrative class complaint had been almost identical for years[2] prior to her October 1994 EEO counselor contact on this issue.  Moreover, Plaintiffs' Opposition discusses at length the scope of the administrative complaint, Opp. at 22-28, but fails to explain how Ms. Howard's wholly new theory concerning the alleged subjectivity of the performance evaluation process was exhausted administratively.  Accordingly, the Court should treat Defendant's Motion as conceded as to certain issues addressed <u>infra</u>, and Plaintiffs' claims should be dismissed.

It is well settled that when a plaintiff files an opposition addressing only certain arguments raised by the defendant, "a court may treat those arguments that the plaintiff failed to address as conceded."  <u>Hopkins v. Women's Div., General Bd. of Global Ministries</u>, 238 F. Supp.2d 174, 178 (D.D.C. 2002) (<u>citing</u> <u>FDIC v. Bender</u>, 127 F.3d 58, 67-68 (D.C. Cir. 1997); <u>see also</u> <u>Bancoult v. McNamara</u>, 227 F. Supp.2d 144, 149 (D.D.C. 2002); <u>Stephenson v. Cox</u>, 223 F.

---

<u>Smith-Haynie v. District of Columbia</u>, 155 F.3d 575, 579 (D.C. Cir. 1998) (concerning whether Title VII's "statute of limitations should have been equitably tolled" and noting that "[o]f course, Smith Haynie could have moved the district court under Fed. R. Civ. P. 56(f) for discovery, but no such motion was made in this case.").

[2] According to the Amended Complaint, Ms. Howard has been a Commerce Department employee for 22 years.  Am. Compl. at ¶ 41.

Supp.2d 119, 121 (D.D.C. 2002) ("when a plaintiff files a response to a motion to dismiss but

fails to address certain arguments made by the defendant, the court may treat those arguments as

conceded, even when the result is dismissal of the entire case.").[3]  Furthermore, "[a] plaintiff's

bare conclusions of law, or sweeping and unwarranted averments of fact, will not be deemed

admitted for purposes of either" a motion to dismiss or a motion for summary judgment.

Haynesworth v. Miller, 820 F.2d 1245, 1254 (D.C. Cir. 1987).

**C.      Plaintiffs Failed To Exhaust Their Administrative Remedies For Any Individual or Class Claims.**

The three named Plaintiffs failed to exhaust timely and properly their administrative

remedies.  Plaintiffs rely upon Ms. Howard's 1995 administrative class complaint in asserting that

Plaintiffs exhausted their class claims, Opp. at 12-29, yet Plaintiffs fail to overcome Defendant's

challenge to the untimeliness of the class claims.

**1.      Ms. Howard's 1995 Administrative Complaint Failed to Exhaust Timely or Properly Her Individual Claims or the Class Claims in this Case.**

It is undisputed that the only Plaintiff who even attempted to exhaust administratively a

class complaint was Ms. Howard in 1995.  See Pl. Opp. at 12-28.  Therefore, it is not surprising

that Plaintiffs' Opposition fails to address certain of Defendant's arguments concerning the

untimeliness of Ms. Howard's administrative class complaint.  Id.  EEOC regulations explicitly

require a putative class agent to seek counseling within 45 days of the date of the alleged

discriminatory conduct.  29 C.F.R. § 1614.105(a)(1)(45-day limitation); 29 C.F.R. § 1614.204(b)

_____

[3] Plaintiffs explicitly concede that they are not asserting claims for hostile work environment and harassment, Opp. at 28, n. 16.  However, since the Amended Complaint contains such allegations, Am. Compl. ¶¶ 144, 153-55, 158, the Court should strike those paragraphs of the Amended Complaint.

4

(29 C.F.R. § 1614.105(a)(1) applies to administrative class complaints).  Ms. Howard failed to

contact an EEO counselor within 45 days of first <u>suspecting</u> that she was being discriminated or

retaliated against as required by EEOC regulations.  29 C.F.R. § 1614.105(b) (requiring that the

45-day limitations period is triggered when a "complainant should reasonably suspect

discrimination, but before all the facts that would support a charge of discrimination have become

apparent.").  Compliance with this time limit is mandatory.  <u>Nat'l Railroad Passenger Corp. v.

Morgan</u>, 536 U.S. 101, 110 (2002)("strict adherence to the procedural requirements specified by

the legislature is the best guarantee of evenhanded administration of the law.").  Like a statute of

limitations, the EEOC's time limitations are subject to equitable tolling, estoppel, and waiver, but

those equitable doctrines are to be applied sparingly.  <u>Id.</u> at 116-17.  Here, Plaintiffs do not make

any equitable tolling argument at all.  Instead, Plaintiffs argue that by processing Ms. Howard's

complaint, Defendant has waived any argument as to the untimeliness of Ms. Howard's EEO

counselor contact.  Opp. at 6.[4]

In <u>Morgan</u>, 536 U.S. at 110, the United States Supreme Court made clear that <u>discrete</u> acts

of alleged discrimination or retaliation must be timely exhausted administratively prior to raising

such claims in federal court.  <u>Id.</u>  <u>See also</u> 29 C.F.R. §§ 1614.106, 1614.204; <u>Bowden v. United

States</u>, 106 F.3d 433, 437 (D.C. Cir. 1997); <u>see</u> <u>also</u> <u>Park v. Howard University</u>, 71 F.3d 904, 907

(D.C. Cir. 1995).  In this putative class action, Plaintiffs Amended Complaint would appear to

advance disparate impact claims[5] focusing on a broad policy or practice, not on discrete incidents.

