## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JANET HOWARD, et al.,

    **Plaintiffs,**

      **v.**

CARLOS M. GUTIERREZ,
Secretary, U.S. Dep't of Commerce,

    **Defendant.**

Civil Action No.  05-1968 (JDB)

## MEMORANDUM OPINION

Plaintiffs Janet Howard, Tanya Ward Jordan, and Joyce Megginson have brought this civil action against Carlos M. Gutierrez, the Secretary of the United States Department of Commerce ("DOC" or "Department"), asserting employment-discrimination claims individually and on behalf of a putative class of African American, non-supervisory DOC employees.  Before the Court is the Department's renewed motion to dismiss all claims and to strike class allegations.  For the reasons explained herein, the Court denies the motion to dismiss the lead plaintiffs' individual claims, but grants the motion to strike the class allegations because plaintiffs have failed timely to move for class certification.

## BACKGROUND

The central claim in this case, brought on behalf of the lead plaintiffs and the putative class, is that the Department has violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 (2000), by using overly subjective performance-appraisal criteria that result in a disparate impact on African American DOC employees with respect to promotions and

promotion-related opportunities.  Am. Compl. ¶¶ 183-193.  Plaintiffs' amended complaint

describes the allegedly subjective nature of DOC's performance appraisal system and presents

statistical evidence purporting to demonstrate the disparate impact of the system on African

Americans.  Id. ¶¶ 109-122.  The complaint also includes allegations as to the effect that DOC's

evaluation system has had on the lead plaintiffs.  Id. ¶¶ 41-61 (Howard); 62-73 (Megginson); 74-

83, 89-96 (Ward Jordan).

Plaintiffs filed this action on October 5, 2005, and the Department responded with its first

motion to dismiss and to strike class allegations on March 17, 2006.  On June 8, 2006, the same

day that they filed their opposition to DOC's motion, plaintiffs moved to amend the complaint.

The Court, "in accordance with the provisions of Rule 15(a) of the Federal Rules of Civil

Procedure permitting an amended pleading once without leave of court when no responsive

pleading has been served," ordered plaintiffs to file the amended complaint forthwith and denied

their motion to amend as moot.  Minute Order, Howard v. Gutierrez, No. 05-cv-1968 (D.D.C.

June 13, 2006) (emphasis added).  The Court also terminated the Department's first motion to

dismiss and entered a briefing schedule for a renewed motion to dismiss.  Id.; Minute Order,

Howard v. Gutierrez, No. 05-cv-1968 (D.D.C. June 22, 2006).

On June 23, 2006, plaintiffs filed a motion for an extension of time to move for class

certification.  As of that date, some 261 days after filing their complaint, they had not yet moved

for class certification.  The Department opposed the motion and the parties submitted briefing on

the issue.  Subsequently, the Court granted in part and denied in part plaintiffs' motion, ordering

> that plaintiffs' obligation under Local Civil Rule 23.1(b) to file a motion for class
> certification is stayed as of this date, pending further order of the Court. The Court
> grants this motion in the interest of efficiency in light of the fact that defendant has
> filed a motion to dismiss that, according to defendant, "if granted, would resolve this

case" and thereby eliminate the need to address class certification. See Def.'s Opp'n to Mot. for Enlargement at 1. This order is without prejudice to, and expresses no view on, the merits of (1) any potential objection that defendants may raise (or have raised) regarding plaintiffs' failure to move for class certification within ninety days of filing the initial complaint in this action . . . .

Minute Order, Howard v. Gutierrez, No. 05-cv-1968 (D.D.C. Sept. 1, 2006) (emphasis added).

Accordingly, a motion for class certification has never been filed in this action.

This lawsuit represents one part in a series of administrative and judicial actions brought by the three lead plaintiffs. The resolution of DOC's motion requires the Court to consider the allegations and procedural history of some of these other actions, which are described below.

## I.     Lead Plaintiffs

### A.     Janet Howard

Janet Howard is an African American who has been employed at DOC in the Bureau of Export Administration since 1983. Am. Compl. ¶¶ 16, 41. It is undisputed that Howard has filed twenty-one administrative complaints against the Department. See Pls.' Opp'n at 12; Def.'s Ex. Y (Decl. of Kathryn H. Anderson ("Anderson Decl.") ¶ 5). One of these was a formal EEO class complaint, submitted on February 22, 1995, id. ¶ 5, and described in further detail later in this opinion. For purposes of this motion, it unnecessary to review the individual histories of Howard's other administrative complaints.

### B.     Tanya Ward Jordan

Tanya Ward Jordan is an African American who began working at DOC in 1987. Am. Compl. ¶ 34. In this action she is asserting both an individual disparate-impact claim under Title VII and a disability-discrimination claim under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-796 (2000). Am. Compl. ¶¶ 183-98. In support of her Rehabilitation Act claim, Ward Jordan

alleges that DOC denied her request for reasonable accommodations for her disabilities, which include respiratory problems and occupational stress.  Id. ¶ 195.  In 2003, Ward Jordan was transferred from the Office of Executive Budgeting and Assistance Management to the Office of Budget.  Id. ¶ 82.  Prior to the job transfer, Ward Jordan worked in an office equipped with a window and thermostat; however, Ward Jordan's post-transfer office was allegedly poorly lit and inadequately ventilated.  Id. ¶ 84-85.  DOC allegedly denied Ward Jordan's request to move to one of several, vacant offices that had windows, thermostats, and better ventilation.  Id. ¶ 86, 88.

