**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **JANET HOWARD**, <u>et al.</u> | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 05-1968 (JDB)** |
| | ) | |
| **CARLOS M. GUTIERREZ,** | ) | |
| **Secretary, United States Department of** | ) | |
| **Commerce,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PLAINTIFFS' MOTION TO REINSTATE CLASS CLAIMS, MOTION FOR
RECONSIDERATION OF THIS COURT'S FEBRUARY 6, 2007 ORDER STRIKING
CLASS ACTION ALLEGATIONS AS UNTIMELY, AND, ALTERNATIVELY,
MOTION THAT THE COURT CERTIFY THIS QUESTION FOR
<u>INTERLOCUTORY APPEAL</u>**

<u>Summary of Argument</u>

In this Title VII employment discrimination suit, filed as a class action at the EEOC level more than *twelve years ago,* Plaintiffs seek redress for themselves and a class of similarly-situated African American employees for racial discrimination on the part of Defendant United States Department of Commerce ("DOC" or "Department").  Twelve years later, Plaintiffs are now precluded from proceeding as a class for allegedly failing to comply with the technical requirements of Local Rule 23.1(b).

Less than ninety days after filing their Amended Complaint but more than ninety days after the Original Complaint was filed, Plaintiffs made a motion for an extension of time to move for class certification, which, according to the Court, stayed Plaintiffs' obligation to move for class certification pending further order of the Court.

On February 6, 2007, this Court struck the Amended Complaint's class allegations.  The Court ruled that Plaintiffs missed the ninety-day deadline established by Local Rule 23.1(b) for

moving to certify a class action. The Court rejected Plaintiffs' contention that Rule 23.1(b)'s ninety-day requirement may be measured from when an amended complaint is filed. Rather, the Court held that the Original Complaint's filing date constitutes the correct --and only-- starting point for the ticking of Rule 23.1(b)'s ninety-day clock. While recognizing that such an application of Rule 23.1 "creates a dramatic result for this case," the Court dismissed with prejudice all class allegations.

Because this Court's decision that Plaintiffs were untimely is erroneous, and its determination to bar a class motion is disproportionately harsh (even assuming *arguendo* Plaintiffs were tardy under Local Rule 23.1(b)), Plaintiffs now move pursuant to Fed. R. Civ. P. Rules 59(e) and 60 for reconsideration of the February 6, 2007 Order.[1] Unless this Court reverses course, it will endanger the rights of thousands of the DOC's African American employees who have long been victimized by the Department's racially-biased employment practices.[2] These employees have waited years for relief and have relied on this suit.

Although several arguments below warrant the Court's reconsideration of its Order, Plaintiffs wish to highlight a particularly important factual point involving what appears to be a mistaken interpretation of a statement made by Plaintiffs' counsel at the motions hearing.

---

[1] A motion for reconsideration is treated as a "[Fed.R.Civ.P.] 59(e) motion if filed within 10 days of entry of the challenged order." U.S. v. Pollard, 290 F.Supp.2d 153, 156 (D.D.C. 2003) (quoting United States v. Clark, 984 F.2d 31, 32 (2d Cir. 1993)). "The district court has considerable discretion in ruling on a Rule 59(e) motion." Rann v. Chao, 209 F.Supp.2d 75, 78 (D.D.C. 2002)).

[2] Because there is no D.C. Circuit precedent concerning whether a 10-day motion for reconsideration tolls the requirement to file a petition pursuant to F.R.C.P. 23(f), Plaintiffs, in an abundance of caution are filing in the United States Court of Appeals, District of Columbia Circuit, a petition for permission to appeal pursuant to Rule 23(f), simultaneously with this motion. Plaintiffs will ask that the Rule 23(f) petition be held in abeyance pending the resolution of this Motion for Reconsideration. The Clerk of the Circuit Court has advised Plaintiffs' counsel that they should file their Rule 23(f) petition within 10 days, but that the Petition will be stayed until this Court decides the instant motion for reconsideration, at which point Plaintiffs will be given the opportunity to amend their Petition if they so desire.

Critical to the Court's February 6, 2007 ruling was its skepticism that "a party acting diligently and in good faith would wait three additional months after being alerted to a missed deadline before attempting to mitigate the error." Order at 24-25. However, despite Plaintiffs' conceded "mistake" in failing to move for class certification within 90 days of the filing of the initial complaint, Order at 24, Plaintiffs respectfully submit (and did not intend to concede otherwise) that they acted reasonably and in good-faith when they did not immediately file for class certification upon receipt of the government's motion to dismiss, based on Plaintiffs' understanding that their soon-to-be-filed Amended Complaint would re-trigger Rule 23.1's ninety-day window to move for class certification. Plaintiffs based this interpretation on the language of Rule 23.1, D.C. precedent, the 2003 amendment to Federal Rule of Civil Procedure 23 and comparable and contrasting local rules in other districts. Because Plaintiffs' three-month delay found troubling by the Court was not the result of inadvertence or bad faith, but rather was based on a good-faith interpretation of the local rule, and because any delay has not prejudiced the government – among other things, because Plaintiffs' Amended Complaint narrowed the class definition – Plaintiffs respectfully submit that the extremely severe sanction meted out by the Court under Local Rule 23.1 was not warranted.

As discussed below, the Court should reconsider and withdraw its Order striking the class allegations in the Amended Complaint for three primary reasons:

(1) Local Rule 23.1 applies to both initial and amended complaints. In interpreting Rule 23.1(b) to mean that its ninety-day deadline may run only from the filing of the initial complaint, this Court failed to give sufficient weight to substantial D.C. precedent assuming and implicitly determining that Local Rule 23.1's ninety-day time period may run from the filing of an amended complaint as well as from an initial complaint. The Court's reading transgresses the

plain language of Local Rule 23.1: because Local Rule 23.1 speaks only of "a complaint," and not "the initial complaint" (as do rules in other jurisdictions), the Court erred by reading "a complaint" as the equivalent of "initial complaint." Notably, none of the D.C. cases cited by the Court regarding the "strict" enforcement of Local Rule 23.1(b) bear on whether an amended complaint fits within the meaning of "a complaint," and some of these cases actually support Plaintiffs' reading by assuming that the date of the Amended Complaint is relevant to the application of Local Rule 23.1 purposes. The Court's interpretation of Local Rule 23.1(b) is also inconsistent with the 2003 amendments to Federal Rule 23(c)(1). Moreover, under the interpretive maxim "*expresio unius est exclusio alterius,*" the fact that this District's rule speaks only of "a complaint," and not "the initial complaint," should be construed as inconsistent with this Court's conclusion that "a complaint" is the exclusive equivalent of the "initial complaint." If Rule 23.1(b) aimed only at "the initial complaint" the Rule could have and would have stated so expressly.

(2)    Regardless whether Plaintiffs' reading of Local Rule 23.1 is correct, the Court should not have automatically stricken Plaintiffs' class claims because the Court has an independent duty to the prospective class to assess their claims. Moreover, the D.C. Circuit has recognized that local rules should not be applied so as to effect automatic dismissal. Because the rights of a great number of absent class members are affected by the Court's ruling, and because Plaintiffs have neither willfully nor in bad faith violated a Local Rule, the Court should reconsider the severe sanction it imposed and should permit the class claims to proceed.

