UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANET HOWARD, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>CARLOS GUTIERREZ, Secretary,<br>U.S. Department of Commerce,<br><br>  Defendant. | )<br>)<br>)<br>)<br>)<br>)   Civil Action No. 05-1968 (JDB)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
OR, IN THE ALTERANTIVE, FOR SUMMARY JUDGMENT**

Defendant, by and through counsel, respectfully moves the Court, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and (b)(6), to dismiss the totality of the claims set forth in Plaintiffs' Second Amended Complaint. Alternatively, pursuant to Rule 56, summary judgment is proper on Plaintiffs' claims as there are no material issues of fact that would prevent this Court from entering a judgment on Defendant's behalf as a matter of law

In support of this Motion, Defendant respectfully refers the Court to the accompanying Memorandum of Points and Authorities, Statement of Undisputed Facts, and attached exhibits. Because this is a dispositive motion, Defendant has not sought Plaintiff's consent. *See* L. Civ. R. 7(m).

Dated: February 21, 2008
         Washington, DC

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney

OF COUNSEL:
Tiffany D. Blakey, Esq.
Office Of The General Counsel
U.S. Department of Commerce

        /s/
_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

        /s/
_____
BRIAN P. HUDAK
Assistant United States Attorney
555 4th Street, NW
Washington, DC 20530
(202) 514-7143

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANET HOWARD, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 05-1968 (JDB) |
| ) | |
| CARLOS GUTIERREZ, Secretary, ) | |
| U.S. Department of Commerce, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT, OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

For the reasons stated below, Defendant Carlos Gutierrez ("Defendant"), Secretary, United States Department of Commerce ("DOC," or "Department"), hereby respectfully moves, pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1) and (6), to dismiss the Second Amended Complaint ("SAC" or "Complaint") filed by Plaintiffs Janet Howard ("Howard"), Joyce E. Megginson ("Megginson"), and Tanya Ward Jordan ("Jordan") in this action. In the alternative, Defendant respectfully moves, pursuant to Rule 56, for summary judgment on Plaintiffs' claims.

**PRELIMINARY STATEMENT**

Plaintiffs have failed to adequately plead individual disparate impact claims. Instead of abandoning the class-wide nature of the allegations set forth in the now-inoperative First Amended Complaint ("FAC"), Plaintiffs have merely omitted the word "class" from the FAC in filing their Second Amended Complaint ("SAC"). Indeed, the SAC continues to plead disparate impact claims as if such claims are being asserted on behalf of a DOC employee class. For a number of reasons, Plaintiffs' attempt to recast their class claims as individual claims should fail.

*First*, Jordan and Megginson have failed to plead how they were injured by the alleged wrongful performance evaluation system.[1]  The Court specifically directed that "[t]he amended complaint should allege, with respect to each of the lead plaintiffs, discrete acts that occurred as a result of the neutral DOC policy that is alleged to have a disparate impact on African Americans."  Memo. Op. of 02/06/2007 at 12, n.2.  Instead of complying with this direction, Plaintiffs merely added a lengthy description of the history of their administrative disparate treatment complaints against the DOC and other irrelevant allegations.  Indeed, beyond conclusory allegations of generalized harm, Jordan and Megginson have failed to allege that they were harmed by (*i.e.*, received lower performance ratings from) the alleged DOC performance appraisal system -- which presumably contains the as-of-now unidentified neutral, but discriminatory, practices and policies.

*Second*, Plaintiffs have not identified a neutral-employment practice that purportedly had a disparate impact on them due to their protected status.  Instead, Plaintiffs summarily allege that Commerce maintained "uniform policies regarding performance appraisals, promulgated by the main office and applicable across Bureaus" (SAC at ¶¶ 2, 219), which had an alleged disparate impact on them as African-American, non-supervisory, salaried employees of DOC.  *See* SAC at ¶ 1.  This allegation, which seeks to label the entire alleged performance appraisal system as overly subjective and discriminatory, is insufficient to state a disparate impact claim.  Indeed, Plaintiffs must identify particular practices or policies to which they were subjected as the basis for a disparate impact claim.  Plaintiffs fail to fulfill this requirement, and thus, the SAC should be dismissed.

---

[1]    As noted below, although Plaintiffs allege that the DOC performance appraisal system is overly subjective, Plaintiffs fail to identify any particular practices or policies in that decision making process that are neutral, but are alleged to have a discriminatory effect.

*Third*, the insufficiency of Plaintiffs' failure to identify particular practices or policies is reinforced and exasperated when viewed in light of the DOC's systems for performance appraisals. That is, given the decentralized and dynamic nature of the DOC's system for performance appraisals, there exists no singular or uniform performance appraisal process for all of DOC's bureaus during the applicable time period. Accordingly, Plaintiffs' individual disparate impact claims premised upon such "uniform policies" fail.

*Fourth*, Plaintiffs have failed to adequately plead causation. Even if Plaintiffs' broad "identification" allegations are sufficient, Plaintiffs have failed to plead that non-African Americans, who were subject to the same performance appraisal system as Plaintiffs, were given better performance evaluations under such system than African Americans. Instead, Plaintiffs include a generic set of statistics that merely show that there are less African American employees than non-African American employees in "professional positions" within DOC at large. These general causation allegations are insufficient. Plaintiffs have not adequately pled that African Americans who were subject to the same performance appraisal system as Plaintiffs, were disparately impacted by such system -- *i.e.*, received lower performance appraisals than non-African Americans.

*Fifth*, Plaintiffs' Title VII disparate impact claims are barred by Plaintiffs' failure to exhaust their administrative remedies, the applicable statute of limitations, the doctrine of *res judicata* and/or prior settlements. Although Defendant does not wish to rehash arguments presented to the Court in its Renewed Motion to Dismiss All Individual Claims, To Dismiss Class Claims, and To Strike Class Claims, filed July 31, 2006 ("FAC Motion"), Defendant believes that Plaintiffs' numerous administrative complaints, some of which are now expressly noted in the SAC, do not support Plaintiffs' ability to bring this action for reasons that were not presented to the Court in the FAC Motion.

*Lastly*, Jordan fails to adequately plead her Rehabilitation Act claim. That is, the only portion of the FAC that pled any facts concerning such a claim (FAC at ¶¶ 84-88) has now been omitted from the SAC. Now, the only allegations concerning Jordan's Rehabilitation Act claim are the legal conclusions contained in Count II of the SAC. These legal conclusions are insufficient to state a claim upon which relief can be granted, and thus, Jordan's Rehabilitation Act claim should be dismissed.

## BACKGROUND[2]

In order to avoid repetition, Defendant hereby incorporates by reference the "Background" section set forth in its FAC Motion (Docket Entry No. 35), the exhibits referenced therein, and its Statement of Undisputed Facts submitted herewith. In order to further focus the issues on this Motion, Defendant also includes the following brief summary of background information, which highlights and summarizes the allegations and evidence most relevant to this Motion.

