UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RECEIVED
MAY 1 2 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

JANET HOWARD, et al.,                )
                                     )
            Plaintiffs,              )
                                     )
    v.                               )        Civil Action No. 05-1968 (JDB)
                                     )
CARLOS GUTIERREZ, Secretary,         )
U.S. Department of Commerce,         )
            Defendant.               )

# PLAINTIFF'S MOTION IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGEMENT

Plaintiffs (Janet Howard[1], Joyce E. Megginson and Tanya Ward Jordan) all African-American females, who have worked for the Department of Commerce's (DoC) Washington Headquarters' office, hereby respectfully moves that the Defendant's request to dismiss second amended complaint and Defendant's request for summary judgment be denied.

## I. HISTORY OF THE CASE

1.) On February 22, 1995 Janet Howard, an African-American female and a Commerce employee filed an EEO Class Complaint. In her EEO Class Complaint, Ms. Howard alleges that DoC engaged in race discrimination against a class of African-American DoC employees. Ms.

---

[1] In April 2008, DoC gave Ms. Howard "a letter of removal" just hours before going into settlement talks on a separate court case before Judge Friedman. A jury trial is pending to hear claim(s) of retaliation DoC has taken against Ms. Howard who is also a plaintiff in this multiple party action.

advancement opportunities have disparately impacted Plaintiffs (African-Americans) and limited Plaintiff's promotions, awards and career enhancing opportunities.

3.) Plaintiffs all work in bureaus based in the Herbert Hoover building in Washington that have missions related to or support for trade development, reporting, assistance, regulation and oversight. *{See EXHIBIT 4 Organization Chart 3 – Identifying units where Plaintiffs worked}*

4.) The DOC is a cabinet level department that has 15 bureaus which serve to promote its central mission which is "to foster, promote, and develop the foreign and domestic commerce" of the United States. Each Plaintiff, working in DoC's supporting bureaus, has performed tasked to advance DoC's centralized mission. Ms. Howard and Ms. Ward Jordan have worked for the same Supervisor (Robert Kugelman) at different times. Ms. Ward Jordan and Ms. Megginson have held the same title as Program / Management Analyst in support of DoC's mission.

5.) At the time of Plaintiff's EEO filings, which were subsequently subsumed in the now defunct class action that was 13 years in litigation, DOC utilized one personnel system and issued central policies governing the DoC bureaus where Plaintiff Howard, Megginson and Ward Jordan served as DoC employees *(See EXHIBIT 5- Fiscal Year 1994 Generic Workforce Appraisals, End of Year Schedule)*

6. ) During the time covering allegations germane to the present complaint, DoC utilized one sole performance evaluation system and Plaintiffs all were rated against DoC's uniform Generic Performance standards. Howard, Ward Jordan and Megginson were all rated under a five-level

4

5.) Circa November 2007, Plaintiff operating "pro se" after firing Attorney who had caused the once EEOC certified DoC class to be dismissed, **not on the merits** but rather **on the basis of attorney error,** filed a Second Amended Complaint *(SAC)* the first Multiple-Party complaint, against the DoC.

6.) February 21, 2008, Defendant moved to dismiss the second amended complaint or in the alternative, for summary judgment.

## II. PLAINTIFF'S STATEMENT OF DISPUTED FACTS

Plaintiffs (Janet Howard, Joyce E. Megginson and Tanya Ward Jordan) employees of the United States Department of Commerce ("DOC," "Department," or "Agency"), at the time of filing their complaints submit this statement of material facts as to which there exists some genuine issues in dispute.

1.) Plaintiffs, all African-American females in DoC Headquarters Washington Office have identified a particular neutral, but discriminatory, practice or policies in the Second Amended Complaint *(SAC)*. Plaintiffs bring this action to redress racial discrimination in promotion and related promotional opportunities as current African-American, non-supervisory salaried employees of the DoC.

