# Howard 15
# (No. 01-67-00128)

# COMPLAINT OF EMPLOYMENT DISCRIMINATION
## AGAINST THE U.S. DEPARTMENT OF COMMERCE

For OCR Use
COMPLAINT NUMBER: 01-67-00128    FILING DATE: 02-08-01

## INFORMATION ABOUT YOU

Name: Janet Howard
Address: P.O. Box 1454
City/State: Spotsylvania, VA  Zip Code: 22553
Social Security Number: [blank]
Home Phone: (540) 895-5779
Work Phone: (202) 482-0717

## INFORMATION ABOUT YOUR REPRESENTATIVE

Representative's Name: [blank]
Address: [blank]
City/State: [blank]  Zip Code: [blank]
Phone ( )
Fax ( )
NOTE: You do not have to have a representative.
Is your representative an attorney? ☐ Yes ☐ No

## INFORMATION ABOUT THE COMPLAINT

In which bureau did the alleged discrimination take place?
DOC/BXA/EE/OEA

Did you work for the Department of Commerce at the time? ☑ Yes ☐ No  If yes, what was your position (title/series/grade), office, and bureau?

Describe the action(s) or policy(ies) you believe was (were) discriminatory. Be specific and include dates. If you need more space, attach an extra page(s).
Please see attached

What do you believe was (were) the reason(s) for the alleged discrimination? Check the appropriate box(es) and write in specific details. For example: If it was because of your race, what is your race? If it was because of your age, what is your date of birth?

☑ Race
☑ Color
☐ Religion
☑ Sex
☐ National Origin
☑ Age
☑ Disability
☑ Retaliation

What remedy(ies) do you seek for the alleged discrimination? If you need more space, attach an extra page(s).
Immediate promotion in my division ELR+CD to the GS-13, loss wages effective of the day selection was made - front & back Attorney fees, court cost, medical bills, Compensatory damages

Did you discuss this(ese) issue(s) with an EEO Counselor? ☑ Yes ☐ No  Counselor's name?
Did you file a grievance under a negotiated grievance procedure? ☐ Yes ☑ No  Filing date(s)?
Did you file a Merit Systems Protection Board (MSPB) appeal? ☐ Yes ☑ No  Filing date(s)?

Signature: Janet Howard
Date: 2-8-2001

SIGN HERE (OR HAVE YOUR ATTORNEY SIGN FOR YOU)    DATE (MONTH/DAY/YEAR)

February 8, 2001

Janet Howard
GS-1801-12
Export Compliance Specialist



I am filing a Formal EEO complaint against the Bureau of Export Administration/ OEA/ Donald Lyles and Kimberly Smith for the continuing Civil Rights violation of retaliation/ reprisal and non-selection based on my race/sex/ age and disability.

On January 4, 2001 I filed a informal complaint alleging continuing violation of my civil rights by the Bureau of Export Administration. My most recent complaint is against selecting officials Donald Lyles, Acting Director/ Office of Export Enforcement and, Kimberly Smith, Director / High Performance Computer Unit of, reprisal/ retaliation and non-selection based on my prior EEO complaints .

> **Section 2302, Title 5, of the United States Code - 2302. Prohibited any Manager/Selecting Official who has authority to take, or who has the authority to direct others to take, shall not with respect to such authority discriminate for or against any employee for employment.** Mr. Lyles stated to the EEO Counselor :

" If he could not hire the **(white male)** who applied for the position, he would not hire **"any"** employee in the Office Enforcement Analysis."

It is my belief that Mr. Lyles came to the Office of Enforcement Analysis(OEA) with an **exaggerated impression** of himself to the **detriment of the OEA staff**. Less than 1 month after Mr. Lyles detail in the OEA he devised a plan to retaliate against me by prohibiting me solely from participating in the Blacks In Government Training Conference. This discriminatory act of reprisal caused me to exercise my rights granted by law to file an EEO complaint against him. The above statement by Mr. Lyles, Acting Director for Enforcement Analysis is prejudicial against me and the staff he employs and, of the office in which for **6 months** he has been employed. Mr. Lyles operated under a cover of deceit when he encouraged all eligible OEA employees to apply for the GS/1801-12/13 High Performance Computer Position. Because through his own admission, Mr. Lyles was already pre-disposed against selecting me or any other qualified employee working in OEA.

