# Howard 21
# (No. 05-67-00200)

CD-498 (February 1999)                                                    OMB Approval No. 0690-0015

# Complaint of Employment Discrimination
## Against the U.S. Department of Commerce

| For OCR Use COMPLAINT NUMBER: | 05-67-00200 | Filing Date: | 12/20/05 Hand Delivered |

### INFORMATION ABOUT YOU

Name: Janet Howard
Social Security Number: [redacted]
Address: P.O. Box 1454
Home Phone: (540) 895-5779
City/State: Spotsy, VA   Zip Code: 22553
Work Phone: 202 482-0717

### INFORMATION ABOUT YOUR REPRESENTATIVE

Representative's Name: Joseph Wittels
NOTE: You do not have to have a representative.
Address: 2121 K St., N.W. Suite 700
Phone: 202 661-3506
Wash., DC 20037
Fax: ( )
City/State:    Zip Code:    Is your representative an attorney? ☑ Yes ☐ No

### INFORMATION ABOUT THE COMPLAINT

In which bureau did the alleged discrimination take place?
Bureau of Industry Security

Did you work for the Department of Commerce at the time? ☑ Yes ☐ No   If yes, what was your position (title/series/grade), office, and bureau?

Describe the action(s) or policy(ies) you believe was (were) discriminatory. Be specific and include dates. If you need more space, attach an extra page(s).   See attached

[RECEIVED stamp - OFFICE OF CIVIL RIGHTS]

What do you believe was (were) the reason(s) for the alleged discrimination? Check the appropriate box(es) and write in specific details. For example: If it was because of your race, what is your race? If it was because of your age, what is your date of birth?

☑ Race                          ☑ National Origin
☑ Color                         ☐ Age
☐ Religion                      ☑ Disability
☐ Sex                           ☑ Retaliation

What remedy(ies) do you seek for the alleged discrimination? If you need more space, attach an extra page(s).
"Transportation cost while in Orlando, $300, one and any other remedies deemed by the court

Did you discuss this(ese) issue(s) with an EEO Counselor? ☑ Yes ☐ No   Counselor's name?
Did you file a grievance under a negotiated grievance procedure?   ☐ Yes ☑ No Filing date(s)?
Did you file a Merit Systems Protection Board (MSPB) appeal?   ☐ Yes ☑ No Filing date(s)?

Janet Howard                                              12-7-05
SIGN HERE ( OR HAVE YOUR ATTORNEY SIGN FOR YOU)           DATE ( MONTH/DAY/YEAR)

Exhibit 3  Page 1

Thursday, 12/20/2005

## Janet Howard's Response to Wendy Wysong's Responses

**Wendy Wysong Response:**

Wendy Wysong claims that management handled Counselee's training request in a timely manner.

**Janet Howard Response:**

This statement is not true.

The request for training was submitted February 2005. Ms. Wysong signed off on my Travel Authorization Order July 28, 2005, 30 minutes before I was to leave for home and, approximately 7 hours before I was to leave for Orlando.

**Wendy Wysong Response:**

She claims Counselee had 2 outstanding requests for training during this timeframe and they wanted her to pick one because they wanted to ensure that they had enough training funds available for everyone wishing to attend.

**Janet Howard Response:**

I submitted two requests for training. Tom had already discounted the one at Fredericksburg when he said probably, "I would want to take the B.I.G. Training, since it was held in the **summer** time". Typically, I am the only employee to attend any B.I.G Conference Training and, no OEA employee asked to attend the training in Fredericksburg.

During a cost free 3 month Supervisory Executive Leadership Training Session class, I had the opportunity to conversat with a BIS budget officer. I learned that additional money was given to BIS for training. I informed Tom of that, hoping that armed with this news he would approve the training for $299.00 given in Fredericksburg. He did not.

1

Exhibit __3__ Page __2__

**Wendy Wysong Response:**

Wysong claims Counselee did not make management aware of her preference until April 1005.

**Janet Howard Response:**

This statement by Ms. Wysong is untrue. My request was to take both trainings. Mr. Andrukonis and Ms. Bryant were aware of this.

**Wendy Wysong Response:**

Wysong states Counselee's request was authorized on June 23. 2005.

**Janet Howard Response:**

Ms. Wysong signs my Travel Orders July 28. 2005 30 minutes before I was to leave for home and 7 hours before I was to leave for Orlando. Ms. Wysong is inferring in this instance that 4 months typifies a timely response.

