# Megginson 4
## (No. 95-61-02550)

 **UNITED STATES DEPARTMENT OF COMMERCE**
**National Telecommunications and**
**Information Administration**
Washington, D.C. 20230

March 10, 1995

MEMORANDUM FOR:    Courtland Cox
                                 Acting Director of Civil Rights

FROM:                    Joyce E. Megginson
                                 Class Agent

SUBJECT:              Notice of Filing of Formal Class Complaint of Sexual
                                 Harassment

During my initial EEO Counselor interview with Alfred Corea on January 18, 1995, I identified myself as a Class Agent alleging class sexual harassment based on race and gender. Specifically, I allege that I have been the victim of ongoing sexual harassment from Mr. William D. Gamble, and that the policy and practice that I allege to be discriminatory against the class is one of a hostile environment that is degrading and disrespectful.

Since this matter was not resolved within the 30 day limit, I have a right to file a formal class complaint of sexual harassment. So, at this time I am exercising my right to go formal with my allegations of sexual harassment. The attached Complaint Form CD-498 and its attachments are being submitted to you for processing.

Attachments

cc: Alfred Corea

ATTACHMENT 1

FORM CD-498
(Edition 1-89)
(Pres. by DAO 215-5)

# COMPLAINT OF DISCRIMINATION
## AGAINST THE U.S. DEPARTMENT OF COMMERCE
### BECAUSE OF RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, AGE, PHYSICAL OR MENTAL HANDICAP OR RETALIATION

DEPARTMENT NUMBER
0.255
95-61-014

FILING DATE
3-10-95

| | |
|---|---|
| 1. COMPLAINANT'S NAME<br>Joyce E. Megginson | 2. NAME OF COMMERCE ORGANIZATION THAT DISCRIMINATED AGAINST YOU<br>Nat'l Telecom. & Info. Admin. |
| COMPLAINANT'S STREET ADDRESS<br>310 Bogota Drive | STREET ADDRESS OF OFFICE<br>14th Constitution Ave., N.W., Rm 4099 |
| CITY  STATE  ZIP CODE<br>Ft. Washington, MD    20744 | CITY    STATE    ZIP CODE<br>Washington,    DC    20230 |
| TELEPHONE (INCLUDE AREA CODES)<br>HOME: 301-292-3308  WORK: 202-482-0486 | 4. DO YOU WORK FOR THE FEDERAL GOVERNMENT?<br>☐ NO  ☒ YES. MY MOST RECENT TITLE AND GRADE IS (OR WAS):<br>Program Analyst - 343 GS-9/8 |
| 3. GIVE THE DATE ON WHICH THE MOST RECENT DISCRIMINATION TOOK PLACE:<br>MONTH    DAY    YEAR<br>December    16,    1994 | NAME AND ADDRESS OF ORGANIZATION WHERE YOU WORK (OR APPLIED)<br>Dept. of Commerce/NTIA/OSM<br>14th Const. Ave., NW, Wash., DC 20230 |

5.  (A)  DESCRIBE HOW YOU WERE TREATED DIFFERENTLY THAN OTHER EMPLOYEES OR APPLICANTS BECAUSE OF YOUR RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, AGE, HANDICAP OR RETALIATION.  (B)  DESCRIBE THE ACTION TAKEN AGAINST YOU THAT YOU BELIEVE WAS DISCRIMINATORY.  (C)  GIVE THE DATES WHEN THIS ACTION OCCURRED.  (D)  WHAT HARM, IF ANY, CAME TO YOU IN YOUR WORK SITUATION AS A RESULT OF THIS ACTION?  (YOU MAY ATTACH EXTRA SHEETS)

"SEE ATTACHMENT 2"

6  ANSWER BELOW WHY YOU BELIEVE YOU WERE DISCRIMINATED AGAINST:

☒ RACE (STATE RACE)  Black
☐ COLOR (STATE COLOR)
☐ RELIGION (STATE RELIGION)
☒ SEX (STATE YOUR SEX)  Female
☐ NATIONAL ORIGIN (STATE NATIONAL ORIGIN)

(STATE COUNTRY OF BIRTH)

☐ AGE (STATE DATE OF BIRTH)
☐ PHYSICAL HANDICAP (DESCRIBE IT)

☐ MENTAL HANDICAP (DESCRIBE IT)

☒ RETALIATION (EXPLAIN YOUR PRIOR CONNECTION WITH THE EEO PROCESS) I filed a discrimination complaint with OCR against Mr. Gamble on Dec. 15, 1994.

