# Megginson 5
## (No. 95-61-01410)

FORM CD-498
(Edition 1-89)
(Pres. by DAO 215-5)

# COMPLAINT OF DISCRIMINATION
## AGAINST THE U.S. DEPARTMENT OF COMMERCE
### BECAUSE OF RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, AGE, PHYSICAL OR MENTAL HANDICAP OR RETALIATION

DEPARTMENT NUMBER
95-61-041

FILING DATE
February 23, 1995

| 1. COMPLAINANT'S NAME | 2. NAME OF COMMERCE ORGANIZATION THAT DISCRIMINATED AGAINST YOU |
|---|---|
| Joyce E. Megginson | Nat'l Tele. & Info. Admin./OSM |
| COMPLAINANT'S STREET ADDRESS | STREET ADDRESS OF OFFICE |
| 310 Bogota Drive | 14th Constitution Ave., N.W., Room 4099 |

| CITY | STATE | ZIP CODE | CITY | STATE | ZIP CODE |
|---|---|---|---|---|---|
| Ft.Washington, | MD | 20744 | Washington, | DC | 20230 |

| TELEPHONE (INCLUDE AREA CODES) | 4. DO YOU WORK FOR THE FEDERAL GOVERNMENT? |
|---|---|
| HOME: 301-292-3308    WORK: 202-482-0486 | ☐ NO ☒ YES. MY MOST RECENT TITLE AND GRADE IS (OR WAS): Program Analyst 343-9/8 |

| 3. GIVE THE DATE ON WHICH THE MOST RECENT DISCRIMINATION TOOK PLACE: | NAME AND ADDRESS OF ORGANIZATION WHERE YOU WORK (OR APPLIED) |
|---|---|
| MONTH          DAY          YEAR | Dept. of Commerce/NTIA/OSM |
| December±   16,   1994 | 14th & Const. Ave., NW, Wash., DC 20230 |

5. (A)  DESCRIBE HOW YOU WERE TREATED DIFFERENTLY THAN OTHER EMPLOYEES OR APPLICANTS BECAUSE OF YOUR RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, AGE, HANDICAP OR RETALIATION.   (B)   DESCRIBE THE ACTION TAKEN AGAINST YOU THAT YOU BELIEVE WAS DISCRIMINATORY. (C)  GIVE THE DATES WHEN THIS ACTION OCCURRED.   (D)   WHAT HARM, IF ANY, CAME TO YOU IN YOUR WORK SITUATION AS A RESULT OF THIS ACTION? (YOU MAY ATTACH EXTRA SHEETS)

See Attachment 2

6  ANSWER BELOW WHY YOU BELIEVE YOU WERE DISCRIMINATED AGAINST:

☒ RACE (STATE RACE)      Black

☐ COLOR (STATE COLOR) _____

☐ RELIGION (STATE RELIGION) _____

☒ SEX (STATE YOUR SEX)      Female

☐ NATIONAL ORIGIN (STATE NATIONAL ORIGIN) _____

_____

(STATE COUNTRY OF BIRTH) _____

☐ AGE (STATE DATE OF BIRTH) _____

☐ PHYSICAL HANDICAP (DESCRIBE IT) _____

_____

☐ MENTAL HANDICAP (DESCRIBE IT) _____

☐ RETALIATION (EXPLAIN YOUR PRIOR CONNECTION WITH THE EEO PROCESS) _____

| 7. DID YOU DISCUSS ALL MATTERS REPORTED IN NO. 5 WITH AN EEO COUNSELOR? ☐ NO ☒ IF YES, COUNSELOR'S NAME Tina Shat | 8. DID YOU FILE A GRIEVANCE ☐ NO ☐ YES    OR AN MSPB APPEAL ☐ NO ☐ YES ON THE MATTER (S) DESCRIBED IN NO. 5? IF YES, GIVE DATE (S) |
|---|---|

9. THE REMEDY I SEEK IS:

See Attachment 3

I CERTIFY THAT, TO THE BEST OF MY KNOWLEDGE AND BELIEF, ALL OF MY STATEMENTS ARE TRUE, CORRECT, COMPLETE AND MADE IN GOOD FAITH.

| 10. COMPLAINANT'S SIGNATURE (Sign in dark ink) | 11. DATE OF SIGNATURE |
|---|---|
| *Joyce E. Megginson* Signature | MONTH 2 / DAY 3 / YEAR 95 |

USCOMM DC 89-1535

ATTACHMENT 2

# COMPLAINT OF DISCRIMINATION AGAINST THE U.S. DEPARTMENT OF COMMERCE BECAUSE OF RACE, COLOR, RELIGION, SEX NATIONAL ORIGIN AGE, PHYSICAL OR MENTAL HANDICAP OR RETALIATION

**Complainant:**      Joyce E. Megginson
**Agency Number:**    95-61-0141
**Filing Date:**      December 15, 1994

## 5A. DESCRIBE HOW YOU WERE TREATED DIFFERENTLY THAN OTHER EMPLOYEES OR APPLICANTS BECAUSE OF YOUR RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, AGE, HANDICAP OR RETALIATION.

1. I was unjustifiably denied the opportunity for advancement to the known and expected growth potential of a GS-11 position.
2. I was the only recipient of an upward mobility position in my agency that was not allowed to reach the known and growth potential.
3. I was not delegated, deliberately, increased responsibilities that would have allowed me to progress to the known growth potential.
4. I was not allowed to perform all duties outlined in my position description.
5. I was never rated in a timely manner or not rated at all.
6. I was denied cash awards while others in division received them.
7. I was subjected to intimidation and a hostile work environment as a matter of routine.
8. I was the target of verbal abuse, which included being talked down to and yelled at in a very demeaning manner.
9. I was admonished and compared to a 6 year old child.
10. I was told my speech pattern had to be changed.
11. I often worked without a performance plan in place. For instance, as of today, February 3, 1995, I do not have a performance plan in place for this current rating period of October 1, 1994 thru September 30, 1995, and to my knowledge, no other employee in the office is without a performance plan.
12. There was an attempt to transfer me outside the division after numerous complaints to personnel regarding my treatment.