However, for disparate impact claims, a member of the putative class must make EEO counselor

---

[4] That argument is addressed in detail in Section 5 <u>infra</u>.

[5] And Plaintiffs so state in their Opposition.  <u>See, e.g.</u>, Opp. at 46.

contact within 45 days of learning of, or reasonably suspecting, the alleged discriminatory policy

or practice.  See Torres v. Mineta, Mem. Op. at 12, Civ. No. 04-0015 (GK) (D.D.C., May 13,

2005)(plaintiffs failed to exhaust their administrative remedies because none of the plaintiffs

sought EEO counseling within 45 days of the time when they first learned of the challenged

"practice or policy").

First, Ms. Howard's initiation of EEO counseling was untimely as to the class claims

because she did not seek EEO counseling within 45 days of learning of, or when she reasonably

should have suspected the existence of, the alleged discriminatory "practice or policy."  See, e.g,

Torres, Mem. Op. at 11-13.  Plaintiffs argue that Ms. Howard made timely EEO counselor contact

because it was within 45 days of the date "she was required to sign a receipt of notice of her

performance rating."  Opp. at 38.[6]  That argument is not at all persuasive because the requirement

of signing a rating is not the action or actions that Plaintiffs are complaining about in this lawsuit.

In fact, the challenged action is not even the rating itself, but instead the alleged "overly

subjective" performance appraisal system.  Thus, Ms. Howard's contact with a Counselor within

45 days of the date of the required signature[7] fails to constitute contact with a Counselor within 45

days of the date of "the matter alleged to be discriminatory" in this action, i.e., Plaintiffs' broader

---

[6] Plaintiffs seem to be arguing that this question is governed by Morgan's requirement that plaintiffs timely exhaust each discrete instance of alleged discrimination or retaliation. Plaintiffs' Opposition never mentions the Torres case, nor does it assert that any standard other than Morgan's applies to this case.

[7] Plaintiffs also claim, without any citation to the record, that during "her October 21, 1994, meeting with the EEO counselor," Ms. Howard complained of "discrimination in promotions."  Opp. at 39.  Even if this is taken to be true (and the assertion lacks any record support or citation to the Amended Complaint), Plaintiffs concede in the Amended Complaint that Ms. Howard knew about the allegedly discriminatory promotional system at least by 1992. See discussion infra.

6

claim alleging an overly subjective and/or discriminatory system of promotions and performance evaluations purportedly used by the Department.

Moreover, Plaintiffs' argument concerning the October 2004 meeting is beside the point because Ms. Howard had known about the rating system for years before her October 21, 2004 EEO counselor contact. This situation is almost identical to the <u>Torres</u> case, which Plaintiffs' Opposition utterly fails to address. That is, Ms. Howard knew or had reason to know "the facts that would support a charge of discrimination" *several years before* her October 21, 1994 contact with the Department of Commerce's Office of Civil Rights ("OCR"). 29 C.F.R. § 1614.105(b).

Indeed, Plaintiffs' own Amended Complaint makes clear that Ms. Howard knew about the allegedly overly subjective and/or discriminatory system of promotions and performance evaluations purportedly employed by the Department no later than 1992, when, according to the First Amended Complaint, Ms. Howard's supervisor gave African-American employees "significantly lower ratings." Am. Compl. ¶ 44. <u>See also</u> Am. Compl. at ¶ 118 (citing public statistics dating to 1992 that Plaintiffs claim demonstrates disparate impact); 29 C.F.R. § 1602.7 (reporting requirement applies on "or before March 31, 1967 and annually thereafter" ). Therefore, Ms. Howard knew about the alleged discrimination in 1992, but failed to seek counseling until more than two years later. As in <u>Torres</u>, because Ms. Howard failed to seek timely EEO counseling her individual claims and the class claims should be dismissed.

Second, the performance evaluation policies and practices complained of in this action, including performance criteria, the process of evaluation, and the very forms themselves, were substantially the same, if not identical, in 1987 as they were in 1994. <u>See</u> Def. Memo., Exh. A-3 through A-7. Ms. Howard received the same evaluations, and was a participant in the same

7

performance evaluation system that she complains about in this case, dating back to at least 1987. Notably, Plaintiffs' Opposition fails even to address this point, and thus Plaintiffs should be deemed to have conceded it and their class claims should be dismissed. See FDIC v. Bender, 127 F.3d at 67-68.

Third, Ms. Howard's own administrative EEO complaint states that the action she is complaining about occurred in August, 1994, which is outside of the 45-day period. See Def. Exh. A (citing "August 4, 1994," as "the date on which the most recent act of discrimination took place"). Once again, Plaintiffs' Opposition tries to distract the Court, ignoring Ms. Howard's explicit claims during the administrative process and attempting to rewrite them in this Court. Opp. at 38 (claiming that October 20, 1994 was the date of the alleged discrimination).