Ward Jordan filed a previous lawsuit against DOC in this Court in 2004.  See First Am. Compl., Jordan v. Evans, No. 04-cv-356 (D.D.C. Apr. 13, 2004) ("2004 Compl.") [Def.'s Ex. AA].  The 2004 lawsuit included disability-discrimination allegations that are identical to the allegations asserted in the action now before the Court.  Compare 2004 Compl. ¶ 8, with Am. Compl. ¶¶ 82-88.  Among the causes of action asserted in the 2004 lawsuit were claims of employment discrimination in violation of Title VII and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12165 (2000).  2004 Compl. ¶¶ 10-17.  The 2004 complaint did not, however, assert a cause of action under the Rehabilitation Act.

On December 3, 2004, Judge Leon dismissed Ward Jordan's Title VII claims from the 2004 lawsuit for failure to exhaust administrative remedies.  See Mem. Op. & Order at 24, Jordan v. Evans, No. 04-cv-356 (D.D.C. Dec. 3, 2004) [Def.'s Ex. BB].  In the same order, Judge Leon denied Ward Jordan's motion to amend her complaint to include a claim under the Rehabilitation Act.  Id. at 26.  The district court later explained that "[a]lthough plaintiff moved to amend [the first amended] complaint to add a cause of action under the Rehabilitation Act, the Court denied that motion because plaintiff's claim would be equally without merit under the Rehabilitation Act

due to her failure to exhaust her administrative remedies." <u>Jordan v. Evans</u>, 404 F. Supp. 2d 28, 30 (D.D.C. 2005) [Def.'s Ex. CC].  Then, in August 2005, Judge Leon dismissed the remainder of the case, including the ADA claims, with prejudice.  <u>Id.</u> at 30-31.  The D.C. Circuit affirmed by summary order.  <u>See</u> <u>Jordan v. Gutierrez</u>, No. 05-5381 (D.C. Cir. Mar. 13, 2006) ("[T]he district court did not err in denying appellant's motion to amend her complaint to add a claim for relief under the Rehabilitation Act, because she had not exhausted that claim."); <u>id.</u> ("The district court properly dismissed appellant's Title VII claims for failure to exhaust her administrative remedies.") [Def.'s Ex. A1]; <u>Jordan v. Gutierrez</u>, No. 05-5381 (D.C. Cir. May 25, 2006) (ordering that "the district court's order be modified to reflect that the dismissal of appellant's Title VII claims, for failure to exhaust administrative remedies, was without prejudice.") [Def.'s Ex. A2].

## C.    Joyce Megginson

Joyce Megginson is an African American who has been employed at DOC since 1971 and is currently assigned to the National Telecommunications and Information Administration.  Am. Compl. ¶¶ 33, 63.  DOC states that Megginson has filed fifteen formal administrative complaints against the Department, <u>see</u> Anderson Decl. ¶ 7, but none of her individual administrative complaints is referenced in the amended complaint or has otherwise been provided to this Court. Megginson also filed an earlier employment-discrimination action in this Court that she voluntarily dismissed; that lawsuit did not include a disparate-impact claim.  <u>See</u> Compl., <u>Megginson v. Daley</u>, No. 97-cv-2970 (D.D.C. Dec. 12, 1997) [Def.'s Ex. DD]; Order, <u>Megginson v. Daley</u>, No. 97-cv-2970 (D.D.C. Oct. 27, 2000) [Def.'s Ex. EE] (dismissing action).

## II.    Class Claims

As noted above, Howard filed a formal EEO class complaint on February 22, 1995.  Am.

Compl. ¶ 5. The EEO class complaint alleged "racial discrimination against African Americans in the Department of Commerce" consisting of "[l]ow performance rating[s]" and "continued denial of promotion and awards." EEO Class Compl. at 2 [Def.'s Ex. A.]. Howard also stated in the class complaint that "I and all participants in the class have been racially discriminated against . . . in the area of promotions, awards, performance ratings, career enhancement work assignments, timely training for advancement, and all other resource support readily available to the majority," and requested an end to "the systemic means of discrimination in hiring, promotion, training and unfair performance evaluations." EEO Class Compl. at 3; see also Am. Compl. ¶ 6.

An abbreviated recounting of the path taken by the EEO class complaint through the administrative process should suffice. On May 30, 1995, an administrative judge ("AJ") at the EEOC recommended dismissal of the claims based on a failure to meet to prerequisites of a class complaint. See Howard v. Brown, EEOC No. 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X (May 30, 1995) [Def.'s Ex. B]. On appeal, however, the EEOC's Office of Federal Operations ("OFO") vacated the order and remanded for reconsideration of class certification. Howard v. Daley, EEOC Appeal No. 1956455 (June 4, 1997) [Def.'s Ex. C]. Upon remand, the AJ determined that Howard could not adequately represent the putative class. Howard v. Daley, EEOC Nos. 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X, 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X (Mar. 24, 1999) [Def.'s Ex. F]. Howard again appealed to the OFO, which vacated the March 1999 order and provisionally certified a class comprising

> African-American, non-supervisory employees and former employees of the agency's Headquarters' offices in the metropolitan area of Washington, D.C., who allegedly have been denied career advancement to one or more white collar positions in the agency's Headquarters' offices at grade levels GS-9 through GS-15 levels, or equivalent level white collar non-GS positions, and who may have been denied related promotional opportunities in those same offices based on their race during the

period of time beginning two years prior to the filing of the class complaint on February 22, 1995, and continuing to the date a final determination is rendered on the class complaint claim.