(3)    For purposes of assessing the equities, either under Rule 23, Local Rule 23.1, or excusable neglect, and as explained above, striking of the class claims is unwarranted. Plaintiffs' initial delay in complying with Local Rule 23.1(b) is attributable to mere oversight and was not

the result of strategic maneuvering. Plaintiffs had nothing to gain from violating the Local Rule, for which they have full respect.

When, upon the filing of Defendant's motion to dismiss, Plaintiffs realized that they had not moved for class certification within 90 days of the initial complaint, they concluded, in good faith based upon substantial legal research on this issue, that the 90-day requirement did not apply to the initial complaint, but rather, to their amended complaint. Accordingly Plaintiffs, acting in good-faith reliance on a straightforward reading of Local Rule 23.1, waited until after amending their complaint to move for an extension of time within which to move for class certification.

Plaintiffs' interpretation of Local Rule 23.1(b) was reasonable in that there was no controlling authority to the contrary in this Circuit at the time. Plaintiffs respectfully submit that even if the Court disagrees with Plaintiffs' interpretation, the Court should, at the very least, acknowledge the latent ambiguity of the local rule and should not penalize Plaintiffs for their interpretation of that ambiguous language, particularly in light of Plaintiffs' good faith and the lack of prejudice to the government.

Plaintiffs request oral argument regarding their Motion To Reinstate Class Claims and their Motion for Reconsideration. If the Court denies those motions, Plaintiffs respectfully move the Court to certify the issue for interlocutory review pursuant to F.R.C.P 23(f) or under the Cohen collateral order doctrine.

## ARGUMENT

**I.    THE COURT'S INTERPRETATION OF LOCAL RULE 23.1 CONFLICTS WITH THE LOCAL RULE'S PLAIN LANGUAGE, ORDINARY CANONS OF CONSTRUCTION, AND COMMON PRACTICE IN THIS CIRCUIT AND OTHER JURISDICTIONS.**

### A.    The Plain Meaning Of "A" In Local Rule 23.1 Is "Any."

The Court's textual analysis centered on a refusal to read "a" in Local Rule 23.1 to mean "any."  Order at 20.  But Black's Law Dictionary, p.1 (Sixth Edition, West Publishing Co. 1990) defines the word "a" as follows:

> The article "a" is not necessarily a singular term; it is often used in the sense of "any" and then is applied to more than one individual object. Lewis v. Spies, 43 A.D.2d 714, 350 N.Y.S.2d 14, 17.  So under a statute providing that the issuance of "a" certificate to one carrier should not bar a certificate to another over the same route, a certificate could be granted to more than two carriers over the same route.  State ex rel. Crown Coach Co. v. Public Service Commission, 238 Mo.App. 287, 179 S.W.2d 123, 127.  Also, article "a" in statute making it a crime for a person to have in his possession a completed check with intent to defraud includes the plural.

In accord with this straightforward definition, courts frequently construe the word "a" to mean "any."  See, e.g., Lava Trading, Inc., v. Sonic Trading Management, LLC, 445 F.3d 1348, 1354 (Fed. Cir. 2006) ("The word 'a' generally means one or more…."); Allstate Insurance Company v. Foster, 693 F. Supp. 886, 889 (D. Nev. 1988)  ("'A'… is an indefinite article often used in the sense of 'any' and applied to more than one individual object; whereas 'the' is an article which particularizes the subject spoken of."); see also Agere Systems, Inc. v. Broad Com Corporation, 2004 U.S. Dist. LEXIS 14187, Fn 58 (E.D. Pa. 2004) ("Federal Circuit caselaw…generally discourages courts from reading the word 'a' to mean 'only one'").[3]

---

[3] See also Scanner Techs Corp. v. ICOS Vision Systems Corp. N.V., 365 F. 3d 1299, 1304 (Fed. Cir 2004); In re Salt Creek Freightways 46 B.R. 347, 35-351 (Bankruptcy Court D.Wo. 1985) (finding, in connection with collective bargaining statute: "The word 'a' means one or any…."); Roxanne Laboratories Inc v. Tracy, 75 Ohio St. 3d 125, 127-128 (1996) ("We have previously

Accordingly, a substantial body of caselaw conflicts with the Court's conclusion that Local Rule 23.1(b)'s "a complaint" language is most naturally read as "the initial complaint" rather than "any complaint." Order at 20. As is reflected in the cases cited above, the normal practice is to read "a" as "any." None of the cases relied upon by the Court for support of its textual analysis have confronted or distinguished this caselaw, which strongly supports Plaintiffs' textual analysis.[4] The two cases from other jurisdictions cited by the Court in support of its textual analysis, Order at 20-21, are not persuasive, especially in light of D.C. practice, discussed below. In particular, Jones v. Hartford Ins. Co., No. 3:05-cv-392, 2006 U.S. Dist. LEXIS 19630, at *2 (N.D. Fla. Apr. 14, 2006) relies largely on cases with local rules that are worded *differently* from the "a complaint" language at issue in this case. For example, Jones cites the District Court for the Middle District of Florida's rule that uses the words "initial complaint," a Northern District of Georgia rule that uses the words "the complaint," and a Central District of California rule that uses the words "a pleading purporting to commence a class action" (i.e. "initial" complaint). If anything, these differently worded rules support

---

construed the word 'a' to mean 'any.'"); People v. Snyder, 1949 Ohio St. 333, 336 (1948) ("In a determination of this controversy it should be noted that this language of Section 4272…contains the negatively stated general provision that [the council president] 'shall have no vote therein,' and this is followed by the specific exception 'in case of **a** tie.' It should be noted, too, that the exception is not limited to *some* ties…Rather, it is all-inclusive – 'a' tie – *any* tie, inasmuch as 'any' is a dictionary synonym of 'a.'"); Vanguard Insurance Company v. McKinney, 1990 Mich. App. LEXIS 302, p.*13 ("In the instant case, if we place the word 'a' or 'an' … in front of the word 'insured,' then we must conclude that 'an insured' unambiguously means 'any insured.'") See further Elkay Manufacturing Company v. Ebco Manufacturing Company, 192 F.3d 973 (Fed. Cir. 1999); KCJ Corporation v. Kinetic Concepts, Inc., 223 F.3d 1351 (Fed. Cir. 2000); and Abtox, Inc. v. Exitron Corporation, 122 F.3d 1019 (Fed. Cir. 1997), all of which recognize that the indefinite article "a" can mean "any."

[4] This Court also erred by holding that the words "**a** complaint" are synonymous with "**the** [initial] complaint." As the Supreme Court of California ruled in Bozanich v. Kenney 3 Cal. 3d 567, 570 (1970), "[t]he word 'the' and the words 'a' or 'an' mean entirely different things." See also Allstate Ins. Co. v. Foster, 693 F.2d at 889 (where the court explained the difference between the words "a", "and" "the" is that "a…is an indefinite.").