## I.    RELEVANT PROCEDURAL HISTORY

Plaintiffs filed the original Complaint in this action on October 5, 2005. *See* Compl., Docket Entry No. 1. Thereafter, Plaintiffs filed the FAC on June 13, 2006. *See* FAC, Docket Entry No. 28. After extensive briefing, the Court granted Defendant's motion to strike the class claims in the FAC, denied Defendant's motion to dismiss the individual claims in the FAC, and granted Plaintiffs leave to file a SAC. *See* Memo. Op. of 02/06/2007, Docket Entry No. 50. In its Memorandum Opinion, the Court specifically instructed Plaintiffs that the SAC "should

---

[2]    Plaintiff should take notice that any factual assertions contained in the documents attached to this motion or incorporated or referenced herein may be accepted by the Court as true unless Plaintiff submits his own affidavit or other documentary evidence contradicting the assertions in such documents. *See Neal v. Kelly*, 963 F.2d 453, 456-57 (D.C. Cir. 1992); LCvR 7(h); Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.").

allege, with respect to each of the lead plaintiffs, discrete acts that occurred as a result of the neutral DOC policy that is alleged to have a disparate impact on African Americans." *Id.* at 12, n.2.

Following briefing and consideration of Plaintiffs' motion for reconsideration, Plaintiffs filed the SAC on December 11, 2007. *See* SAC, Docket Entry No. 70. In filing the SAC, Plaintiffs began by apparently copying the FAC and deleting any allegation concerning a "class." Accordingly, the SAC and the FAC are largely identical aside from the exclusion of allegations concerning the putative class and the following slight modifications: (a) Plaintiffs included in the SAC a summary of their past administrative complaints and other events unrelated to performance appraisals (*see* SAC at ¶¶ 39-93, 105-18, 122, 131-49); (b) Plaintiffs reworded a few paragraphs (*see* SAC at ¶¶ 103-04, 121, 125-28, 130); and (c) Plaintiffs omitted all factual allegations concerning Jordan's Rehabilitation Act claim. *Compare* FAC at ¶¶ 84-88, *with* SAC at pp. 20-25 (the SAC section concerning Jordan's claims). Indeed, Plaintiffs continue to aver vague and sweeping allegations concerning DOC as a whole and bureaus other than their own, without alleging how such allegations are relevant to Plaintiffs' claims or what practices and policies were applied to them causing them injury.

## II.    SUMMARY OF DISPARATE IMPACT ALLEGATIONS IN THE SAC.

### A.    Plaintiffs Fail to Identify any Neutral, But Discriminatory in Effect, Practices or Policies that Could Serve as a Basis for a Disparate Impact Claim.

From the face of the SAC, Plaintiffs rely upon the same insufficient, conclusory allegations contained in the FAC to identify the alleged policy or practice upon which Plaintiffs' disparate impact claims are premised. Plaintiffs begin the SAC by summarizing their claim, alleging that "[DOC's] uniform policies regarding performance appraisals, promulgated by the main office and applicable across Bureaus, adversely affect promotions and related promotional

opportunities for these plaintiffs." SAC at ¶ 2. Plaintiffs conclude the SAC by stating one claim of disparate impact discrimination on an "All Plaintiffs against Defendant" basis (SAC at 41), alleging that "[t]he plaintiffs have been subjected to systematic racial discrimination in the form of performance evaluation practices that have an unlawful disparate impact on their employment opportunities." SAC at ¶ 219. In between these bookend conclusions, Plaintiffs do not identify which employment practices or policies form the basis of their disparate impact claims. Instead, they merely repeat conclusory allegations and general complaints that DOC's allegedly uniform appraisal process is "subjective." *See* SAC at ¶¶ 21, 97, 121.

Moreover, the generalized critiques of the alleged DOC uniform performance appraisal system by Dr. David Martin are similarly insufficient. *See* SAC at ¶ 164. These critiques -- which include the vague: "[t]ransition from generic to specific elements in the evaluation," and the sweeping: "[a]ny human resource decision, such as promotion, pay, training, etc., which is based on this type of performance appraisal is also flawed" (*see id.*) -- are little more than general complaints based upon a misguided conflation of DOC's varied appraisal systems. Indeed, Dr. Martin's generalized critiques do not identify particular neutral practices or policies that were applied to Plaintiffs and that disparately impacted them as African American employees.

**B.    Plaintiffs Do Not Adequately Plead Causation.**

There are no allegations in the SAC concerning causation that could nudge Plaintiffs' claims from the conceivable to the plausible. With regards to causation, Plaintiffs plead two varieties of insufficient allegations. *First,* the SAC is rife with legal conclusions masquerading as factual allegations that "the subjective decision making associated with . . . performance appraisals has had a direct and adverse impact" on Plaintiffs as African American employees. *See, e.g.*, SAC at ¶ 21. *Second,* Plaintiffs attempt to plead causation by alleging certain statistics,

which in the light most favorable to Plaintiffs, tend to show that there are less African American employees in higher GS and SES levels than (i) white employees in such levels, and (ii) African American employees in lower GS levels. *See* SAC at ¶¶ 167-73. These statistics, even with such a favorable inference, do not show that African American employees have received lower performance appraisals due to the alleged subjective performance appraisal system. The SAC does not contain statistics or any other allegations that makes plausible the notion that the alleged subjective performance appraisal system had a disparate impact on Plaintiffs as African American employees.

## III.    DOC PERFORMANCE EVALUATION SYSTEMS.

Plaintiffs' notion of a singular and uniform DOC performance appraisal system is flatly contradicted by indisputable evidence.

### A.    <u>Overview of DOC's Performance Evaluation Systems.</u>

As noted in DOC's FAC Motion, the DOC is a large and organizationally complex federal agency, which includes 15 different bureaus each with its own mission and specialized workforce. *See* FAC Mot. at 10-12, 15-24. Moreover, DOC utilizes six different personnel systems. *See* FAC Mot. at 25-28. By delegation, each DOC bureau has the authority "to make human resource management decision, to administer human resources programs and activities, and to effect personnel actions." FAC Mot. at 28-29, Ex. M (Jefferson Decl. at ¶¶ 24-26, Attach. 3). Specifically, each bureau has the authority, among other things, to implement a bureau-specific Merit Assignment Plan, which governs promotion and evaluation practices. FAC Mot. at 29, Exs. P (Kirkner Decl. at ¶ 9), Q (Martin Decl. at ¶ 8-9), R (Meadows Decl. at ¶ 8), T (Ribas Decl. at ¶¶ 5, 10-11), and V (Smith Decl. at ¶¶ 14-16).

From 1995 to 2005, DOC bureaus utilized four distinct categories of performance evaluation systems: (i) five-level; (ii) two-level (pass/fail); (iii) Demonstration Project ("Demo

Project"); and (iv) the Alternative Personnel Management System ("APMS").  *See* FAC Mot. at 32-33, Exs. S (Osver Decl. at ¶¶ 3, 8), N (Focarino Decl at ¶ 3), X (Ott Decl. at ¶¶ 4-7), and U (Russell Decl. at ¶¶ 4-5).  While each bureau's system shared basic tenets common to all appraisal systems, each bureau employed specific, objective requirements unique to their system. *See id.*

In October 2005, DOC amended its delegation of performance evaluation by amended Department Administrative Order ("DAO") 202-430, establishing a new five-level performance system for all DOC employees except those in the Demo Project and APMS.  *See* FAC Mot. at 33, n.35, Ex. S (Osver Decl. at ¶ 5).