2.) Plaintiffs generally argue that DoC has subjected them to racial discrimination in promotion and related promotional opportunities as current African-American, non-supervisory employees. DoC's performance appraisal subjective process that provides for career

Howard has consistently challenged the discriminatory workplace culture of Commerce. (*See EXHIBIT 1-Collage of Discriminatory Culture with Picture of Ms. Howard*)


2.) On July 20, 2000, the Equal Employment Opportunity Commission (EEOC) certified a class of African-American, non-supervisory employees and former employees of the DoC's Headquarters' offices in the metropolitan area of Washington, D.C. The EEOC certification covered employees in grade levels GS-9 through GS-15 levels, or equivalent level white collar non-GS positions who allegedly have been denied career advancement to one or more white collar positions in the agency's Headquarters' offices who may have been denied related promotional opportunities in those same offices, based on their race. Plaintiff's Howard, Megginson and Ward Jordan all met these criteria and received letters from the DoC confirming their class membership status. *{See EXHIBIT 2- EEOC Decision Regarding Class Certification Agency # 95-55-0278: 2 Page Excerpt}*

Circa May 2001, Plaintiffs all received notice that they were potential class members in the Class action lawsuit against DOC. *(See EXHIBIT 3 – Memorandum For Potential Class Members)*.


3.) October 2005, Plaintiffs represented by David Sanford of Sanford, Wittels & Heisler, LLP, filed class complaint against DoC.


4.) On February 6, 2007, due to Plaintiff's counsel's failure and "inexcusable neglect" to request for certification as prescribed under Local Rule 23, Judge Bates dismissed class claims, however, Judge Bates allowed Plaintiffs (Howard, Megginson and Ward Jordan) to file "a second amended complaint".


2

system during the time they sought awards, promotions, job-enhancing opportunities. *(See EXHIBIT 6- Generic Performance Standards)*

7.) During relevant times, Plaintiffs were all serviced by the same personnel system, the Office of the Secretary.    In fact, as asserted in DoC Annual Performance plan the Office of the Secretary's DM *"provides executive direction and coordination for program activities as well as centralized services to the bureaus" (See EXHIBIT 7- Departmental Management – Annual Performance Plan)*

8.)  During relevant times, Plaintiffs were all serviced by the same Office of Civil Rights System, which processed their complaints regarding discrimination /retaliation re: promotion, career advancement opportunities, denial of training, denial of cash awards and performance appraisals.

### III.  RECAP OF PLAINTIFFS ADMINISTRATIVE COMPLAINTS

A synopsis of the allegations follows.   This is needful for two reasons.  For one, the Defendant's counsel is not sufficiently familiar with the allegations set forth given the long history and extensive litigation of Plaintiffs claims which is so extensive DoC had to budget for and establish a Complex Litigation Fund. *(See EXHIBIT 8- Advances and Reimbursement Handbook: Formerly Class Action Project citing Janet Howard as a litigant).* Second, Plaintiffs acting Pro Se inadvertently included all claims including anecdotal information from class participants from the original October 2005 court filing in *SAC.* (***Janet Howard, et. al Carlos Gutierrez, Civil Action No. 05-1968***)

5

**JANET HOWARD**

Plaintiff Howard has been employed by Commerce for approximately 25 years as a non-supervisory employee. She was recently terminated on April 25 2008 after going to court before Judge Friedman in a separate court action against the DoC. A jury trial on this matter is pending in August 2008.

In the course of Ms. Howard's employment, DoC has subjected Ms. Howard to discrimination in employment based on her race (African-American), by denying her promotions in favor of less senior, less qualified white employees, and subjecting her to a racially hostile work environment and other forms of discrimination. The subjective decision making associated with promotions, cash awards, training, enhanced job assignments and performance appraisals has had a direct and adverse impact on Ms. Howard's employment at Commerce. Because of Commerce's promotion system and how it is used, Ms. Howard has been denied opportunities that are available to white employees.

**Case Numbers: 94-67-00800 / 95-67-00260 / 95-67-02780 / 95-67-03960 / 95-67-03850**
1995, Ms. Howard filed a class wide complaint alleging race discrimination at Commerce, alleging that she and a similarly situated class of African-American employees had been denied promotions in favor of less qualified white employees, subject to disparate terms and conditions of employment, a hostile work environment, and other forms of discrimination.