> **5 CFR300.103 -** States that there shall be a rational relationship between performance in the position to be filled (or in the target position in the case of an entry position) and the employment practice used. The demonstration of rational relationship shall include a showing that the employment practice was professionally developed. A minimum educational requirement may not be established . It further states, the selection process should result in selection from among the best qualified candidates.

> Section 717 of the Civil Rights Act of 1964 (42 U.S. 2000e-16 (C) prohibited discrimination on the basis of sex, as prohibited under section 6(d) of the Fair Labor Standard Act of 1938 (29 U.S.C. 206(d).

> Managers/Selecting officials are prohibited from taking any action against an employee for employment as a reprisal for prior EEO activity. The selecting official is prohibited from injuring the prospects of any person for employment. Managers are prohibited from granting any preference or advantage not authorized by law, rule or regulation (such as their selectee (the white male)) for employment for the purpose of injuring my prospects for employment. The selecting official is prohibited from taking action against an employee for employment because the employee exercises grievance rights granted by law.

The GS-13 slot was originally located in the Export License Review &Compliance Division (ELR&CD), the division of which I am employed. This slot was removed from my division, ELR&CD and given to Kimberly Smith a GS-13 of The High Performance Computer Division, consisting of Kimberly Smith GS-13 and 1 subordinate GS-7. This position was removed from my division for the purposes of (1) prohibiting me from obtaining promotion to the GS-13 level and, (2) to employed pre-selected candidate..

The GS-13 Director's slot currently held by Kimberly Smith was also located in the division of ELR&CD, this slot was removed and re-established by the Under Secretary & Assistant Secretary of BXA on August 1999 for the purpose of employing cronyism in hiring Kimberly Smith a non-federal candidate paying her $14,000 over her worth. I have been employed with the Office of Enforcement Analysis since it's inception, 18 years ago. In 1992, I was a GS-11 Export Compliance Specialist serving in a GS-13 Director's position, supervising a staff of 7. Even now, in the absence of my GS-14 Director, I am delegated Acting Director of ELR&CD.

> The head of each agency shall be responsible for the prevention of prohibited personnel practices, for the compliance with and enforcement of applicable civil service laws, rules, and regulation, and other aspects of personnel management, and for ensuring (in consultation with the Office of Special Counsel).

On 8/25/99, I filed an EEO complaint against the Bureau of Export Administration(BXA) and, BXA's Office of Personnel, naming in that complaint the Under Secretary of BXA William Reinsche, Assistant Secretary of Export Enforcement Amanda Debusk, Director of OEA Thomas Andrukonis and BXA Personnel Rep.- Carla Brown.

2

The Under Secretary and Assistant Secretary were aware of, and continued to pretend to be in denial that my civil rights since 1987 and constant to this very day were being violated. That I have been discriminated by numerous BXA managers who have given authority to do so by the Under Secretary and Assistant Secretary. The heads of BXA responsible for preventing prohibited practices have vigorously themselves engaged in them for the purpose of injuring my prospects for career growth..

On February 6, 2001 I filed a formal complaint of Discriminatory non-selection as the selecting official Donald Lyles made this statement to the EEOC Counselor: "If I can not hire the **(white male)** who applied for the position I would not hire **"any"** employee in the Office Enforcement Analysis, the office that he is temporarily detailed to as Acting Director.

Mr. Lyles Prejudiced himself even before making a selection, he had pre-determined that he would not hire any OEA employee applying for the GS-1801-13 vacancy announcement (OS-BXA-00-367-EA ) to this position. Mr. Lyles went on to say that after the white male candidate declined the job offer, he (Mr. Lyles) followed through with his earlier statement to the EEO Counselor and returned the GS-1801- 13 position slot back to the office of the secretary.

am an 18 year employee in the Office of Enforcement Analysis. From April 26, 1992 to September 21, 2000 I have applied for six (6) GS-1801 Export Compliance Specialist positions.

| 4/26/92 , (GS-1801-12/13 Support Supervisor) | |
|---|---|
| | {**Preference with explanation-** *As the Office of Enforcement Support Divisions Acting Director, a verbal job action was agreed upon by Mr. Andrukonis and I that he would compensate me by advertising the GS-1801-13 Support Directors position in which I was detailed to be re-advertised as a GS-1801-12/13 Support Directors position making it possible for me to compete. He further stated that since I was already detailed into this position, I would be the most qualified candidate. After a detail of 236 day as GS-13 Acting Support Director, with no compensation in pay. Mr. Andrukonis reneged on his vow and terminated my detail, four days short of a 120. He did not announce the position, instead he made Jay Hatfield office director of both divisions. Thus denying me a career growth opportunity and prohibiting me from receiving promotion .}* |
| | |