**Wendy Wysong Response:**

Wysong admits she denied Counselee's request for a rental. but approved her use of taxi service.

**Janet Howard Response:** This statement is true.

Ms. Wysong according to Tom would only authorize my Travel Order. under the following conditions.
    (1) I do not rent a car and:
    (2) That I be out of Florida by noon.
    (3) Tom told me that Wendy said she would pay for the use of 100 taxis before she would sign for me to rent one car.
    (4) I told them the financial saving for the office because B.I.G had gotten a special rate of $129.00 a week. Tom and Wendy didn't care. They were bent of not allowing me the use of a car.
    (5) Also. I have a disability which could prove fatal from long exposure from hear. The use of a car would limit the amount of time in the sun and provide a cool mean of transport back and forth from conference location...

2

Exhibit 3 Page 3

### Wendy Wysong Response:

Wysong did not believe a car rental was needed because Andrea Jones, Management Analyst noticed the Counselee's hotel was located at 9801 International Drive and the B.I.G. Conference was at 9800 International Drive Rosen Center.

### Janet Howard Response:

First Andrea Jones signature is a management analyst who does not have signature authority to sign for training or travel for herself of any other BIS employee. Secondly, she has never been to Orlando, Florida. She has no knowledge real or perceived of the actual lay out of Florida. Wendy and Tom can claim ignorance. Both are frequent travelers. Thirdly, B.I.G Conference was scattered among three hotels including 9800 International Drive Conference Center.

I have a disability which could prove fatal from long exposure from hear. The use of a car would limited the amount of time in the sun and provide a cool mean of transport back and forth from conference location.

Lastly, I was discriminated against by Andrea Jones and Wendy because I was treated differently than other BIS employees who travel to Orlando. I was subjected to restriction not placed on other BIS or Government employees. Restriction was placed on me that are not consistent with government guidelines/regulations.

3

Exhibit 3   Page 2/

1

20/12/2005

## Janet Howard's Response to
## Tom Andrukonis Comments:

**Tom Andrukonis Response:**

(1) Tom Andrukonis, Director . Office Enforcement Analysis. Bis states that he approved Janet Howard request to attend the Blacks in Government Conference in Orlando. Florida.

**Janet Howard Response:**

February, 2005, I submitted for Mr. Andrukonis approval & authorization, Form **(SF-182 / Training Authorization Form)** - to attend Blacks In Government Annual Training Conference. The form -182 reflected itemized cost for one week to attend Blacks In Government Conference Training in Orlando. This estimated cost included the conference registration fee of $350.00. closing plenary $60.00. pre- Diem, air fare, POV, Shuttle and car rental. Mr. Andrukonis approved and authorized my Form -182 request for training on or about April or May 2005.

Mr. Andrukonis did not authorize my **Travel Order Form** at that time.

**Tom Andrukonis Response:**

(2) He claims Counselee caused the delays associated with the processing of her training request when she delayed in responding to her request that she decided which training she wanted to attend B.I.G or a communication workshop.

**Janet Howard Response:**

This statement is untrue. I had not been approved to receive training with cost of any kind up-to this point for 2005. A communication class was being held in Fredericksburg. VA at a cost of $299.00. I submitted that request along with the request to attend Blacks In Government Annual Conference Training. Mr. Andrukonis said I could only attend one. He suggested that I would probably want to attend the Blacks In Government Training because it was held in the summer. I took exception to his response since I come to work all four seasons of the year.

Exhibit 3 Page 5

**Tom Andrukonis Response:**

(3) He claims he sent her an e-mail in February, but she did not respond until some time in April or May.

**Janet Howard Response:**

This statement is not true. I included my response in an e-mail request for **additional accommodation** to telework two days a week from my home. I did not receive a response back from Mr. Andrukonis.

**Tom Andrukonis Response**

(4) Andrukonis states Counselee insisted on processing her own travel order and filled it out incorrectly.

**Janet Howard Response:**

This statement is untrue. I processed prior travel orders when I attended Blacks In Government Conference Training in Los Angeles, New Orleans and Georgia.

Do note: the conference date was less than two weeks away. OEA's secretary had gone on vacation for a week. Un-be-known to me, the travel authorization form had been revised and, the revised version had not been downloaded to my computer.

**Tom Andrukonis Response:**

(5) He claims this caused another delay because the paper work had to be corrected.

**Janet Howard Response:**

On Monday when Barbara returned, she could not transfer my information onto the new form because she had to do time cards. She quickly transformed the information the next day and gave the form to Tom. I had to go back again to Tom and ask for my travel orders so that I could confirm the tentative flight plans I made early in the year.