| | |
|---|---|
| 7. DID YOU DISCUSS ALL MATTERS REPORTED IN NO. 5 WITH AN EEO COUNSELOR?  ☐ NO  ☒ IF YES, COUNSELOR'S NAME<br>Alfred Corea | 8. DID YOU FILE A GRIEVANCE  ☐ NO  ☒ YES  OR AN MSPB APPEAL<br>☒ NO  ☐ YES  ON THE MATTER (S) DESCRIBED IN NO. 5? IF YES, GIVE DATE (S) |

9.  THE REMEDY I SEEK IS:

"SEE ATTACHMENT 3"

10.  I CERTIFY THAT, TO THE BEST OF MY KNOWLEDGE AND BELIEF, ALL OF MY STATEMENTS ARE TRUE, CORRECT, COMPLETE AND MADE IN GOOD FAITH.
COMPLAINANT'S SIGNATURE (Sign in dark ink)

Joyce E. Megginson
Signature

11.  DATE OF SIGNATURE

| MONTH | DAY | YEAR |
|---|---|---|
| March | 10 | 1995 |

USCOMM DC 89-1535

ATTACHMENT 2

## COMPLAINT OF DISCRIMINATION AGAINST THE U.S. DEPARTMENT OF COMMERCE BECAUSE OF RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, AGE, PHYSICAL OR MENTAL HANDICAP OR RETALIATION

5.    A.    **DESCRIBE HOW YOU WERE TREATED DIFFERENTLY THAN OTHER EMPLOYEES OR APPLICANTS BECAUSE OF YOUR RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, AGE HANDICAP OR RETALIATION.**

As a result of my seeking outside intervention from the Office of Personnel and the Office of Civil Rights to halt the discriminatory practices within NTIA, I was retaliated against and sexually harassed by my immediate supervisor, William D. Gamble. I was physically intimidated and threatened, yelled at, and verbally abused by Mr. Gamble on December 15, 1994. I was also threatened with a transfer out of my present division to a different office to an unspecified job. These acts of sexual harassment are consistent with the disrespect and degradation exhibited towards me by Mr. Gamble.

Some of the more memorable acts of sexual harassment perpetrated upon me by Mr. Gamble include; When selected for my present job, Mr. Gamble told me with a smirk on his face, "I want you to know that you are not my choice; Mr. Gamble referred to me as a "gopher" and that my job was without substance; He also told me that I could work in the Office of Spectrum Management (OSM) for 10 years and he would never promote me; I was told that someone (who was on official travel) would have to die in a plane crash before I could possibly be promoted to a GS-12/13; and on an earlier occasion, I was admonished and compared to Mr. Gamble's 6 year old daughter.

Further, I was culturally criticized and insulted by Mr. Gamble when he told me that my speech pattern would have to change, and once referred to me as being "lazy" in the pronunciation of my words. I was also laughed at when I expressed a desire to further my education. These blatant and deliberate acts of discrimination and sexual harassment has created a very hostile and unhealthy work environment in my present job assignment with Mr. Gamble.

To my knowledge, I am the only upward mobility candidate within NTIA that was not allowed access to career ladder and professional advancement once placed in an upward mobility position. Also, during the last 10 years that I have been under the direct supervision of Mr. Gamble, I have been denied awards, even when I received commendable ratings, while others in my immediate division have received such awards.

2

**5.   B.   DESCRIBE THE ACTION TAKEN AGAINST YOU THAT YOU
BELIEVE WAS DISCRIMINATORY.**

On December 15, 1994, at approximately 4:17 p.m. Mr. Gamble directed me to come into his office for a meeting, he was hostile and abusive towards me. After a short discussion regards data that I forwarded to Michele Farquhar for the weekly report, and the fully successful performance rating that Mr. Gamble gave me for the rating period of September 30, 1993 - October 1, 1994, one, which I objected to. Mr. Gamble's attention focused on what was considered to be accountable items, and after we had this disagreement about what items were accountable on the property inventory list, he became more hostile and abusive. Then Mr. Gamble in a very hostile tone reprimanded me, at which time he moved towards his desk and at this time, he showed me a small label on the credenza, stating that these two items at one time were accountable items. For a closer look, I got up from the sofa and went to the credenza and told Mr. Gamble that I had no idea what the small label on the credenza was, and I returned to the sofa and sat down. Observing Mr. Gamble's hostile tone and posture, and that it was very close to 4:30, my quitting time, I asked if we could continue our discussion the next day. Mr. Gamble looked at his watch and said that it was not 4:30. I responded by saying that my watch had 4:30, to which Mr. Gamble replied in a sarcastic tone, "you still have 30 seconds".