## 5B. DESCRIBE THE ACTION TAKEN AGAINST YOU THAT YOU BELIEVE WAS DISCRIMINATORY.

After being identified as a fully qualified applicant, I was selected for an upward mobility position on October 28, 1984, and notified by Bill Gamble of the selection. He matter-of-factly stated with distinct condescending tones and facial expressions, "I want you

2

to know that you are not my choice". Hence, with a predisposition towards discriminatory practices, and with a total disregard for me or my position, he designed and executed numerous wanton acts of discrimination against me. He impugned the authority and the responsibilities commensurate of his position in a manner that completely maligned it. I contend he did so deliberately and with malice as represented in the instances outlined below:

1. Mr. Gamble assigned tasks that should have been delegated to me, to persons outside their area of responsibility.

2. I was never rated in a timely manner, and when ratings were completed, they were perfunctory at best, rarely reflecting the quality of my work.

**5C.    GIVE THE DATES WHEN THIS ACTION OCCURRED.**

From October 28, 1984 when Mr. Gamble informed me I had been chosen for the upward mobility position, up to and including February 3, 1995.

**5D.    WHAT HARM, IF ANY, CAME TO YOU IN YOUR WORK SITUATION AS A RESULT OF THIS ACTION?**

For a significant period of time I have felt so intimidated by Mr. Gamble that I developed an intolerance for him. I have entrusted and shared my feelings toward Mr. Gamble with my family, friends and some close co-workers. I often talk about the discriminatory practices and hostile work environment that was created by Mr. Gamble, and the amount of fear I have of him. I felt I could never do anything right, as Mr. Gamble often left me feeling belittled and disrespected. I would always have to prepare myself, both mentally and verbally before any meetings with Mr. Gamble.

Mr. Gamble's badgering amounted to no less than mental abuse. He attacked my self esteem and made me to feel unworthy of being accepted for the position or any further advancement. I felt somehow deserving of this kind of treatment which eroded my self confidence.

As a result of this longstanding mental cruelty, I allowed his treatment of me to continue unchallenged for a total of 10 years. However, when Mr. Gamble made the statement that "the only way that you would receive a promotion in OSM is if Fred Wentland (who at the time was on official travel) should die in a plane crash, and then, and only then, would you possibly be promoted to a GS-12 or 13", I realized then, that not only was I not at fault, but rather the victim. It was at this time that I realized that Mr. Gamble's discriminatory practices had to be dealt with.

3

In March 1994, I asked personnel to intervene regarding several issues relative to my position that were of great concern to me. During that meeting in March 1994 with Michelle Godfrey (Human Resources Specialist), I was encouraged by her enthusiastic comments and support that she offered. However, personnel sat on my complaint for approximately 3 months, and only after my insistence did personnel finally meet with Mr. Gamble and Jim Hartman, Administrative Officer, NTIA. The only results of the June 1994 meeting between personnel and Mr. Gamble was the fact that I finally received my performance rating for the period October 1, 1992 thru September 30, 1993. As there had been no resolutions to my remaining complaints, Ms. Godfrey advised me that there was a second meeting planned. Still, approximately 5 months later, I had not been contacted by Ms. Godfrey, Mr. Gamble nor Mr. Hartman. Since I had not heard from Ms. Godfrey, I sent her a memo on November 15, 1994 (Attachment 4), again outlining my complaints and requesting the status. Finally, on November 15, 1994, in response to my memo, Ms. Godfrey convened another meeting with Mr. Gamble and Mr. Hartman, as indicated in her memo of November 29, 1994 (Attachment 5). In her memo, Ms. Godfrey refuted statements made to me in March 1994 and asserted that personnel could be of no further assistance to me. Ms. Godfrey recommended that I meet with Mr. Gamble once again. After having received Ms. Godfrey's memo of November 29, 1994, and as I saw her recommendation to meet with Mr. Gamble as a non-viable solution, I once again requested that personnel (Attachment 6) intervene.

Since Ms. Godfrey held her meeting in November 1994 with Mr. Gamble, there appeared to be a noticeable change in Mr. Gamble's demeanor and attitude towards me. I feel this was in direct correlation to and a retaliatory act for my having brought this matter to the attention of personnel. After my memo to personnel on November 15, 1994, exactly one week later, on November 22, 1994, Mr. Gamble informed that he wanted to transfer me from my present job to an unknown position, outside my division for a probationary period, to determine my worthiness for a promotion. The events as they transpired on December 15, 1994, was an explosive culmination of the hostility that Mr. Gamble had developed for me. After 10 years I had finally insisted that someone hold him accountable for his discriminatory practices.

, 4

ATTACHMENT 3

**COMPLAINT OF DISCRIMINATION AGAINST THE U.S. DEPARTMENT OF COMMERCE BECAUSE OF RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN AGE, PHYSICAL OR MENTAL HANDICAP OR RETALIATION**

**Complainant:**          Joyce E. Megginson
**Agency Number:**      95-61-0141
**Filing Date:**            December 15, 1994

**9.    THE REMEDY I SEEK IS:**

a.    Bill Gamble, Deputy Associate Administrator, OSM, for his deliberate and discriminatory practices, from October 28, 1984, which continues to this day, February 3, 1995, I am seeking his removal from his Senior Executive Service (SES) position, and requesting that he not be transferred to, nor be considered for any other supervisory or managerial positions within the U.S. Department of Commerce.

b.    Dick Parlow, Associate Administrator, OSM, Bill Gamble's immediate supervisor should be reprimanded for his failure to take appropriate action to make sure that I had a right to a workplace free of unlawful discriminatory practices.

c.    Larry Irving, Assistant Secretary, NTIA, Michele Farquhar, Director, OPCM, and Jim Hartman, Administrative Officer, NTIA, for their failure to follow-up and ensure these matters that were brought to their attention were rectified fairly and in a timely manner.