Plaintiffs also argue that Ms. Howard has individual claims in this lawsuit, but Plaintiffs never bother to identify what those claims are, let alone when or where any challenged actions occurred. Instead, Plaintiffs merely refer in general terms to the Amended Complaint. Opp. at 13-14 (arguing that Ms. Howard's class complaint also included individual claims concerning "promotions, assignment of duties, performance evaluations and awards" and claiming that "Plaintiffs' Amended Complaint expressly states" that Ms. Howard was denied "promotions" and that subjective decision making impacted "cash awards, training, enhanced job assignments, and performance appraisals"). From this explanation, one cannot determine whether Ms. Howard exhausted her allegations, let alone how and when she did so. A Title VII complaint must have enough specificity to allow the defendant to determine whether the plaintiff administratively exhausted her claims. See Brown v. Califano, 75 F.R.D. 497, 498 (D.D.C. 1977) (purpose of Rule 8(a) is to give notice to defendant of claims asserted sufficient to prepare a responsive

pleading, to prepare an adequate defense, and to determine whether the doctrine of res judicata applies).

Plaintiffs then argue that any time-barred allegations merely are "background," citing Morgan, 536 U.S. at 105. This misses the point. In order to advance as a class action, Plaintiffs must demonstrate that someone exhausted the class allegations administratively. Moreover, Plaintiffs do not identify what claims or allegations are merely "background" as opposed to their actual claims. Regardless, whether "background" evidence or not, Plaintiffs' Amended Complaint must comply with the Federal Rules of Civil Procedure and set forth a short and plain statement of Ms. Howard's purported individual claims. Fed. R. Civ. P. 8(a); Brown v. Califano, 75 F.R.D. 497, 498 (D.D.C. 1977). Since Plaintiffs have not specifically set forth Ms. Howard's individual claims, any such claim that Ms. Howard is attempting to assert in this lawsuit must be dismissed pursuant to Rule 8(a).

### 2.    Plaintiff Megginson's Claims Must be Dismissed.

Defendant's Memorandum explained that Ms. Megginson's claims are time-barred. Plaintiffs argue in response that Ms. Megginson's "membership in the class has equitably tolled the statute of limitations." Opp. at 14. Plaintiffs' confusing argument conflicts directly with their factual representation that Ms. Megginson's 1997 lawsuit's claims are not the same as those in this case. Opp. at 14.[8] Plaintiffs then claim that Ms. Megginson's claims were "tolled" by the

---

[8] Without citation to the record, Plaintiffs argue that Ms. Megginson's 1997 lawsuit involved "retaliation and hostile work environment" not the claims "of race discrimination under a disparate impact theory" that are before this Court. Opp. at 15. See Def. Ex. DD (complaint). Of course, that begs the question of how these allegedly new or different claims were administratively exhausted. Plaintiffs misunderstand Defendant's argument and the nature of their own case. Ms. Megginson's individual claims would be disparate treatment claims, not the disparate impact claims of the putative class. Moreover, Plaintiffs' argument is counter factual.

pendency of Ms. Howard's putative class complaint in the EEO administrative process.  Opp. at

15-16.  In order to be tolled, Ms. Megginson's claims would have to be the same as those in the

putative class action, a fact which Plaintiffs deny.  See Opp. at 15 (arguing claims differ), 17 note

12 (citing Delgado v. Ashcroft, 368 F.Supp.2d 3 (D.D.C. 2004) (tolling applies where individual

claims are the same as the class claims)).

Second, the cases upon which Plaintiffs rely, Opp. at 15, in arguing that Ms. Megginson's

claims were "tolled" are inapposite.  Plaintiffs cite Eisen v. Carlise and Jaquelin, 417 U.S. 156,

176 (1974).  Opp. at 15.  The United States Supreme Court's decision in Eisen mentions in

footnote thirteen that American Pipe and Construction Co. v. Utah, 414 U.S. 538, "established

that commencement of a class action tolls the applicable statute of limitations as to all members of

the class."  However, the principle announced in American Pipe does not clearly apply to this case

as Plaintiffs assert.  Unlike this case, in American Pipe, there was a statutory provision (Section

4B of the Clayton Act) that specifically provided for tolling.  414 U.S. at 541.  And American

Pipe held that the timely filing of a class action complaint preserved the rights of the class

members as to the class claims.  American Pipe did not state that different and untimely individual

claims of the class members can go forward, id. at 552, nor did that case involve the specific

questions of administrative exhaustion that exist in this Title VII case.

Moreover, when, as here, the class claims do not give the defendant "the fair notice that is

the foundation of the tolling doctrine announced in American Pipe," the individual claims are not

protected by tolling principles.  Davis v. Bethlehem Steel Corp., 600 F.Supp. 1312, 1319 (D. Md.

---

See Def. Exh. DD (alleging, among other things, discrimination on the basis of race and failure
to promote in violation of Title VII).

1985) ( a case cited by Plaintiffs in their Opposition).  Finally, Plaintiffs cite no authority for the proposition that tolling can occur where, as here, the class complaint itself was untimely.  <u>See</u> Opp. at 15-17.