Howard v. Daley, Appeal No. 1994518, at 15 (July 20, 2000) [Def.'s Ex. G].  The EEO class complaint was then remanded to a different AJ, who granted the Department's ensuing motion to redefine the provisional class.  See Order, EEOC No. 100-A1-7429X (Aug. 20, 2003) [Def.'s Ex. K].  The AJ narrowed the provisional class to include only DOC employees working in the District of Columbia.  See id.  Howard thereafter filed a motion for reconsideration.  See Pls.' Br. in Support of Mot. for Reconsideration, Howard v. Evans, EEOC No. 100-A1-7429X (Mar. 5, 2004) [Pls.' Ex. B].  Over a year later, with the motion for reconsideration still pending, the AJ dismissed the EEO class complaint from the administrative process in anticipation of plaintiffs' filing the instant suit in federal district court.  See Notice of Withdrawal, EEOC No. 100-2001-07429X (Sept. 30, 2005) [Def.'s Ex. L].

## STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure will not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Haynesworth v. Miller, 820 F.2d 1245, 1254 (D.C. Cir. 1987).  All that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 346 (2005) (quoting Conley, 355 U.S. at 47).  "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under

any set of facts that could be proved consistent with the allegations.'" Swierkiewicz v. Sorema

N.A., 534 U.S. 506, 514 (2002) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

Under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should

be liberally construed in his or her favor. Leatherman v. Tarrant County Narcotics Intelligence &

Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968

(D.C. Cir. 1979). The plaintiff must be given every favorable inference that may be drawn from

the allegations of fact. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Sparrow v. United Air

Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). However, "the court need not accept

inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the

complaint. Nor must the court accept legal conclusions cast in the form of factual allegations."

Kowal v. MCI Comm'cn Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).

"In determining whether a complaint states a claim, the court may consider the facts

alleged in the complaint, documents attached thereto or incorporated therein, and matters of

which it may take judicial notice." Stewart v. Nat'l Educ. Ass'n, 471 F.3d 169, 173 (D.C. Cir.

2006); see also Opoka v. INS, 94 F.3d 392, 394 (7th Cir. 1996) ("Indeed, it is a well-settled

principle that the decision of another court or agency, including the decision of an administrative

law judge, is a proper subject of judicial notice."); Marshall County Health Care Auth. v. Shalala,

988 F.2d 1221, 1222 (D.C. Cir. 1993) ("The district court may . . . examine matters of public

record in ruling on a Rule 12(b)(6) motion . . . ."). However, the Federal Rules of Civil Procedure

provide that when, on a motion under Rule 12(b)(6), "matters outside the pleading are presented

to and not excluded by the court, the motion shall be treated as one for summary judgment and

disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to

present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b).

Summary judgment is appropriate under Rule 56 when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. (quoting Fed. R. Civ. P. 56(c)).

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. Id. at 252. By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment. Celotex, 477 U.S. at 322. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted). Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

## ANALYSIS

## I.    Motion to Dismiss Individual Claims

A.    Janet Howard

The Department contends that none of Howard's twenty-one administrative complaints

provides a basis upon which she can proceed with an individual claim in this action.  In support

of its motion to dismiss, DOC has submitted a declaration from the Chief of the Administration

and Special Projects Division of the DOC Office of Civil Rights that describes the basic subject

matter and current status of each and every administrative complaint filed by Howard.  See

Anderson Decl. ¶ 5.  These descriptions are derived from the Department's computerized

"EEOTrak" system, which the DOC Office of Civil Rights uses to "monitor and track all

complaints against the Department alleging discrimination or retaliation."  Anderson Decl. ¶¶ 3-4.

Based on the information in the Anderson declaration, DOC argues that eight of Howard's

administrative complaints are time-barred (the administrative complaints designated Howard 1, 2,

5, 7, 8, 11, 12, 13), one complaint (the EEO class complaint, designated Howard 6) is

unexhausted, two complaints were resolved by settlement agreements (Howard 3, 4), and three

complaints and parts of a fourth are either barred by res judicata or raised unrelated claims

(Howard 9, 10, 16, part of 18).  Def.'s Mem. in Support of Def.'s Renewed Mot. to Dismiss

("Def.'s Mem.") at 44-45, 58-61.  As for the remaining six and a half claims, DOC concedes that

they are all still pending in the administrative process.  Id. at 46 n.61 (discussing status of Howard

14, 15, 17, 19, 20, 21, and part of 18).[1]  Therefore, despite the Department's statement in its brief

that "none" of the administrative complaints provide a basis for the current action, id. at 44, it has

---

[1] Plaintiffs argue that these administrative complaints, as well as Howard 6, are "still valid, ripe charges for purposes of this litigation," see Pls.' Opp'n to Def.'s Renewed Mot. to Dismiss ("Pls.' Opp'n") at 13.  Plaintiffs do not, however, address the complaints designated Howard 1-5, 7-13, and 16 in their briefs, thereby conceding that they cannot form the basis of Howard's current claim.

not made any arguments to support this conclusion with respect to all or part of seven administrative complaints. The Department does, however, assert that "to the extent that those [seven] administrative complaints would provide any basis for any individual claim by Ms. Howard," the individual claim should be stricken because Howard has not made a short and plain statement of the claim. Id. at 46 n.61. DOC moves in the alternative for a more definite statement under Federal Rule of Civil Procedure 12(e). Id.