Plaintiffs' position that this jurisdiction's rule means something different, or it would have been written like the other rules. <u>Jones</u> also relies on Louisiana cases based on a local rule with "a complaint" language, but those cases simply use the "the complaint" language in passing and do not reach the question whether "a complaint" applies to amended complaints. To the extent that these cases conflated the words "a" and "the" they are in error. <u>See</u> <u>Bozanich v. Kenney</u>, <u>supra</u>, at footnote 4.

**B.    D.C. Courts Regularly Compute the Ninety-day Requirement Under Local Rule 23.1(b) From the Date an Amended Complaint Is Filed.**

None of the cases cited by this Court regarding the "strict" enforcement of Local Rule 23.1(b) in this jurisdiction, <u>see</u> Order at 18-19, bear on whether an amended complaint fits within the meaning of "a complaint" in 23.1(b). To the extent these cases require a strict interpretation of the rule, it is with respect to the words "90 days," not the words "a complaint." These cases simply do not address whether "amended" complaints fall within the rule. Indeed, if anything, they confirm Plaintiffs' argument that it is regular practice in this Circuit to run the ninety-day rule from amended complaints.

The United States District Court for the District of Columbia regularly computes the ninety-day requirement from the date an amended complaint is filed, even in cases like the one at bar where the initial complaint contains class allegations and is followed by an amended complaint also containing class action allegations. That was the significance of Plaintiffs' citations, in their Opposition to Defendant's Renewed Motions, to <u>Richard v. Bell Atlantic Corp.</u>, 976 F. Supp. 40, 51-52 (D.D.C. 1997) and <u>In re Baan Co. Sec. Litig.</u>, 271 F. Supp. 2d 3, 11 (D.D.C. 2002). Plaintiffs were not arguing that those cases expressly hold that the amended complaint is a proper trigger for the 90-day Rule. However, those cases do presuppose, given each court's analysis, that the amended complaint provides a relevant trigger for Local Rule

23.1.  <u>See also</u> <u>Kas v. Financial General Bankshares</u>, 105 F.R.D. 453, (D.D.C. 1985) ("The Court determines that the date of filing is the crucial date and that, therefore, plaintiff's motion for class certification was timely filed within 90 days of the filing of the second amended complaint.").  Courts with similarly worded rules do likewise.  <u>See</u> Plaintiffs' Opp. to Motion to Strike at 32.

Notably, two of the cases that the Court itself cites in support for reading Local Rule 23.1 to exclude amended complaints (<u>see</u> Order at 18-19) actually ran the ninety-day time limit from amended complaints.  In <u>Weiss v. IBEW</u>, 729 F. Supp. 144 (D.D.C. 1990) the Court clearly ran the ninety-day deadline from an amended complaint. 729 F. Supp. at 148 ("Plaintiff's *amended complaint* was filed on March 15, 1989.  She argues, however, that she cannot move for class certification until after she has had adequate time for discovery.  However, the ninety-day limit of the local rule has been strictly enforced in this Circuit. Plaintiff has not offered any compelling reason why the local rule should not be followed in this case.") (emphasis added);

In <u>Coffin v. Sec'y of Health, Education & Welfare</u>, 400 F. Supp. 953 (D.D.C. 1975), the Court expressly referenced the dates of both the initial and amended complaint; there would have been no point in referencing the amended complaint if the rule is as this Court has interpreted it. 400 F. Supp. 953, 956 ("Local Rule 1-13 provides that a motion for certification of a class be filed within ninety days of the filing of the complaint.  This requirement was not met in this case. The original complaint herein was filed on October 5, 1973.  An *Amended Complaint* was filed on December 10, 1973**.**  The request for certification of the class was not filed until May 22, 1974.") (emphasis added).

In its February 6, 2007 Order, this Court's citation to <u>Coffin</u> only mentions that case's reference to the initial complaint, even though the amended complaint is mentioned in the same

sentence in <u>Coffin</u>.  Thus, the very cases cited by the Court indicate that Local Rule 23.1(b) long has been assumed to apply to amended complaints.

Not only is the Court's interpretation of Local Rule 23.1 in conflict with longstanding local practice of applying Local Rule 23.1 to both initial and amended complaints, but the Court's interpretation will lead to undesirable results in cases with multiple complaints. According to the Court, the Local Rule only applies to "the first complaint that states class allegations," and not to "any" subsequent complaints filed.  Order at 20.  Thus, under the Court's interpretation, if a party files an initial complaint, then files a motion for class certification within 90 days, and then radically amends the complaint, the party would have no obligation to submit a new motion for class certification (or amend its previous motion) within 90 days.  That could not possibly be what the Local Rule contemplates, as evidenced by the many cases in this jurisdiction calculating the 90-day deadline from amended complaints, even in cases in which the initial complaint contained class allegations.  Rather, the most straightforward and sensible reading of the Local Rule is to apply it to both initial and amended complaints.  Other bases exist (most notably, the Federal Rule 23 criteria) for a Court to deny certification in a case in which the Court determines that a party's failure to move for certification prior to the amended complaint amounts to gamesmanship or bad faith – a situation not present here.

> **C.**     **This Court's Construction of Local Rule 23.1(b) is Inconsistent with Federal Rule of Civil Procedure 23(c)(1) and the 2003 Amendments to that Rule.**[9]

The Court's interpretation of Local Rule 23.1 as applicable only to initial complaints and never to amended complaints is inconsistent with the 2003 Amendment to Federal Rule 23, which envision circumstances in which an immediate motion for class certification may be

inappropriate and should await the filing of an amended complaint.  See Fed. R. Civ. P. 83(a)(1)

(providing that local rules must be "consistent with" the Federal Rule of Civil Procedure).[5, 6]

    The 2003 Amendment to Federal Rule of Civil Procedure 23(c)(1)(A) replaced the

requirement that a court determine whether to certify a class "as soon as practicable after

commencement of an action" with a more relaxed requirement that such a determination must be

made **at an early practicable time**."   Fed.R.C.P. 23(c)(a)(A) (emphasis added). Despite this

significant change in the Federal Rule, all of the D.C. cases cited by the Court in support of its

construction of Local Rule 23.1(b) were decided before the Amendment became effective in

December 2003.  See Order at 18-19 (citing McCarthy v. Kleindienst, 741 F.2d 1406, 1411 (D.C.

Cir. 1984); Black Panther Party v. Smith, 661 F.2d 1243, 1279 (D.C. Cir.1981); Thomas v.

Knight, 257 F.Supp.2d 86, 91 n.5 (D.D.C.2003); Batson v. Powell, 912 F. Supp. 565, 570

(D.D.C.1996); Weiss v. Int'l Bhd. of Elec. Workers, 729 F. Supp. 144, 148 (D.D.C.1990);

Martin v. Middendorf, 1977 WL 821, at *2 (D.D.C. Feb.9, 1977)  Coffin v. Sec'y of Health, Ed.

& Welfare, 400 F. Supp. 953, 956-57 & n.18 (D.D.C.1975).