## B.     Performance Evaluation Systems Applicable to Plaintiffs.

During all relevant times, Howard has been an employee in the Bureau of Industry and Security ("BIS"), formerly known as the Bureau of Export Administration.  *See* 2d Amd. Cmplt. (Docket Entry No. 41), *Howard v. Evans*, Civ. A. No. 04-0756 (PLF), at ¶ 4.  From 1995 to 2005, BIS utilized, and Howard was subject to, BIS's former five-level performance evaluation system.  *See* FAC Mot. at 33, n.35, Ex. S (Osver Decl. at ¶¶ 4-5).  In 2005, pursuant to DAO 202-430, BIS transitioned to the new five-level evaluation system.  *Id.*

During all relevant times, Megginson has been an employee in the National Telecommunications and Information Administration ("NTIA").  SAC at ¶ 14.B.  From 1995 until 2005, Megginson was evaluated using NTIA's former five-level performance evaluation system.  *See* FAC Mot. at 33, n.35, Ex. S (Osver Decl. at ¶¶ 4-5); Calza Decl. at ¶ 5, attached hereto as Exhibit 2 ("Attached Ex. 2").  In 2005, pursuant to DAO 202-430, NTIA transitioned most of its employees, including Megginson, to a new five-level evaluation system.  *Id.*; Calza Decl. at ¶ 6, Attached Ex. 2.

During all relevant times, Jordan has been an employee in the Office of the Secretary ("OS"). SAC at ¶ 14.C. From 1995 until 2004, Jordan was subject to OS's former five-level performance evaluation system. *See* FAC Mot. at 33, n.35, Ex. S (Osver Decl. at ¶¶ 4-5); Lane Decl. at ¶ 5, Attached Ex. 3. In 2004, Jordan was transitioned to the Demo Project evaluation system. *Id*. at ¶ 6. Jordan has remained on the Demo Project system since 2004. *Id.*

## IV.    PLAINTIFFS' ADMINISTRATIVE COMPLAINTS.

### A.    <u>Howard's Administrative Complaints.</u>

As noted in the attached Declaration of Kathryn H. Anderson, Howard has filed 25 formal administrative complaints and 2 informal complaints of discrimination against the DOC. *See* Anderson Decl., Attached Ex. 1. As noted in Defendant's FAC Motion, the administrative complaints designated Howard 1, 2, 5, 7, 8, 11, 12, and 13 were exhausted more than 90 days before the filing of Plaintiffs' original Complaint in this action. *See* FAC Motion at 44-45, n.58; Anderson Decl. at 2-6, Attached Ex. 1. Two of Howard's administrative complaints (*i.e.*, Howard 3 and 4) were resolved by Settlement Agreements. *See* FAC Motion at 45, n.59; Anderson Decl. at 2, Attached Ex. 1. Howard 9, 10, 16 and part of 18 (*i.e.*, the failure to accommodate claim in Howard 18) were the subject of prior or current District Court actions. *See* FAC Motion at 45, n.60; Anderson Decl. at 3-5, Attached Ex. 1. Howard 25 was filed on February 8, 2008, and thus, 180 days have yet to lapse since that complaint was filed. *See* Anderson Decl. at 6, Attached Ex. 1. Howard 26 was an informal complaint upon which no formal administrative complaint was filed. *See id.* Howard 27 was just recently filed and is still in the informal stages. *See id.*

Lastly, one of Howard's administrative complaints, Howard 6, asserts only class claims, not individual claims. *See* FAC Motion at 44, Ex. A. (Howard 6 Admin. Compl.). Moreover, to the extent Howard 6 is deemed to assert individual claims, as noted in the FAC Motion, Howard

did not exhaust her administrative remedies with regards to Howard 6 because Howard failed to

contact an EEO counselor within 45 days of the alleged discrimination.  *See* FAC Motion at 58-

61.  Indeed, in the Howard 6 complaint itself, Howard alleges that "the date on which the most

recent discrimination took place" was August 5, 1994 -- *i.e.*, 80 days before she contacted an

EEO counselor on October 21, 2004.  *See* FAC Motion at 59, Ex. Y (Anderson FAC Decl. at

Attachs. 3, 6).

     As to Howard's other administrative complaints (Howard 14, 15, 17, 19-24):

Howard 14:    Howard alleged that in being denied training she was discriminated against based upon her race, age, disability, and color and retaliated against based upon prior protected activity.  The Howard 14 administrative complaint does not complain of or identify any neutral practice or policy regarding performance appraisals.  *See* Howard 14 Compl. (and related materials), Attached Ex. 4.

Howard 15:    Howard alleged that by not being promoted she was discriminated against based upon her race, age, disability, and color and retaliated against based upon prior protected activity.  The Howard 15 administrative complaint does not complain of or identify any neutral practice or policy regarding performance appraisals.  *See* Howard 15 Compl. (and related materials), Attached Ex. 5.

Howard 17:    Howard alleged that in her performance evaluations she was discriminated against based upon her race, age, disability, and color and retaliated against based upon prior protected activity.  The Howard 17 administrative complaint does not complain of or identify any neutral practice or policy regarding performance appraisals.  *See* Howard 17 Compl. (and related materials), Attached Ex. 6.

Howard 18:    In the portion not subject to Howard's other pending civil action, Howard alleged that in her performance appraisal she was discriminated against based upon her race, age, disability, and national origin and retaliated against based upon prior protected activity.  The Howard 18 administrative complaint does not complain of or identify any neutral practice or policy regarding performance appraisals.  *See* Howard 18 Compl. (and related materials), Attached Ex. 7.

Howard 19:    Howard alleged that in being denied training and performance awards, she was discriminated against based upon her race, age, disability, and color and retaliated against based upon prior protected activity.  The Howard 19 administrative complaint does not complain of or identify any neutral

practice or policy regarding performance appraisals. *See* Howard 19 Compl. (and related materials), Attached Ex. 8.

Howard 20: Howard alleged that in being denied performance awards she was discriminated against based upon her race, age, disability, and color and retaliated against based upon prior protected activity. The Howard 20 administrative complaint does not complain of or identify any neutral practice or policy regarding performance appraisals. *See* Howard 20 Compl. (and related materials), Attached Ex. 9.

Howard 21: Howard alleged that in being denied training and travel she was discriminated against based upon her age, disability, color and national origin. The Howard 21 administrative complaint does not complain of or identify any neutral practice or policy regarding performance appraisals. *See* Howard 21 Compl. (and related materials), Attached Ex. 10.

Howard 22: Howard alleged that in being denied permission to attend the Blacks in Government conference she was retaliated against based upon prior protected activity. The Howard 22 administrative complaint does not complain of or identify any neutral practice or policy regarding performance appraisals. *See* Howard 22 Compl. (and related materials), Attached Ex. 11.

Howard 23: Howard alleged that in being denied sick leave she was discriminated against based upon her race, age, disability, and national origin and retaliated against based upon prior protected activity. The Howard 23 administrative complaint does not complain of or identify any neutral practice or policy regarding performance appraisals. *See* Howard 23 Compl. (and related materials), Attached Ex. 12.

Howard 24: Howard alleged that she was discriminated against based upon her race, age, disability, color, gender, and national origin and retaliated against based upon prior protected activity in being denied a detail opportunity, being placed on a performance improvement plan, receiving an unfair performance evaluation. Howard's claim concerning her FY 2006 performance evaluation was dismissed in the administrative process as untimely. Moreover, the Howard 24 administrative complaint does not complain of or identify any neutral practice or policy regarding performance appraisals. *See* Howard 24 Compl. (and related materials), Attached Ex. 13.

*See* Anderson Decl. at 3-6, Attached Ex. 1. Notably, none of Howard's viable administrative complaints allege an individual claim concerning performance appraisals in which Howard identified or complained of any particular practice or policy.