From 1996 to 1998, Ms. Howard applied and qualified for six (6) GS-12 Export Compliance Specialist vacancies. Ms. Howard was not selected. Ms. Howard's white supervisor, Mr. Andrukonis, did not call Ms. Howard in for an interview for any of the positions.

**Case Number: 96-67-01940**

Mr. Andrukonis hired a white male whose skills were unrelated to the duties listed in the GS-12 Export Compliance Specialist vacancy announcement. The skills required for the position related directly to the very duties Ms. Howard was performing daily. {This complaint should have been held in abeyance pending class certification}

**Case Number: 99-67-00722**

Ms. Howard applied for two GS-13 positions in her office, but was not selected.

**Case Number: 99-67-00722 / 98-67-00270**

Plaintiff alleges that she did not receive a cash award or promotion in Fiscal year.

**Case Number: 01-67-00128**

Complainant was retaliation against when she was not selected for a Policy Analyst Position. Before creating this Policy Analyst position, Complainant was assigned to perform the duties of this position dealing with high performance computers. This position was announced as a supervisory position.

**Case Number: 02-67-00037**

In approximately 2002, Ms. Howard's rating was subjectively lowered to "marginal."

**Case Number: 04-67-00078**

Thomas Andrukonis devised an arbitrary formula, which dictated that only employees receiving numerical scores of 490 or higher would receive cash awards. Andrukonis denied Ms. Howard's request to attend a May 12, 2004 professional development workshop sponsored by Georgetown University Center at a cost or $299.00. Andrukonis denied Ms. Howard an opportunity to attend a no cost (free) Japanese delegation meeting on June 1 & 2, 2004, which her immediate

supervisor Carol Bryant had suggested she attend. As a result of Commerce's discriminatory actions, Ms. Howard has suffered extreme harm.

## Case Number:  05-67-00075

In retaliation for prior EEO Activity, Ms. Howard received a performance award for FY 2004 after receiving a Commendable rating.

## Case Number:  05-67-00200

Ms. Howard's training request to attend Blacks in Government conference in August 1-6, 2005 was submitted February 2005. Ms. Doris Johnson retrieved the advanced signed travel form, which included 1week lodging, closing plenary, per diem and rental car. Mr. Andrukonis and Wendy Wysong did not release the advanced signed travel order until 30 minutes prior to the time Ms Howard was to leave for home in preparation to leave for Orlando. Ms. Howard was given an ultimatum. The only way Ms. Wysong and Mr. Andrukonis would release her training form and sign her travel order was if Ms. Howard be out of Orlando by noon on Friday, not attend the closing plenary which was pre paid, use taxies instead of a rental car (even though the rental car cost was more than $100 dollars cheaper than taxi.) After using taxies as recommended by Mr. Andrukonis, Ms. Wysong refused to reimburse Ms. Howard her total taxi cost for the week.

## Case Number: 06-67-00124

Ms. Howard allege retaliation for a prior EEO complaint (Complaint Number 05-67-00200) On April 2005 her request to attend the Blacks in Government conference from August 21 to August 26, 2006 was denied.

## Case Number: 07-67-00010

Ms. Howard was denied a detail opportunity, despite having taken a truncated three-year executive leadership development-training course. Ms. Howard alleges that in retaliation for the instant complaint, she was placed on a Performance Improvement Plan (PIP), effective March 27, 2007 for a 90 day.

Due to her placement on a performance improvement plan, Thomas Andrukonis disqualified Ms. Howard as a candidate from applying for two (2) GS-1801-13 Export Compliance Specialist/Analyst position located in the Office of Enforcement Analysis.

## JOYCE MEGGINSON

Plaintiff Megginson has been employed for approximately 37 years by the U.S. DoC assigned to the National Telecommunications and Information Administration ("NTIA"). In the course of Ms. Megginson's employment, DoC has subjected her to discrimination in employment based on her race (African-American), sex (female), age (over 40) by denying her promotions in favor of less senior, less qualified white employees, and subjecting her to a racially hostile work environment and other forms of discrimination.