3

> 4/26/94 (OS-BXA-4-033-JD),
> 2/28/95 (OS-BXA-05-047-LH),
> 2/15/1996 (OS-BXA-06-014),
> 4/28/99 (OS-BXA-09-160-TT)
> 09/21/2000 (OS-BXA-00-367-EA )

The dates and Vacancy Announcement numbers are reflective of the continuing pattern of BXA/OEA managers to discriminate against me because of prior EEO complaints and, at a later date, I became Class Agent for the recently certified (July 20, 2000) Race Discrimination Complaint against the Department.

**Background information in support of continuing civil rights violations citing patterns of discrimination, disparate treatment of reprisal and retaliation by the Bureau of Export Administration.**

**April 26, 1991,** seven years prior to OEA's hiring of Kimberly Smith on 8/2/1999 as Director the of HPC Unit, I was Acting Director of the (former OES) now OEA Preventive Enforcement Division in a GS-1801-13 supervisor position. I supervised seven (7) GS-1801-7 Export Compliance Assistants.

**April 22, 1997,** more than two years prior to OEA's hiring of Kimberley Smith on 8/2/1999 as Director of the High Performance Computer (HPC) Unit , I headed OEA's High Performance Computer (HPC) team.

**December 2, 1997,** approximately two years prior to OEA's hiring of Kimberly Smith on 8/2/1999 as Director of the HPC Unit, I drafted a paper normally produced by Policy Analysts. This OMB package justified the collection of information from Post Shipment Verifications (PSV) on all exports to Tier 3 countries of computers over 2000 CTP in effect as of 11/20/97, the date the President signed the National Defense Authorization Act (NDAA).

**FY-1999-FY-2000 Performance Appraisals** - My Performance Appraisals for fiscal year **1999** and **2000** are explicit in recognizing me as Acting Director of the Export License Review and Compliance Division (ELR&CD) in the absence of my **GS 1801-14** supervisor.

4

**April 28, 1999** - Based on my work skills and experience cited above, I applied for a Supervisory Export Compliance Specialist GS-1801-13 position advertised in the Office of Enforcement Analysis (OEA), announcement number OS-BXA- 09-160-TT, issue date **4/28/99** - closing date **5/11/99**. However despite the fact that I had acted in a managerial position in OEA since 1992, managers in BXA did not deem me worthy for an interview for the position. I only discovered that a selection had been made for the position after I received an e-mail from the Director of OEA dated 6/21/99 stating that the selectee was Kimberly Smith someone outside of the OEA and the Department as a whole. In parenthesis the e-mail said "(as **directed** by Bill), meaning Bureau of Export Administrations Under-Secretary William Reinsche.

**June 22, 1999** I questioned the selection process and asked Karla Brown BXA's Personnel representative five questions:  (1) Did I qualify for the announced position?
(2) If I didn't, why?
(3) Did I make the most qualified list?
(4) If I didn't make the most qualified list, why?
(5) If I did make the most qualified list, why was I not interviewed as a serious candidate.

**June 24,1999** Karla Brown responded back by saying "Janet, the appointment of Ms. Smith is still pending a few things".

**June 24, 1999** I appended the first set of questions to include the following :

(1) What are Kim Smith's qualifications for this position?
(2) What is the rationale in making October 1, 1999 her effective date?.
(3) Does Personnel's regulations support this date? If so;
(4) Please provide me a copy of the regulations.
(5) How long can a position be held opened for an employee who has just been selected to a new position.

**I received no further response from Karla Brown.**

I filed an EEO complaint naming The Under-Secretary of BXA William Reinsch and the Assistant Secretary of Export Enforcement (EE) Amanda DeBusk of continuing civil rights violations of reprisal/ retaliation and non-selection and, Karla Brown of prohibited personnel practices.