Exhibit 3   Page 6

3

**Tom Andrukonis Response:**

(6) Andrukonis states he had no reason to deny Counselee's request, but that Wendy Wysong had to approve of the request as well.

**Janet Howard Response:**

Do Note: Mr. Andrukonis has 5,000 reasons for denying my request. Mr. Andrukonis is named as the offending manager in the Class Action Complaint currently in U.S. District Court of which I am Lead Class Agent.
The 5,000 reasons, are the more than 5,000 African American class members.

Barbara our secretary told me that she had advised Tom earlier that it was not necessary to pass this request for travel through Wendy Wysong. Tom not only passed the form through Wendy Wysong, but he also passed it to her administrative assistant Andrea Jones for her scrutiny.

**Tom Andrukonis Response:**

(7) Andrukonis states the car rental was a part of Counselee's original request.

**Janet Howard Response:**

The rental car was automatically factored in when I made tentative air fare plans. It was listed on the original and only training request authorization I submitted to Mr. Andrukonis. This is the same Training authorization form signed by Mr. Andrukonis back in early June. Also, "original", implies that there was other training request submitted for the B.I.G. training. There was only one.

**Tom Andrukonis Response:**

(8) He states his approval of training request does not become final until they are approved by Wendy Wysong.

**Janet Howard Response:**

Wendy Wysong and Tom Andrukonis had both given their authorization by signing my training form (182). They both held me hostage by placing conditions on their signing my travel orders.



Exhibit  3   Page 7

**Tom Andrukonis Response:**

(9) Andrukonis states that Wysong decided that the car rental was not needed.

**Janet Howard Response:**

I have utilized for more than two years **reasonable accommodation to help me cope with a job related disability.** One conference seminar was held in the hotel I resided in while in Orlando. All other sessions were held in other hotels or conference hall. All affordable eateries were a mile or more outside the hotel. The temperature every day was almost 100 degrees. Temperature of that magnitude jeopardized my health, as the risk of me having a stroke or heart attack was a real possibility given my disability. Yet, Ms. Wysong decided that a car rental was not needed.

**Tom Andrukonis Response:**

(10) Andrukonis states that management never intended to cover the cost of the plenary session.

**Janet Howard Response:**

This statement is not true. Tom used the office credit card to make pay in **advance of the training**, after both He and Wendy signed my training authorization form.

(11)    **Tom Andrukonis Response:**

He states the price of the plenary session was included in the overall cost of attendance at the B.I.G Conference. therefore, when they paid for the Conference the session was included in the price.

**Janet Howard Response:**

Every work is untrue. B.I.G. Registration form clearly lists the registration fee **separate and apart** from the closing plenary fee. I personally handed Tom the original registration form and pointed out to him on numerous occasions that the closing plenary was separate. I verbally said $60.00 dollars many times. Also, this not the first time management paid for closing plenary.

Janet Howard

Exhibit 3 Page 8



**UNITED STATES DEPARTMENT OF COMMERCE**
**Chief Financial Officer**
**Assistant Secretary for Administration**
Washington, D.C. 20230

January 25, 2006

David Sandford, Esquire
2121 K Street, Suite 700
Washington, DC 20037

                           Complainant's Name: Janet Howard
                           Complaint Number: 05-67-00200

Dear Mr. Sandford:

The Department of Commerce has accepted for investigation the claims cited below which were contained in the above referenced Equal Employment Opportunity (EEO) complaint of discrimination.

    Complainant, an Export Compliance Specialist, GS-12, with the Office of Enforcement Analysis, Bureau of Industry and Security, alleges that due to her race (not provided), color (not provided), national origin (not provided), age (not provided), disability (not provided), and in retaliation for prior EEO activity, she was subjected to the following acts of discrimination:

1. Despite Complainant submitting her request in February 2005 to attend the Blacks in Government Conference in Orlando, Florida, during the period August 1-6, 2005, management did not inform her of their approval until July 28, 2005 at 3:30 pm, 30 minutes prior to the end of her scheduled work day.

2. On July 28, 2005 at 3:30 pm, Complainant was informed by Tom Andrukonis that Wendy Wysong had denied her request for a rental car while attending the Blacks in Government Conference. Complainant therefore relied on taxi service and upon her return to work, management informed her that they would only pay $42.00 toward her taxi cab vouchers, which she indicates totaled $252.00.