Mr. Gamble was still screaming at with me about the items being accountable, when he yelled at me in a loud voice and said, "Joyce, these are accountable items, or they used to be". Feeling threatening by his hostile tone and his aggressive posture, I again asked that the meeting be continued until the next day. I informed him that in my opinion, he was out of line, and I expressed to him that I did not appreciate him raising his voice at me and that I was not his child. I had barely finished making the above statement when Mr. Gamble again yelled at me in a very nasty and loud voice and said, "Joyce be quite".

As I got to the doorway, Mr. Gamble came to the doorway and continued to verbally abuse me and got directly in my face, closing the respectable position between us to a threatening position, at which time I asked Mr. Gamble to move back, which he did not, I then moved. Mr. Gamble then replied, "does this look like your face, am I threatening you." I said no comment, and headed for his supervisor's office (Mr. Parlow). I looked in Mr. Parlow's office and he was not there. As I started to my office, I noticed that Mr. Gamble was standing to the left side of his door with his hands clasped behind his back, he followed me to my office while saying, "am I threatening you, get back in here," while continuing to harass me and following me into my office.

While I was returning to my office, in a raised shaken/broken voice, I again said that I was not his child, and that he had no right to raise his voice at me, nor to tell me to be quiet. Just as I was about to enter my office, Janet Healer had started out, however, when she heard me telling Mr. Gamble that I was not his child, she turned around and reentered her office adjoining mine, it was about 4:37 p.m. As I tried to log off my computer, Mr. Gamble who had followed me into my office, stood just over my left shoulder. I was so

3

upset and shaken, that I pressed the wrong keys and somehow the calendar came up on the screen and the computer locked up, and I had to turn the computer off by the surge switch on the floor.

Mr. Gamble was still taunting me. I kept telling Mr. Gamble that the meeting was over, and asking in a very frighten and shaken voice if we could please continue out meeting the next day. I sat down in my chair, unlocked my desk, got my purse out of my drawer, and removed my eyeglass case, while Mr. Gamble stood over me staring into my purse. When I removed my eyeglass case, Mr. Gamble backed up against my file cabinet.

By this time Mr. Gamble had stopped talking, he just stood by my file cabinet with his hands still clasped behind his back, he was really pale (white), I remember him vividly rolling his eyes at me and just staring. I was praying to God that he would leave, I was shaking and trembling, and it was very noticeable. There was only one way out of my office and Mr. Gamble blocked the exit from my room. In order to get my coat, I had to brush past Mr. Gamble to get it. I feared for my safety. Just as I got to the door, Norbert Schroeder was coming in to talk to me, I asked him if it could wait until tomorrow, and he said that Lee Cline from our Annapolis office had called and wanted to know if I had planned on attending the Annapolis Xmas party on Tuesday. While I was talking to Mr. Schroeder, Mr. Gamble continued to stare at me.

Mr. Gamble's eyes followed me as I returned to my desk to get my purse and briefcase. Trembling and shaking, I somehow managed to get my coat on and I put my purse on one arm and my briefcase on the other. Mr. Gamble was leaning against my file cabinet with his hands still behind his back, while still staring at me. Once I started to move from my chair, Mr. Gamble turned and never saying another word left my office.

With Mr. Gamble gone, I walked into Janet's office, and the only thing I said was Janet. Janet rose from her desk and rushed to me, kissed me on my cheek and hugged me and I collapsed in her arms. She said that she was afraid to come out of her office, when she saw Mr. Gamble on my heels and heard me saying that I was not his child, she knew something was wrong. Janet then asked me, "why is he doing this to you, and why is he treating you this way?" I told her that there was a reason for it, and that I would tell her about it the next day. I felt so relieved to see a non-violent and non-threatening face, and to hear a friendly voice. I left my office to meet my vanpool, however, by the time I got half-way up the hall I felt the tears coming on again. Not wanting people to see me in that shape, I entered Carolyn Washington's office and told her briefly what had happened. She replied that we have known each other for a long time and been through a lot, and she told me not to cry, that didn't work, I broke down again.