d.    I allege that Management, as they failed to take appropriate action, condoned and ultimately allowed the discriminatory practices to continue. My complaints were so very diminished and in some instances ignored. On the occasion that I met with Mr. Irving, advising him of the situation, he merely replied, "I thought Bill Gamble was a nice guy." No further action was ever taken. In a full and complete settlement of this discrimination complaint against the U.S. Department of Commerce (Agency) by way of relief I seek the following:

1.    Immediate promotion to a GS-12 position with a lateral transfer to a GS-13 in 6 mos.
2.    Back pay at the GS-11 rate for 7 years.
3.    Legal Fees - Any legal fees that I may incur as a result of any litigation associated with this complaint.
3.    Compensatory Damages - $350,000 and any other remedies deemed fair by the Court.
4.    Punitive Damages - $350,000 and any other remedies deemed fair by the Court.

DEPT OF COMMERCE
OFC OF PERSONNEL
OPERATIONS

November 15, 1994                              '94 NOV 15 P12:17


MEMORANDUM FOR:        Michelle Godfrey
                       Personnel Specialist

FROM:                  *Joyce E. Megginson*
                       Joyce E. Megginson
                       Program Analyst

SUBJECT:               Denial of Career Ladder Progression


**BACKGROUND:**

This memorandum is a follow-up to our meeting during the month of March 1994 and the events that transpired subsequently.

As previously discussed there are several issues relative to my position that are of great concern to me. To address these concerns I requested a meeting with my supervisor, Bill Gamble. The following comments were made directly to me during this meeting by Mr. Gamble:

- I could not be promoted to a GS-11, because my present grade of a GS-9 is the highest grade level my position goes;

- I had advanced from my bridge position and obtained my target position of a GS-9, and therefore, given those facts he no longer felt he had any further obligations to me under the Upward Mobility contract to ensure I reached the known career progression of a GS-11 as stated on vacancy announcement #OS/II-84-60, dated 5/7/84 under which I was hired; and

- That the only way that I would receive a promotion in OSM was that if Fred Wentland (who at the time was on official travel) should die in a plane crash, and then, and only then, that possibly I could be promoted to a GS-12 or 13.

Mr. Gamble was direct and quite emphatic with his comments. His position was clear and concise, however, it is my contention that comments of this nature are not only insensitive, but very unprofessional and totally unacceptable. To have been told that someone would in fact have to die before I could be promoted, was not only unbelievable, but for it to have come from a person in his position, and as an official and a formal response to my inquiry, made it all the more shocking and appalling. The vacancy announcement #OS/II-84-60 under which I was hired, stated the known career progression was at a GS-11, and in no way was predicated upon the health or longevity of a co-worker. As a result, I contacted personnel in an effort to seek direction and resolve this longstanding problem.

Upon speaking with a personnel specialist, I was advised that in order to assist me, personnel would have to have a copy of the vacancy announcement, and since it had been 10 years since I was hired, they no longer had a copy on file (only kept for 3 years in personnel). To this I inquired if they could intervene

2

if I was able to locate a copy of the vacancy announcement. The specialist replied in the affirmative. The following day, having been successful in locating a copy of the vacancy announcement, I again called personnel, at which time I was referred to you, Michelle Godfrey. I made an appointment with you for the following day to discuss my situation, to give you a copy of the vacancy announcement and to review my personnel folder. You assured me you would contact Mr. Gamble and ensured that all necessary actions would be taken in addition to addressing the other matters brought to your attention. You advised me you would call me with the results of your talk with Mr. Gamble.

After several weeks passed and I had not heard from you, I phoned you. It was at this time you advised me of a pending meeting with Mr. Gamble and Jim Hartman, Chief, Management Division, NTIA (Admin.), regarding my situation. You also advised me that you would keep me apprised of the ongoing situation.

Several more weeks passed and again I had not heard from you, I again phoned you. You, coincidentally, had just met with Mr. Gamble and Mr. Hartman that morning. You explained to me that you were unable to indulge the contents of the meeting and that a second meeting was necessary. You also stated that Mr. Gamble was instructed to evaluate me for the previous year. It was my understanding that you would call me with results regarding the outcome of the second meeting.

At least a week had passed, still not hearing from you, I decided to call to advise you that I had, as of that date, not been evaluated and to check the status of the second meeting. You seemed very disturbed that Mr. Gamble had failed to comply with your instructions regarding my evaluation. At that time, I again inquired about the contents of the first meeting, this time you disclosed the fact that there were a few things that you had asked Mr. Gamble to clarify. One of which was voiced to you, but never to me, his statement that I had not received my GS-11 because I had not shown enough initiative. You clearly stated that his justification was very vague and evasive, and that he had not answered to your satisfaction, nor mine, detailed questions regarding his decision. You informed me that the second meeting was still pending and again you would keep me advised.

### ISSUES:

During our meeting in March 1994 you reviewed the vacancy announcement, as you should recall, your comment to me was that I could get the GS-11, but that I might have to grieve. Also, while reviewing my personnel folder, we also noted that on a copy of a SF-52 signed on 3/19/84, by Richard Parlow, Associate Administrator, OSM, and others, was the following comment, "position has promotion potential to GS-11". This statement corresponded with the vacancy announcement and served to strengthen my claim of entitlement to career progression to the GS-ll.

It is also important to note that a further perusal of my personnel file disclosed the fact that Mr. Gamble had been inconsistently following personnel standards regarding employee evaluations. His evaluations had ranged from being untimely to non-existent. I raised my concerns advising you that I, and other staffers of NTIA had on quite a few occasions approached Mr. Gamble about my evaluations, but to no avail.