> **3.     Plaintiff Ward Jordan's Individual Title VII and Disability Claims Similarly Must Fail.**

Like Ms. Megginson, Plaintiff Ward Jordan already has litigated in federal court the same claims she seeks to assert in this lawsuit.  <u>See</u> <u>Jordan v. Evans</u>, Civil Action 04-356 (D.D.C.), Def. Exh. AA.  The District Court dismissed both her Title VII and disability claims, Exh. BB, CC, and the Court of Appeals affirmed the dismissal of the entire lawsuit.  Def. Exh. A-1, A-2.  By Order dated May 25, 2006, the Court of Appeals modified the District Court's order of dismissal such that Ms. Ward Jordan's <u>Title VII claims</u> were dismissed without prejudice.  <u>Id.</u>  Plaintiffs' Opposition now asserts that the modification of the District Court's order somehow precludes the application of <u>res judicata</u> and allows her individual claims to proceed in this lawsuit.  Opp. at 16-21.  Of course, Defendant explained that Ms. Ward Jordan's disability claims were nonetheless dismissed with prejudice and she should not be allowed to smuggle them into this lawsuit in Count 2 of the Amended Complaint.  Despite Plaintiffs' assertions to the contrary, the doctrine of <u>res judicata</u> bars Ms. Ward Jordan from relitigating her individual claims in the instant case, and Count 2 should be dismissed.

Plaintiffs argue that since the District Court's dismissal of Ms. Ward Jordan's claims, her receipt of the Final Agency Decision constitutes an "intervening change in a significant fact," sufficient to bar the application of <u>res judicata</u>.  Opp. at 18.  Plaintiffs' argument is irrelevant.  Ms. Ward Jordan argued to the Court of Appeals that "her as yet unripe claims should have been

dismissed without prejudice, thus allowing her to exhaust any remaining administrative remedies and refile her suit." Opp. at 17, note 12. The Court of Appeals rejected that argument, ordering that the district court's order be modified such that only Ms. Ward Jordan's Title VII claims were dismissed without prejudice. Id. Plaintiffs additionally argue that the Court of Appeals "could not possibly have intended to dismiss Ms. Jordan's Rehabilitation Act claim with prejudice . . . .," Opp. at 19. That is, however, precisely what the Court of Appeals did. Exh. A-1, A-2. Though Plaintiffs might wish it otherwise, they are bound by that judgment.

Finally, Plaintiffs argue that the Court should not apply res judicata because it would "result in a severe injustice." Opp. at 19-20. Plaintiffs seem to identify the purported "injustice" as the dismissal of Count 2. For this proposition, Plaintiffs cite numerous cases from other districts. This Court's decisions are governed by the decisions of the Court of Appeals, which has made clear that res judicata "represents a decision that the needs of judicial finality and efficiency outweigh the possible gains of fairness or accuracy from continued litigation of an issue that previously has been considered by a competent tribunal." Nasem v. Brown, 595 F.2d 801, 806 (D.C. Cir. 1979). Plaintiffs merely are trying to convince the Court to ignore the doctrine completely. To say that dismissal of a claim due to the doctrine of res judicata is itself an "injustice" is to say that the doctrine could never be applied, which is untenable.

**4.    New Plaintiffs Cannot Be Substituted to Cure the Failure of the Existing Plaintiffs to Exhaust Their Administrative Remedies.**

Plaintiffs argue that any failure on their part to exhaust administrative remedies is irrelevant because "Plaintiffs are allowed to substitute other class members with viable claims as class members." Opp. at 4. See also Opp. at 21. First, only Plaintiff Howard even tried to

exhaust an administrative class complaint.  See Opp. at 12-28.  Plaintiffs have failed to identify

any other individual who filed an administrative class complaint.  Id.  In order for a Title VII class

action case to proceed, at least one named plaintiff must have exhausted the applicable

administrative remedies.  See Jackson v. Dist. of Columbia, 254 F.3d 62, 269 (D.C. Cir. 2001);

Berger v. Iron Workers Reinforced Rodmen Local 201, 843 F.2d 1395 (D.C. Cir.1988); Thomas

v. Reno, 943 F. Supp. 41, 43 (D.D.C. 1996); see also Albemarle Paper Co. v. Moody, 422 U.S.

405 (1975); Chandler v. Roudebush, 425 U.S. 840 (1976).

Requiring anything less would obviate the need for exhaustion of administrative remedies

as to class complaints, which directly contradicts EEOC regulations (for example requiring EEO

counselor contact for class claim within 45 days of challenged action) and the law of this Circuit.

Furthermore, agencies would lose the important opportunity to resolve complaints in the

administrative process.  Brown v. Marsh, 777 F.2d 8, 13 (D.C. Cir. 1985)("Exhaustion is required

in order to give federal agencies an opportunity to handle matters internally whenever possible

and to ensure that the federal courts are burdened only when reasonably necessary").

Second, assuming arguendo that Plaintiffs could substitute other class members, it is clear

that such substitution could occur only *after* certification of the class.  See Walters v. Edgar, 163

F.3d 430, 432-34 (7th Cir. 1998) (proper jurisdiction must exist when the suit is first filed and

substitution of plaintiffs is permissible so long as the class already has been certified and at least

one of the substituting plaintiffs have standing); Cobell v. Norton, 213 F.R.D. 43, 45 (D.D.C.

2003)(after the class has been certified, if representatives are found to be inadequate during the

pendency of the class action, new representatives may be appointed)(citing Carpenter v. Stephen

F. Austin State Univ., 706 F.2d 608, 617-18 (5th Cir. 1983); see also Thomas v. Reno, 943 F.

13

Supp. 41, 42 (D.D.C. 1996)(stating that it would be unfair to allow plaintiff to substitute as class agent for a non-certified class because, inter alia, plaintiff "must exhaust his administrative remedies before he can serve as class representative").  Because Plaintiffs have not exhausted their class claims and no class has been certified in this case, Plaintiffs cannot substitute other class members merely as an end-run around the exhaustion requirements.