The notice-pleading standard embodied in the Federal Rules of Civil Procedure governs complaints that assert Title VII employment-discrimination claims. See Swierkiewicz, 534 U.S. at 511. The Federal Rules thus govern here. Rule 8(a)(2) provides "that a complaint must include only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Id. at 512 (quoting Fed. R. Civ. P. 8(a)(2)). "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Id. (quoting Conley, 355 U.S. at 47). A defendant may, however, move for a more definite statement before filing a responsive pleading "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed. R. Civ. P. 12(e).

DOC contends that Howard's statement of her individual disparate-impact claims is inadequate because it cannot determine from the complaint whether Howard administratively exhausted her claims. In other words, DOC argues that it has insufficient information from which to prepare an adequate defense. See Def.'s Reply in Support of Def.'s Renewed Mot. to Dismiss ("Def.'s Reply") at 8. As an initial matter, the failure to exhaust administrative remedies is an affirmative defense that the defendant bears the burden of pleading and proving. See Bowden v.

United States, 106 F.3d 433, 437 (D.C. Cir. 1997). Neither Rule 8(a) nor Rule 12(e) requires

plaintiffs to demonstrate exhaustion. Cf. Jones v. Bock, No. 07-7058, 549 U.S. __, 2007 WL

135890, at *11 (Jan. 22, 2007) ("We conclude that failure to exhaust is an affirmative defense

under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in

their complaints."). Moreover, the Department's own briefing belies its position. The Anderson

declaration describes the procedural status of every Howard administrative complaint that could

possibly serve as the basis for this action, see Anderson Decl. ¶ 5, thereby demonstrating that

DOC already has sufficient information to raise affirmative defenses. Indeed, DOC raised the

administrative-exhaustion defense with respect to the EEO class complaint (Howard 6), see Def.'s

Mem. at 58-61, and argued other, uncontested affirmative defenses with respect to most of

Howard's administrative complaints, see Def.'s Mem. at 44-45, 58-60; Pls.' Opp'n at 12-14.

Furthermore, at the motions hearing plaintiffs stated their intent to file a second amended

complaint clarifying Howard's (and the other lead plaintiffs') injuries under the challenged

employment practice.[2] The Department has not described any defects in the complaint warranting

the striking of Howard's individual claims. Accordingly, the Court denies DOC's motion.[3]

### B.    Tanya Ward Jordan

Unlike the other lead plaintiffs, Ward Jordan is asserting two separate claims in this

---

[2]The amended complaint should allege, with respect to each of the lead plaintiffs, discrete acts that occurred as a result of the neutral DOC policy that is alleged to have a disparate impact on African Americans.

[3]The Court need not determine whether Howard administratively exhausted the EEO class complaint (Howard 6) because DOC has not made any arguments with respect to the validity of the six other administrative claims (and part of a seventh) that might provide a basis for Howard's individual claim in this action.

action: a disparate-impact claim under Title VII and a failure-to-accommodate claim under the

Rehabilitation Act.  The Department asks this Court to find both claims barred by res judicata.[4]

See Def.'s Mem. at 46 ("Any Individual Claims of Plaintiffs Ward Jordan and Megginson Are

Barred, Respectively, by Res Judicata and Title VII's Statute of Limitations.").  Referencing Ward

Jordan's previous federal action, Jordan v. Evans, No. 04-cv-356, DOC argues that she "already

has litigated in federal court the same claims she seeks to assert in this lawsuit."  Def.'s Reply at

11.  "Under the doctrine of res judicata, . . . a subsequent lawsuit will be barred if there has been

prior litigation (1) involving the same claims or cause of action, (2) between the same parties or

their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of

competent jurisdiction."  Smalls v. United States, 471 F.3d 186, 192 (D.C. Cir. 2006).  The

doctrine "precludes the parties or their privies from relitigating issues that were or could have

been raised in that action."  Drake v. FAA, 291 F.3d 59, 66 (D.C. Cir. 2002) (internal quotation

marks omitted).

Although Ward Jordan did plead a Title VII discrimination claim in her 2004 complaint,

see 2004 Compl. ¶¶ 14-17, that cause of action was dismissed without prejudice.  See Jordan v.

Gutierrez, No. 05-5381 (D.C. Cir. May 25, 2006).  Res judicata does not bar a plaintiff from

refiling a claim that was dismissed without prejudice.  See Semtek Int'l Inc. v. Lockheed Martin

Corp., 531 U.S. 497, 505-06 (2001) ("The primary meaning of 'dismissal without prejudice,' we

think, is dismissal without barring the plaintiff from returning later, to the same court, with the

---

[4]At the motions hearing, the Department stated for the first time that there may be a
timeliness issue with respect to Ward Jordan's claims.  DOC never briefed this issue or presented
the relevant facts to the Court; in fact, DOC never definitively raised the argument.  Counsel for
DOC surmised that grounds for a timeliness defense might exist but he would have to consult his
notes to make sure.

same underlying claim."); Ciralsky v. CIA, 355 F.3d 661, 667 (D.C. Cir. 2004) ("[A] dismissal without prejudice permits a new action (assuming the statute of limitations has not run) without regard to res judicata principles . . . ." (internal quotation marks omitted)).  Accordingly, res judicata does not preclude Ward Jordan's Title VII claim in this action.