---

[5] The Court's own comments indicate that it construed Local Rule 23.1 in a manner which
contradicts amended class action Rule 23(C)(1). In striking Plaintiffs' class allegations, Judge
Bates invoked the purposes underlying Local Rule 23.1(b): "Local Rule 23.1 is designed to
enable defendants 'to ascertain at the earliest practicable moment….'" whether they will be
facing a class or individual suit.
       Rule 23's "an early practicable time" is not the same as this Court's reference to Local
Rule 23.1's "the earliest practicable moment."  Indeed, "the earliest practicable moment",
strongly suggests a time leash even shorter than the older version of class action Rule 23(C)(1)
which stated that the Court must make a certification determination "as soon as practicable."

[6] See Rodgers v. United States Steel Corporation, 508 F.2d 152, 163-164 (3rd Cir. 1975), where
the court held that district court local rules "must be consistent with the policy underlying Rule
23; that is, a policy in favor of having litigation, in which common interests or common
questions of law or fact prevail, disposed of where feasible in a single lawsuit."  In Rodgers, the
court held that a local rule barring communication with class members was inconsistent with
Rule 23, and therefore violative of F.R.C.P. 83, which requires that local rules not contravene the
Federal Rules of Civil Procedure.

In particular, one of the key holdings cited by the Court was expressly based on the former text of the Federal Rule. See Order at 19 (citing to the holding in McCarthy, 741 F.2d at 1411, that the local rule "implements the policy behind the already extant requirement of Fed. R. Civ. P. 23(c)(1) that class certification decisions be made 'as soon as practicable.'").

This Court stated in a footnote that because the 2003 change to Federal Rule 23 pertained to the timing of the class certification decision, but not to the class certification motion, the Federal Rule "does nothing to undermine the local rule requiring parties to raise the issue in an expeditious manner." Order at 19 n.6. Like the current version of the rule, the stricter previous version of the Federal Rule 23 addressed only the timing of a class certification *decision*, not the timing of the *motion* itself. Yet this Federal Rule was at the heart of the interpretation of Local Rule 23.1 in the older cases cited by the Court. See e.g., McCarthy, 741 F.2d at 1411 (referring to the older version of F.R.C.P 23(c)(1) and finding that the local rule "implements the policy behind the already extant requirement of Fed. R. Civ. P. 23(c)(1) that class certification decisions be made 'as soon as practicable.'"). Thus, as the authorities cited by the Court themselves indicate, the language of the Federal Rule has a direct bearing on the proper interpretation of Local Rule 23.1.

The commentary to the 2003 Amendment is in tension with the Court's refusal to read Local Rule 23.1 as applicable to anything other than the initial complaint. For example, the Advisory Committee notes to the 2003 amendments state that "[t]he 'as soon as practicable' exaction neither reflect[ed] prevailing practice nor capture[d] the many valid reasons that may justify deferring the initial certification decision." Similarly, the Committee on Rules of Practice And Procedure elaborated in the September 2002 Report of the Judicial Conference that "[i]n fact, [the 2003 Amendment] authorizes the more flexible approach many courts take to class-

action litigation, recognizing the important consequences to the parties of the court's decision on certification." See Report of the Judicial Conference available at http://www.uscourts.gov/rules/jc09-2002/Report.pdf.

In this case, running Local Rule 23.1 from the Amended Complaint is supported by "many valid reasons that may justify deferring the initial certification decision." Fed. R. Civ. P. 23, Advisory Committee Notes to 2003 Amendment. For example, after Plaintiffs filed their initial complaint, the Department obtained *five extensions of time totaling* approximately five and one-half months, to answer or move to dismiss the complaint. In response to the Department's motion and consistent with ordinary practice, Plaintiffs made material changes to their Amended Complaint. Because the Amended Complaint differed significantly from the initial complaint, Local Rule 23.1 is most sensibly read to apply to the Amended Complaint and allow a motion for class certification within 90 days. It was only after the Amended Complaint was filed that this Court could realistically assess the merits of class certification.

## C.  The Court's Interpretation of Local Rule 23.1 Will Have Undesirable Results.

The Advisory Notes to the 2003 Amendments stress that a prime reason Rule 23 was amended was the recognition that a class plaintiff often needs to take substantial discovery before making a motion for class certification.[7] The inescapable inference, consequently, is that one purpose of the 2003 Amendment is to give the plaintiff more time to conduct discovery and

---

[7] The period 90 days within filing of the initial complaint may not be an "early practicable time" for the determination of class certification given that (1) Plaintiff has 120 days to serve the Defendant pursuant to F.R.C.P. Rule 4(m) and the Defendant may not be served within 90 days; (2) many Defendant's will not have filed a response to the initial complaint within 90 days of the initial complaint; (3) there will likely be insufficient time to gather information necessary to make the certification decision; (4) there will be insufficient time to conduct discovery for class allegations; and (5) there is insufficient time to allow for Plaintiffs to amend their complaint before moving for certification. In fact, until the Department answers, it is not even certain what position they will take on the propriety of certification of this action.

then move for class certification.  Additionally, this Court's position that the 2003 amendments to Rule 23 do not affect when plaintiff must move for class certification, would, if affirmed, result in extremely wasteful litigation.

Under this Court's scenario, plaintiffs would be forced to move for class certification within 90 days of the original complaint and then move for a stay while fact discovery and expert discovery are taken.  Then, if such discovery requires plaintiffs to change their class definition, the plaintiff would have to make another motion for class certification reflecting the results of discovery.  In Richard v. Bell Atlantic Corp., 976 F.Supp. 40, 52, n.19 (D.D.C. 1997), Judge Urbina criticized exactly such a suggestion by a class action defendant.  Judge Urbina declared "the defendants' suggestion that the plaintiffs should have filed their motion for class certification within 90 days and then requested that the Court stay a ruling on that motion until after pre-certification discovery appear to countenance an extremely inefficient procedure . . . Such duplication of that burden would impose a substantial burden to the parties and to the Court and would have been inconsistent with the mandate of Fed.R.Civ.P. 1, which requires that the Federal Rules of Civil Procedure 'construed and administered to secure to the just, speedy, and inexpensive determination of every action.'"[8]

---

[8] Other courts have also recognized that the Amendment to F.R.C.P. 23 has afforded the parties and the court with the time necessary to gather information relevant to the certification decision. See Arnold v. Arizona Dept. of Public Safety, 233 F.R.D. 537, 541 (D. Ariz. 2005).  Indeed, one district court has already revised its local rule to comport with the dictates of the revised Federal Rule of Civil Procedure 23.  In 2004, District Court for the Southern District of Florida amended its own version of this Court's Local Rule 23.1(b).  According to the revised Rule's comments, "Local Rule 23.1.3 is amended to delete the requirement that a class action plaintiff move, within ninety days after the filing of the complaint, for a determination under Fed. Civ. P 23(c)(1) as to whether the action should be maintained as a class action, to conform to the December 2003 amendment to Fed. R. Civ. P. 23(c)(1)(A), which clarifies that a Court may defer the decision on whether to certify a class if it is prudent to do so."