### B.    Jordan's Administrative Complaints.

Jordan has filed eight formal administrative complaints of discrimination against DOC. The administrative complaints designated Jordan 1, 2 and 4 were settled by Jordan and the DOC. *See* Anderson Decl. at 6-7, Attached Ex. 1.  The administrative complaints designated Jordan 3 and 5 were finalized in the administrative process more than 90 days before the original Complaint in this action was filed, and did not allege discrimination in performance evaluations -- Jordan 3 concerned an alleged failure to promote; and Jordan 5 alleged discrimination in the processing of Jordan's prior administrative complaints.  *See* Anderson Decl. at 7, Attached Ex. 1. Two of Jordan's remaining three complaints did not allege discrimination regarding performance appraisals -- Jordan 6 concerned an alleged failure to promote (*see id.*); and Jordan 7 concerned an alleged failure to provide a reasonable accommodation and allegedly unfair position and duty reassignments.  *See id.*; *Jordan v. Evans*, Civ. A. No. 04-0356 (RJL), Docket Entry No. 13 (1st Amd. Compl.).  Lastly, although Jordan 8 alleged discrimination concerning a performance appraisal, Jordan alleged discrimination concerning such appraisal not on the basis of race, but rather based upon reprisal and disability; moreover, Jordan did not identify or complain of any problematic neutral practices or policies in alleging such discrimination.  *See* Anderson Decl. at 8, Attached Ex. 1; Jordan 8 Compl. (and related materials), Attached. Ex. 14.

### C.    Megginson's Administrative Complaints.

Megginson has filed fifteen formal administrative complaints against the DOC.  *See* Anderson Decl. at 8-11, Attached Ex. 1.  As noted in the FAC Motion, the administrative processing of each of these fifteen complaints was completed more than 90 days before the original Complaint in this action was filed.  *See* FAC Motion at 49.  Moreover, the administrative complaints designated Megginson 1-4, 8-11, 13, and 15, alleged discrimination in areas other than performance evaluations.  *See* Anderson Decl. at 8-11, Attached Ex. 1.

## ARGUMENT

For the following reasons, the SAC should be dismissed.

## I.    MOTION TO DISMISS AND SUMMARY JUDGMENT STANDARDS.

### A.    Lack of Subject Matter Jurisdiction.

 "The court has an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority[.]"  *Judicial Watch, Inc. v. U.S. Food & Drug Admin.*, 514 F. Supp. 2d 84, 86 (D.D.C. 2007) (Lamberth, J.).  On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction, "[a] plaintiff bears the burden of establishing by a preponderance of the evidence that the Court possesses jurisdiction." *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Homeland Sec.*, --- F. Supp. 2d ---, 2007 WL 4374030, at *2 (D.D.C. Dec. 17, 2007) (Lamberth, J.).  That is, "Federal courts are courts of limited jurisdiction and the law presumes that a cause lies outside this limited jurisdiction." *Larsen v. U.S. Navy*, 486 F. Supp. 2d 11, 18 (D.D.C. 2007) (Urbina, J.) (internal quotations omitted).  For the reasons stated below, the Court lacks subject matter jurisdiction over Jordan's and Megginson's disparate impact claims because from the face of the SAC they lack standing -- *i.e.*, Jordan and Megginson have failed to plead discrete acts performed as a result of the unidentified neutral DOC practice of policy that harmed Plaintiffs.[3]

### B.    Failure to State A Claim Upon Which Relief Can Be Granted.

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), the Court will dismiss a claim if the complaint fails to plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S. Ct. 1955, 1974 (2007) (clarifying the standard from *Conley v. Gibson*, 355 U.S.

---

[3]      In the event this pleading failure is deemed a deficiency in Plaintiffs' claims, as opposed to their standing, Defendant alternatively moves pursuant to Rule 12(b)(6) on this pleading failure.

41, 47 (1957)); *see also In re Sealed Case*, 494 F.3d 139, 145 (D.C. Cir. 2007), *citing Twombly*. Hence, the focus is on the language in the complaint, and whether that language sets forth sufficient factual allegations to support Plaintiffs' claims for relief.  *Id.*  Indeed, "[a]lthough 'detailed factual allegations' are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the 'grounds' of 'entitle[ment] to relief,' a plaintiff must furnish 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Robinson-Reeder v. AM. Council on Educ.*, --- F. Supp. 2d ---, 2008 WL 224278, at *3 (D.D.C. Jan. 29, 2008) (Bates J.), *quoting Twombly*.  That is, the complaint's factual allegations must nudge a plaintiff's claims across the line from conceivable to plausible.  *Twombly*, 127 S. Ct. at 1960; *see also Bryant v. U.S. Gov't*, --- F. Supp. 2d ---, 2007 WL 4465509, at *4 (D.D.C. Dec. 21, 2007) (Bates, J.) ("the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level'"), *quoting Twombly*.

The Court must construe the factual allegations in the complaint in the light most favorable to Plaintiffs and must grant Plaintiffs the benefit of all inferences that can be derived from the facts as they are alleged in the complaint. *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004), *citing Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). However, the Court need not accept any inferences or conclusory allegations that are unsupported by the facts pleaded in the complaint. *Kowal*, 16 F.3d at 1276. Moreover, the Court need not "accept legal conclusions cast in the form of factual allegations." *Id.*

*Pro se* plaintiffs are afforded a somewhat more lenient standard.  In *Erickson v. Pardus*, --- U.S. ---, 127 S. Ct. 2197, 2200 (2007), the Supreme Court noted the long established admonition that *pro se* complaints should be "liberally construed."  However, the Court's reversal of the dismissal in *Erickson* was fully consistent with the *Twombly* standard because the complaint in *Erickson* fulfilled the *Twombly* standard and included factual allegations setting

- 14 -

forth the factual basis for plaintiff's claim. *See Erickson*, 127 S. Ct. at 2200. Accordingly, even under a liberal construction it does not suffice for a complaint to rely on conclusory allegations or to raise only a "suspicion" of wrongdoing. *Twombly*, 127 S. Ct. at 1965. That is, the complaint must give notice of the factual basis for the relief sought and be plausible on its face.

For the reasons stated below, Plaintiffs have failed to plead a claim upon which relief can be granted because Plaintiffs have failed (a) to identify a particular neutral, but discriminatory, practice or policy; (b) to adequately plead causation; and (c) to plead discrete acts performed as a result of the unidentified neutral DOC practice of policy that harmed Plaintiffs. Moreover, Jordan has failed to allege any factual allegations that could support her Rehabilitation Act claim.

### C.    Summary Judgment Under Rule 56.

"Summary judgment is appropriate when the pleadings and the evidence demonstrate that 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Kilby-Robb v. Spellings*, --- F. Supp. 2d. ---, 2007 WL 4142750, at *4 (D.D.C. Nov. 23, 2007) (Bates, J.), *quoting* Fed. R. Civ. P. 56(c). The party moving for summary judgment bears the initial responsibility of showing an absence of a genuine issue of material facts. *Id.* In deciding whether a genuine issue of material facts exists, the court must "accept all evidence and make all inferences in the non-movant's favor." *Id.*, *citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). "A non-moving party, however, must establish more than the mere existence of a scintilla of evidence in support of its position." *Id.* (citations and internal quotation marks omitted). That is, "'[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'" *Id.*, *quoting Anderson,* 477 U.S. at 249-50. Applying this standard to the Complaint, Plaintiffs' claims should be dismissed as the undisputed evidence shows that there has existed no single performance appraisal system

applicable to Plaintiffs; and that Plaintiffs' administrative complaints do not support their ability to bring this action.