The subjective decision making associated with promotions, cash awards, training, enhanced job assignments and performance appraisals has had a direct and adverse impact on Ms. Megginson's employment at Commerce. Because of DoC promotion system and how it is used, Ms. Megginson has been denied opportunities that are available to white employees. Ms. Megginson's supervisor used subjective decision making to discriminate against Ms. Megginson because of her race.

9

**Case Number: 98-61-00630**

In approximately 1996 or 1997, Ms. Megginson was the only one in her office
who had not been given a performance evaluation. After a news article citing this fact, Ms.
Megginson's then supervisor (Richard Parlow) awarded Ms. Megginson a 1% cash award. This
was very traumatic for Ms. Megginson, because she then became known as the 1% girl by her
co-workers who often times would tease her, which left her in tears. Ms. Megginson frequently
asked Mr. Gamble how she could improve and what she needed to do to get a higher rating on
her performance evaluations. All Mr. Gamble would say was that there were no job enhancing
assignments and, even if there were, there was no money to support a promotion. Ms.
Megginson has continually been denied a promotion in her career ladder position at the DoC. As
a result of Defendant's discriminatory actions, Ms. Megginson has suffered extreme harm.

**Case Number: 97-61-00160**

Ms. Megginson alleges that because of her race (African American), (sex was withdrawn during
the investigation) and in retaliation for filing a prior EEO Complaint.

Ms. Megginson was required to pay all travel expenses to attend the 18th Annual Training
Conference of Blacks in Government (BIG), held in Atlanta Georgia on August 26-30, 1996,
while the Agency paid travel costs for others similarly situated. When her EEO counselor
inquired of this practice, she was told that it was a new policy. When asked to produce this
policy, the counselor was told that it was a new policy, there was nothing in writing, and she was
the first person that this policy was applied to.

Ms. Megginson's immediate supervisor (William Gamble) handled her training request
differently than similarly situated employees; he had to contact personnel before approving her
travel. Upon her return from training, her second level supervisor (Richard Parlow) approved all

of her training, but Gamble and the Budget Director Gaye Shrum disallowed. There was money allocated to pay all my training but they refused to reimburse Ms. Megginson.

**Case Number:  97-61-00850**

Ms. Megginson alleges that because of her race (African American), sex (female) and retaliation for filing pervious complaints, her supervisory discriminated against her.

Ms. Megginson did not receive the mandatory mid-point review, which was due April 30, 1996. In fact Ms. Megginson complained to personnel about her supervisor (William Gamble) continued refusals to comply with Departmental directives to do so. This particular rating period was not the first instance, Ms. Megginson, the NTIA's Administrative Officer, The office's Secretary had also constantly complained of this departmental violation.

Approximately December 1996, Mr. Gamble attempted to coerce Ms. Megginson into signing the signature page of her performance appraisal even though the actual pages of the evaluation were missing. Mr. Gamble, was again was in complete violation of Departmental policy when he did not complete Ms. Megginson's appraisal by the required date of September 30, 1996. Ms. Megginson complained to personnel as well as to her second level supervisor, Richard Parlow, as a result of late evaluations, she could never expect to receive a cash bonus. In December of 1996, after Ms. Megginson repeatedly refused to sign her performance evaluation, Mr. Gamble appeared in her office and tried to forcibly make her sign it. As a result of Gamble's strong arm tactics, Ms. Megginson was taken to the DoC's Health unit, and when her blood pressure elevated to 253/190. The departmental physical was concerned with the elevated blood pressure and tightness in her chest that he thought Ms. Megginson was going to have a stroke or heart attack. The physical decided that Ms. Megginson should be taken to George Washington Hospital via ambulance.