**August 14, 2000**, I responded to an agency wide e-mail from Under- Secretary Reinsch to all employees interested in attending the annual Blacks in Government (BIG) training Conference. According to Mr. Reinsch's e-mail, "if you are interested in attending, BXA will consider applicants for training on a first come first served basis"-- "**send Bill Arvin an e-mail** if you plan

5

to attend". Despite following instructions to contact Bill Arvin directly, I was the only employee singled out by my second line supervisor Donald Lyles for not following the "chain of command" when I followed Bill Reinsch's instruction and e-mailed Bill Arvin.

From that point, Mr. Lyles did not communicate with me further on this matter, **either verbally or in writing**. All efforts to resolve the situation was either communicated by my immediate supervisor Carol Bryant or Tanya Ward-Jordan, vice president of BIG. Dispite the fact that I am class agent for the class action EEO complaint and Blacks in Government Communication Officer and, the Secretary of Commerce was to speak at the conference, I was prohibited from receiving per diem to attend this conference. Until that point, BIG conference training would have been the only training afforded me for the entire fiscal year 2000.

I have worked in this office since it re-organization in 1983. My personnel record will attest to the fact that I have held grade series/ titles in every position in the OEA including Director. Mr. Lyles was detailed to OEA as Acting Director in May 2000, a little over six months.

**On September 12, 2000** I filed a EEO complaint against the Acting Director of OEA Donald Lyles of race, color, sex, age, disability (stress) and retaliation. In September 2000 another GS-13 position became opened (OS-BXA-00-367-EA), this GS-13 job slot was originally in my divison in my immediate office ELR&CD this position was relocated to the HPC division. Donald Lyles and Kimberly Smith were the selecting Officials.

On April 28, 1999 a GS-13 retired in my division thereby opening a GS-13 slot. This GS-13 slot was originally in my division in my immediate office. It was removed from my division and from my immediate office ELR &CD and resurfaced on 4/28/1999 as a new HPC GS-13 supervisor's position (**Vacancy Announcement OS-BXA-09-160-TT - Supervisory Export Compliance Specialist GS-1801-13**). The GS-13 job slot, originally located in my division and in my immediate office ELR&CD was **moved** to the HPC division which is comprised of Kimberly Smith, a grade GS-1801-13, and one (1) other GS-1802-9 OEA employee. My immediate supervisor and where the position was originally located is a GS-14. Therefore, you have a GS-13 HPC employee reporting to a GS-13 HPC supervisor.

In february 2000, a GS-13 relocated to another part of BXA, opening up a GS-13 slot in the ELR&CD. The September 2000 GS-1801-13 HPC position (**OS-BXA-00-367-EA**) that was originally in my division in my immediate office ELR&CD, was also relocated to the HPC division. Despite the fact that I have worked in a managerial position in OEA on both sides of the Office in the Support Division and, Analysis since 1992, managers in BXA still did not deem me worthy for promotion to the GS-13 grade level. I know that the removal of both job slots (**OS-BXA-09-160-TT & OS-BXA-00-367-EA**) from my division was a deliberate act to prevent me, a GS-12, from receiving a promotion to the GS-13.

6

The HPC vacancy requires the candidate to have an in-depth knowledge of **U.S. Export Controls** and U.S. non-proliferation policies. It's possible, but highly improbable that a candidate outside of the Bureau of Export Administration would be as familiar with the U.S. Export Administration Regulations (EAR) as an 18 year veteran, given the fact that the regulations change constantly.

Not withstanding, the candidate filling this position is required to obtain a Top Secret Clearance. The decision of Mr. Lyles and Ms. Smith not to select me, an employee with 18 years of experience in BXA with extensive experience as a team leader in this position, reveals a discriminatory bias against me by BXA managers.

As stated earlier, the candidate filling this position is required to obtain a top secret clearance and, these OEA managers are confused as to the most cost efficient distribution of OEA's budget. The selection of a non-OEA employee is a strong indication that BXA/OEA managers are lacking in the utilization of agency trained, experienced and capable OEA personnel to perform without delay the duties persuant to the HPC mission, thereby impacting OEA's management work flow negatively.

*Janet Howard*
2/8/2001



UNITED STATES DEPARTMENT OF COMMERCE
Chief Financial Officer
Assistant Secretary for Administration
Washington, D.C. 20230

MAY - 3 2001

Complaint Number: 01-67-00128
Filing Date: February 8, 2001

MEMORANDUM FOR JANET HOWARD

From: Kathryn E. Hawker
Chief, Compliance Division
Office of Civil Rights

Subject: Notice of Acceptance for Investigation

**Statement of Claims**

The Department of Commerce has accepted for investigation the following claim(s) contained in the Equal Employment Opportunity (EEO) complaint of discrimination referenced above.