3. Although the Agency paid $60.00 for her to attend the Blacks in Government closing plenary session, Wendy Wysong denied her request for hotel lodging for an additional day to allow for her attendance at that session and required that she check out of the hotel on Friday, August 6th at 10:00 am.

Exhibit ___6___ Page ___1___

**Rights and Responsibilities**

- If you believe that the issue(s) in your client's complaint has/have not been correctly identified, you must notify the Acting Chief, Program Implementation Division at the address shown below, in writing, within 15 calendar days after receipt of this Notice, specifying why you believe that the issue(s) in your client's case has/have not been correctly identified.

- An investigator will soon contact you to receive your client's sworn or affirmed statement and the evidence he/she possesses. You and your client will receive a copy of the final Report of Investigation upon its completion.

- The investigation must be completed by June 19, 2006[1], unless your client and the Department agree on an extension. *See* Title 29, Code of Federal Regulations (C.F.R.) section (§) 1614.108(e). Therefore, it is essential that when the investigator asks for the information to support the complaint, you and/or your client promptly provide it.

- Your client may amend his/her formal complaint at any time before the investigation is completed. *See* 29 C.F.R. § 1614.106(d). New claims must be like or related to the claims raised in the original complaint. For example, if your client's original complaint concerns a Performance Improvement Plan, a new claim concerning his/her subsequent performance rating would be "like or related." A new claim concerning his/her time and attendance would not. If your client amends his/her complaint, the investigation must be completed within 180 days from the date of the amendment or no more than 360 days from the date the original complaint was filed, whichever comes first. If we determine that your client's new claim is not like or related to his/her original complaint, we will notify you of his/her right to seek EEO counseling.

- If your client files more than one complaint, the Agency is required to consolidate all of his/her complaints for processing. The investigation of consolidated complaints must be completed within 180 days of the filing date of the latest complaint or 360 days from the date your client filed his/her first complaint, whichever comes first.

- You, on behalf of your client, may request a hearing before the Equal Employment Opportunity Commission (EEOC) at any time after 180 days have passed from the date the original complaint was filed. The request must be filed with the EEOC office specified in the Acknowledgment Memorandum, dated December 21, 2005, and a copy of the request must be provided to this office.

- Your client's complaint may be dismissed if you or your client fail(s) to cooperate with the investigation.

---

[1] The 180th day is Sunday, June 18, 2006. Therefore, the investigation must be completed by Monday, June 19, 2006, the next business day.

2   Exhibit 6  Page 2

- If the EEO Officer/Counselor informed you or your client that Alternative Dispute Resolution, through mediation, is an appropriate option for this complaint, you, on behalf of your client, or your client, have a right to choose mediation at any time during the processing of this formal complaint, including during the investigation. *(The DOC EEO Alternative Dispute Resolution: Mediation Guide* identifies the following cases where mediation is inappropriate: cases involving applicants for employment, former employees, alleged violence, egregious harassment, adverse actions, class actions, when authoritative resolution of a matter is required in precedent-setting cases, when the matter in dispute has significant government policy implications, or when it is important to produce a full public record of the proceedings.)

For your information, I have enclosed an information sheet on EEO Complaint Investigations and EEO mediation.

Amendments to formal complaints, copies of hearing requests, and requests for corrections to the statement of claims should be sent to:

> Susan E. Thomas
> Acting Chief, Program Implementation Division
> Office of Civil Rights, Room 6012
> U.S. Department of Commerce
> Washington, D. C. 20230

Requests for mediation and a copy of the ADR Program Guide should be addressed to the servicing EEO Officer or:

> Bernadette M. Worthy
> Chief, Client Services and Resolution Division
> Office of Civil Rights, Room 6012
> U.S. Department of Commerce
> Washington, DC 20230

Sincerely,

*/s/ Susan E. Thomas*

Susan E. Thomas
Acting Chief, Program Implementation Division
Office of Civil Rights

Enclosures

3

Exhibit 6 Page 3

## Certificate of Service

I attest that a copy of this Notice of Acceptance for Investigation has been sent to the parties list below:

<u>By Certified Mail</u>:

David Sandford, Esquire
2121 K Street, Suite 700
Washington, DC 20037

<u>Other</u>:

Ms. Janet Howard
P.O. Box 1454
Spotsylvania, VA 22553

Bernadette M. Worthy
EEO Officer, BIS

Investigative Team

Complaint File (Tab F)

OCR Chron File

_____
Signature

JAN 2 6 2006

_____
Date

Exhibit 6 Page 4

4