The next day Mr. Gamble reentered my office, telling me that we still needed to continue our discussion of the day before, saying that, "I don't know how we got into that yesterday, better still, I don't know how we got you into that yesterday." Telling me to come to his office when I got a chance. I never said a word. I was still shaken from my

4

experience from previous day. After he left, shaking and in tears I went to his supervisor, Mr. Parlow, and explained to him that I could no longer take the abuse from Mr. Gamble. I told him that he was aware of the verbal abuse that I had suffered at the hands of Mr. Gamble, that his secretary on at least two occasions had complained to him about the abusive treatment of Mr. Gamble towards me. At first Mr. Parlow appeared to not know about the problem with Mr. Gamble the previous day, however, I told him I knew that Mr. Gamble had mentioned it to him. At that he responded that Mr. Gamble had told him about our little meeting. I then informed Mr. Parlow that it was more than a little meeting, that it was serious and severe. That day, December 16, 1994, was NTIA's Xmas party, which I had help plan, and Mr. Parlow tried to convince me to stay. Mr. Parlow promised to discuss the actions of Mr. Gamble with me when he returned to NTIA on Wednesday, December 21, 1994. Until this day, March 10, 1995, Mr. Parlow has yet to discuss this matter with me. I was still very emotionally upset by what had taken place previous day, and then for Mr. Gamble to try and place the blame on me for his unprofessional behavior was more than I could bear. I left work (sick leave) immediately after my conversation with Mr. Parlow. I went straight to the doctor to seek medical attention, because I was very emotionally traumatized by this experience that I broke out in out in hives.

In summary, with the sexual harassment that was inflicted upon me on December 15, 1994, I feel that it was in direct retaliation for my having filed a discrimination complaint against Mr. Gamble the very same day with the Office of Civil Rights. I had removed myself from a very vulnerable situation, only to be further harassed and physically intimidated by Mr. Gamble for the decision I made to avoid any further confrontations. It is my contention, that Mr. Gamble far exceeded his authority when he entered my workspace in a menacing and threatening manner. Again, I can only conclude that his irrational and violent behavior was in retaliation for my having filed a discrimination complaint against him earlier that day.

5.    C.    GIVE THE DATES WHEN THIS ACTION OCCURRED.

March 1984, January 1994, March 1994, November 1994, December 15, 1994, December 16, 1994, January 31, 1995, and various other dates.

5.    D.    WHAT HARM, IF ANY, CAME TO YOU IN YOUR WORK SITUATION AS A RESULT OF THIS ACTION?

For my refusal to drop my individual complaints of discrimination and sexual harassment, I loss the opportunity to be promoted to a GS-ll, Program Analyst job that I interview for, and was accepted for. Due to the consistent discriminatory practices exhibited by Mr. Gamble, I am also denied awards, I am given inaccurate performance ratings (which are always late, or I have not been rated at all), and I am being denied the opportunity of career progression. I am often humiliated by Mr. Gamble's discriminatory practice and sexual harassment of me.

5

As a result of my involvement with the Office of Civil Rights (OCR), and with the retaliation that has been inflicted upon me thus far, I live in constant fear of losing my job and the possibility of further retaliation. I have been isolated and talked about by my peers, and completely ignored by Mr. Gamble in the delegation of work assignments. I have suffered a great financial loss, I have also suffered professionally, as well as being the victim of tremendous mental anguish as the result of actions by Mr. Gamble. But, mainly, his actions have created a very hostile and unhealthy work environment for me.

### ON A MORE PERSONAL NOTE, THE MEDICAL TRAUMA SUSTAINED AS A RESULT OF MANAGEMENT'S ACTIONS INCLUDES THE FOLLOWING:

I am currently under the care of a doctor for the medical trauma directly associated with the undue stress and mental anguish created by Mr. Gamble's consistent discriminatory practice and sexual harassment towards me. My depressive symptoms include the following; lack of concentration/motivation, irritability, crying spells, frustration, anxiety, self-blame, disturbed sleep, decreased appetite, weight loss, anger, hair loss, and a fear of additional reprisals by top level management officials.

6

ATTACHMENT 3

## 9.   THE REMEDY THAT THE CLASS SEEK IS:

The Class seeks relief by any means necessary to end the systemic means of sexual harassment and racial discrimination in hiring, promotions, training and fair performance evaluations of African American females within the National Telecommunications and Information Administration (NTIA).  In addition, the Class seeks removal of those managers who have continually sexually harassed, to include verbal and physical intimidation, and who have consistently and ostensibly denied African American females in NTIA access to career ladder and professional advancement.

Further, the Class also seeks the removal of the Assistant Secretary of Commerce, Larry Irving, and the Deputy Associate Administrator of OSM, William D. Gamble for their persistent and blatant acts of sexual harassment, including verbal and physical intimidation against African American females.  The Class also recommends reprimands for high level management officials within NTIA who condone sexual harassment, and for their failure to ensure that appropriate action was taken, namely, Associate Administrator, OSM, Richard Parlow; Director, OPCM, Michele Farquhar; and Administrative Officer, James Hartman.