Interesting enough, the commonality that exists between myself and my predecessor is merely that we both were selected under the same Upward Mobility program. One of t he differences between us is the time spent in grade and the realization of the known career progression to the GS-ll. Unlike my predecessor who was promoted to the career progression at the GS-ll in a matter of approximately 2

3

years, I spent 32 months in the GS-7 Bridge Position before I was promoted to the Target Position of Program Analyst, GS-9. That promotion was 7 years ago, since then, I have been denied the commitment and opportunity to progress to the known career progression of a GS-11, as specified and provided for under the vacancy announcement wherein I was selected.

The facts of the matter are these:

- I have not been made aware of any deficiencies that would preclude me from same career progression as my predecessor.

- Throughout the last 10 years, I have always received commendable or fully satisfactory ratings. I performed my duties well and am capable of performing duties at the GS-11 level.

- I have diligently sought out my supervisor asking him to be my mentor, to assist me in the advancement of my career by structuring and developing my growth in the form of an Individual Development Plan (IDP), and Mr. Gamble refused to do so.

- To no avail, I was persistent in my pursuit for additional responsibilities in order to prove my capabilities and enhance my opportunities for advancement.

## STATUS AS OF TODAY:

Our last conversation occurred approximately 6 months ago. As of this writing I have neither been contacted or provided any information regarding my complaint or the outcome of any meetings held on my behalf. Pursuant to standards, I exercised my rights to contact your office. I was referred to you in an effort to analyze and explicate my unfortunate situation. However, my meeting with you, while informative, has proven to have been as ineffectual as my meetings with Mr. Gamble.

It's been approximately 9 months since I first contacted personnel for assistance in this matter. Ms. Godfrey, I am completely aware that my situation is not the only matter at hand for you. I also recognize the fact that matters of greater priority are likely to take precedence over my complaint. However, it is of the utmost importance to me that I receive a definitive conclusion in this matter.

## RESOLUTIONS SOUGHT:

I am requesting to be afforded the same opportunity for career progression as was granted to my predecessor and outlined in vacancy announcement #OS/11-84-60 under which I was hired. Based upon the prevailing attitudes in OSM, I am seeking the following resolutions, which I consider to be a fair and equitable relief of this matter:

1. Immediate promotion to a GS-11/12 slot; and

2. I receive retroactive pay at the GS-11 rate for the past 6 years.

I would kindly appreciate a written response to this memo within the next 5-10 days.

Attachment 5



**UNITED STATES DEPARTMENT OF COMMERCE**
Chief Financial Officer
Assistant Secretary for Administration
Washington, D.C. 20230

NOV 29 1994

MEMORANDUM FOR    Joyce E. Megginson
                 Program Analyst
                 Office of Spectrum Management
                 National Telecommunications and Information
                  Administration

FROM:            Michelle R. Godfrey    *Michelle R. Godfrey*
                 Human Resources Specialist

SUBJECT:         Career Ladder Promotion

I received your memo, subject: Denial of Career Ladder
Progression on November 15, 1994. Ms. Megginson, I believe that
you misinterpreted statements that I made during our meeting and
conversations. I did not tell you that you could be promoted to
the GS-11 level if you filed a grievance. According to DAO
202-771, an employee can not grieve failure to receive a
noncompetitive promotion. However, I am sure I explained that if
you felt you were discriminated against, you could file an EEO
complaint. Further, I did not tell you that Mr. Gamble was being
vague or evasive in response to my questions.

Due to the concerns outlined in your memo, I met with your
supervisor, Bill Gamble, and NTIA's Administrative Officer, Jim
Hartman, on November 16, 1994. Mr. Gamble understands that you
are eligible for promotion to the GS-11 level as a Program
Analyst. However, an employee is not guaranteed a promotion even
if their position has promotion potential. As your supervisor,
it is Mr. Gamble's responsibility to determine if you are
demonstrating that you can perform work at the next higher grade
level and to decide whether or not you should be promoted. It is
also Mr. Gamble's responsibility to provide you duties that are
commensurate with your current grade level and to provide you
duties that allow you to demonstrate your potential for
performing at the next higher grade level. I do not have
authority to promote you or to grant you the relief that you
requested. I recommend that you again meet with Mr. Gamble to
discuss your concerns and possible resolutions to the situation.

If you have any questions, please feel free to give me a call on
501-5566.

cc: Bill Gamble
    Jim Hartman

Attachment 6

December 2, 1994

DEPT OF COMMERCE
OFC OF PERSONNEL
OPERATIONS

'94 DEC -2 A9:45

MEMORANDUM FOR:    Michelle R. Godfrey
                   Human Resources Specialist

FROM:              Joyce E. Megginson
                   Program Analyst

SUBJECT:           Career Ladder Progression

Ms. Godfrey, I am in receipt of your memo, dated November 29, 1994, Subject: Career Ladder Promotion. Regrettably, I must assert, without compromise, that I neither misinterpreted, nor misunderstood statements made by you. It is very disturbing that you are refuting the comments you made. Perhaps, now in retrospect, you feel it was inappropriate for you to have disclosed that information, however, I maintain that you willingly made those statements.

While it is imperative that I make my position clear on the matter, what is of the utmost importance is the resolution of my situation. During our meeting approximately 9 months ago, I was encouraged by the enthusiastic comments and support you offered me. I am perplexed that now those options you referred to as a viable solution are apparently nonexistent and no longer applicable to my situation. To further exacerbate my unfortunate circumstance, you advise me to seek resolution with my supervisor, Mr. Gamble. Ms. Godfrey, for 6 years I sought an internal remedy to my complaint. In March 1994, approximately 10 years after being placed in the upward mobility position, I reconciled myself to the fact that to abate the problem would require outside intervention. Thus your recommendation seems totally inadequate and inappropriate. Additionally, I presented several concerns to you in my memo of November 15, 1994, and to my dismay you failed to address any of those matters brought to your attention. In contrast, your memo indicates the unwillingness of personnel to intervene at my level.