Finally, the cases upon which Plaintiffs rely, Opp. at 21, are inapposite.  Tellingly, In re Thornburgh, 869 F.2d 1503, 1509 (D.C. Cir. 1989), which was not a putative Title VII class action, involved amnesty provisions of the Immigration Reform and Control Act ("IRCA"). Unlike this case, there is no indication in the Thornburgh case that there were any administrative exhaustion requirements as prerequisites to the class action.  In fact, to the contrary, the immigration statutory scheme allowed for "constructive filing" deadlines for aliens, a doctrine not available in Title VII actions.  In re Thornburgh, 869 F.2d at 1516.  Indeed, the only Title VII case cited by Plaintiffs, Davis v. Bethlehem Steel Corp., 600 F. Supp. 1312, 1323 (D. Md. 1985), is not controlling.  In that case, the court did not toll the statute of limitations with respect to the plaintiffs' individual claims because, as here, the original class claims were so vague that they did not give the employer notice of what sort of individual claims could be tolled.  Id.  The timeliness of the class administrative complaint was not an issue in that case.  Therefore, Plaintiffs' Opposition fails to establish that they can cure the infirmities in the Amended Complaint by substituting other unidentified class members in order to avoid their administrative exhaustion requirements, a contention directly in conflict with EEOC regulations and Torres, supra.

**5.    Defendant Has Not Waived Any Timeliness Defense.**

While plaintiffs are correct that it is possible for a Title VII defendant to waive exhaustion

and similar defenses, Opp. at 38, that has not occurred in this case.  As an initial matter, affirmative defenses are preserved as long as they are included in a responsive pleading.  Fed. R. Civ. P. 8(c); see also Fed. R. Civ. P. 12(g).  In this case, both Defendant's Motion to Dismiss the initial Complaint and Defendant's Renewed Motion to Dismiss Plaintiffs' Amended Complaint explicitly argued the defenses of failure to state a claim and failure to exhaust administrative remedies, see Documents No. 19, 35, even prior to the filing of a responsive pleading in this case. Fed R. Civ. P. 7 (pleadings allowed), 12(b) (defenses allowed by motion).  Therefore, Defendant clearly preserved his affirmative defense based on exhaustion of administrative remedies.

Furthermore, it is well established that federal agencies do not waive a timeliness defense by accepting and investigating an administrative complaint of discrimination.  See, e.g., Bowden v. U.S., 106 F.3d 433, 438-39 (D.C. Cir. 1997); Oaxaca v. Roscoe, 641 F.2d 386, 390 (5th Cir. 1981); DuVall v. United States Postal Service, 585 F. Supp. 1374, 1376 (D.D.C. 1984), affirmed, 774 F. 2d 510 (D.C. Cir. 1985).  That is, the processing of, and investigation into, an administrative complaint is insufficient for waiver.  When the agency decides the complaint on the merits without mentioning timeliness, it "may lead to waiver."  Bowden, 106 F.3d at 438-39. Here, the agency did not decide the class complaint on the merits and never issued a Final Agency Decision on the class claims.  In fact, the agency contested the class claims at every step before EEOC and in this Court.  The waiver doctrine is predicated on equitable estoppel.  If an agency itself finds discrimination or retaliation in a case, it cannot then upset or overturn that finding by arguing that the plaintiff failed to exhaust.  Id.

Despite Plaintiffs' claims to the contrary, Opp. at 38, the situation here is unlike Bowden v. U.S., 106 F.3d 433, 438-39 (D.C. Cir. 1997), where the government's failure to challenge

timeliness both at the administrative level and in initial suits in the district court and the Court of

Claims, combined with the government's prolonging the litigation and its "procedural run-

around" of the plaintiff, amounted to a waiver of that defense.  Here, the government asserted its

timeliness defense at its very first judicial opportunity and was in no way responsible for the

length of the administrative process.  Thus, Plaintiffs' claims should be dismissed.

**D.   Even If Ms. Howard's 1995 Administrative Complaint Were Timely, the Individual and Class Claims in this Case Exceed the Scope of the Administrative Charge.**

Regardless, even if the Court were to determine that Ms. Howard's October 1994 EEO

contact were timely, Plaintiffs nonetheless failed to exhaust properly their administrative

remedies.  The current lawsuit is limited in scope to claims that are "like or reasonably related to"

the allegations Ms. Howard brought in that administrative complaint.  Park, 71 F.3d at 907-08; see

also Rush v. McDonald's Corp., 966 F.2d 1104, 1111 (7th Cir.1992)("[T]he goals behind the

requirement of prior resort to administrative relief would be frustrated if the filing of a general

charge with the EEOC would open up the possibility of judicial challenges to any related conduct

that took place in connection with the employment relationship."); Kizas v. Webster, 707 F.2d

524, 544 (D.C. Cir. 1983)(administrative exhaustion requirement not a mere technicality, but

"part and parcel of the congressional design to vest in the federal agencies and officials engaged in

hiring and promoting personnel 'primary responsibility' for maintaining nondiscrimination in

employment"), cert. denied sub nom, Kizas v. United States, 464 U.S. 1042 (1984).