With respect to the Rehabilitation Act claim, DOC accuses Ward Jordan of trying to "smuggle" a disability claim into this lawsuit that has already been dismissed with prejudice. Def.'s Mem. at 48; Def.'s Reply at 11.  The Department is correct that Judge Leon dismissed Ward Jordan's 2004 disability-discrimination claim under the ADA with prejudice on the ground that "[t]he federal government is not subject to claims brought pursuant to the ADA." Jordan, 404 F. Supp. 2d at 30.  But DOC's argument fails to acknowledge that Ward Jordan was not allowed to assert her Rehabilitation Act claim in the 2004 lawsuit.  Instead, the district court denied her motion to amend the complaint to include that claim in December 2004.  Mem. Op. & Order at 24, Jordan v. Evans, No. 04-cv-356 (D.D.C. Dec. 3, 2004) [Def.'s Ex. BB].  It is therefore inaccurate to say that when the district court later dismissed "the case" with prejudice in its August 15, 2005, final judgment it acted to dismiss the Rehabilitation Act claims with prejudice. Id. at 31.  The Rehabilitation Act claim was never part of the "case" before the court.

Taking a slightly different tack at the motions hearing, DOC argued that Ward Jordan could have asserted the Rehabilitation Act in the 2004 action, despite the denial of her motion to amend the complaint, because she could have pled the claim in her initial complaint.  Again, the procedural history of the 2004 case precludes this argument.  Judge Leon, in his opinion dismissing Ward Jordan's ADA claim, noted that the Rehabilitation Act provides "the exclusive remedy, for a federal employee's disability discrimination claim if the employee first exhausts her

administrative remedies." 400 F. Supp. 2d at 30 (emphasis added). The court went on to explain that "[a]lthough plaintiff moved to amend that complaint to add a cause of action under the Rehabilitation Act, the Court denied that motion because plaintiff's claim would be equally without merit under the Rehabilitation Act due to her failure to exhaust her administrative remedies." 400 F. Supp. 2d at 30 (emphasis added). The D.C. Circuit affirmed this reasoning. See Jordan v. Gutierrez, No. 05-5381 (D.C. Cir. Mar. 13, 2006). It is apparent, then, that if Ward Jordan had pled the Rehabilitation Act claim in her initial complaint, it would have (like her Title VII claim) been dismissed without prejudice for failure to exhaust. Because the Rehabilitation Act was not and could not have been raised in the 2004 action, it is not barred by res judicata.

### C.    Joyce Megginson

The Department argues that Megginson's individual disparate-impact claim must be dismissed because it is barred by Title VII's filing deadline. See Def.'s Mem. at 49. Title VII requires federal employees to file a civil action within ninety days of the receipt of a final agency decision. 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407 (2006). The record before the Court is not clear as to Megginson's receipt dates of the relevant administrative decisions. Plaintiffs state in their opposition, without citation to the record, that Megginson "received a final agency decision regarding her individual claims of discrimination on October 19, 1997." Pls.' Opp'n at 14. The Department claims that Megginson received the final agency decision on September 23, 1997. Def.'s Mem. at 49 (citing Megginson v. Daley, No. 97-cv-2970-TFH (D.D.C. Dec. 12, 1997) [Def. Ex. DD]).[5] Both of these dates clearly fall more than ninety days prior to the filing of

---

[5]On a motion to dismiss, this Court cannot accept as true allegations pled by Megginson in a prior proceeding. See, e.g., Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for

the instant lawsuit on October 5, 2005.

The ninety-day filing deadline in Title VII is, however, subject to equitable tolling.  See Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 95 (1990); Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 398 (1982).  It is well-settled that "'the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.'"  Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 353-54 (1983) (quoting Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538, 554 (1974)).  The Court sees no reason to apply a different rule with respect to the filing of administrative class complaints.  See, e.g., Williams v. Owens-Illinois, Inc., 665 F.2d 918, 923 (9th Cir. 1982) ("In a class action, a class representative's EEOC complaint tolls the statute of limitations for all class members."); Barrett v. U.S. Civil Serv. Comm'n, 439 F. Supp. 216, 217-18 (D.D.C. 1977) ("Although American Pipe dealt with a judicial complaint as tolling the statute, the policy behind Rule 23 and the need to protect all 'purported' class members even if they do not rely upon the class complaint are equally applicable to a Title VII case at the administrative level.").  The EEO class complaint in this action was filed on February 22, 1995, a date that undisputedly precedes Megginson's receipt of her individual final agency decision.  Within days of the dismissal of the EEO class complaint, plaintiffs filed their class complaint in this Court.  See Notice of Withdrawal, EEOC No. 100-2001-07429X (Sept. 30, 2005) [Def.'s Ex. L]; Compl., Howard v. Gutierrez, No. 05-cv-1968 (Oct. 5, 2005).  The filing of the EEO class complaint, and

---

the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (internal quotation marks omitted)).  The Court will therefore treat the Department's motion to dismiss Megginson's individual claim as a motion for summary judgment.

later the complaint in this action, therefore operated to toll the ninety-day filing period for Megginson's individual claim.