**D.    Under the Doctrine of *Expresio Unius Est Exclusio Alterius*, Local Rule 23.1(b)'s Failure to Specify "the Initial Complaint" Means that a Plaintiff Has Ninety Days After the Amended Complaint to Apply for Class Certification.**

The maxim of *expresio unius est exclusio alterius* has been defined as follows:

> As…applied to statutory interpretation, where a form of conduct, the manner of its performance and operation, the persons and things to which it refers are designated, there is an inference that all omissions should be understood as exclusions. <u>Sutherland Statutory Construction</u> § 23:43 pp. 304-307.

In this case, D.C. Local Rule 23.1(b) referred only to "a complaint," and not "the initial complaint" or "a pleading purporting to commence a class action." Significantly, the Middle District of Florida, the District of Connecticut, the Northern District of Georgia, the District of Utah and the Central District of California local rules, specifically limit the deadline for filing for class certification by including such language.[9]

Under the *expresio unius est exclusio alterius* rule of construction, the D.C. Rule's designation of "a complaint" and its failure to use the term "the initial complaint" (or similar term) must be understood as a deliberate exclusion of the "initial complaint." Therefore, this Court's interpretation that Rule 23.1(b)'s deadline begins to run from the filing of the initial complaint is erroneous.

**II.    STRIKING CLASS CLAIMS IS NOT THE REQUIRED SANCTION FOR A LOCAL RULE 23.1 VIOLATION AND IS NOT WARRANTED IN THIS CASE.**

**A.    Several Cases From This Circuit Indicate That Striking Class Claims Is Not The Proper Remedy For Violating Local Rules, Including Local Rule 23.1.**

Even assuming the Court's interpretation of Local Rule 23.1, automatic dismissal of Plaintiffs' class claims was not warranted. Rather, as several cases in this Circuit indicate, the

---

[9] The Florida Rule mentions the "initial complaint." California and Utah use "a pleading purporting to commence a class action." Connecticut and the Northern District of Georgia require, respectively, a class motion within 60 days (Connecticut) and 90 days (Georgia) after the filing of "the complaint."

Court must weigh the equities of the case before striking Plaintiffs' class claims. <u>Griffin v. NPR</u>, 1977 U.S. Dist. LEXIS 16560 (Apr. 1, 1977) ("Although plaintiffs did not file their motion for class certification within the time prescribed by Local Rule 1-13(b) . . ., [t]he defendant has not been prejudiced by the untimely filing.  Upon consideration of the foregoing and the caveat of the Court of Appeals in <u>Gray v. Greyhound Line</u>*s*, 545 F.2d 169, 13 FEP Cases 1401 (D.C. Cir. 1976) concerning dismissals of class allegations for failure to comply with local time limits, defendant's objection based upon untimely filing are OVERRULED."); <u>see, e.g.</u>, <u>Gray v. Greyhound Lines</u>, 545 F.2d 169, 173 (D.C. Cir. 1976) ("The District Court's decision to dismiss the class allegations solely because of plaintiffs' failure to file a timely motion for certification, and without any consideration of the factors made relevant by Rule 23(b), Fed. R. Civ. P., is unusual. . . . It is not clear that dismissal of the class allegations for failure to comply with the local time limit is consistent with Rule 23(c)(1), FED. R. CIV. P., which may require the court to determine the merits of the claim to representative status."); <u>Martin v. PEPCO</u>, 1989 U.S. Dist. LEXIS 15407, at *24-25 (D.D.C. 1989) ("The court recognizes that, as a general matter, it may be **unduly harsh** for a trial court to strike a class action allegation solely because plaintiffs failed to make a timely certification motion.") (emphasis added).

Similarly, in the context of other local rule violations, the D.C. Circuit has cautioned that automatic dismissal is not appropriate and that the totality of the circumstances must be reviewed.  <u>See</u>, <u>e.g.</u>, <u>Lepkowski v. DOT</u>, 804 F.2d 1310, 1314 (D.C. Cir. 1986) ("Our concurring colleague is troubled that our analysis embodies a form of mechanical jurisprudence which exalts the Local Rule to a role of unduly dispositive preeminence.  We seek to allay these concerns for we have no such intent.  To the contrary, we emphatically do not countenance the rigid imposition of the sanctions of dismissal of an automatic or reflexive response to the violation of

a neutral rule of general application. Indeed, we have carefully canvassed the entire record of this

case and reviewed the totality of the circumstances leading up to the District Court's dismissal.").

### B. The Court Has an Independent Obligation To Assess Whether a Class Action Is Appropriate, Even Assuming A Violation of Local Rules.

The trial court has an independent obligation to decide whether an action was properly

brought as a class action.  See East Texas Motor Freight System Inc. v. Rodriguez, 431 U.S. 395,

405 (1977); Gore v. Turner, 563 F.2d 159, 165 (5th Cir. 1977).  This independent obligation

requires the Court to weigh equitable considerations before striking class allegations.[10]

In the instant case, the Court should consider that hundreds if not thousands of absent

class members have relied on the pendancy of this case as a class since the time the Howard

Complaint was filed in 1995.  The class was at one point provisionally certified by the EEOC,

and remained certified to an extent from approximately July 20, 2000 to October 5, 2005, the

date when Plaintiffs filed their initial complaint in this matter.  A great number of people have

EEOC charges that have been subsumed in this action.  The Court has an obligation to consider

the interests of those potential class members and the injustice that will result if they are

precluded from obtaining relief in this disparate impact case.  The Court should also consider

that Plaintiffs acted in good-faith, as discussed herein, and based their actions on a reasonable

interpretation of the Local Rule.

Notably, in Jones, relied upon by the Court in its Order, the Northern District of Florida

did not automatically strike the class claims for failure to comply with the local rule.  Rather,

Jones went on to "determine the consequences of Plaintiff's failure to comply," 2006 U.S. Dist.

LEXIS 19630, at *6-8, discussing Supreme Court  precedent supporting a court's independent

---

[10] See In re Talbert, 347 B.R. 804, 807-808 (Bkrtcy. E.D. La. 2005) (exercising the "independent obligation" and determining that plaintiffs failure to move for class certification within 90 days was not fatal to maintaining the suit as a class action).

obligation to assess whether a class action is appropriate, even if a motion is not brought in time. Jones ultimately concluded that plaintiffs were not adequate class representatives, under FRCP 23(a)(4) because "Plaintiffs' Amended Complaint is clearly a pretext to circumvent the requirement of Local Rule 23.1(B)." Id. at *9. In stark contrast, Plaintiffs' amendment was substantive and made in good faith, and was not a pretext to circumvent local rules. Thus, even under Jones, the Court should not strike Plaintiffs' class claims, but should allow them to proceed on behalf of the class.

C.    **Federal Rule 83(a)(2)'s Admonition That A Nonwillful Failure to Conform to a Requirement of Form Should Not Cause Parties To Lose Rights Further Supports Reconsideration of The Court's Drastic Sanction.**

Pursuant to the Federal Rules of Civil Procedure Rule 83(a)(2): "A local rule imposing a requirement of form shall not be enforced in a manner that causes a party to lose rights because of a nonwillful failure to comply with the requirement." Fed. R. Civ. P. 83(a)(2); see 5 MOORE'S FEDERAL PRACTICE § 23.62 ("Although a practitioner should never be ignorant of or deliberately ignore any of these local rules on class actions, an unintended violation of a local rule need not always be fatal to class certification. Local rules must yield when their requirements conflict with Rule 23. . . . Furthermore, a court may not use a local rule to deprive a party of any of that party's rights so long as the failure to comply with the local rule is not willful."). This rule provides further support to Plaintiffs request for reconsideration, because the Court should not allow the procedural requirements of the Local Rule 23.1(b) to deprive the thousands of class members of their rights where, as here, Plaintiffs' failure to comply was unintentional.