## II.    JORDAN AND MEGGINSON HAVE FAILED TO PLEAD AN INJURY THAT COULD GIVE THEM STANDING TO ASSERT A DISPARATE IMPACT CLAIM.

Although Jordan and Megginson aver that the subjectivity of DOC's performance appraisal system had a disparate impact on them as African Americans, they fail to plead factual allegations that could make this conclusion plausible. Accordingly, based upon the SAC Jordan and Megginson lack standing to bring this action.

If a plaintiff lacks standing to bring a claim, the Court is deprived of jurisdiction:

> Under Article III of the Constitution, the federal courts only have jurisdiction to hear cases and controversies. One component of this case or controversy requirement is that in order to bring a lawsuit in federal court, a plaintiff must have standing to sue. . . . There are three elements to the standing inquiry[:]
>
> First, the plaintiff must have suffered an injury in fact-an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.
>
> Second, there must be a causal connection between the injury and the conduct complained of-the injury must be fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.
>
> Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Citizens For Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 401 F. Supp. 2d 115, 119 -20 (D.D.C. 2005) (Bates, J.) (internal citations and quotations omitted). As with other issues implicated in subject matter jurisdiction, Plaintiffs bear the burden to establish standing.

*DaimlerChrysler Corp. v. Cuno*, 126 S. Ct. 1854, 1861 (2006) ("[P]laintiffs, as the parties now

asserting federal jurisdiction, [ ] carry the burden of establishing their standing under Article III.").

"In order for an individual plaintiff to have constitutional standing to bring a Title VII action, he must show that he was personally injured by the defendant's alleged discrimination and that his injury will likely be redressed by the requested relief." *Melendez v. Ill. Bell Tel. Co.*, 79 F.3d 661, 668 (7th Cir. 1996) ("We have relied on these standing principles to require an individual Title VII plaintiff alleging disparate impact to establish that he was qualified for the position sought."), *cited by Dressler v. Martinez*, No. 04-5188, 2005 WL 79038, at *1 (D.C. Cir. 2005) (otherwise disqualified plaintiff lacked standing to bring disparate impact). Accordingly, "a plaintiff in a disparate impact case must show that he or she was really injured by the policy alleged to have had a disparate impact." *Carpenter v. Bd. of Regents of Univ. of Wisc. Sys.*, 728 F.2d 911, 915 (7th Cir. 1984). Jordan and Megginson fail to meet this burden. Indeed, neither Jordan nor Megginson complain that they were harmed by -- *i.e.*, received lower ratings from -- the alleged premise for their disparate impact claims, the DOC performance appraisal system. Accordingly, their claims should be dismissed for a lack of standing.

## III. PLAINTIFFS HAVE FAILED TO PLEAD A VIABLE CLAIM OF DISPARATE IMPACT RACIAL DISCRIMINATION.

Other than Jordan's Rehabilitation Act claim, Plaintiffs' sole claims are of disparate impact racial discrimination:

> A disparate impact cause of action challenges a facially-neutral employment practice that functions to disproportionately affect a protected class. *See Griggs v. Duke Power Co.,* 401 U.S. 424, 431(1971). The disparate impact analysis has been applied in the context of subjective employment criteria as well as objective or standardized tests. *See Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 989 (1988). To carry her prima facie case burden with respect to the disparate impact claim, plaintiff must identify the specific employment practice that is challenged and amass "statistical evidence of a kind and degree sufficient to show that

> the practice in question has caused the exclusion of applications for jobs or promotions because of" her membership in the protected class. *Id.* at 994. If this burden is satisfied, then defendant must rebut plaintiff's showing by presenting evidence tending to establish that the challenged employment practice is rooted in legitimate business judgment. *Id.* at 998. Assuming that defendant is able to do so, plaintiff "must [then] show that other tests or selection devices, without similarly undesirable racial effect, would also serve the employer's legitimate interest in efficient and trustworthy workmanship." *Id.* As with all claims analyzed under the McDonnell-Douglas framework, the ultimate burden always rests with plaintiff. *Id.*

*Prince v. Rice*, 453 F. Supp. 2d 14, 27 (D.D.C. 2006) (Bates, J.) (parallel citations omitted) (dismissing disparate impact claim for failure to state a claim). Although "Title VII plaintiffs need not plead each element of this prima facie case to survive a motion to dismiss, [they] must allege facts that, if true, would establish the elements of each claim. Thus, the Court may explore the plaintiff's prima facie case at the dismissal stage to determine whether the plaintiff can ever meet his initial burden to establish a prima facie case for Title VII discrimination." *Robinson-Reeder*, 2008 WL 224278, at *5 (citations and internal quotations omitted). Indeed, Courts have dismissed disparate impact claims at the pleading stage for failure to allege a prima facie case. *See Prince*, 453 F. Supp. 2d at 27; *Brady v. Livingood*, 360 F. Supp. 2d 94, 100 (D.D.C. 2004) (Leon, J.) (when plaintiff's failure to plead relevant statistics "is coupled, as it is here, with a failure to identify and allege any aspect of the employment practices that causes such disparities, the defendant has no clear sense of the plaintiff's theory of the disparate impact attributable to the selection process. Accordingly, the Court grants the defendant's motion under Rule 12(b)(6) with regard to the plaintiff's disparate impact claim.]"). When this precedent is applied to Plaintiffs' disparate impact claims, such claims should be dismissed.

A.    **Plaintiffs Have Not Identified a Neutral Employment Practice.**

As noted above, although Plaintiffs have identified the general system upon which their disparate impact claims are premised, they have not identified a particular neutral employment practice that allegedly has a disparate impact on Plaintiffs as African American employees.

Identification of a particular neutral, but discriminatory in effect, practice or policy is the primary element for any disparate impact claim. *Prince*, 453 F. Supp. 2d at 27. Indeed, courts have regularly dismissed actions that attempt to rely upon broad systems, rather than identifying particular practices or policies. *See White v. Am. Axle & Mfg., Inc.*, No. 05-CV-72741-DT, 2006 WL 335710, at *3-4 (E.D. Mich. Feb. 14, 2006) (dismissing disparate impact claims where plaintiff merely identified defendant's overall layoff system, without specifying particular challenged practices); *Mongo v. Home Depot, Inc.*, No. 3:02-CV-2593 R, 2003 WL 22227864, at *2 (N.D. Tex. Sept. 26, 2003) (dismissing plaintiff's disparate impact claim, holding, "a plaintiff must identify the specific factor or factors in the employer's decision-making process responsible for causing the alleged disparate impact"); *Kulkarni v. City Univ. of N.Y.*, No. 01 Civ. 10628 (DLC), 2002 WL 1315596, at *1 (S.D.N.Y. June 14, 2002) (dismissing plaintiff's disparate impact claim where plaintiff merely identified the school's overall system for structuring its faculty instead of a specific employment practice in that structure); *E.E.O.C. v. Honda of America, Mfg., Inc.*, No. 2:06-cv-0233, 2007 WL 1541364, at *5 (S.D. Ohio May 23, 2007) (dismissing disparate impact claim, holding that plaintiff must identify a particular practice or policy, not just reference broad "employment policies and practices"); *Tucker v. Gonzales*, No. 03 Civ. 3106 (LTS), 2005 WL 2385844, at *5 (S.D.N.Y. Sept. 27, 2005) (dismissing disparate impact claim for failure to identify particular neutral employment practice where plaintiff alleged, among other things, that the policies of the FBI N.Y. Field Office "have operated a disparate impact on African-American and Hispanic Special Agents with regard to performance

appraisal reports"); *see also Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 111 (2d Cir. 2001) (granting defendant summary judgment on plaintiff's disparate impact claim, holding, "[s]imply gesturing towards the hiring process as a whole will not satisfy the requirement that the plaintiff identify a 'specific employment practice' that is the cause of the statistical disparities."). Here, Plaintiffs have broadly alleged that the entire DOC performance appraisal system is overly subjective, without specifying what neutral policies and practices in that system have created a disparate impact on African American employees. Plaintiffs' failure to identify particular facially neutral practices or policies in such system is fatal to Plaintiffs' claims.