11

## Case Number: 97-01450

Ms. Megginson alleges because of her race (African American), sex (female, age, over 40), she was harassed and in retaliation for filing previous complaints, her supervisor (Richard Parlow) ordered her to physically clean the filthy private office of a white GS-15 (Janet Healer) co-worker who had for years refused to clean her own personal office space. Mr. Parlor told Ms. Megginson not to look upon it as a cleaning assignment, but whether organizing for the good of the agency since she had excellent organizational skills. The above assigned was given to Ms. Megginson after her return from a 30 day stress leave absence from being harassed by her previous supervisor William Gamble.

## Case Number: 98-61-00630

Formal Issues ~ Awards, Evaluation/Appraisal, Promotion/Non-competitive, other

Ms. Megginson alleges that her supervisor (William Gamble) constantly refused to promote her via the career ladder position that she was hired under the Upward Mobility Program. Ms. Megginson was only allowed to advance to the bridge position of a GS-9 Program/Management Analyst position in 19887. Ms. Megginson should have advanced and promoted to the target position of a GS-11 Program Analyst position non-competitively in 1988.

For example, in approximately 1995, after Ms. Megginson had – for years – been trying unsuccessfully to advance to the GS-11 Program/Management Analyst target position via the Upward Mobility career ladder position she held, but her supervisor, a white male named William B. Gamble, told Ms. Megginson, in substance: "Joyce, you can work for me for ten years and I will never promote you. The only way I will ever promote you is if Fred Wentland [a

white male in her department at a higher level] dies in a plane crash. Then and only then maybe I
will promote you to a GS-12 or 13."

Ms. Megginson's supervisor, Mr. Gamble invented various pretexts to unfairly
and discriminatorily suppress Ms. Megginson's advancement. Ms. Megginson's claims that her
supervisor's excuses were arbitrary and subjective – and adverse to African-Americans – are
confirmed by the fact that while she was languishing at GS-9, at least seven other white
employees at NTIA, who were either below or at Ms. Megginson's level, achieved promotions to
higher levels during the 1990s.

Finally, in approximately 1995, Ms. Megginson accepted a GS-11 position in
NTIA, and a promotion was prepared. However, the promotion was withdrawn after Ms.
Megginson refused to drop her complaints.  Ms. Megginson being offered this position had
nothing to do with her immediate office nor the complaints, which she filed with The Office of
Civil Rights.  Ms. Megginson sort and received this position on her own accord and efforts.
Per Commerce policy, all employees were supposed to receive mid-point
employment reviews and ratings. However, Ms. Megginson was singled out by repeatedly not
receiving such reviews and ratings. This negatively impacted her and prevented her from
receiving cash awards given to other employees at Commerce. In fact, in approximately 1996, all
the white and male employees who served under Ms. Megginson's supervisor, Mr. Gamble, (for
more than 120 days) shared in a $25,500 award.  Ms. Megginson was the only African American
and Female employee that Mr. Gamble supervised.


**Case  Number: 01-61-00339**

13

Ms. Megginson alleges that she was harassed and discriminated against because of her race (African American), Color (Black), Sex (Female), disabilities (Post Traumatic Stress Disorder and major depression), in retaliation for her prior EEO activity. And. because of a hostile work environment, combined with intimation, and harassment that had a negative effect on Ms. Megginson's health, she applied for, and was accepted into the Worker Compensation Program with the Department of Labor because of this workplace injury. Mr. Gamble would make fun of Ms. Megginson's speech, called her lazy with her words, and compared her to his young daughter.

**Case Number: 95-61-02660**

On January 19, 1995, NITA canceled Ms. Megginson's promotion to a GS-11 for which she had been selected for in December 1994. The cancellation was directly related to Ms. Megginson's involvement in the EEO process. Ms. Megginson was told that this position was dead-ended at the GS-11 position, however, Ms. Megginson learned that the young white female's position that Ms. Megginson was replacing career ladder was at the GS-12 level.

**Case Number: 95-61-03560**

At Ms. Megginson's Performance Appraisal meeting on June 21, 1995, her immediate supervisor, William Gamble did harass and intimidate her by calling her into his office and telling her that he was not ready to rate her, but proceeded to ask her how her EEO complaints that she had filed against him were processing. Mr. Gamble continually interfered with Ms. Megginson work environment by creating an intimidating, hostile, and offensive work environment. These acts are a part of a broader pattern of harassment.