> Complainant, an Export Compliance Specialist, GS-1801-12, alleges discrimination on the bases of her race (unspecified), color (unspecified), sex (female), age (unspecified), disability (unspecified), and retaliation[1] when she was not selected for the position of Policy Analyst, GS-1801-12/13, which was announced under Vacancy Announcement Number: OS-BXA-00-367-EA.

**Your Rights and Responsibilities**

- An investigator will soon contact you to receive your sworn or affirmed statement and the evidence you possess.[2] You will receive a copy of the final Report of Investigation upon its completion.

---

[1] Complainant alleged retaliation for her association with Blacks in Government (BIG). While retaliation for prior EEO activity is a viable Title VII basis, association with BIG does not constitute protected activity for the purposes of Title VII. Notwithstanding, since the Department's case tracking system, EEO Track shows Complainant has filed some 16 EEO complaints since 1988, the basis of retaliation is accepted.

[2] Although this complaint will be subsumed in the class complaint of Janet Howard v. Department of Commerce EEOC Request No. 05A01214 if the EEOC determines to certify the class, the Department has elected to proceed with the processing of the individual complaint through completion of the investigation in order to preserve the record.

- The investigation must be completed by **August 7, 2001**, unless you and the Department agree on an extension. See Title 29, Code of Federal Regulations (C.F.R.) section (§) 1614.108(e). Therefore, it is essential that when the investigator asks for the information to support your complaint, you promptly provide it. [3]

- You may amend your formal complaint at any time before the investigation is completed. See 29 C.F.R. § 1614.106(d). New claims must be like or related to the claims raised in the original complaint. For example, if your original complaint concerns a Performance Improvement Plan, a new claim concerning your subsequent performance rating would be "like or related." A new claim concerning your time and attendance would not. If you amend your complaint, the investigation must be completed within 180 days from the date of the amendment or no more than 360 days from the date the original complaint was filed, whichever comes first. If we determine that your new claim is not like or related to your original complaint, we will notify you of your right to seek EEO counseling.

- If you file more than one complaint, the Agency is required to consolidate all of your complaints for processing. The investigation of consolidated complaints must be completed within 180 days of the filing date of the latest complaint or 360 days from the date you filed your first complaint, whichever comes first.

- You may request a hearing before the Equal Employment Opportunity Commission (EEOC) at any time after 180 days have passed from the date the original complaint was filed. The request must be filed with the EEOC office specified in the Acknowledgment Memorandum, dated February 12, 2001, and you must send a copy of the request to this office.

- Your complaint may be dismissed if you fail to cooperate with the investigation.

- You may request Alternative Dispute Resolution (ADR) at any time during the processing of your formal complaint. To ensure that your complaint is investigated within the time required by EEOC regulations, investigation of your complaint will continue during the time you and the Agency are engaged in ADR. Not all cases are appropriate for ADR. Please consult the Office of Civil Rights' *ADR Program Guide* for more information.

For your information, I have enclosed an information sheet on EEO Complaint Investigations.

---

[3] Complainant failed to identify the date that she learned of her non-selection and therefore, a determination as to the timeliness of her EEO Counselor contact cannot be made at this time. If the investigation establishes Complainant failed to timely contact the EEO Counselor, this complaint may be subsequently dismissed pursuant to Title 29 Code of Federal Regulation 1614.107(a)(2) for untimely counseling contact.

2

Amendments to formal complaints, copies of hearing requests, and requests for corrections to the statement of claims may be sent to me at:

> Kathryn E. Hawker
> Chief, Compliance Division
> Office of Civil Rights, Room 6012
> U.S. Department of Commerce
> Washington, D. C. 20230

Requests for ADR or for a copy of the *ADR Program Guide* should be addressed to your servicing EEO Officer or:

> Roslyn D. Hoover
> EEO ADR Manager
> Office of Civil Rights, Room 6012
> U.S. Department of Commerce
> Washington, D.C. 20230

## Certificate of Service

I attest that a copy of this Notice of Investigation has been sent to the parties listed below:

By Certified Mail:

Ms. Janet Howard
P.O. Box 1454
Spotsylvania, VA 22553

Other:

Bernadette M. Worthy
EEO Officer, BXA

Complaint File

OCR Chron File