In addition, the Class also seeks the maximum awarded in compensatory and punitive damages, and any other remedies deemed fair by the Court or it's representatives.

NUV 2 6 1996



**UNITED STATES DEPARTMENT OF COMMERCE**
**Chief Financial Officer**
**Assistant Secretary for Administration**
Washington, D.C. 20230

CERTIFIED MAIL

Ref.: 95-61-0141
      95-61-0161
      95-61-0255

Filing Date: **February 3, 1995**
            **February 23, 1995**
            **March 10, 1995**

MEMORANDUM FOR Joyce E. Megginson

FROM:          Courtland Cox
               Director, Office of Civil Rights

SUBJECT:       Notice of Right to Appeal the Attached Final
               Decision or to File a Civil Action in Federal
               District Court

When you receive this correspondence, you may take **one** of the two
actions described below within the prescribed time frames:

1.   You may appeal the attached Final Decision to the following
     address:

               Director, Office of Federal Operations
               Equal Employment Opportunity Commission
               P. O. Box 19848
               Washington, D.C. 20036

You may file by mail, by personal delivery or by Facsimile.
If you choose to file by personal delivery, you should bring
the filing to the following address:

               Director, Office of Federal Operations
               Equal Employment Opportunity Commission
               1801 L Street, N.W.
               Room 5000
               Washington, D.C.  20507
               Facsimile Telephone (202) 663-7022 or
                                   (FTS) 989-7022

You must file your appeal within 30 **calendar days** of the date you received this Decision.  (29 C.F.R. § 1614.402(a)). However, if you have an attorney of record, your appeal must be filed within 30 **calendar days** of the date **the attorney** received the Final Decision.  A copy of your appeal must be sent to:

> The Office of Civil Rights, Room 6010,
> U. S. Department of Commerce,
> Washington, D.C. 20230

Any statement or brief in support of your appeal must be submitted to the Director, OFO, within 30 days of filing the appeal, and a copy must be sent to the Department:

> The Office of Civil Rights, Room 6010,
> U.S. Department of Commerce,
> Washington, D.C.  20230

2.  <u>You may file a civil action in federal district court.</u>

If you file a civil action, you must name as the defendant:

> Mr. Michael Kantor
> Secretary of Commerce

Your civil action must be filed **within 90 calendar days of** the date you received this correspondence. (29 C.F.R. § 1614.408(a)).

cc:  David R. Lewis
     Clarence Irving
     Investigative Unit
     Kathleen J. Taylor
     Louise D. Williams
     Compliance
     Subject
     Chron

```
To:
Cc:              Irma D. Salley@PPS@OCR,Kimberly H. Walton@CP@OCR
Bcc:
From:            N=Joyce Megginson/C=US/A=ATTMAIL/P=GOV+COMM.OGC/O=NTIA
Subject:         Agency Case No. 95-61-0255
Date:            Wednesday, November  6, 1996  9:42:53 EST
Attach:
Certify:         Y
Priority:        Normal
Defer until:
Expires:
Forwarded by:
```

-----------------------------------------------------------------

I informed Ms. Salley on Nov. 4, 1996,  that it was my desire to withdraw
as class agent on Agency Case No. 95-61-0255 and to proceed as an
individiual complainant.  I was further instructed by Ms. Walton, today,
Nov. 6, 1996, that I should put this request in writing.

FINAL DECISION

BY THE

U.S. DEPARTMENT OF COMMERCE

IN THE DISCRIMINATION COMPLAINTS OF

JOYCE E. MEGGINSON

COMPLAINT NUMBERS:

**95-61-0141**
**95-61-0161**
**95-61-0255**

P 059 322 022

**Receipt for**
**Certified Mail**

No Insurance Coverage Provided
Do not use for International Mail
(See Reverse)

UNITED STATES
POSTAL SERVICE

Ms. Joyce E. Megginson
310 Bogota Drive
Fort Washington, MD 20744

| | |
|---|---|
| Certified Fee | |
| Special Delivery Fee | |
| Restricted Delivery Fee | |
| Return Receipt Showing to Whom & Date Delivered | |
| Return Receipt Showing to Whom, Date, and Addressee's Address | |
| TOTAL Postage & Fees | $ |
| Postmark or Date | |

NOV 26 1996

PS Form 3800, June 1991

000086

EXHIBIT 27
PAGE 1 OF 3 PAGES

This is the Department's final decision to accept the portions of complaints 95-61-0141 and 95-61-1061 previously held in abeyance and to dismiss complaint number 95-61-0255 filed by **Joyce E. Megginson** (Complainant), a Program Analyst, GS-0343-09, with the Office of Spectrum Management, National Telecommunications and Information Administration (Agency), U.S. Department of Commerce (Department).