It is appropriate that I establish the fact that I am neither disputing nor even attempting to elude to the fact that personnel has purview over the recommendation of promotion. However, the clear mandate is for personnel to systematically ensure the integrity of standards and guarantee that operational procedures are adhered to. To this end I had expected a fair and equitable resolution to this matter. If personnel cannot resolve this matter in accordance with the upward mobility procedures regarding progression to the GS-11 for which I was hired, please so state, or I will take your last transmittal as personnel's final word in this matter.

cc:  Bill Gamble
     Jim Hartman



Attachment 7

**UNITED STATES DEPARTMENT OF COMMERCE**
National Telecommunications and
Information Administration
Washington, D.C. 20230

January 13, 1995

MEMORANDUM FOR:     Courtland Cox
                    Acting Director, Office of Civil Rights

FROM:               Joyce E. Megginson
                    Complainant

SUBJECT:            Sexual Harassment

I have not been provided any counseling on my sexual harassment complaint filed with the Office of Civil Rights on December 16, 1994. After filing my sexual harassment complaint with the Office of Civil Rights, the only counseling received was a recommendation from Tina Shat and Al Corea that I combine this complaint with my discrimination compliant which was filed on December 15, 1994. I, however, adamantly rejected this recommendation.

I duly informed the Office of Civil Rights that persistent and alarming incidents of sexual harassment had taken place. However, it is my feeling that I have been denied my administrative rights by the Office of Civil Rights by not providing me with quick and professional counseling.

It is my desire at this time to be counseled as a class action agent for the sexual harassment which has been perpetrated upon me, and which is consistent with similar harassment in the agency.

cc:  A. Corea
     T. Shat

From:        ALFRED A COREA
("G=ALFRED;I=A;S=COREA;U=PPS;O=OCR;P=G
             OV+COMM.BAN;A=ATTMAIL;C=US")
To:          NTIADC.NTIAHQ(JMEGGINSON)
Date: Friday, January 13, 1995  5:03 pm
Subject:       Subject Unspecified.


I am in receipt of your January 13, 1995 memo to Mr. Courtland Cox, wherein
you allege sex harassment and request to be counseled as a class agent in
that regard.   I must state for the record, that this is the first indication
that you have given to me or Tina Shat that you are alleging sex harassment.
Please contact me so that we may set a time for counseling to begin on your
class allegation.

I also request that you provide the name of the individual that you allege
has sexually harassed you so that I may refer your allegation to NTIA
management for appropriate action under DAO 215-8.

I look forward to hearing from you.

CC:          NTIADC40.X400("G=CHRISTINA;I=C;S=SHAT;U=PPS;O=OCR;

Attachment 9



**UNITED STATES DEPARTMENT OF COMMERCE**
National Telecommunications and
Information Administration
Washington, D.C. 20230

January 17, 1995

MEMORANDUM FOR:     Alfred Corea
                    EEO Officer, Office of Civil Rights

FROM:               *Joyce E. Megginson*
                    Joyce E. Megginson
                    Complainant

SUBJECT:            Sexual Harassment Compliant

I am in receipt of your memo via e-mail, dated Jan. 13, 1995, Subject: Subject Unspecified.
I must however, emphatically and categorically maintain that I did in fact promptly notify the
Office of Civil Rights (OCR) that blatant, persistent and alarming acts of sexual harassment
had taken place. The occurrence of the incident on December 15, 1994, precipitated my
filing a sexual harassment compliant with the OCR on December 16, 1994. In support of the
fact that I notified the OCR of the sexual harassment, I possess other data that will clearly
substantiate my claim.

Your memo directed me to provide the name of the individual that I am charging with sexual
harassment. I suggest that you confer with Tina Shat, the EEO Specialist that's assigned to
my discrimination, as well as my sexual harassment complaints. As I have already provided
Ms. Shat with my superior's name, as well as all the relevant facts pertaining to his sexual
harassment of me when I filed my sexual harassment complaint with the OCR on December
16, 1994.

If your telephone call today, January 17, 1995, was to request my permission to speak with
some unknown high authority, permission was granted to Ms. Shat on December 16, 1994.
In summary, if you want redundant permission, it's not necessary for me to grant, because it
was previously given.

cc:  Courtland Cox
     Tina Shat

February 22, 1995


MEMORANDUM FOR  The File

FROM:
                    Adrienne L. George
                    EEO Assistant
                    Office of Civil Rights

In response to a phone call on February 17, 1995, from Ms. Joyce Megginson (95-61-0161).  Ms. Megginson states that she originally gave Tina Shat, (EEOS) two separate complaints and she received two different complaint numbers (95-61-0141 and 95-61-0161).  When I received the complaint there were two complaints, but they were identical, therefore, I sent Ms. Megginson an Acknowledgement letter for only one complaint.  I informed Ms. Megginson that I would have review the file and contact Mr. Corea, regarding this matter, and get back to her.

On February 23, 1995, I call Ms. Megginson to inform her that the reason she received one Ack. letter was because both complaints she submitted were identical, she then asked if she could come and review the complaint assuring that she submitted two different complaints.  When she reviewed the complaints she said that somehow the complaints where not submitted as identical and that somehow it was not the way inwhich she submitted it.  She went back to her office to retrieve a copy of both complaints.  When Ms. Megginson returned with the complaints she handed be nine pages that she states was originally submitted.  I informed her that I would have to contact Mr. Corea to assure that both cases are two different cases.  Mr. Corea said to go ahead with them as being two different cases.

Ms. Joyce Megginson has two cases to-date, 95-61-0161 and 95-61-0141.



**UNITED STATES DEPARTMENT OF COMMERCE**
**Chief Financial Officer**
**Assistant Secretary for Administration**
Washington, D.C. 20230

March 7, 1995

MEMORANDUM FOR    The File

FROM:             Adrienne L. George
                  EEO Assistant
                  Office of Civil Rights

On February 23, 1995, Ms. Joyce Megginson handed me attachment
number 2 of case number 95-61-0141, consisting of 12 pages.
complainant states that this was the original set and not to
submit the copy of 95-61-0161.