The Amended Complaint attempts to assert a whole new theory concerning the alleged

subjectivity of the Department of Commerce's promotion and performance evaluation process or

16

processes. Def. Exh. A.[9] Plaintiffs' recent focus on the alleged subjectivity and "managerial discretion" inherent in certain performance evaluation and promotion practices is vastly larger and substantively different from the claims in the 1995 administrative complaint. Id.; Am. Compl. ¶¶ 3, 109-114.

Ms. Howard had multiple opportunities and ample time—more than ten years—in the administrative process within which to include the claims that are asserted for the first time here, and she did not do so. Instead, she knowingly and explicitly defined and limited the scope of her administrative charge, an important procedural step in the administrative process. See Def. Renewed Motion, Part II.A and Exh. D. Accordingly, Defendant was never given the opportunity at the administrative level to investigate and examine the allegedly overly subjective performance evaluation process. Because Plaintiffs failed to give the agency notice of the claims they seek to assert in the Amended Complaint by specifically presenting them in the administrative process, all such claims must be dismissed. See, e.g., Kizas v. Webster, 707 F.2d at 544.

Without refuting the above, Plaintiffs first argue that "evidence of subjectivity is not a claim in and of itself, rather it is evidence supporting Plaintiffs' claim of disparate impact in promotions and performance appraisals." Opp. at 28. The Court should reject Plaintiffs' inapplicable semantic argument. First, that argument contradicts the Amended Complaint itself. See, e.g., Am. Compl., ¶¶ 3 (disparate impact caused by "excessive subjectivity" of performance appraisals), 43 (same). Second, the familiar example of the distinction between evidence for, or

_____

[9] In her administrative complaint, Ms. Howard did not challenge the subjective nature of promotional and performance evaluation policies and procedures, hiring practices, or allege discrimination in pay. See, e.g., Exh. A at 2 (alleging "low performance rating . . . denial of promotion and awards"). Claims of discrimination in promotion are unlike, and not related to, claims of discrimination in the nature of performance evaluation procedures, hiring or pay.

examples of, a claim and the claim itself is the Title VII "hostile work environment" or "harassment" claim, in which the alleged incident (for example allegedly rude treatment) is an example, not the claim itself. Here, Plaintiffs' Amended Complaint says just the opposite: that it is not the individual ratings themselves that are at issue but the evaluation process that leads to the alleged "disparate impact." Am. Compl. at ¶ 3.

Third, Plaintiffs' discussion of the alleged "subjectivity," and that term's inclusion in the Amended Complaint, is not "evidence," nor did the term appear in this lawsuit until Plaintiffs filed their Amended Complaint. Compare Compl., Am. Compl. Plaintiffs only now focus on the alleged "subjectivity" of Defendant's performance evaluation processes in an attempt to comply with the requirements set forth by the Supreme Court in General Telephone Company of the Southwest v. Falcon, 457 U.S. 147 (1982).

Finally, Plaintiffs' attempt to distinguish evidence presented in support of a claim from an actual claim itself is of no moment. The alleged "subjectivity" of Defendant's performance evaluation process is clearly presented in the Amended Complaint. See Am. Compl. Plaintiffs' Opposition simply avoids applying, and does not seem to mention, the applicable legal test that the claims in district court must be "like or reasonably related to" those exhausted in the administrative process. Park, 71 F.3d at 907-08.

Plaintiffs spend many pages arguing that the putative class should not be restricted to Washington, D.C. Headquarters offices but instead should encompass offices throughout the Washington, D.C. metropolitan area. Opp. at 24. Plaintiffs refer to Ms. Howard's clarification of the scope of the class, at the EEOC's request, as an "aberration." Opp. at 24. As explained in Defendant's Memorandum, the EEOC specifically asked Ms. Howard to clarify the scope of the

18

putative class and she responded  that "[t]he class comprises 'all *non-supervisory* Department of Commerce, *Washington, D.C. Headquarters employees* that [sic] are of African-American decent. [sic]"  <u>See</u> Howard Response, Exh. D at 7.  Plaintiffs now seek to disavow Ms. Howard's letter and revert to a broader class.

Contrary to Plaintiffs' assertion that Ms. Howard's submissions should be construed liberally because she was at the time <u>pro se</u>, Ms. Howard was not an unsophisticated novice in the requirements of the administrative process.  In fact, since 1988, she has filed 21 complaints against the Department.  <u>See</u> Exh. Y (Anderson Decl.) at ¶ 5.  A host of experienced counsel have represented Ms. Howard before the EEOC, and the EEOC took a very active role assisting her in framing and defining the class claims.  Notwithstanding Plaintiffs' requests for "leniency," Opp. at 23, Ms. Howard should be held to her representation to the administrative tribunal that at the time had jurisdiction over her complaint.