For the first time at the motions hearing, the Government suggested that Megginson should be estopped from arguing that her claims were tolled because she filed a 1997 lawsuit in federal court that raised <u>different</u> discrimination claims. The parties agree that the disparate-impact claim asserted here was not raised in the earlier action. <u>See</u> Def.'s Reply at 9-10; Pls.' Opp'n at 15. It is difficult to see why Megginson's timely pursuit of other discrimination claims, which would not have been tolled by the <u>Howard</u> class complaints, should preclude her from receiving the benefit of otherwise applicable tolling principles for her disparate-impact claim. There is simply nothing contradictory about Megginson's course of action. <u>See</u> <u>Zedner v. United States</u>, 126 S. Ct. 1976, 1987 (2006) ("[J]udicial estoppel, 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'"); <u>New Hampshire v. Maine</u>, 532 U.S. 742, 750 (2001) (stating that, in order for judicial estoppel to apply, "a party's later position must be 'clearly inconsistent' with its earlier position."). In fact, DOC's proposed rule would force plaintiffs to choose between maintaining their status as potential class members and timely bringing suit on their other, distinct causes of action. The Court is unpersuaded by the Department's argument and hence denies its motion to dismiss Megginson's individual claim.

## II.  <u>Motion to Strike Class Allegations</u>

DOC moves to strike plaintiffs' class allegations for a failure to comply with Local Civil Rule 23.1(b). The local rule states:

> Within 90 days after the filing of a complaint in a case sought to be maintained as a
> class action, unless the court in the exercise of its discretion has extended this period,

the plaintiff shall move for a certification under Rule 23(c)(1), Federal Rules of Civil
Procedure, that the case may be so maintained.

LCvR 23.1(b). The local rule also allows for a defendant to "move at any time to strike
the class action allegations or to dismiss the complaint." Id.

Plaintiffs filed their class complaint in this action on October 5, 2005; the ninety-day
period thus expired on January 3, 2006. Plaintiffs have never filed a motion for certification in
this action. They did, however, file a motion for an extension of time to move for class
certification on June 23, 2006 -- some 261 days after the filing of the complaint. In the interest of
efficiency, the Court stayed plaintiffs' obligation to move for class certification pending further
order of the Court, and "without prejudice to . . . the merits of . . . any potential objection that
defendants may raise (or have raised) regarding plaintiffs' failure to move for class certification
within ninety days of filing the initial complaint in this action." Minute Order, Howard v.
Gutierrez, No. 05-cv-1968 (D.D.C. Sept. 1, 2006).

Local Rule 23.1(b) and its predecessors have been strictly applied in this Circuit. E.g.,
Black Panther Party v. Smith, 661 F.2d 1243, 1279 (D.C. Cir. 1981) ("[S]trict enforcement of
Local Rule 1-13(b) implements the policy of Rule 23(c)(1) of the Federal Rules of Civil
Procedure, which states that the status of class actions should be determined quickly."), vacated
by mem. on other grounds sub nom. Moore v. Black Panther Party, 458 U.S. 1118 (1982); Batson
v. Powell, 912 F. Supp. 565, 570 (D.D.C. 1996) ("As this Court has made clear, the 90-day limit
of Local Rule 203(b) has been strictly enforced in this Circuit." (internal quotation marks
omitted)); Weiss v. Int'l Bhd. of Elec. Workers, 729 F. Supp. 144, 148 (D.D.C. 1990) ("[T]he
90-day limit of the local rule has been strictly enforced in this Circuit."); see also Thomas v.
Knight, 257 F. Supp. 2d 86, 91 n.5 (D.D.C. 2003) (denying motion for class certification for

failure to comply with LCvR 23.1(b)).  The D.C. Circuit has explained that strict enforcement is justified because the local rule "implements the policy behind the already extant requirement of Fed. R. Civ. P. 23(c)(1) that class certification decisions be made 'as soon as practicable.'"[6] McCarthy v. Kleindienst, 741 F.2d 1406, 1411 (D.C. Cir. 1984).  Accordingly, the Court of Appeals has affirmed a district court's denial of a motion for an extension of time to move for certification that was filed a mere eleven days late.  See Black Panther Party, 661 F.2d at 1279; see also Batson, 912 F. Supp. 2d at 571 (denying motion for class certification filed twenty days late); Martin v. Middendorf, 1977 WL 821, at *2 (D.D.C. Feb. 9, 1977) (noting "that this case is now ten months old, and the 90-day deadline for seeking class action certification prescribed by the local rules expired long before counsel filed the instant motion"); Coffin v. Sec'y of Health, Ed. & Welfare, 400 F. Supp. 953, 956-57 & n.18 (D.D.C. 1975) (denying motion for class certification filed seven months after initial complaint for failure to comply with local rule).

Plaintiffs contend that they have complied with the local rule because they filed their motion for an extension of time within ninety days of the filing of their amended complaint. They present several justifications for their reading of the rule.  First, they emphasize that the local rule refers to the filing of  "a complaint" instead of "the complaint" or "the initial complaint," see M.D. Fla. L.R. 4.04(b) (specifying "the filing of the initial complaint"), and therefore Local Rule 23.1(b) should apply to any complaint filed in an action.  See Pls.' Opp'n at

---

[6]Rule 23(c)(1)(A) was amended in 2003 to replace the language requiring courts to address certification "as soon as practicable" with an admonition to do so "at an early practicable time." This amendment, which was designed to reflect "the many valid reasons that may justify deferring the initial certification decision," Fed. R. Civ. P. 23(c)(1)(A) advisory comm. nn., speaks to the timing of the district court's certification decision and does nothing to undermine the local rule requiring parties to raise the issue in an expeditious manner.