**D.    This Court Failed to Apply Settled Canons Requiring Liberal Construction of the Deadline by which Plaintiffs Were Required to <u>Move for Class Certification.</u>**

It is a basic principle of statutory construction that federal civil rights statutes are remedial and should be liberally construed so that their beneficent objectives may be realized to the fullest extent possible.    <u>See</u> <u>Hamm v. City of Rock Hill</u> 379 U.S. 306 (1964); <u>Phillip v. University of Rochester</u>, 316 F.3d 291 (2nd Cir. 2003) ("To this end courts favor broad and inclusive application of statutory language…to protect and implement civil rights."); <u>Sutherland Statutory Construction</u> (6th Edition 2003, Singer) (West Pub. Co. 2003) §76:6, p. 156-157.

For over four decades, starting with the 1966 modernization of Rule 23 that launched class actions as a potent remedial device, the Supreme Court has recognized that Title VII lawsuits alleging racial or ethnic discrimination are "by their very nature class suits, involving classwide wrongs." <u>East Texas Motor Freight System, Inc. v. Rodriguez</u>, 431 U.S. 395, 405 (1977).  As the Supreme Court noted in <u>Amchem Products, Inc., v. Windsor</u>, 521 U.S. 591, 614 (1997), civil rights cases against parties charged with wrongful class-based discrimination are "prime examples" of classes that deserve class certification.  One of the primary purposes of Federal Rule of Civil Procedure 23 was to facilitate litigation in civil rights claims—like those presented here – challenging systemic practices.  Fed. R. Civ. P. 23(b)(2), Advisory Committee Notes, 39 F.R.D. 69, 102 (1966).  <u>East Texas Motor Freight Sys., Inc. v. Rodriguez</u>, 431 U.S. 395, 405 (1997).[11]

---

[11] <u>See</u> <u>also</u> <u>Gilchrist</u>, 1989 U.S. Dist. LEXIS 7850 at *10 (Federal Rule 23(b)(2) was designed to reach civil rights actions "where a party is charged with discrimination unlawfully against a class"); <u>Barefield v. Chevron U.S.A., Inc.</u>, 1988 WL 188433 at * 2 (it is "often acknowledged [that] (b)(2) was deliberately drafted to facilitate the vindication of civil rights through the class action device").

Given the remedial goals of Title VII and Rule 23, this Court should not have adopted a reading of Local Rule 23.1 that precludes class certification in this case.  In an analogous situation, the D.C. Circuit has warned against "[a] mechanical jurisprudence which exalts the local rule to a role of unduly dispositive preeminence" and thus has refused to "countenance the rigid imposition of the sanctions of dismissal [as a] reflexive response to the violation of a . . . …rule."  See Lepkowski, 804 F.2d at 1314.  By allowing "[s]erious consequences" to "flow" from the Court's reading of Local Rule 23.1, Order at 25, without confronting the remedial goals and liberal construction required by Title VII and Rule 23, the Court ordered unduly harsh and improper sanctions against Plaintiffs.

## III.   PLAINTIFFS ACTED IN GOOD-FAITH; THERFORE, EQUITY DOES NOT WARRANT STRIKING PLAINTIFFS' CLASS CLAIMS.

### A.    Plaintiff's Initial Delay

As is set forth in the accompanying Affidavit of David Sanford, Esq., in January of 2004, Plaintiffs retained SWH to proceed in federal court with this case. See Affidavit of David Sanfiord, attached here as Exhibit 1, at ¶ 13.  Approximately six months earlier, on August 20, 2003, the administrative judge who was temporarily assigned to this matter had issued an Order partially decertifying the class. Id. at ¶12.  Accordingly, on March 5, 2004, SWH filed a 93-page brief with thousands of pages of exhibits, requesting that Administrative Judge Kravetz reconsider Judge Henry's decertification order or alternatively to subclass the D.C. Metropolitan Bureaus. Id. at ¶ 14.

On October 5, 2005, after waiting to no avail for a ruling on the Motion for Reconsideration for approximately eighteen months, SWH filed a Class Action Complaint in this court. Id. at ¶15. By that time, this matter had been pending at the EEOC level *as a class action* for *ten years*. Id.

SWH is a relatively small civil rights firm; in the fall and winter of 2005, there were a total of four attorneys in the Firm's Washington, D.C. office. Id. at ¶ 19. Shortly before filing the complaint, the SWH associate assigned to this case resigned from the Firm. Id. at ¶20. The new attorney hired to replace that associate was assigned numerous other matters in the Firm. Id. At the same time, lead counsel David Sanford was engaged in numerous complicated legal matters that demanded his full time attention. See id. at ¶ 21. As a result of these factors, SWH inadvertently neglected to file a motion within 90 days of the original Class Complaint for class certification or a motion for an extension of time. Id. at ¶ 22.

**B.     Plaintiffs' Subsequent Delay Was Based on Their Good Faith Interpretation of Local Rule 23.1, Any Delay Constituted Excusable Neglect**

The Court's Order reflects that the Court questions Plaintiffs' motive in not filing a class certification motion immediately upon receipt of the government's motion to dismiss. See Order at 24-25. Plaintiffs urge upon the Court that their good-faith reading of the Local Rule was not the result of gamesmanship; indeed, Plaintiffs had no advantage to gain from such actions. Accordingly, Plaintiffs respectfully request the Court's reconsideration of its excusable neglect analysis to account for Plaintiffs' good faith interpretation of the rule and their full respect for local rules. [12]

The Court determined in its Order that Plaintiffs should have moved for an extension when they were alerted by Defendant's March 20, 2006 Motion as to the requirements of Local Rule 23.1(b). However, Plaintiffs did not believe they needed to ask for an immediate extension

---

[12] The Court correctly pointed out that that the determination of excusable neglect is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993). Although Plaintiffs in this Section focus on the excusable neglect standard, this analysis – and Plaintiffs' good faith – is relevant to an assessment of the proper sanction, if any, under Local Rule 23.1 as well as to the Rule 23 analysis that is required in this case. See Section II, supra.

at that time based on their good-faith, reasonable interpretation of Local Rule 23.1(b) as providing ninety days from the filing of an amended complaint within which to file a motion for class certification (or a motion for extension of the same).  See Sanford Affidavit at ¶ 25.  Thus, Plaintiffs' "reason for the delay" was based on their belief that they would be in compliance with the local rule because they intended to amend their complaint.[13]  This belief is evidenced by Plaintiffs' June 8, 2006 Opposition wherein they asserted as their first line of argument that Plaintiffs should be allowed ninety days from the filing of their First Amended Complaint to comply with Local Rule 23.1(b) because "Plaintiffs' First Amended Complaint, which in good faith narrows the class certification sought here and results in no prejudice to Defendant, [would] be the only complaint on record if allowed by the Court."  See Plaintiffs' June 8, 2006 Opposition To Defendant's Motion To Dismiss All Individual Claims, To Dismiss Certain Class Claims, And To Strike All Class Claims.  Plaintiffs, accordingly, did not believe they needed to file an extension until the ninety-day period following their First Amended Complaint, filed on June 8, 2006.[14]