**B.    Plaintiffs Have Failed to Adequately Plead Causation.**

Even if Plaintiffs' identification of the whole DOC performance appraisal system is sufficient, Plaintiffs have failed to adequately plead causation.

For purposes of causation, a plaintiff may consolidate identified employment practices into a decision-making process to establish that such practices cause a disparate impact. 42 U.S.C. § 2000e-2(k)(B)(i). That is, "[w]ith respect to demonstrating that a particular employment practice causes a disparate impact . . . if the complaining party can demonstrate to the court that the elements of a respondent's decisionmaking process are not capable of separation for analysis, the decisionmaking process may be analyzed as one employment practice." *Id.* Even assuming that Plaintiffs could properly consider DOC varied performance appraisal systems together as one decision-making process, Plaintiffs have failed to plead that such systems have a disparate impact.

All of Plaintiffs' non-conclusory causation allegations focus on the alleged disproportionate composition of higher GS and SES level positions throughout DOC. SAC at ¶¶

167-73.[4]   These causation allegations do not make plausible the notion that DOC's alleged performance appraisal system has a disparate impact on African American employees.  That is, disproportionate representation of African American's in such levels, if true, may be due to factors other than how the alleged performance appraisal system evaluates existing employees' performance.  Indeed, Plaintiffs do not aver any factual allegations upon which one might infer that African American employees' ratings under the alleged performance appraisal system are lower than non-African American employees' ratings.  *See Prince*, 453 F. Supp. 2d at 27 (dismissing disparate impact claim where there was no mention of any statistical or empirical data that may support causation).  Accordingly, Plaintiffs' disparate impact claims should be dismissed.

## IV.    THE INDISPUTABLE EVIDENCE COMPOUNDS THE PROBLEMS ASSOCIATED WITH PLAINTIFFS' FAILURE TO IDENTIFY A PARTICULAR NEUTRAL EMPLOYMENT PRACTICE.

Even if Plaintiffs' broad identification of DOC's alleged performance appraisal system is sufficient to surpass a motion to dismiss, in reality such a singular system does not exist, and thus, summary judgment is proper.  As noted above, it is indisputable that DOC maintains numerous performance appraisal systems and that Plaintiffs, themselves, are and have been subject to different appraisal systems.  *See supra* at 8-9.  That is, Plaintiffs' broad brush allegations that DOC employs a single centrally defined system for performance evaluations are simply untrue.  Accordingly, summary judgment is proper on Plaintiffs' disparate impact claims.

---

[4]    Although the SAC also includes similar "composition" statistics on a bureau by bureau basis for certain bureaus, the SAC does not include any such information for BIS (Howard's bureau) or OS (Jordan's buruea).  *See* SAC at ¶¶ 167-73.

## V.    PLAINTIFFS' DISPARATE IMPACT CLAIMS ARE BARRED UNDER THRESHOLD LEGAL PRINCIPLES.

Even if adequately pled, Plaintiffs' disparate impact claims are barred based upon a failure to exhaust, untimeliness, *res judicata* and settlement.

### A.    Relevant Legal Standards.

#### 1.    SETTLEMENT

This Circuit has held that "[a]n agreement to settle a legal dispute is a contract," whose "enforceability. . . is governed by familiar principles of contract law."  *Village of Kaktovik v. Watt*, 223 U.S. App. D.C. 39, 689 F.2d 222, 230 (D.C. Cir. 1982).  A valid and enforceable contract requires both an agreement as to all material terms, and the intention of the parties to be bound.  *Simon v. Circle Assocs., Inc.*, 753 A.2d 1006, 1012 (D.C. 2000).  If those elements are met, both parties are bound by the agreement.  As such, when a party returns to court to press a suit that was already once resolved through a valid and enforceable settlement agreement that has not been breached, courts apply estoppel doctrines to bar such a suit.  *Sirmans v. Caldera*, 138 F. Supp. 2d 14, 18 (D.D.C. 2001).

#### 2.    *RES JUDICATA*

The doctrine of *res judicata* provides that a final judgment on the merits in a prior suit involving the same parties bars subsequent suits based on the same cause of action. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979).  Under the doctrine of *res judicata*, a party is estopped from relitigating legal theories that have already been adjudicated and from litigating legal theories that could have been previously litigated. *Allen v. McCurry*, 449 U.S. 90, 94 (1980); *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 949 (D.C. Cir. 1983) (noting that *res judicata* "forecloses all that which might have been litigated previously").  This doctrine relieves parties of the cost and annoyance of multiple lawsuits, conserves judicial

resources, and, by preventing inconsistent decisions, encourages reliance on adjudication.  *Allen*, 449 U.S. at 94; *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981).  For the doctrine of *res judicata* to apply, three elements must be present: (1) the entry of a final judgment on the merits by the court of competent jurisdiction; (2) the participation in the subsequent litigation by the same parties, or parties in privity with those present in the former litigation and (3) the subsequent action must involve the same causes of action as the prior suit. *Paley v. Estate of Ogus*, 20 F. Supp. 2d 83, 87 (D.D.C. 1998).

3.    <u>UNTIMLINESS</u>

If a federal employee wishes to bring a civil action under Title VII, s/he must file a civil complaint within 90 days after receiving notice of final action on his/her respective administrative complaint.  *See* 42 U.S.C. § 2000e-16(c); *accord Howard v. Gutierrez*, 474 F. Supp. 2d 41, 51 (D.D.C. 2007) (Bates, J.).  "Courts apply this limit strictly and 'will dismiss a suit for missing the deadline by even one day.'"  *Woodruff v. Peters*, 482 F.3d 521, 525 (D.C. Cir. 2007), *quoting Wiley v. Johnson,* 436 F. Supp. 2d 91, 96 (D.D.C. 2006) (Collyer, J.) (granting summary judgment in favor of defendant when plaintiff filed her Title VII complaint more than 90 days after receiving notice of final agency action).  Indeed, a number of actions have been dismissed when a plaintiff filed his/her complaint one or two days after the 90 day limitations period expired.  *See, e.g.*, *Smith v. Dalton*, 971 F. Supp. 1, 3 (D.D.C. 1997) (Robertson, J.) (granting summary judgment when Title VII complaint was one day late); *Wolfe v. Danzig*, No. 00-CV-1458, 2001 WL 1661479, at *4 (D.D.C. June 1, 2001) (Kay, Magistrate J.) (same).