**Case Number: 96-61-00520**

After filing a formal complaint against her supervisor, William Gamble, in an effort to intimidate and harass her, Ms. Megginson was prevented from

performing some of the official and critical duties contained in her position description because of her involvement in the EEO process.

## Case Number: 95-61-01410; Case Number: 95-61-01411; Case Number: 95-61-01412; Case Number: 95-61-01610; Case Number: 95-61-02550; Case Number: 95-61-01611; Case Number: 95-61-01612; and Case Number: 95-61-01610

Between February 3, 1995 and March 10, 1995, Ms. Megginson filed three complaints that were virtually identical. At the time these complaints were filed, Department of Commerce's practice was to treat claims that were segregated for processing as "sub-cases" of the original complaint. All complaints allege harassment on the basis of sex and race stemming from criticism of her work, refusals to promote, and other allegedly offensive comments and actions


## TANYA WARD JORDAN

Plaintiff Ward Jordan has been employed by DoC at the Office of the Secretary (OS) for approximately twenty years. During the time of Ms. Ward Jordan's 2000 EEO complaint, DoC has subjected her to discrimination in employment based on her race (African-American) and gender (female) by denying her training, promotions and career advancement opportunities in favor of less senior, less qualified white employees and subjecting her to a racially hostile work environment and other forms of discrimination and retaliation. Because of DoC's promotion system and how it is used, Ms. Ward Jordan has been denied opportunities that are available to

white employees. DoC records disclose that of the **131 total GS-14 positions**, Ms Ward Jordan

was **(1) one of only (8)** eight African-Americans in the OS at the GS-14 level.

## Case No. 00-51-0316380

On approximately October 2, 2000, Ms. Ward Jordan filed a formal complaint alleging that she

was denied a career-enhancing promotion position as the DoC's GS-15 Diversity Program

Manager. The basis cited for the filing was due to her race (African-American), sex (female) and

in retaliation for engaging in prior EEO activity.

## Complaint No: 03-51-00203

On or about July 27, 2003, Ms. Ward Jordan was denied the opportunity to serve in an acting

capacity in the vacant GS 15 Chief of the Systems and Policy Division, whereas three White

males Bill Tatter, Doug Allis, and Peter Maxey were allow to serve in this role.  Ms. Ward

Jordan (GS-14) was instructed to report to Bill Tatter, a lower graded White Male (GS13)

employee, who was consistently afforded the opportunity to serve as "Acting Director".  On

February 13 and 27, 2004, OB management denied her requests to attend three training courses:

1) USDA Graduate School, Auditing Performance Outcomes, 2) USDA Graduate School,

Performance Measurement and Budgeting and 3) Blacks in Government Training.  On or about

February 27, 2004 Ms. Ward Jordan, who had recently filed an EEO complaint against the OB

Director, received notice from personnel that she was to be transferred out of her Management

and Program Analyst, GS-14  position within OB, to a Staff Accountant position in the Office of

Financial Management (OFM).  The transfer was to become effective March 7, 2004.

## IV. OVERVIEW OF PLAINTIFFS' DISPARATE IMPACT CLAIMS

Even where an employer is not motivated by discriminatory intent, Title VII prohibits an employer from using a facially neutral employment practice that has an unjustified adverse impact on members of a protected class.   As asserted DoC **at the time of the filing had a central policy that uniformly covered each of the Plaintiff's bureaus (BIS, OS, and NTIA)**. Plaintiffs, Megginson, Howard and Jordan each were subjected to DoC's Generic Performance Standards and uniform rating forms which were subjectively applied during the rating process. DoC management used such subjective ratings to rank employees and to decide such personnel matters as eligibility for awards, promotions and other career enhancement opportunities.   Each Plaintiff evaluated under this subjective system was denied promotional opportunity, training and career advancement opportunity.   Emphasizing the importance of the results of the appraisal process, the DoC website notes that the results "are to be used as a basis for training, rewarding, reassigning, promoting, reducing in grade, retaining, or removing employees."