## BACKGROUND AND PROCEDURAL HISTORY

On **February 3, 1995**, Complainant filed complaint 95-61-0161.    On **February 23, 1995**, she filed complaint 95-61-0141.    On **March 10, 1995**, she filed class complaint 95-61-0255.

On April 10, 1995, the Department transmitted the class complaint to the Equal Employment Opportunity Commission (EEOC) for a recommended decision on certification of the class.  On April 20, 1995, the Department issued a Final Agency Decision (FAD) accepting two allegations from Complaint 95-61-0161 and holding in abeyance the remaining allegations of that complaint and all of Complaint 95-61-0141.[1]  The decision to hold certain allegations in abeyance was based on the Department's determination that they were identical to claims raised in the class complaint.  Complainant appealed the FAD, and on May 30, 1996, the EEOC issued its decision affirming the FAD.

On November 6, 1996, Complainant notified the Office of Civil Rights and the Agency Representative via electronic mail that she wished to withdraw Complaint 95-61-0255 as a class complaint and proceed with it as an individual complaint.  On November 7, the EEOC Administrative Judge assigned to the class complaint granted the Agency's Motion to Dismiss.  She remanded the case to the Department for further processing.

---

[1]    The investigation of the accepted allegations was completed on July 28, 1995.  Complainant requested a hearing but asked that the hearing request to the EEOC be postponed until the allegations held in abeyance are processed.

EXHIBIT
PAGE 2 OF 2 PAGES

2                          95-61-0141
                           95-61-0161
                           95-61-0255

## ~~ALLEGATIONS~~

95-61-0141

Complainant alleges that because of her race (African American) and sex, her supervisor, Deputy Associate Administrator William Gamble, has harassed her and adversely affected her career development by:

1.  telling her, in October 1984, that she was not his first choice for the Upward Mobility position she encumbered;

2.  refusing to promote her to her full performance level of GS-11 and telling her that the only way she could get a promotion in the Office of Spectrum Management was if another employee were to die;

3.  not assigning her duties which would have fostered her career development;

4.  denying her cash awards;

5.  criticizing her speech patterns;

6.  failing to give her accurate and timely performance plans and ratings; and,

7.  becoming increasingly hostile and condescending to her and attempting to transfer her out of her division after she requested, in November 1994, that the Office of Human Resources Management intervene in the matter of her promotion to GS-11.

EXHIBIT 29
PAGE 3 OF 3 PAGES

3                          95-61-0141
                           95-61-0161
                           95-61-0255

95-61-0161[2]      ____

Complainant alleges that because of her race (African American) and sex, her supervisor, Deputy Assistant Administrator William Gamble, harassed her when:

1.  he told her, in October 1984, that she was not his first choice for the Upward Mobility position she encumbered;

2.  *on December 14, 1994, he spoke to her in a condescending manner about her understanding of the acronym "SPAC;"*

Complainant alleges that because of her race (African American), sex and in retaliation for contacting an EEO Counselor on December 15, 1994, her supervisor, Deputy Assistant Administrator William Gamble, harassed her when:

3.  on December 15, 1994, he called her into a meeting thirteen minutes before her scheduled departure time and:

    a.  criticized her for a typographical error in a report;

    b.  during the course of discussing her comments on her performance rating, he became hostile and condescending about Complainant's understanding of accountable inventory items;

    c.  denied Complainant's request to adjourn the meeting until the following day and remarked sarcastically that she had 30 seconds left in her work day;

    d.  told Complainant to "be quiet" when she objected to him raising his voice to her;

    e.  as Complainant attempted to leave, he followed her to the door and stood intimidatingly close to her;

_____

[2]    Allegations 2 and 5 (in italics) are the allegations previously accepted and investigated.

000089

EXHIBIT 2
PAGE 4 OF 12 PAGES

4                    95-61-0141
                     95-61-0161
                     95-61-0255

    f.   Complainant told him to get out of her face, after which he followed her out of the office, shouting "Does this look like your face?  Am I threatening you?  Get back in here;" and,

    g.   he frightened Complainant by following her to her office and staring at her as she prepared to leave.