Therefore, the filing date for case number 95-61-0141, is
February 23, 1995.

**UNITED STATES DEPARTMENT OF COMMERCE**
**Chief Financial Officer**
**Assistant Secretary for Administration**
Washington, D.C. 20230

MAR - 8 1995

CERTIFIED MAIL

Ref.: 95-61-0141
Filing Date: February 23, 1995

MEMORANDUM FOR  Joyce E. Megginson

FROM:              Kimberly H. Walton
                   Acting Chief, Compliance Division
                   Office of Civil Rights

SUBJECT:           Acknowledgement of Receipt of Discrimination
                   Complaint

Important information

We received your complaint of discrimination which was filed on
February 23, 1995.  Hereafter, that date is the **Filing Date.**

Your complaint has been given the following number: **95-61-0141.**
To avoid delays in processing your complaint, it is very
important that you use this number in all correspondence
regarding this complaint, regardless of the person to whom
your correspondence is sent.

If your complaint is not dismissed the Department of Commerce
will conduct a complete and fair investigation of your complaint
within **180 calendar days** from the **filing date** unless you and the
Department of Commerce agree in writing to extend that period.
(29 C.F.R. § 1614.106(d)(2)).  In your case, the 180th day is
August 21, 1995 (filing date + 179 days).  We will need your
cooperation in order to meet this deadline.

Here are your rights

If the 180th day arrives, and you have not received the Report of
Investigation with the notice explaining your right to request a
hearing, on the 181st day or thereafter, you may request a
hearing by an Administrative Judge appointed by the EEOC. (29
C.F.R. § 1614.108(f)).  Alternatively, you may file a civil
action in an appropriate U.S. District Court.  29 C.F.R. §
1614.408(b).

If this Office dismisses all or part of your complaint, or when we issue a Final Decision on the merits of your complaint, you will have the right to appeal the Dismissal or the Final Decision to:

> The Director
> Office of Federal Operations
> Equal Employment Opportunity Commission
> P.O. Box 19848
> Washington, D.C. 20036

You will be told how to file an appeal at the appropriate time.

cc: Alfred Corea

bcc: Subject
     Compliance

Z 117 029 730



**Receipt for Certified Mail**
No Insurance Coverage Provided
Do not use for International Mail
(See Reverse)

Sent to

Joyce B. Megginson
310 Bogota Drive
Ft. Washington, MD. 20744

| | | |
|---|---|---|
| Special Delivery Fee | | . |
| Restricted Delivery Fee | | • |
| Return Receipt Showing to Whom & Date Delivered | | |
| Return Receipt Showing to Whom, Date, and Addressee's Address | | |
| TOTAL Postage & Fees | $ | |
| Postmark or Date | | |
| | MAR - 8 1995 | |

PS Form 3800, March 1993

FINAL DECISION

BY THE

U.S. DEPARTMENT OF COMMERCE

IN THE DISCRIMINATION COMPLAINTS OF

JOYCE E. MEGGINSON

COMPLAINT NUMBERS:

**95-61-0141**
**95-61-0161**
**95-61-0255**

P 059 322 022
**Receipt for
Certified Mail**
No Insurance Coverage Provided
Do not use for International Mail
(See Reverse)

UNITED STATES POSTAL SERVICE

Ms. Joyce E. Megginson
310 Bogota Drive
Fort Washington, MD 20744

| | |
|---|---|
| Certified Fee | |
| Special Delivery Fee | |
| Restricted Delivery Fee | |
| Return Receipt Showing to Whom & Date Delivered | |
| Return Receipt Showing to Whom, Date, and Addressee's Address | |
| TOTAL Postage & Fees | $ |
| Postmark or Date | NOV 26 1996 |

PS Form 3800, June 1991

000086

EXHIBIT 27
PAGE 1 OF 3 PAGES

This is the Department's final decision to accept the portions of complaints 95-61-0141 and 95-61-1061 previously held in abeyance and to dismiss complaint number 95-61-0255 filed by **Joyce E. Megginson** (Complainant), a Program Analyst, GS-0343-09, with the Office of Spectrum Management, National Telecommunications and Information Administration (Agency), U.S. Department of Commerce (Department).

## BACKGROUND AND PROCEDURAL HISTORY

On **February 3, 1995**, Complainant filed complaint 95-61-0161.    On **February 23, 1995**, she filed complaint 95-61-0141. On **March 10, 1995**, she filed class complaint 95-61-0255.

On April 10, 1995, the Department transmitted the class complaint to the Equal Employment Opportunity Commission (EEOC) for a recommended decision on certification of the class.   On April 20, 1995, the Department issued a Final Agency Decision (FAD) accepting two allegations from Complaint 95-61-0161 and holding in abeyance the remaining allegations of that complaint and all of Complaint 95-61-0141.[1]  The decision to hold certain allegations in abeyance was based on the Department's determination that they were identical to claims raised in the class complaint.  Complainant appealed the FAD, and on May 30, 1996, the EEOC issued its decision affirming the FAD.

On November 6, 1996, Complainant notified the Office of Civil Rights and the Agency Representative via electronic mail that she wished to withdraw Complaint 95-61-0255 as a class complaint and proceed with it as an individual complaint.  On November 7, the EEOC Administrative Judge assigned to the class complaint granted the Agency's Motion to Dismiss.  She remanded the case to the Department for further processing.

---

[1]    The investigation of the accepted allegations was completed on July 28, 1995.  Complainant requested a hearing but asked that the hearing request to the EEOC be postponed until the allegations held in abeyance are processed.