Plaintiffs then contend that the EEOC understood their claims to encompass the entire metropolitan area, Opp. at 25, but they fail to show how the EEOC's "understanding" of the class is relevant to this Court's analysis.  In a Title VII suit brought after a final administrative disposition, the district court considers the claims <u>de</u> <u>novo</u>.  <u>See</u> <u>Scott v. Johanns</u>, 409 F.3d. 466, 469 (D.C. Cir. 2005).  Moreover, any argument that Defendant "conceded" the scope of the EEO complaint at the administrative level is incorrect.  Opp. at 23 (citing generally the Agency's Interrogatory Responses).  Defendant responded to discovery requests during the administrative proceedings in the way that it did because the EEOC's <u>order</u> on class certification governed the scope of the putative class during the administrative proceedings.  Complying with an order of the administrative tribunal with jurisdiction over the matter is hardly "conceding" a contested issue.

**E.    Plaintiffs Have Failed to Comply with Local Rule 23.1(b)**.

As explained in Defendant's Memorandum, Local Rule 23.1(b) requires that: "Within 90 days after the filing of a complaint in a case sought to be maintained as a class action, unless the court in the exercise of its discretion has extended this period, the plaintiff *shall* move for certification . . . that the case may be so maintained. . . .  A defendant may move at any time to strike the class action allegations or to dismiss the complaint."  (Emphasis added).  Plaintiffs filed their Complaint on October 5, 2005, but still have not moved for class certification.[10]  For this reason alone, Plaintiffs' class claims should be stricken.  See Thomas v. Knight, 257 F. Supp. 2d 86, 91 n.5 (D.D.C. 2003) ("In addition, the Court notes that although the plaintiff has asserted a class action claim, he has failed to file a motion to certify the class within 90 days of the filing of the complaint as required by this Court's Local Rule 23.1(b). . . .Therefore, this Court will deny the plaintiff's request for class certification and consider his claim only with respect to himself as an individual.").  See also Martin v. Middendorf, 1977 WL 821, *2 (D.D.C. 1977) (refusing to reconsider order denying class certification on ground, *inter alia*, that "the 90-day deadline for seeking class action certification . . . expired long before counsel filed the instant motion.").

_____

[10] By Order dated June 13, 2006, the Court allowed the filing of Plaintiffs' First Amended Complaint.  See Document No. 28.  Shortly thereafter, on June 23, 2006, Plaintiffs filed a Motion for Enlargement of Time to Move for Class Certification, and on July 7, 2006, Defendant opposed Plaintiffs' Motion.  Documents No. 30, 31.  On July 31, 2006, Defendant also renewed his motion to dismiss all individual claims, to dismiss class claims, and to strike all class claims. Document No. 35.  In a September 1, 2006 Minute Order, this Court granted in part and denied in part Plaintiffs' Motion for Enlargement of Time to Move for Class Certification, ordering that Plaintiffs' obligation under Local Civil Rule 23.1(b) to file a motion for class certification was stayed pending further order of the Court.  September 1, 2006 Minute Order.  The Court stated that it granted the motion "in the interest of efficiency in light of the fact that defendant has filed a motion to dismiss that, according to defendant, 'if granted, would resolve this case' and thereby eliminate the need to address class certification."  Id. (quoting Def. Opp. to Mot. for Enlargement at 1, Document No. 31).

Plaintiffs argue that they reset the 90-day period by amending their complaint. Opp. at 30. Plaintiffs also argue that Defendant will not be prejudiced by their motion for class certification, that any delay was due to "excusable neglect," and that striking the class claims would "create an injustice." Opp. at 30.

Plaintiffs' assumption that the filing of their First Amended Complaint reset their time to move for class certification is contrary to the plain text and intent of the Court's Local Civil Rules and contrary to legal authority.[11] See LCvR 23.1(b)("Within 90 days after the filing of a complaint in a case sought to be maintained as a class action, unless the court in the exercise of its discretion has extended this period, the plaintiff shall move for a certification . . . that the case may be so maintained. . . .  A defendant may move at any time to strike the class action allegations or to dismiss the complaint.")(emphasis added).  Plaintiffs argue that an amended complaint supercedes the original one. Opp. at 32.  That is beside the point.  The cases cited in Defendant's Memorandum address precisely this issue: because an amended pleading replaces the earlier-filed one, plaintiffs cannot be allowed to continually reset the clock with impunity through amended pleadings.

---

[11] The cases cited by Plaintiffs do not support their argument.  Neither In re Baan Company Securities Litigation, 271 F. Supp. 2d 3 (D.D.C. 2002) nor Richard v. Bell Atlantic Corp., 976 F.Supp. 40, 51-52 (D.D.C. 1997), states that under Local Rule 23.1(b), courts "regularly compute the 90-day period from the filing of an amended complaint." Opp. at 32; see In re Baan Company Securities Litigation, 271 F. Supp. 2d 3 (D.D.C. 2002)(in securities fraud action, district court granted plaintiffs' motion for reconsideration on the issue of whether plaintiffs complied with Rule 23.1(b) but nonetheless held, under 15 U.S.C. § 78u-4, that the lead plaintiff was inadequate to represent the class); Richard v. Bell Atlantic Corp., 976 F.Supp. 40, 51-52 (D.D.C. 1997)(Plaintiffs entitled to an extension of the 90-day period when at the initial scheduling conference, plaintiffs requested discovery during pre-class certification and the district court effectively stayed such discovery pending a ruling on Defendant's unrelated dispositive motion).