31. Second, plaintiffs cite to cases in which they say this Court calculated the ninety-day period from the date of the amended complaint. See Pls.' Opp'n at 32 (citing In re Baan Co. Sec. Litig., 271 F. Supp. 2d 3, 11 (D.D.C. 2002), and Richard v. Bell Atl. Corp., 976 F. Supp. 40, 51-52 (D.D.C. 1997)). Third, plaintiffs submit that the Department's interpretation of the local rule would conflict with the axiom that an amended complaint renders the original complaint without legal effect. Pls.' Opp'n at 32. Finally, plaintiffs argue that Federal Rule of Civil Procedure 15(a), which requires consent or court permission to amend a complaint after the filing of a responsive pleading, acts as a limitation against abusive pleading amendments in this context. Id. at 34.

Plaintiffs' arguments are unpersuasive. Although Local Rule 23.1(b) uses the phrase "a complaint," it does so in the context of requiring a motion "[w]ithin 90 days after the filing of a complaint in a case sought to be maintained as a class action." LCvR 23.1(b). Thus, the most natural reading of the rule requires the filing of a certification motion within ninety days of the first complaint that states class allegations -- in this case, the initial complaint. If the local rule were intended to apply to all subsequent amended complaints, it would refer to "the filing of any complaint." It does not. Furthermore, courts in other districts with local rules referring to "a complaint" have explicitly rejected plaintiffs' textual analysis. See, e.g., Jones v. Hartford Ins. Co., No. 3:05-cv-392, 2006 U.S. Dist. LEXIS 19630, at *2 (N.D. Fla. Apr. 14, 2006) ("The rule commands that the motion . . . must be filed within ninety days after filing a complaint, not after filing a subsequent amended complaint."); see also Joseph N. Main P.C. v. Elec. Data Sys. Corp., 168 F.R.D. 573, 577 (N.D. Tex. 1996) (applying ninety-day deadline from date of removal to federal court, not from date of first federal complaint). As one court has observed, "[i]f the filing of an amended complaint could reset the ninety-day deadline . . . a plaintiff could easily

circumvent the timeliness concerns of Fed. R. Civ. P. 23(c)(1)(A) by invoking its right to file an amended complaint at any time as a matter of course before a responsive pleading is served." Jones, U.S. Dist. LEXIS, at *3; see also Joseph N. Main P.C., 168 F.R.D. at 577.  In fact, that is exactly what happened here -- plaintiffs amended their complaint, as a matter of right, almost six months after the ninety-day deadline expired.  Thus, contrary to plaintiffs' argument, Rule 15(a) provides little protection against abusive amendments, since a court does not have any control over amendments as of right.  And while plaintiffs' amended complaint supercedes the original complaint with respect to the contents of the pleadings, see, e.g., In re Atlas Van Lines, Inc., 209 F.3d 1064, 1067 (8th Cir. 2000), the fact remains that plaintiffs filed a complaint alleging class claims on October 5, 2005.  Under plaintiffs' logic, the filing of an amended complaint would essentially render the local rule without its intended legal effect.  The purpose of Local Rule 23.1(b) is thus best served by calculating the ninety-day period from the filing of the initial class complaint.

The two cases from this district cited by plaintiffs do not hold differently.  In the first case, Richard v. Bell Atl. Corp., the court denied a motion to strike class allegations because the previous judge in the case had "extended the 90-day period under Local Rule 203 when he stayed all discovery."  976 F. Supp. at 52.  In the second, In re Baan Co. Sec. Litig., the court simply noted that Judge Green had, earlier in the litigation, granted a motion to reconsider her decision striking class allegations for failure to comply with Local Rule 23.1(b).  271 F. Supp. 2d at 11.  In the initial In re Baan decision, Judge Green held that "[e]ven if the Court assumes that the period for filing a motion for certification did not begin until a consolidated complaint was filed[,] the period for filing a motion for certification had run."  In re Baan Co. Sec. Litig., No. 98-2465, slip

op. at 7 (D.D.C. Dec. 12, 2000). Judge Green later vacated the order because "plaintiffs' failure to file a motion for class certification within the time period prescribed by the local rule was the result of excusable neglect" Id., slip op. at 15 (D.D.C. June 6, 2001). Still, however, there was no more than an assumption that the period for filing ran from the consolidated complaint.[7] Neither of these cases, then, holds that the filing of an amended complaint resets the clock under Local Rule 23.1(b), and this Court is unaware of any others that do. Accordingly, the Court finds that plaintiffs' motion for an extension of time to file for certification was untimely.

That is not the end of the inquiry, however, because plaintiffs argue in the alternative that they can demonstrate excusable neglect for their failure to file a timely certification motion.[8] The determination of whether a party's neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993). The court must consider "the danger of prejudice to the [other party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Id.; see also Smith v. District of

---

[7]In any event, the need for a consolidated complaint in a securities class action consisting of several consolidated cases may raise distinct timing issues.