There was and is no controlling DC Circuit authority that would have caused Plaintiffs to think that Local Rule 23.1 does not apply to amended complaints.  Rather, as explained above, courts in this Circuit regularly track the ninety-day rule from amended complaints (even in cases like Weiss, 729 F. Supp. at 148, relied upon by the Court in its Order).  Accordingly, Plaintiffs

---

[13] Plaintiffs' amended their complaint to make the following substantive changes:  (1) to name only the three proper class representatives in this District, thus voiding the venue issues; (2) to redefine the class to explicitly conform to the scope of the administrative complaint; and (3) to modify the named Plaintiffs' claims to reflect only allegations not barred on the basis of timeliness or res judicata.

[14] Plaintiffs complied with this requirement within ninety days of their amended complaint by filing a Motion for Extension of Time to Move for Class Certification on June 23, 2006.

acted in good faith, based on a natural reading of the court's Local Rule and a prior intent to amend their complaint.

As Plaintiffs asserted in their June 8, 2006 Opposition, any alleged delay should be considered excusable neglect. See id. In its February 6, 2007 Order, the Court highlighted that the motion for an extension of time came "after the filing of [Plaintiffs'] June 8, 2006, opposition to the Department's motion and the June 13, 2006, amended complaint," Order at 24, but the Court did not note the D.C. Circuit's holding that the motion requirement under F.R.C.P. Rule 6(b)(2) can be "deemed satisfied" by a Memorandum in Opposition to a Motion to Strike. See Yesudian ex rel. U.S. v. Howard Univ., 270 F.3d 969, 971 (D.C. Cir. 2001). Therefore, in this case, Plaintiffs' Opposition can also be deemed to have met the Rule 6(b)(2) requirements. Plaintiffs believed that they would ultimately be in compliance with Local Rule 23.1(b) once they filed their amended complaint, and they did not perceive that it was necessary to move immediately pursuant to Rule 6(b)(2).

The Court should also consider that Defendant's March 20, 2006 Motion was 87-pages, and that immediately upon receiving it, Plaintiffs needed to request an extension to address the numerous contentions raised by the Defendant. See Plaintiffs' March 20, 2006, Motion For Extension Of Time To File Response/Reply To Defendant's Motion To Dismiss All Individual Claims, To Dismiss Certain Class Claims, And To Strike All Class Claims.

Given Plaintiffs' good faith belief that they would have ninety days from the filing of their amended complaint to comply with the requirements of Local Rule 23.1, the Court should not penalize Plaintiffs for their inability to foresee that the Court would not agree with Plaintiffs reasonable interpretation of Rule 23.1(b). As the Seventh Circuit has pointed out, "the words of a rule are intended to communicate a meaning to those to whom they are addressed, rather than

to carry some gloss, hidden in the minds of the judges who drafted it." <u>Congregation of the</u>

<u>Passion, Holy Cross Province v. Touche, Ross & Co.</u>, 854 F.2d 219, 11 Fed. R. Serv. 3d 1603

(7th Cir. 1988) (citing 12 C. Wright, A. Miller, Fed. Prac. & Proc. § 3153, at 225 (1973)).

> **C.    Local Rule 23.1(b) is Ambiguous as to When the Time to Move for Class Certification Starts Running, and Therefore Should Not Be Construed to <u>Forfeit the African-American Class's Right to Certification</u>**

In <u>Allstate Insurance Company v. Freeman</u>, 160 Mich. App. 349, 361, n.1 (Court of App.

Mich. 1987), the court defined "ambiguous" as follows:

> **"How can we determine if something is ambiguous?  That is determined primarily on the basis of whether it is subject to two possible constructions."** (emphasis added.)  [I would not bold]

<u>See also</u> <u>Sutherland on Statutory Construction</u> § 45:02, pp.11-12 ("Ambiguity exists when a

statute is capable of being understood by reasonably well-informed persons in two or more

senses." <u>citing</u> <u>In re Andover Togs, Inc.</u>, 231 B.R. 521 (Bankruptcy Court, S.D.N.Y. 1999).

Plaintiffs' position is that the plain terms of the Local Rule apply to both initial and

amended complaints.  But, at the very least, Local Rule 23.1(b) is latently ambiguous[15] on the

question of whether the original as opposed to amended complaint begins the running of the

ninety-day deadline for moving to certify a class.  As previously discussed, courts in this and

other circuits with similarly worded local rules have disagreed about whether the original or the

amended complaint starts the ninety-day window.[16]  <u>See</u> <u>supra</u> Section I, subheading B.

---

[15] Plaintiffs' basic position on this motion is that Rule 23.1(b)'s "a complaint" means  "any complaint" and includes an amended complaint.  At worst (from Plaintiffs' perspective) the Rule is ambiguous and therefore Class should not be penalized with the loss of class certification.

[16] Plaintiffs' interpretation of the Local Rule is reasonable and well-informed, as evidenced by the fact that other courts have interpreted local rules with the same wording as Local Rule 23.1(b) in the same way that Plaintiffs have interpreted the rule.  In <u>Seligson v. Plum Tree, Inc.</u>, 55 F.R.D. 259, 260 (E.D. Pa. 1972), the court applied "a complaint" language in an analogous local rule to include the plaintiffs' amended complaint.  There, the court found that because the plaintiffs' amended complaint was substantially different from the original complaint both in

24

Moreover, other jurisdictions have words that expressly apply to an initial complaint, creating ambiguity about the meaning of this jurisdiction's differently worded rule.  See supra Section I, subheading A.  Because Rule 23.1(b) is at best ambiguous, it should not be construed to prejudice the Class and forfeit their rights to obtain a remedy for the Department's racially discriminatory employment practices.