As the Court noted in its Memorandum Opinion on the FAC Motion:

> The ninety-day filing deadline in Title VII is, however, subject to equitable tolling. *See Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 95 (1990); *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385,

- 23 -

398 (1982). It is well-settled that "'the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.' " *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 353-54 (1983) (quoting *Am. Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 554 (1974)).

Memo. Op. at 16.  This rule applies with equal force with respect to the filing of administrative class action complaints.  *See, e.g., Williams v. Owens-Illinois, Inc.,* 665 F.2d 918, 923 (9th Cir. 1982) ("In a class action, a class representative's EEOC complaint tolls the statute of limitations for all class members."); *Barrett v. U.S. Civil Serv. Comm'n,* 439 F.Supp. 216, 217-18 (D.D.C.1977) ("Although *American Pipe* dealt with a judicial complaint as tolling the statute, the policy behind Rule 23 and the need to protect all 'purported' class members even if they do not rely upon the class complaint are equally applicable to a Title VII case at the administrative level.").

As this Court recognized, *American Pipe* tolling for administrative complaints should be governed by the same rules as *American Pipe* tolling for civil class actions. *See* Memo. Op. at 16 ("The Court sees no reason to apply a different rule with respect to the filing of the administrative class complaints.").  In civil actions, a number of courts have held that *American Pipe* tolling is not available to plaintiffs who bring independent, individual actions before a decision on class certification has been reached.  *See Wyser-Pratte Mgmt. Co., Inc. v. Telxon Corp.*, 413 F.3d 553, 569 (6th Cir. 2005) (rejecting application of *American Pipe* tolling to plaintiff who filed an individual action before the court considered class certification: "The purposes of *American Pipe* tolling are not furthered when plaintiffs file independent actions before decision on the issue of class certification, but are when plaintiffs delay until the certification issue has been decided."); *In re Hanford Nuclear Reservation Litig.*, 497 F.3d 1005, 1027 (9th Cir. 2007) ("we hold that this individual who filed a separate suit pending a decision

on class certification loses the benefit of any statute of limitations tolling under *American Pipe*");

*Glater v. Eli Lilly & Co.*, 712 F.2d 735, 739 (1st Cir. 1983) ("The policies behind Rule 23 and

*American Pipe* would not be served, and in fact would be disserved, by guaranteeing a separate

suit at the same time that a class action is ongoing."); *but see In re WorldCom Secs. Litig.*, 496

F.3d 245, 256 (2d Cir. 2007) (discord).  Accordingly, when an employee brings an individual

administrative complaint when class certification is pending in an administrative class complaint

alleging similar claims, the employee should lose the benefit of *American Pipe* tolling as to his

individual administrative complaint.

### 4.    EXHAUSTION.

Under rulemaking authority delegated by Title VII (*see* 42 U.S.C. § 2000e-16(b)), the

EEOC has "established detailed procedures for the administrative resolution of discrimination

complaints, including a series of time limits for seeking informal adjustment of complaints, filing

formal charges, and appealing agency decisions to the Commission."  *Bowden v. United States*,

106 F.3d 433, 437 (D.C. Cir. 1997); 29 C.F.R. § 1614 (Federal Sector Equal Employment

Opportunity).  To preserve a claim of unlawful employment discrimination, federal employees

are required to exhaust their administrative remedies through the procedures contained in these

federal regulations.  That is, Federal employees may file a civil action under Title VII concerning

employment discrimination only after exhausting their administrative remedies before the

concerned Federal agency for each discrete alleged discriminatory act.  42 U.S.C. § 2000e-16(c);

*Nat'l Passenger R.R. Corp. v. Morgan*, 536 U.S. 101 (2002).

It is well settled that failure to follow these regulatory procedures requires dismissal

because the time limits contained in such procedures, which serve as the basis for the limited

waiver of sovereign immunity in section 2000e-16(c), must be strictly construed.  *Brown v. Gen.*

*Servs. Admin.*, 425 U.S. 820, 835 (1976); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 94

(1990).  Indeed, Courts have strictly enforced the time limits in the administrative EEO process and have dismissed claims for failing to comply with such limits.  *See Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985) ("A plaintiff who fails to comply, to the letter, with administrative deadlines ordinarily will be denied a judicial audience"); *Williamson v. Shalala*, 992 F. Supp. 454, 457 (D.D.C. 1998) ("non-compliance with administrative deadlines will bar a plaintiff from litigating his claims in court"); *see also Smith v. Henderson*, 137 F. Supp. 2d 313, 316 (S.D.N.Y. 2001) (failure to comply with the time provisions of 29 C.F.R. § 1614.407 warrants dismissal of the case).

    "A Title VII lawsuit following the EEOC charge is limited in scope to claims that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995).  "[T]he provisions of Title VII were not designed for the sophisticated, and because most complaints are initiated *pro se*, the scope of an EEOC complaint should be construed liberally. . . . On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in [an] attempt to achieve non-judicial resolution of employment discrimination claims."  *Pacheco v. Mineta*, 448 F.3d 783, 788-89 (5th Cir. 2006).   Several courts have concluded, in applying these principles, that when an administrative complaint presents a facial disparate treatment claim without any indication that it might include a disparate impact claim, such a disparate impact claim is not reasonably related to the administrative complaint.  *See, e.g.*, *Pacheco*, 448 F.3d at 792 ("[W]e hold that a disparate-impact investigation could not reasonably have been expected to grow out of [plaintiff's] administrative charge because of the following matters taken together: (1) it facially alleged disparate treatment; (2) it identified no neutral employment policy; and (3) it complained of past incidents of disparate treatment only."); *Woodman v. WWOR-TV, Inc.*, 293 F. Supp. 2d 381, 390 (S.D.N.Y. 2003) ("The substance of [plaintiff's] EEOC charge is that

Defendants' were motivated by illicit consideration of age. This is substantively distinct from an allegation that Defendants promulgated neutral policies that had the effect of disadvantaging older employees."); *Lawton v. Sunoco Inc.*, No. Civ. A. 01-2784, 2002 WL 1585582, at *4 (E.D. Pa. July 17, 2002) (plaintiff failed to exhaust when administrative complaint did not identify neutral employment practice or otherwise allege the hallmarks of a disparate impact claim); *Gordon v. Peters*, No. 07-20477, 2008 WL 162866, at *1 (5th Cir. Jan. 16, 2008) (same; "a disparate-impact investigation could not reasonably have been expected to grow out of [plaintiff's] administrative charge").  Accordingly, a disparate impact claim is not exhausted when it does not reasonably arise out of the allegations in an administrative complaint.  *Cf. Robinson-Reeder*, 2008 WL 224278, at *5 (finding a failure to exhaust retaliation claim when the factual allegations contained in the administrative charge failed to provide "the slightest hint" that plaintiff was asserting a retaliation claim).

### B.    Application to Plaintiffs' Claims.

1.    HOWARD

When the above standards are applied to Howard's administrative complaints, none of Howard's administrative complaints provide a basis for Howard's individual disparate impact claim.  For the Court's convenience, Defendant below provides a brief summary as to why each administrative complaint fails to support Howard's present disparate impact claim.

> Howard 1:    Time barred.[5]
>
> Howard 2:    Time barred.
>
> Howard 3:    Subject to a settlement agreement.
>
> Howard 4:    Subject to a settlement agreement.

---

[5]    By "Time barred," Defendant means that processing of the administrative complaint concluded more than 90 days before Plaintiffs filed the original Complaint in this action.