Specifically, the OS' Office of Human Resources Management has Department-wide staff responsibility for personnel policies and directives.   As established by DoC's Departmental Organizational Order the O/S Chief Financial Officer and Assistant Secretary *"develops and administers the personnel management policies and programs of the Department including the direction, administration and processing of all matters involving personnel" (See EXHIBIT-DOO 10-5, p.4)*

**Defendant's argument that Ms. Ward Jordan, Megginson, and Howard "are presently" on three different appraisal systems is moot.   For at the time the pending complaint was initiated all parties were subject to a centralized system of department-wide personnel**

17

**policies. Each of these bureaus followed the five tier rating system (CD- 396) and each bureau used the standardized rating form for appraisal purposes**. During the complaint period <u>all Plaintiffs</u> were evaluated on this form.  {*See EXHIBIT CD-396"Performance and Summary Rating Sheet}*.

Responsibility for the Department's discrimination against Plaintiff's ultimately rests with the centralized OS.  For it is here, (when complaint was lodged) that OS Chief Financial Officer Assistant Secretary for Administration's Human Resource Office had premier responsibility and charge to:

> [d]evelop and administer the personnel management policies and programs of the
> Department, including the direction, administration, and processing of all matters
> Involving personnel. . . . [And] [c]induct activities to ensure equal employment
> Opportunity in the Department, (emphasis added).   (*See EXHIBIT 10 –Chief Financial*

*Officer and Assistant Secretary for Administration – DOO 10-5.)*

Moreover, the EEOC found that within DoC "*common standards govern agency promotion and performance appraisal decisions in the Washington, D.C. metropolitan area.*" Such common standards include: the agency's issuance of a Department Administrative Order (DAO), implementing the federal merit promotion policy agency-wide; and the agency's promulgation of agency-wide principles governing the issuance of performance appraisals. As a result, the EEOC certified the class case 95-67-0198 from which this multiple party complaint has evolved.

## CONCLUSION

Plaintiff's (Pro Se Litigants) Janet Howard, Joyce E. Megginson, Tanya Ward Jordan have raised significant issues in dispute such as the singularity of one DoC performance appraisal system during the filing of Plaintiff's complaint {emphasis added}.  This sole subjective system was used by DoC officials to award promotions, awards, and career enhancing opportunities.

Dated: May 12, 2008

Respectfully:

Janet Howard
Pro Se
P.O. Box 1454
Spotsylvania, VA 22553
Janet_17771@Netzero.net
(540) 895-5779

Joyce E. Megginson
Pro Se
310 Bogota Drive
Ft. Washington, MD 20744
Joymegg@aol.com
(301) 292-3308

Tanya Ward Jordan
Pro Se
13003 Keverton Drive
Upper Marlboro, MD 20774
TanyaW.Jordan@verizon.net
(301) 390-4306

## ORDER

Accordingly, upon Plaintiff's motion it is the 12th day of May hereby,

**ORDERED** that Plaintiff's motion in opposition to Defendant's motion to dismiss the second amended complaint, or in the alternative, for summary judgment be **GRANTED.**

_____

John D. Bates
United States District Judge

CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of May 2008, this office is sending by U.S. Mail plaintiffs' Motion in opposition to Defendant's Motion to Dismiss the Second Amended Complaint, or in the Alternative for Summary Judgement to Brian Hudak 555 5th St. N.W. Washington, DC.

_Janet Howard_      _5/12/08_
Janet Howard         Date
P.O. Box 1454
Spotsylvania, VA
540-895-5779

_Joyce E. Megginson_      _5/13/08_
Joyce E. Megginson      Date
310 Bogota Dr.
Ft. Washington, Md. 20744
301-292-3308

_Tanya Ward Jordan_      _5/12/08_
Tanya Ward Jordan      Date
13003 Keverton Dr.
Upper Marlboro, Md. 20774
301-390-4306