4.   on December 16, 1994, he approached her to continue the meeting and said "I don't know what got into you yesterday;"

5.   *on January 31, 1995, he spoke to her in a sarcastic manner;*

6.   he laughed at her when she asked about Agency-paid college courses;

7.   he refused to promote her to her full performance level of GS-11 and told her that the only way she could get a promotion in the Office of Spectrum Management was if another employee were to die;

8.   he told her she was nothing more than a "gofer;"

9.   he criticized her speech patterns and told her she was "lazy with [her] words;"

10.   after giving her an assignment, he compared her to his six year old daughter and admonished her not to make him ask where the work was; and,

11.   Complainant further alleges that Associate Administrator Dick Parlow, Assistant Secretary Larry Irving, Office of Policy Coordination and Management Director Michele Farqhar and Management Division Chief Jim Hartman were aware of the harassment but took no corrective action.

95-61-0255

Complainant alleges that because of her race (African American), sex, and in retaliation for seeking EEO counseling:

000090


EXHIBIT 2 7
PAGE 5 OF 13 PAGES

5                              95-61-0141
                               95-61-0161
                               95-61-0255

1.  William Gamble told her, in October 1984, that she was not ___
    his first choice for the Upward Mobility position she
    encumbered;

2.  Gamble refused to promote her to her full performance level
    of GS-11 and told her that the only way she could get a
    promotion in the Office of Spectrum Management was if
    another employee were to die;

3.  he compared her to his six year old daughter;

4.  Gamble's level of hostility increased after she asked the
    Office of Human Resources Management ("Personnel") to
    intervene in the matter of her promotion and he attempted to
    transfer her out of the Division;

5.  Gamble criticized her speech patterns and told her that she
    was lazy in the way she pronounced her words;

6.  Gamble laughed at her when she asked about Agency-paid
    college courses;

7.  she has been denied cash awards;

8.  on December 15, 1994, Gamble verbally abused her and
    physically threatened her when he;

    a.  during the course of discussing her comments on her
        performance rating, he became hostile and condescending
        about Complainant's understanding of accountable
        inventory items;

    b.  denied Complainant's request to adjourn the meeting
        until the following day and remarked sarcastically that
        she had 30 seconds left in her work day;

    c.  told Complainant to "be quiet" when she objected to
        him raising his voice to her;

    d.  as Complainant attempted to leave, he followed her to
        the door and stood intimidatingly close to her;

000091



EXHIBIT __R-9__
PAGE __6__ OF __13__ PAGES

6

95-61-0141
95-61-0161
95-61-0255

e. ~~Complainant~~ told him to "get out of [~~her~~] face," after which he followed her out of the office, shouting "Does this look like your face? Am I threatening you? Get back in here," and,

f. he frightened Complainant by following her to her office and staring at her as she prepared to leave.

9. on December 16, 1994, Gamble approached her to continue the meeting and said "I don't know what got into you yesterday;"

10. Gamble told her she was nothing but a "gofer;"

11. Gamble has failed to give her accurate and timely performance plans and ratings;

12. Gamble did not assign her duties which would have fostered her career development; and,

13. Associate Administrator Dick Parlow and Assistant Secretary Larry Irving, Office of Policy Coordination and Management Director Michele Farqhar and Management Division Chief Jim Hartman were aware of the harassment but took no corrective action.


## ANALYSIS

1. ___Further Processing of Complaint 95-61-0255___

EEOC regulations at 29 C.F.R. § 1614.204(d)(7) provide in pertinent part:

> The dismissal of a class complaint shall inform the agency either that the complaint is being filed on that date as an individual complaint of discrimination and will be processed under subpart A, or that the complaint is also dismissed as an individual complaint in accordance with § 1614.107.

See also *Lehmkuhl v. USPS*, EEOC Request No. 05910684 (November 20, 1991).


EXHIBIT 29
7  12

7                            95-61-0141
                             95-61-0161
                             95-61-0255

2.    Identical Matters

EEOC regulations at 29 C.F.R. § 1614.107 (a) provide that:

> The agency head or designee shall dismiss a complaint
> or a portion of a complaint:
> (a) That ... states the same claim that is pending before or
> has been decided by the agency or Commission....

A comparison of Complaints 95-61-0141, 95-61-0161 and 95-61-0255
shows that the following allegations are identical:

| 95-61-0141 | 95-61-0161 | 95-61-0255 |
|---|---|---|
| Allegation 1 | Allegation 1 | Allegation 1 |
| Allegation 2 | Allegation 7 | Allegation 2 |
| Allegation 3 | ------------- | Allegation 12 |
| Allegation 4 | ------------- | Allegation 7 |
| Allegation 5 | Allegation 9 | Allegation 5 |
| Allegation 6 | ------------- | Allegation 11 |
| Allegation 7 | ------------- | Allegation 4 |
| | Allegation 3 | Allegation 8 |
| | Allegation 4 | Allegation 9 |
| | Allegation 6 | Allegation 6 |
| | Allegation 8 | Allegation 10 |
| | Allegation 10 | Allegation 3 |
| | Allegation 11 | Allegation 13 |

Every allegation in Complaint 95-61-0255 is also stated in one or
both of the previously-filed complaints. Therefore, Complaint
95-61-0255 must be dismissed in its entirety because it states
claims identical to those pending in complaints 95-61-0141 and
95-61-0161.