EXHIBIT
PAGE 2 OF 3 PAGES

2                                    95-61-0141
                                     95-61-0161
                                     95-61-0255

~~ALLEGATIONS~~

95-61-0141

Complainant alleges that because of her race (African American) and sex, her supervisor, Deputy Associate Administrator William Gamble, has harassed her and adversely affected her career development by:

1.  telling her, in October 1984, that she was not his first choice for the Upward Mobility position she encumbered;

2.  refusing to promote her to her full performance level of GS-11 and telling her that the only way she could get a promotion in the Office of Spectrum Management was if another employee were to die;

3.  not assigning her duties which would have fostered her career development;

4.  denying her cash awards;

5.  criticizing her speech patterns;

6.  failing to give her accurate and timely performance plans and ratings; and,

7.  becoming increasingly hostile and condescending to her and attempting to transfer her out of her division after she requested, in November 1994, that the Office of Human Resources Management intervene in the matter of her promotion to GS-11.

EXHIBIT 29
PAGE 3 OF 3 PAGES

3                                    95-61-0141
                                     95-61-0161
                                     95-61-0255

95-61-0161[2]        ____.                              ____

Complainant alleges that because of her race (African American)
and sex, her supervisor, Deputy Assistant Administrator William
Gamble, harassed her when:

1.   he told her, in October 1984, that she was not his first
     choice for the Upward Mobility position she encumbered;

2.   *on December 14, 1994, he spoke to her in a condescending
     manner about her understanding of the acronym "SPAC;"*

Complainant alleges that because of her race (African American),
sex and in retaliation for contacting an EEO Counselor on
December 15, 1994, her supervisor, Deputy Assistant Administrator
William Gamble, harassed her when:

3.   on December 15, 1994, he called her into a meeting thirteen
     minutes before her scheduled departure time and:

     a.   criticized her for a typographical error in a report;

     b.   during the course of discussing her comments on her
          performance rating, he became hostile and condescending
          about Complainant's understanding of accountable
          inventory items;

     c.   denied Complainant's request to adjourn the meeting
          until the following day and remarked sarcastically that
          she had 30 seconds left in her work day;

     d.   told Complainant to "be quiet" when she objected to him
          raising his voice to her;

     e.   as Complainant attempted to leave, he followed her to
          the door and stood intimidatingly close to her;

_____

[2]    Allegations 2 and 5 (in italics) are the allegations previously
accepted and investigated.

EXHIBIT 29
PAGE 4 OF 12 PAGES

4                     95-61-0141
                      95-61-0161
                      95-61-0255

f.   Complainant told him to get out of her face, after
     which he followed her out of the office, shouting "Does
     this look like your face?  Am I threatening you?  Get
     back in here;" and,

g.   he frightened Complainant by following her to her
     office and staring at her as she prepared to leave.

4.   on December 16, 1994, he approached her to continue the
     meeting and said "I don't know what got into you yesterday;"

5.   on January 31, 1995, he spoke to her in a sarcastic manner;

6.   he laughed at her when she asked about Agency-paid
     college courses;

7.   he refused to promote her to her full performance level of
     GS-11 and told her that the only way she could get a
     promotion in the Office of Spectrum Management was if
     another employee were to die;

8.   he told her she was nothing more than a "gofer;"

9.   he criticized her speech patterns and told her she was "lazy
     with [her] words;"

10.  after giving her an assignment, he compared her to his six
     year old daughter and admonished her not to make him ask
     where the work was; and,

11.  Complainant further alleges that Associate Administrator
     Dick Parlow, Assistant Secretary Larry Irving, Office of
     Policy Coordination and Management Director Michele Farqhar
     and Management Division Chief Jim Hartman were aware of the
     harassment but took no corrective action.

95-61-0255

Complainant alleges that because of her race (African American),
sex, and in retaliation for seeking EEO counseling:

000090


EXHIBIT 27
PAGE 5 OF 13 PAGES

5                          95-61-0141
                           95-61-0161
                           95-61-0255

1.  William Gamble told her, in October 1984, that she was not ___ his first choice for the Upward Mobility position she encumbered;

2.  Gamble refused to promote her to her full performance level of GS-11 and told her that the only way she could get a promotion in the Office of Spectrum Management was if another employee were to die;

3.  he compared her to his six year old daughter;

4.  Gamble's level of hostility increased after she asked the Office of Human Resources Management ("Personnel") to intervene in the matter of her promotion and he attempted to transfer her out of the Division;

5.  Gamble criticized her speech patterns and told her that she was lazy in the way she pronounced her words;

6.  Gamble laughed at her when she asked about Agency-paid college courses;

7.  she has been denied cash awards;

8.  on December 15, 1994, Gamble verbally abused her and physically threatened her when he;

    a.  during the course of discussing her comments on her performance rating, he became hostile and condescending about Complainant's understanding of accountable inventory items;

    b.  denied Complainant's request to adjourn the meeting until the following day and remarked sarcastically that she had 30 seconds left in her work day;

    c.  told Complainant to "be quiet" when she objected to him raising his voice to her;

    d.  as Complainant attempted to leave, he followed her to the door and stood intimidatingly close to her;


EXHIBIT R9
PAGE 6 OF 13 PAGES

6                          95-61-0141
                           95-61-0161
                           95-61-0255

e.   —Complainant told him to "get out of [her] face," after
     which he followed her out of the office, shouting "Does
     this look like your face?  Am I threatening you?  Get
     back in here," and,

f.   he frightened Complainant by following her to her
     office and staring at her as she prepared to leave.

9.   On December 16, 1994, Gamble approached her to continue the
     meeting and said "I don't know what got into you yesterday;"

10.  Gamble told her she was nothing but a "gofer;"

11.  Gamble has failed to give her accurate and timely
     performance plans and ratings;

12.  Gamble did not assign her duties which would have
     fostered her career development; and,

13.  Associate Administrator Dick Parlow and Assistant Secretary
     Larry Irving, Office of Policy Coordination and Management
     Director Michele Farqhar and Management Division Chief Jim
     Hartman were aware of the harassment but took no corrective
     action.