Plaintiffs have not identified precisely what was "excusable" about their neglect to timely move for class certification.   Opp. at 35-36.  Instead, they simply blame the undersigned counsel of record for delays in the case associated with the filing a dispositive motion, while at the same time arguing that any delays have "had no negative impact on the judicial proceedings."  Opp. at 36.  Although the Plaintiffs address the factors the Court should consider with respect to any claim of "excusable" neglect, Plaintiffs gloss over the factors that go to the <u>reason</u> for the neglect. Opp. at 36 (concerning reason for the delay and whether the movant acted in good faith, Plaintiffs argue merely that "Defendant's motions for extensions" of time "should not operate to deprive Plaintiffs of the opportunity to move for class certification.").  Plaintiffs' argument about Defendant's extension requests is irrelevant to the question of the reason for <u>Plaintiffs'</u> delay and whether <u>Plaintiffs</u> acted in good faith.

**F.      Plaintiffs' Class Claims Fail to Satisfy Rule 23.**

Notwithstanding Plaintiffs' utter failure to exhaust their administrative remedies, which requires the dismissal of this lawsuit with prejudice, Defendant's Memorandum set forth in detail the legal reasons that Plaintiffs' "across-the-board" challenge could not go forward.  See <u>Falcon</u>, 457 U.S. at 157 (rejecting across-the-board challenges and carving out two narrow exceptions). Plaintiffs respond that this case can be distinguished from <u>Falcon</u> because it does not involve both "hiring and promotion" but instead the putative class is composed "entirely of employees."  Opp. at 43-44.

In asserting a class definition that "consists of all African-American, non-supervisory employees and former employees of Commerce's bureaus in the metropolitan area of Washington, D.C., who have been denied career advancement," Am. Compl. ¶ 166, and even purporting to

represent "<u>future</u> African-American employees," Am. Compl. ¶ 168 (emphasis added), Plaintiffs'

Amended Complaint reflects a true "across-the-board" putative class action, as rejected by the

Supreme Court in <u>Falcon</u>. <u>See</u> <u>Falcon</u>, 457 U.S. at 157. Plaintiffs simply set up a straw argument,

claiming that the alleged "subjectivity" of the Department's processes is present in all of their

claims, which involve only current employees. Opp. at 44. First, Plaintiffs' argument ignores

their own Amended Complaint. Am Compl. at ¶ 168 (referring to "future" employees). Second,

Plaintiffs advance a theory squarely within <u>Falcon</u>'s discussion of "across-the-board" challenges.

Just like the putative class in <u>Falcon</u>, which included current employees and job applicants,

Plaintiffs' proposed class includes Department personnel in widely divergent positions, job series,

offices, and locations.[12] <u>See generally</u> Def. Memo.

Third, in the <u>Wagner</u> case, upon which Plaintiffs rely, the Court of Appeals did not seem

to hold, as Plaintiffs suggest, that a necessary part of any "across-the-board" challenge is a class of

<u>both</u> employees and job applicants. <u>Wagner v. Taylor</u>, 836 F.2d 578, 589 (D.C. Cir. 1987)

(discussing <u>Falcon</u> and noting that the district court can exercise its discretion to redefine and

reshape the class). Instead, <u>Falcon</u> explicitly carves out an "across-the-board" exception involving

an alleged "general policy of discrimination" manifested "through entirely subjective decision

making processes." 457 U.S. at 158, n.15. Plaintiffs' attempt to avoid <u>Falcon</u>'s clear language is

unavailing. The <u>Falcon</u> exception requires an ultimate showing of an "entirely subjective decision

---

[12] The Supreme Court explained an "across-the-board" challenge as permitting "a named plaintiff in one job category to represent employees in another job category, or a discharged employee to represent current employees, reasoning that although different members of the class may have been harmed in different ways, 'the Damoclean threat of a racially discriminatory policy hangs over the racial class [and] is a question of fact common to all members of the class.'" <u>General Telephone Company of the Southwest v. Falcon</u>, 457 U.S. 147, 157 (1982) (<u>quoting</u> <u>Johnson v. Georgia Highway Express, Inc.</u>, 417 F.2d 1122, 1124 (5th Cir. 1969)).

making process[]." Id.

In sum, Plaintiffs fail to allege sufficiently the basic requirements for a class action. Plaintiffs have done little to further even this most elemental part of their case, and the Court should dismiss the class claims. Plaintiffs have not identified any specific discriminatory practices or procedures, and Plaintiffs have not argued how their generalized and extremely dissimilar allegations show the requisite commonality and typicality required for a class to proceed under Fed. R. Civ. P. 23.[13]

---

[13] As previously explained, Plaintiffs have not moved for class certification. While it is the Court's obligation to make a thorough inquiry into the class certification issue, Wagner, 836 F.2d at 589-90, that obligation has not yet arisen because there is no pending motion for class certification. Should the Court allow the filing of a motion for class certification in this case, the Court should deny Defendant's motion without prejudice as to Defendant's Rule 23 arguments so that the Court can consider Defendant's Rule 23 arguments in the context of a motion for class certification.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Amended Complaint should be dismissed with prejudice.

Respectfully submitted,

_____s/Jeffrey A. Taylor_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_____s/Rudolph Contreras_____
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney

_____s/Peter S. Smith_____
PETER S. SMITH, D.C. BAR # 465131
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-0372

_____s/Megan L. Rose_____
MEGAN L. ROSE, N.C. BAR # 28639
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W.
Washington, D.C.  20530
(202) 514-7220