[8]Plaintiffs invoke the concept of excusable neglect both as an equitable matter and with respect to Federal Rule of Civil Procedure 6(b). Rule 6(b) provides that "[w]hen by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion . . . (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect." Fed. R. Civ. P. 6(b) (emphasis added); see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 896 (1990) (noting that under Rule 6(b) "any postdeadline extension must be 'upon motion made'"). The Court need not decide whether plaintiff's June 23, 2006, motion could provide a basis for Rule 6(b) relief here because it finds that plaintiffs have not demonstrated excusable neglect.

Columbia, 430 F.3d 450, 456 n.5 (D.C. Cir. 2005) (same).

Plaintiffs focus on the first two factors in the excusable-neglect analysis. They argue that the Department would not be prejudiced because the class-action nature of the proceedings has been apparent from the outset of the case, and that their delay will have no impact on the judicial proceedings because the litigation is at an early stage. Pls.' Opp'n at 34-35. Plaintiffs are correct that the Department has had notice of putative class claims in this case since the filing of the initial complaint. But Local Rule 23.1 is designed to enable defendants "to ascertain at the earliest practicable moment whether they will be facing a limited number of known, identifiable plaintiffs or whether they will instead be facing a much larger mass of generally unknown plaintiffs." McCarthy, 741 F.2d at 1411-12 (emphasis added); see also id. at 1412 ("Fundamental fairness, as well as the orderly administration of justice requires that defendants haled into court not remain indefinitely uncertain as to the bedrock litigation fact of the number of individuals or parties to whom they may ultimately be held liable for money damages."). Plaintiffs' failure to move for certification has also prolonged the uncertainty as to the scope of the class they would actually move this Court to certify.[9] The Department would experience, just as it already has

---

[9]The Court notes that plaintiffs significantly changed the class definition in their class action allegations between the initial complaint and the first amended complaint in this action. Compare Compl. ¶ 254 (referencing a class "of all African-Americans and non-African-Americans who are, or have been, employed by Commerce and have experienced race discrimination or have been retaliated against for acting against race discrimination at any time during the applicable liability period"), with Am. Compl. ¶ 166 ("The class consists of all African-American, non-supervisory employees and former employees of Commerce's bureaus in the metropolitan area of Washington, D.C., who have been denied career advancement to one or more white collar positions in the agency's offices at grade levels GS-9 through GS-15 levels, or equivalent level white collar non-GS positions, and who have been denied related promotional opportunities in those same offices . . . ."). Additionally, the Court observes that plaintiffs' June 23, 2006, motion for an extension of time to move for class certification requested "that they be allowed to move for class certification two (2) months after class certification discovery in this

experienced, an element of prejudice in this litigation with respect to its need to defend against a potential class of uncertain scope.

This Court must also consider the reason for plaintiffs' delay.  See Pioneer Inv. Servs., 507 U.S. at 395.  Plaintiffs blame the Department, noting that DOC requested and received five motions for an extension of time to respond to the initial complaint.  Pls.' Opp'n at 34, 36.  The Department's actions did not relieve plaintiffs from the need to comply with the local rules.  See Coffin, 400 F. Supp. at 957 n.19 (finding that pending motions by defendant and other procedural aspects of case could not have "hindered plaintiff's compliance with the Local Rule.").  Moreover, the Department's first motion to dismiss raised the same untimeliness argument under Rule 23.1(b) that the Department has renewed here.  Def.'s Mem. in Support of Mot. to Dismiss at 61-62.  Plaintiffs were therefore alerted by March 17, 2006, that they were already two and one-half months out of time and hence needed to file a class certification motion.  Yet they waited until June 23, 2006 -- another three months -- before even filing a motion for an extension of time to move for class certification.  That motion came after the filing of their June 8, 2006, opposition to the Department's motion and the June 13, 2006, amended complaint.  Although plaintiffs stated at the motions hearing that their delay was "a mistake" -- a reason that does not usually constitute excusable neglect, see In re Vitamins Antitrust Class Actions, 327 F.3d 1207, 1210 (D.C. Cir. 2003) ("[I]nadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." (internal quotation marks omitted)) -- this Court wonders why a party acting diligently and in good faith would wait three additional months after being alerted to

---

matter concludes."  Pls.' Mem. in Support of Pls.' Mot. for Enlargement of Time at 1 (emphasis added).  This request highlights the possibility that any certification motion might seek to define yet a third, substantially different class.

a missed deadline before attempting to mitigate the error.  Upon balancing the equities, this Court

finds that plaintiffs have not demonstrated good cause or excusable neglect for their failure.[10]

DOC's motion to strike the class allegations is therefore granted.[11]

## CONCLUSION

For the foregoing reasons, the Department's motion to dismiss the individual claims of

Howard, Ward Jordan, and Megginson is denied, the motion for a more definite statement is

denied, and the motion to strike the class allegations is granted.  A separate order has been issued

herewith.

_____/s/ John D. Bates_____
JOHN D. BATES
United States District Judge

Dated: <u>February 6, 2007</u>

---

[10]Because the Court grants DOC's motion based on plaintiffs' failure to comply with Local Rule 23.1(b), it need not discuss DOC's alternative arguments for striking the class claims, or the parties' arguments regarding the merits of any future class-certification motion.

[11]The Court recognizes that application of Local Civil Rule 23.1(b) creates a dramatic result for this case.  But the rule is plain, it serves important interests, and its application is much more clearly warranted in this case than in other cases in which it has been applied.  Serious consequences often flow from a fair application of time limits, and that is the case here.