The inherent ambiguity of the local rule at issue compels a less rigid application of the filing requirements.  Courts routinely absolve parties from complying with ambiguous local rules.  U.S. v. Roberts, 978 F.2d 17, 22-24 (1st Cir. 1992) (finding that government's  delay in opposing a motion to suppress "was not intentional and "resulted from a simple mistake-one that was fully understandable in light of the local rule's ambiguity" warranting reconsideration; finding that "at the very worst, the government inadvertently missed a filing deadline in a situation where a miasma of doubt surrounded the proper interpretation and interplay of the relevant rules"; and holding that "in these circumstances, stony adherence to the district court's debatable interpretation of Local Rule 19(c) was unwarranted."); U.S. for Use and Ben. of Elec. Machinery Enterprises of Puerto Rico, Inc. v. Fraya, S.E. and Continental Ins. Co., 145 F.3d 1 (1st Cir. 1998) (holding that the district court improperly failed to consider an ambiguity in the local rules governing the proper date by which a party must respond to summary judgment (citing Roberts, 978 F.2d at 20)); Zaroff v. Holmes, 379 F.3d 875 (D.C. 1967)(finding that "the

_____

terms of the number of defendants named and the expanded allegations and claims for relief, the ninety-day filing requirement should be applied to the date of the filing of the amended complaint and that the plaintiffs' motion was, therefore, properly filed.  In Stevens v. Citigroup, Inc., 2000 WL 1848593, *5-6 (E.D.Pa. 2000), the Court noted that "Plaintiff filed its Amended Complaint on October 26, 2000 pursuant to Federal Rule of Civil Procedure 15(a)."  The Court then held:  "Thus, arguably, plaintiff has [90 days from the filing of the Amended Complaint] until about January 26, 2000 to certify his case as a class action."  Similarly, in the instant case, because Plaintiffs' were amending as a matter of right, they should have been able to proceed to file a motion for an extension within ninety days of filing their amended complaint.

local rules in their present condition are, at best, ambiguous" and that the court is "not prepared, in the circumstances of this case, to resolve that ambiguity against appellant."); <u>North Carolina Alliance for Transp. Reform, Inc. v. U.S. Dept. of Transp.</u>, 104 F. Supp.2d 599 (M.D.N.C. 2000) (tolling deadline for motion for attorney's fees and expenses because of ambiguity created by a local rule regarding the statutory time limit); <u>Murphy v. Jones</u>, 801 F. Supp 283 (E.D. Mo. 1992) (finding that failure to comply with Local Rule 37(A)(1) should not automatically result in the dismissal of an action, "given the ambiguous language used in Local Rule 37 and given plaintiff's eventual compliance with the rule" and because "dismissal would be too harsh a penalty.")

### D. Defendant Never Asserted That It Was Prejudiced By Any Alleged Delay.

Although Plaintiffs' primary focus of this Motion for Reconsideration is ensuring that the Court is aware of Plaintiffs' good faith with respect to Local Rule 23.1, it is also worth noting that the government has not asserted in any of its pleadings that it was prejudiced by the Plaintiff's alleged delay in moving for class certification. <u>See</u> Defendant's Reply Brief; <u>see</u> <u>also</u> Defendant's Renewed Motion to Dismiss. Nor could any prejudice exist because this case was treated as a class action throughout its *ten-year history* at the administrative level and Defendant has been well aware of the scope and nature of the class claims. Plaintiffs' class action allegations were set forth in the initial complaint, and a more specific explanation of the scope of class than already provided in Plaintiffs' initial and amended complaints is not practicable before the Plaintiffs have the opportunity to gather information and conduct discovery. Moreover, Plaintiffs' Amended Complaint actually narrows the class, to the government's benefit.

In discussing prejudice to the government, the Court relies on the outdated standard of F.R.C.P. 23(c), quoting <u>McCarthy</u> for the holding that defendants should be able "to ascertain at

the earliest practicable moment whether they will be facing a limited number of known, identifiable plaintiffs or whether they will instead be facing a much larger mass of generally unknown plaintiffs." Order at 23. But, as explained above, <u>see</u> <u>supra</u> Section I, subheading C, recent amendments to Federal Rule 23(c) have superseded the reasoning of <u>McCarthy</u>, which was based on the Rule's old language.

## CONCLUSION

Upon consideration of the foregoing, Plaintiffs request that the Court reinstate class claims.  Plaintiffs also request oral argument on this matter.  If the Court declines to reconsider its February 6, 2007 ruling, Plaintiffs respectfully request that the Court certify the issue for interlocutory review pursuant to Fed. R. Civ. P. 23(f) or under the Cohen collateral order doctrine.[17]

Dated: February 21, 2007                    Respectfully submitted,

                                            SANFORD, WITTELS & HEISLER, LLP
                                            By: _/s/ David Sanford_____

---

[17] The Court's February 6, 2007 Opinion also satisfies all three prongs of the Cohen "collateral order doctrine."  The Supreme Court has held that under 28 U.S.C. §1291, the phrase "final decision" also encompasses a "small class" of district court orders that do not necessarily conclude the litigation, but do "finally determine claims of right separable from, and collateral to, rights asserted in the action."  Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949).  The Cohen Court described these orders as "too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." Id.  In order to be immediately appealable, the order must: (1) "conclusively determine the disputed question"; (2) "resolve an important issue completely separate from the merits of the action"; and (3) "be effectively unreviewable on appeal from a final judgment." Coopers & Lybrand v. Livesay, 437 U.S. 463, 468 (1978).

There can be no dispute that the Court's Memorandum Opinion "conclusively determines the disputed question" of Plaintiffs' ability to proceed as a class in this litigation.  If this case proceeds under the Court's Order, Plaintiffs' class claims will never again be addressed, let alone litigated. a final judgment in this case would have nothing to do with class claims; rather, since the district court's order would only allow three individuals' claims to go forward on an individual basis, no final judgment in this case would refer to the Order in question and thus any appeal must take place immediately.  The Court's threshold inquiry into whether Plaintiffs' class claims can ever be certified in no way depends on the merits; it was a question of interpretation and procedure.

As the Court is well aware, the effect of its Order is the dismissal with prejudice of a civil rights class action case that was pending for thirteen years and which may have encompassed an even longer liability period.  Despite the fact that the Court's Order was not a denial of a class certification motion per se, its effect was the exact same – to deny potentially thousands of individuals their right to a day in court as a class.  Instead, this exceedingly large group will be forced to face the judicial system as individuals and bear the immeasurably large burden of proving disparate impact claims on a person-by-person basis.  The loss of judicial economy is staggering as well.

David Sanford, D.C. Bar No. 457933
Meenoo Chahbazi, Admitted Pro Hac Vice
Shayna Bloom, D.C. Bar No. 498105
1666 Connecticut Ave., NW
Suite 310
Washington, D.C. 20009
Telephone: (202) 742-7780
Facsimile:  (202) 742-7776

Steven L. Wittels (SLW-8110)
Jeremy Heisler (JH-0145)
**SANFORD, WITTELS & HEISLER, LLP**
950 Third Avenue, 10th Floor
New York, NY 10022
Telephone: (646) 723-2947
Facsimile: (646) 723-2948

Grant Morris, D.C. Bar No. 926253
**LAW OFFICES OF GRANT E. MORRIS**
1666 Connecticut Ave., NW
Suite 310
Washington, D.C. 20009
Telephone: (202) 742-7783
Facsimile:  (202) 742-7776

Bruce V. Spiva, D.C. Bar. No. 443754
Kathleen R. Hartnett, D.C. Bar. No. 483250
**SPIVA & HARTNETT LLP**
1776 Massachusetts Avenue, N.W.
Suite 600
Washington, D.C. 20036
Telephone: (202) 785-0601
Facsimile:  (202) 785-0697

*Attorneys for the Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 21, 2007, a copy of the foregoing was filed electronically. Notice of filing will be sent to the following parties by operation of the Court's electronic filing system. The parties may access this filing through the Court's system.

Peter Smith, Esq.
Megan Rose, Esq.
United States Attorney's Office
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530

__/s/  David Sanford_____
David Sanford