Howard 5:      Time barred.

Howard 6:      Failure to exhaust.   As noted above, based upon the face of the Howard 6 administrative complaint, Howard contacted an EEO counselor more than 45 days after the alleged discrimination occurred.

Howard 7:      Time barred, no *American Pipe* tolling.[6]

Howard 8:      Time barred, no *American Pipe* tolling.

Howard 9:      *Res judicata*, subject to prior civil action.

Howard 10:     *Res judicata*, subject to prior civil action.

Howard 11:     Time barred, no *American Pipe* tolling.

Howard 12:     Time barred, no *American Pipe* tolling.

Howard 13:     Time barred, no *American Pipe* tolling.

Howard 14:     Does not allege discrimination on the basis of race as to any performance appraisals or evaluations, and does not contain the slightest hint of a disparate impact claim.

Howard 15:     Does not allege discrimination on the basis of race as to any performance appraisals or evaluations, and does not contain the slightest hint of a disparate impact claim.

Howard 16:     Subject to another current pending civil action.

Howard 17:     Does not contain the slightest hint of a disparate impact claim.

Howard 18:     Part is subject to another current pending civil action.   The other portion does not contain the slightest hint of a disparate impact claim.

Howard 19:     Does not allege discrimination on the basis of race as to any performance appraisals or evaluations, and does not contain the slightest hint of a disparate impact claim.

---

[6]      By "no *American Pipe* tolling," Defendant means that *American Pipe* tolling is inapplicable to such complaints, though these claims were filed during the pendency of the Howard 6 administrative class action.  That is, if these complaints can be read to allege disparate impact claims, they were filed as individual actions during the pendency of the Howard 6 administrative class action,and thus, should not benefit from *American Pipe* tolling.  *See supra* at 22-24.  Otherwise, if these complaints cannot be read to include disparate impact claims, they cannot serve as the basis for Plaintiffs' present disparate impact claim.

Howard 20:   Does not allege discrimination on the basis of race as to any performance appraisals or evaluations, and does not contain the slightest hint of a disparate impact claim.

Howard 21:   Does not allege discrimination on the basis of race as to any performance appraisals or evaluations, and does not contain the slightest hint of a disparate impact claim.

Howard 22:   Does not allege discrimination on the basis of race as to any performance appraisals or evaluations, and does not contain the slightest hint of a disparate impact claim.

Howard 23:   Does not allege discrimination on the basis of race as to any performance appraisals or evaluations, and does not contain the slightest hint of a disparate impact claim.

Howard 24:   Failure to exhaust.  Claim premised upon discrimination in a performance evaluation was not properly exhausted as Howard contacted an EEO counselor concerning such claim more than 45 days after the alleged discriminatory incident.  The remaining claims do not concern performance evaluations.

Howard 25:   The complaint is not yet ripe for a possible civil action because 180 days have yet to lapse since it was filed.

Howard 26:   No formal complaint was ever filed in connection with this informal grievance.

Howard 27:   This complaint is still in the informal stages and is not yet ripe for a possible civil action -- *i.e.*, no formal administrative complaint has been filed.

2.    JORDAN

When the above standards are applied to Jordan's administrative complaints, none of Jordan's administrative complaints provide a basis for Jordan's individual disparate impact claim.  For the Court's convenience, Defendant below provides a brief summary as to why each administrative complaint fails to support Jordan's present disparate impact claim.

Jordan 1:    Subject to a settlement agreement.

Jordan 2:    Subject to a settlement agreement.

Jordan 3:    Time barred, no *American Pipe* tolling.  Moreover, does not allege discrimination on the basis of race as to any performance appraisals or

evaluations, and does not contain the slightest hint of a disparate impact claim.

Jordan 4:     Subject to a settlement agreement.

Jordan 5:     Time barred, no *American Pipe* tolling.  Moreover, does not allege discrimination on the basis of race as to any performance appraisals or evaluations, and does not contain the slightest hint of a disparate impact claim.

Jordan 6:     Does not allege discrimination on the basis of race as to any performance appraisals or evaluations, and does not contain the slightest hint of a disparate impact claim.

Jordan 7:     Does not allege discrimination on the basis of race as to any performance appraisals or evaluations, and does not contain the slightest hint of a disparate impact claim.

Jordan 8:     Does not contain the slightest hint of a disparate impact claim.

3.    <u>MEGGINSON</u>

When the above standards are applied to Megginson's administrative complaints, none of Megginson's administrative complaints provide a basis for Megginson's individual disparate impact claim.  Indeed, the administrative processing of all of Megginson's administrative complaints concluded more than 90 days before the original Complaint was filed in this action. Moreover, *American Pipe* tolling is inapplicable to such complaints, though these claims were filed during the pendency of the Howard 6 administrative class action.  That is, if these complaints can be read to allege disparate impact claims, they were filed as individual actions during the pendency of the Howard 6 administrative class action and, thus, should not benefit from *American Pipe* tolling.  *See supra* at 22-24.  Otherwise, if these complaints cannot be read to include disparate impact claims, they cannot serve as the basis for Megginson's present disparate impact claim.

## VI.    JORDAN FAILS TO ADEQUATELY PLEAD HER REHABILIATION ACT CLAIM.

Jordan has now omitted all factual allegations concerning her alleged disability and the basis for Defendant's alleged failure to provide her a reasonable accommodation.  Indeed, the only allegations set forth in the SAC concerning such claim are the legal conclusions made in Count Two.  *See* SAC at ¶¶ 228-32.  Under the *Twombly* standard these legal conclusions are insufficient to meet the pleading requirements of the Rules.    Accordingly, Jordan's Rehabilitation Act claim should be dismissed.

## <u>CONCLUSION</u>

For the reasons stated above, Defendant respectfully requests that the Court dismiss the Second Amended Complaint.

Dated: February 21, 2008
　　　　Washington, DC

　　　　　　　　　　　　　　　　　　　Respectfully submitted,


　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　JEFFREY A. TAYLOR, D.C. BAR #498610
　　　　　　　　　　　　　　　　　　United States Attorney


　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　RUDOLPH CONTRERAS, D.C. BAR #434122
　　　　　　　　　　　　　　　　　　Assistant United States Attorney


　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　BRIAN P. HUDAK
　　　　　　　　　　　　　　　　　　Assistant United States Attorney
　　　　　　　　　　　　　　　　　　555 4th Street, NW
　　　　　　　　　　　　　　　　　　Washington, DC 20530
　　　　　　　　　　　　　　　　　　(202) 514-7143

　　　　　　　　　　　　　　　　　　*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of February, 2008, a true and correct copy of above

Defendant's Motion to Dismiss the Second Amended Complaint or, in the Alternative, For

Summary Judgment with supporting materials, was served upon *pro se* Plaintiffs, by first class

United States mail, postage prepaid, to:

| Janet Howard | Tanya Ward Jordan | Joyce E. Megginson |
|---|---|---|
| P.O. Box 1454 | 13003 Keverton Dr. | 310 Bogota Dr. |
| Spotsylvania, VA 22563 | Upper Marlboro, MD 20774 | Ft. Washington, MD 20744 |

Dated: February 21, 2008
      Washington, D.C.

Respectfully submitted,


    /s/
BRIAN P. HUDAK
Assistant United States Attorney
Civil Division
555 4th Street, NW
Washington, DC 20530
(202) 514-7143
brian.hudak@usdoj.gov