In its FAD of April 20, 1995, the Department consolidated
Complainants 95-61-0141 and 95-61-0161. Therefore, we need not
dismiss those claims that are identical between those two
complaints. The allegations are renumbered and accepted for
investigation as set forth below.



8                              95-61-0141
                               95-61-0161
                               95-61-0255

## —DECISION

Complaint 95-61-0255 is dismissed because it states the same
claims that are pending before the Department.  29 C.F.R.
§ 1614.107(a) (1992).

Complaint 95-61-0141 and the portion of 95-61-0161 not previously
processed are accepted for investigation.

## ACCEPTED ALLEGATIONS

### Complaint 95-61-0141

Complainant alleges that because of her race (African American)
and sex, her supervisor, Deputy Associate Administrator William
Gamble, has harassed her and adversely affected her career
development by:

1.   telling her, in October 1984, that she was not his first
     choice for the Upward Mobility position she encumbered;

2.   refusing to promote her to her full performance level of GS-
     11 and telling her that the only way she could get a
     promotion in the Office of Spectrum Management was if
     another employee were to die;

3.   not assigning her duties which would have fostered her
     career development;

4.   denying her cash awards; — *address sex*

5.   criticizing her speech patterns; *address sex*

6.   failing to give her accurate and timely performance plans *address sex*
     and ratings; and,

7.   becoming increasingly hostile and condescending to her and
     attempting to transfer her out of her division after she
     requested, in November 1994, that the Office of Human

000094

EXHIBIT 29
1 of 3 pages

9                                95-61-0141
                                 95-61-0161
                                 95-61-0255

Resources Management intervene in the matter of her ___
promotion to GS-11.  — w/drew retaliation

**95-61-0161**

Complainant alleges that because of her race (African American),
sex and in retaliation for contacting an EEO Counselor on
December 15, 1994, her supervisor, Deputy Assistant Administrator
William Gamble, harassed her when:

Withdrawn  1. on December 15, 1994, he called her into a meeting thirteen
minutes before her scheduled departure time and:

   a.   criticized her for a typographical error in a report;

   b.   during the course of discussing her comments on her
        performance rating, he became hostile and condescending
        about Complainant's understanding of accountable
        inventory items;

   c.   denied Complainant's request to adjourn the meeting
        until the following day and remarked sarcastically that
        she had 30 seconds left in her work day;

   d.   told Complainant to "be quiet" when she objected to him
        raising his voice to her;

   e.   as Complainant attempted to leave, he followed her to
        the door and stood intimidatingly close to her;

   f.   Complainant told him to get out of her face, after
        which he followed her out of the office, shouting "Does
        this look like your face?  Am I threatening you?  Get
        back in here;" and,

   g.   he frightened Complainant by following her to her
        office and staring at her as she prepared to leave.

2.  on December 16, 1994, he approached her to continue the
    meeting and said "I don't know what got into you yesterday;"

000095


EXHIBIT
PAGE 10 OF 12 PAGES

10                              95-61-0141
                               95-61-0161
                               95-61-0255

3.   he laughed at her when she asked about Agency-paid
     college courses;   w/drew sex & retaliation

4.   he told her she was nothing more than a "gofer;" w/drew sex & retal.

5.   after giving her an assignment, he compared her to his six
     year old daughter and admonished her not to make him ask
     where the work was; and,   w/drew retaliation

6.   Complainant further alleges that Associate Administrator
     Dick Parlow, Assistant Secretary Larry Irving, Office of
     Policy Coordination and Management Director Michele Farqhar
     and Management Division Chief Jim Hartman were aware of the
     harassment but took no corrective action.   w/drew sex

                    **ATTORNEY'S FEES**

As I have made no finding of discrimination and there is no other
basis for an award, I have determined that an award of attorney's
fees is not appropriate.  29 C.F.R. §§ 1614.110, 1614.501(e).
Therefore, this is the Department's final action on the dismissed
allegations.

Courtland Cox
Director, Office of Civil Rights

000096

EXHIBIT 29
PAGE 11 OF 13 PAGES