**ANALYSIS**

1.   Further Processing of Complaint 95-61-0255

EEOC regulations at 29 C.F.R. § 1614.204(d)(7) provide in
pertinent part:

     The dismissal of a class complaint shall inform the agency
     either that the complaint is being filed on that date as an
     individual complaint of discrimination and will be processed
     under subpart A, or that the complaint is also dismissed as
     an individual complaint in accordance with § 1614.107.

See also *Lehmkuhl v. USPS*, EEOC Request No. 05910684 (November
20, 1991).

000092



EXHIBIT 29
7   12

7                                    95-61-0141
                                     95-61-0161
                                     95-61-0255

2.    Identical Matters

EEOC regulations at 29 C.F.R. § 1614.107 (a) provide that:

    The agency head or designee shall dismiss a complaint
    or a portion of a complaint:
    (a) That ... states the same claim that is pending before or
    has been decided by the agency or Commission....

A comparison of Complaints 95-61-0141, 95-61-0161 and 95-61-0255
shows that the following allegations are identical:

| 95-61-0141 | 95-61-0161 | 95-61-0255 |
|---|---|---|
| Allegation 1 | Allegation 1 | Allegation 1 |
| Allegation 2 | Allegation 7 | Allegation 2 |
| Allegation 3 | ------------- | Allegation 12 |
| Allegation 4 | ------------- | Allegation 7 |
| Allegation 5 | Allegation 9 | Allegation 5 |
| Allegation 6 | ------------- | Allegation 11 |
| Allegation 7 | ------------- | Allegation 4 |
| | Allegation 3 | Allegation 8 |
| | Allegation 4 | Allegation 9 |
| | Allegation 6 | Allegation 6 |
| | Allegation 8 | Allegation 10 |
| | Allegation 10 | Allegation 3 |
| | Allegation 11 | Allegation 13 |

Every allegation in Complaint 95-61-0255 is also stated in one or
both of the previously-filed complaints. Therefore, Complaint
95-61-0255 must be dismissed in its entirety because it states
claims identical to those pending in complaints 95-61-0141 and
95-61-0161.

In its FAD of April 20, 1995, the Department consolidated
Complainants 95-61-0141 and 95-61-0161. Therefore, we need not
dismiss those claims that are identical between those two
complaints. The allegations are renumbered and accepted for
investigation as set forth below.


EXHIBIT
PAGE ___ OF ___ PAGES

8                          95-61-0141
                           95-61-0161
                           95-61-0255

## DECISION

Complaint 95-61-0255 is dismissed because it states the same claims that are pending before the Department.  29 C.F.R. § 1614.107(a) (1992).

Complaint 95-61-0141 and the portion of 95-61-0161 not previously processed are accepted for investigation.

## ACCEPTED ALLEGATIONS

### Complaint 95-61-0141

Complainant alleges that because of her race (African American) and sex, her supervisor, Deputy Associate Administrator William Gamble, has harassed her and adversely affected her career development by:

1.  telling her, in October 1984, that she was not his first choice for the Upward Mobility position she encumbered;

2.  refusing to promote her to her full performance level of GS-11 and telling her that the only way she could get a promotion in the Office of Spectrum Management was if another employee were to die;

3.  not assigning her duties which would have fostered her career development;

4.  denying her cash awards; — *address sex*

5.  criticizing her speech patterns; *address sex*

6.  failing to give her accurate and timely performance plans *address sex* and ratings; and,

7.  becoming increasingly hostile and condescending to her and attempting to transfer her out of her division after she requested, in November 1994, that the Office of Human

EXHIBIT 29

9                    95-61-0141
                     95-61-0161
                     95-61-0255

Resources Management intervene in the matter of her   ___
promotion to GS-11.  — w/drew retaliation

**95-61-0161**

Complainant alleges that because of her race (African American),
sex and in retaliation for contacting an EEO Counselor on
December 15, 1994, her supervisor, Deputy Assistant Administrator
William Gamble, harassed her when:

Withdrawt.   on December 15, 1994, he called her into a meeting thirteen
             minutes before her scheduled departure time and:

      a.    criticized her for a typographical error in a report;

      b.    during the course of discussing her comments on her
            performance rating, he became hostile and condescending
            about Complainant's understanding of accountable
            inventory items;

      c.    denied Complainant's request to adjourn the meeting
            until the following day and remarked sarcastically that
            she had 30 seconds left in her work day;

      d.    told Complainant to "be quiet" when she objected to him
            raising his voice to her;

      e.    as Complainant attempted to leave, he followed her to
            the door and stood intimidatingly close to her;

      f.    Complainant told him to get out of her face, after
            which he followed her out of the office, shouting "Does
            this look like your face?  Am I threatening you?  Get
            back in here;" and,

      g.    he frightened Complainant by following her to her
            office and staring at her as she prepared to leave.

2.    on December 16, 1994, he approached her to continue the
      meeting and said "I don't know what got into you yesterday;"


EXHIBIT
PAGE 10 OF 12 PAGES

10                          95-61-0141
                            95-61-0161
                            95-61-0255

3.   he laughed at her when she asked about Agency-paid
     college courses;    *w/drew sex & retaliation*

4.   he told her she was nothing more than a "gofer;"    *w/drew sex & retal.*

5.   after giving her an assignment, he compared her to his six
     year old daughter and admonished her not to make him ask
     where the work was; and,    *w/drew retaliation*

6.   Complainant further alleges that Associate Administrator
     Dick Parlow, Assistant Secretary Larry Irving, Office of
     Policy Coordination and Management Director Michele Farqhar
     and Management Division Chief Jim Hartman were aware of the
     harassment but took no corrective action.    *w/drew sex*

### ATTORNEY'S FEES

As I have made no finding of discrimination and there is no other
basis for an award, I have determined that an award of attorney's
fees is not appropriate. 29 C.F.R. §§ 1614.110, 1614.501(e).
Therefore, this is the Department's final action on the dismissed
allegations.

Courtland Cox
Director, Office of Civil Rights

000096

EXHIBIT 29
PAGE 11 OF 12 PAGES