**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JANET HOWARD, et al.,

     Plaintiffs,

        v.

CARLOS M. GUTIERREZ,
Secretary, U.S. Dep't of Commerce,

     Defendant.

Civil Action No.  05-1968 (JDB)

## <u>MEMORANDUM OPINION</u>

Plaintiffs Janet Howard, Tanya Ward Jordan, and Joyce Megginson, proceeding pro se,

bring this civil action against Carlos M. Gutierrez, the Secretary of the United States Department

of Commerce ("Department" or "DOC").  In Count One, plaintiffs allege a disparate impact claim

of racial discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et

seq.  In Count Two, Megginson asserts a disability discrimination claim pursuant to the

Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 et seq.  Currently before the Court is the

Department's motion to dismiss the Second Amended Complaint, or in the alternative, for

summary judgment.  For the reasons explained herein, the Court will grant the Department's

motion to dismiss Count Two under the Rehabilitation Act, but will deny the Department's motion

as to Count One under Title VII.

## BACKGROUND

This case has a lengthy history which need not be recounted in full.  For purposes of the

current motion, an abbreviated summary will suffice.  Janet Howard is an African American

female who was employed at the Department of Commerce in the Bureau of Industry and Security, formerly known as the Bureau of Export Administration, from 1983 through 2008. Sec. Am. Compl. ¶¶ 12, 14; Def.'s Stmt. of Undisputed Facts ¶ 12. It is undisputed that Howard has filed twenty-five formal administrative complaints against the Department. See Def.'s Mot. to Dismiss Ex. 1 (Decl. of Kathryn H. Anderson) ("Anderson Decl.") ¶ 5. One of these was a formal Equal Employment Opportunity class complaint, submitted on February 22, 1995. See Def.'s Renewed Mot. to Dismiss Ex. A (EEO Class Compl.) at 2. Tanya Ward Jordan is an African American female who began working at the Department of Commerce in 1987. Sec. Am. Compl. ¶ 14. In 2003, Ward Jordan was transferred from the Office of Executive Budgeting and Assistance Management to the Office of Budget. Id. ¶ 128. According to the parties, Ward Jordan has filed eight formal administrative complaints against the Department. See Anderson Decl. ¶ 6. The third plaintiff, Joyce Megginson, is an African American female who has been employed at the Department of Commerce since 1971 and is currently assigned to the National Telecommunications and Information Administration. Sec. Am. Compl. ¶¶ 14, 95. The Department contends that Megginson has filed fifteen formal administrative complaints against the Department. See Anderson Decl. ¶ 7.

Plaintiffs filed their original complaint with this Court on October 5, 2005, and their First Amended Complaint on June 13, 2006. The First Amended Complaint asserted employment discrimination claims on behalf of plaintiffs individually and on behalf of a putative class of African American, non-supervisory Department employees, along with a Rehabilitation Act claim on behalf of Ward Jordan. On February 6, 2007, the Court granted the Department's motion to strike the class claims, denied the Department's motion to dismiss plaintiffs' individual claims,

and granted plaintiffs leave to file a Second Amended Complaint.  See Howard v. Gutierrez, 474 F. Supp. 2d 41 (D.D.C. 2007).  The Court thereafter denied plaintiffs' motion for reconsideration regarding class certification,[1] and plaintiffs filed their Second Amended Complaint ("Complaint") on December 11, 2007.

Plaintiffs' central claim is that the Department has violated Title VII by using overly subjective performance-appraisal criteria that result in a disparate impact on African American employees with respect to promotions and promotion-related opportunities.  Sec. Am. Compl. ¶¶ 1-3, 6, 217-27.  Plaintiffs describe the allegedly subjective nature of the Department's performance appraisal system and present statistical evidence purporting to demonstrate the disparate impact of the system on African Americans.  Id. ¶¶ 167-73.  The Complaint also includes allegations as to the effect the Department's evaluation system has had on each individual plaintiff.  Id. ¶¶ 21-38 (Howard); 95-118 (Megginson); 119-43 (Ward Jordan).

## STANDARD OF REVIEW

All that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a

_____

[1]On June 13, 2008, plaintiffs filed [84] a motion for reconsideration of the Court's September 7, 2007 order denying plaintiffs' previous motion for reconsideration of the class certification issue.  In their latest motion for reconsideration, plaintiffs fail to cite any new authorities or evidence and instead attempt to reargue theories that were already rejected by the Court.  The Court therefore cannot conclude that the parties were patently misunderstood in the previous decision, that the Court made a decision beyond the adversarial issues presented, that the Court erred in failing to consider controlling decisions or data, or that any controlling or significant change in the law has occurred.  See Williams v. Johanns, 2008 WL 2174437, at *2 (D.D.C. May 27, 2008) (citing Singh v. George Washington Univ., 383 F. Supp. 2d 99, 101 (D.D.C. 2005)).  Hence, justice does not require that this Court grant the motion for reconsideration under these circumstances.  See id. (explaining that the "standard for determining whether or not to grant a motion to reconsider brought under Rule 54(b) is the 'as justice requires' standard espoused in Cobell v. Norton, 355 F. Supp. 2d 531, 539 (D.D.C. 2005)").  Accordingly, [84] the motion for reconsideration will be denied and [83] plaintiffs' motion to stay will be denied as moot.

short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. ___, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); accord Erickson v. Pardus, 551 U.S. ___, 127 S. Ct. 2197, 2200 (2007) (per curiam).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Bell Atl. Corp., 127 S. Ct. at 1964-65; see also Papasan v. Allain, 478 U.S. 265, 286 (1986).  Instead, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp., 127 S. Ct. at 1965 (citations omitted).  However, a court "must not make any judgment about the probability of the plaintiff's success, for a complaint 'may proceed even if it appears that a recovery is very remote and unlikely'" or that the plaintiff "will fail to find evidentiary support for his allegations."  Aktieselskabet AF 21. November 21 v. Fame Jeans, Inc., 525 F.3d 8, 17 (D.C. Cir. 2008).

        The notice pleading rules are not meant to impose a great burden on a plaintiff.  Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512-13 (2002).  When the sufficiency of a complaint is challenged by a motion to dismiss under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor.  Leatherman v. Tarrant County Narcotics & Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979); see also Erickson, 127 S. Ct. at 2200 (citing Bell Atl. Corp., 127 S. Ct. at

1965)).  The plaintiff must be given every favorable inference that may be drawn from the

allegations of fact.  Scheuer, 416 U.S. at 236; Sparrow v. United Air Lines, Inc., 216 F.3d 1111,

1113 (D.C. Cir. 2000).  However, "the court need not accept inferences drawn by plaintiffs if such

inferences are unsupported by the facts set out in the complaint."  Kowal v. MCI Commc'n Corp.,

16 F.3d 1271, 1276 (D.C. Cir. 1994).  Nor does the court accept "legal conclusions cast in the

form of factual allegations."  Aktieselskabet AF 21. November 21, 525 F.3d at 17 n.4; see also

Domen v. Nat'l Rehab. Hosp., 925 F. Supp. 830, 837 (D.D.C. 1996) (citing Papasan, 478 U.S. at

286).

       Summary judgment is appropriate under Rule 56 when the pleadings and the evidence

demonstrate that "there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary

judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of

material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party may

successfully support its motion by "informing the district court of the basis for its motion, and

identifying those portions of 'the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence

of a genuine issue of material fact."  Id. (quoting Fed. R. Civ. P. 56(c)).

       In determining whether there exists a genuine issue of material fact sufficient to preclude

summary judgment, the court must regard the non-movant's statements as true and accept all

evidence and make all inferences in the non-movant's favor.  See Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 255 (1986).  A non-moving party, however, must establish more than the "mere

existence of a scintilla of evidence" in support of its position.  Id. at 252.  By pointing to the

absence of evidence proffered by the non-moving party, a moving party may succeed on summary

judgment.  Celotex, 477 U.S. at 322.  "If the evidence is merely colorable, or is not significantly

probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations

omitted).  Summary judgment is appropriate if the non-movant fails to offer "evidence on which

the jury could reasonably find for the [non-movant]."  Id. at 252.

## DISCUSSION

The Department has moved, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), to dismiss

the claims set forth in the Complaint.  Specifically, the Department argues that plaintiffs' claims

are untimely and unexhausted; that plaintiffs have failed to challenge a specific employment

practice; and that plaintiffs have failed adequately to plead causation.  In support of the motion for

summary judgment, the Department argues that there is no "single centrally defined system for

performance evaluations."  Def.'s Mem. Supp. Mot. to Dismiss ("Def.'s Mem.") at 21.

**I.      Motion to Dismiss**

**A.      Title VII: Timeliness and Exhaustion**

A federal employee alleging discrimination in violation of Title VII is required to timely

exhaust his or her administrative remedies.  See Harris v. Gonzales, 488 F.3d 442, 443 (D.C. Cir.

2007); Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997); Thorne v. Cavazos, 744 F.

Supp. 348, 350 (D.D.C. 1990).  Failure to do so will ordinarily bar a judicial remedy.  See Brown

v. Marsh, 777 F.2d 8, 13 (D.C. Cir. 1985); see also Rattigan v. Gonzales, 503 F. Supp. 2d 56, 68

(D.D.C. 2007).  The employee is first required to contact an EEO counselor "within 45 days of the

date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days

of the effective date of the action."  29 C.F.R. § 1614.105(a)(1).  Should the matter remain

unresolved after informal counseling, the employee may file a formal discrimination complaint

with the agency.  Bowie v. Ashcroft, 283 F. Supp. 2d 25, 33 (D.D.C. 2003).  A formal complaint

filed with the agency must contain a statement by the employee that is "sufficiently precise to

identify the aggrieved individual and the agency and to describe generally the action(s) or

practice(s) that form the basis of the complaint."  29 C.F.R. § 1614.106(c).  The employee is free

to amend the "complaint at any time prior to the conclusion of the investigation to include issues

or claims like or related to those raised in the complaint."  Id. § 1614.106(d).

      If the employee is dissatisfied with the final disposition of the complaint, he or she may

file a civil action within 30 days of receipt of the notice of final action by the agency.  Bowie, 283

F. Supp. 2d at 33 (citing 42 U.S.C. § 2000e-16(c)).  A civil action filed in federal court is limited

in scope by the underlying administrative complaint.  A claimant may only litigate those

allegations that were contained in the EEO complaint or those that are "like or reasonably related

to the allegations of the charge."  Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995); see

also Lane v. Hilbert, 2004 WL 1071330 (D.C. Cir. May 12, 2004) (noting the breadth of a civil

suit is "only as broad as [the] scope of any investigation that reasonably could have been expected

to result from [the] initial charge of discrimination"); Lewis v. Dist. of Columbia, 535 F. Supp. 2d

1, 5 (D.D.C. 2008) ("In actions brought under Title VII, a court has authority over only those

claims that are (1) contained in the plaintiff's administrative complaint or claims 'like or

reasonably related to' those claims in the administrative complaint and (2) claims for which the

plaintiff exhausted administrative remedies.") (citation omitted); Cannon v. Paulson, 531

F.Supp.2d 1, 6 (D.D.C. 2008) ("A plaintiff may [ ] proceed on a claim that was not

administratively raised below if the new claim is 'like or related to' a previously filed claim.")

(citing Wiley v. Glassman, 511 F.3d 151 (D.C. Cir. 2007)).  The failure to exhaust administrative

remedies is an affirmative defense that the defendant bears the burden of pleading and proving.

Bowden, 106 F.3d at 437; cf. Jones v. Bock, 549 U.S. 199, 127 S. Ct. 910, 921 (2007) ("We

conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are

not required to specially plead or demonstrate exhaustion in their complaints.").

          1.        **Janet Howard**

     The Department first argues that Howard failed to exhaust her available administrative

remedies regarding the administrative class complaint ("Howard 6") because she "failed to contact

an EEO counselor within 45 days of the alleged discrimination."  Def.'s Mem. at 10.  Howard

requested counseling on the administrative class complaint on October 21, 1994, see Def.'s

Renewed Mot. to Dismiss Ex. Y, Attachment 3 (Letter from Janet Howard to Courtland Cox,

Acting Director, Office of Civil Rights, Dep't of Commerce (Dec. 16, 1994)) at 1; id., Attachment

6 (Mar. 15, 1995 Class Action Counselor's Report) at 1, and she filed the formal EEOC class

complaint on February 22, 1995, see EEO Class Compl. at 1.  On the first page of the complaint,

Howard wrote "August 5, 1994," in the space asking for the "date on which the most recent

discrimination took place."  Id.  The Department therefore argues that more than 45 days passed

between August 5, 1994, when the complaint stated that the most recent discrimination took

place, and October 21, 1994, when Howard sought counseling.  See Def.'s Mem. Supp. Renewed

Mot. to Dismiss ("Def.'s Renewed Mem.") at 59-60.  Moreover, the Department argues that the

period for the counseling requirement begins to run in a "pattern or practice case" when the

complainant knew or should have known about the alleged discriminatory policy, and that because

the Department used the same performance evaluation system for years prior to 1994, Howard

<u>should</u> have known about the alleged discriminatory policy years earlier when she received previous performance evaluations.  <u>Id.</u> at 60 (citing <u>Torres v. Mineta</u>, 2005 WL 1139303 (D.D.C. May 13, 2005)).

In response, plaintiffs dispute the merits of the Department's exhaustion argument. Plaintiffs state that Howard met the counseling deadline because on October 20, 1994, the day before her counseling request, she received a performance rating that resulted in the denial of a promotion.  <u>See</u> Pls.' Renewed Opp. at 38 (citing Pls.' Renewed Opp. Ex. L (Performance Rating Receipt)).  Although the Department contests the fact that Howard's performance rating was the "matter alleged to be discriminatory," plaintiffs argue that it was indeed part and parcel of the administrative complaint because the complaint alleged that the Department's subjective performance appraisal system has a disparate impact on African Americans and their promotion opportunities.  <u>See id.</u> at 38-39.

Plaintiffs also argue that the counseling request was timely under the continuing violation doctrine because Howard "did not have knowledge regarding the class-wide nature of the discrimination caused by the performance appraisal system and could not have appreciated the extent of the discriminatory employment practices until the initiation of the EEOC investigation." Pls.' Surreply to Def.'s Renewed Mot. to Dismiss at 3; <u>see also</u> <u>Taylor v. Fed. Deposit Ins. Corp.</u>, 132 F.3d 753, 765 (D.C. Cir.1997) ("For statute of limitations purposes, a continuing violation is one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period . . . .") (internal quotation marks omitted).  A plaintiff may litigate claims under the continuing violation doctrine, "if he proves either a 'series of related acts, one or more of

which falls within the limitations period, or the maintenance of a discriminatory system both before and during the statutory period.'" Moore v. Chertoff, 437 F. Supp. 2d 156, 160 (D.D.C. 2006) (quoting Pleasants v. Allbaugh, 185 F. Supp. 2d 69, 73 (D.D.C. 2002), and Palmer v. Kelly, 17 F.3d 1490, 1495 (D.C. Cir. 1994)); see also Anderson v. Zubieta, 180 F.3d 329, 337 (D.C. Cir. 1999) ("Where . . . discrimination is not limited to isolated incidents, but pervades a series or pattern of events which continue to within [45] days of the filing charge . . . , the filing is timely . . . regardless of when the first discriminatory incident occurred.") (quoting Laffey v. Northwest Airlines, 567 F.2d 429, 473 (D.C. Cir. 1976)).

Here, Howard has alleged that the Department's performance appraisal system is discriminatory and was maintained before and during the statutory period, and Howard has further alleged a related act which falls within the limitations period. Because there is a genuine dispute about when Howard knew or should have known about the alleged disparate impact of the performance appraisal system or policy, the Court cannot conclude that Howard failed to meet the counseling deadline. See Torres, 2005 WL 1139303, at *5 (holding that "[p]laintiffs' continuing violation claim fails because [plaintiff] did not initiate EEO counseling when he first learned of the FAA's policy"); but see Moore, 437 F. Supp. 2d at 163 (holding that under Anderson v. Zubieta, 180 F.3d 329 (D.C. Cir. 1999), "if plaintiffs challenge a discriminatory policy or system, the doctrine of continuing violations may apply without regard to the plaintiffs' awareness or knowledge of the discriminatory nature of that system").[2]

---

[2]Plaintiffs note that the EEOC counseling deadline is not jurisdictional and can be waived. See Brown, 777 F.2d at 14; Bowden, 106 F.3d at 438-39. They argue that because this matter has been pending in the administrative and judicial systems for more than ten years, the Department waived the exhaustion defense by failing to raise it during the EEOC proceedings. See Pls.' Renewed Opp. at 36-38. The Department disagrees, arguing that it asserted the defense at the first

The Department next argues that even if Howard sought timely counseling for the administrative class complaint, that cannot serve as a basis for Howard's individual claim because she only asserted class claims in Howard 6. Upon a review of Howard 6, however, the Court disagrees with the Department's assessment. The Howard 6 complaint alleged "racial discrimination against African Americans in the Department of Commerce" consisting of "[l]ow performance rating[s]" and "continued denial of promotion and awards." EEO Class Compl. at 2. Howard stated in the complaint that "I and all participants in the class have been racially discriminated against . . . in the area of promotions, awards, performance ratings, career enhancement work assignments, timely training for advancement, and all other resource support readily available to the majority." Id. at 3. The complaint therefore sought an end to "the systemic means of discrimination in hiring, promotion, training and unfair performance evaluations." Id. at 3. But it sought that relief based on alleged discrimination against herself and the class. As plaintiffs point out, "[f]rom the language of the EEOC charge, it is plain that the allegations contained therein refer not only to a class but also to Ms. Howard herself." Pls.' Renewed Opp. at 13.

In an EEOC decision dated June 4, 1997, the commission noted that Howard had clarified that the administrative complaint was asserting a disparate impact claim of discrimination based

_____

judicial opportunity. See Def.'s Renewed Mem. at 60 n.68. The Department also attempts to distinguish Bowden based upon the agency's failure here to adjudicate the merits of Howard 6. See Def.'s Reply to Renewed Mot. to Dismiss at 15-16. Although the Court is cognizant of the distinctions raised by the Department, plaintiffs' argument may have merit given the specific circumstances surrounding this case. Because this argument relates to the Department's motion to dismiss, however, the Court is in no position to address this argument, and in any event, the Court need not reach a determination on this issue because the Department has not demonstrated that Howard failed to exhaust her administrative remedies for Howard 6.

upon the Department's performance appraisal system.  See Def.'s Renewed Mot. to Dismiss Ex. C (Howard v. Dep't of Commerce, EEOC App. No. 01956455, 1997 WL 314807 (June 4, 1997)) at 1-2.  Howard alleged that "the assessment of employee performance was conducted 'according to factors that [were] overly subjective and which permit, and may very well encourage, the use of impermissible considerations.'"  Id. at 2.  Howard also "claimed that discriminatory performance appraisals significantly curtailed the promotional opportunities for black employees, and that the assessment of the performance of Blacks was 'conducted in an arbitrary and discriminatory manner.'"  Id.  Based upon these allegations and the language of Howard 6, the Department has not justified the dismissal of Howard's individual disparate impact claim for failure to exhaust administrative remedies.[3]

### 2.    Tanya Ward Jordan and Joyce Megginson

With regard to Ward Jordan and Megginson, the Department broadly argues that plaintiffs' disparate impact claims "are barred based upon a failure to exhaust, untimeliness, res judicata, and settlement." Def.'s Mem. at 22.  Several of these arguments are identical to those previously advanced in the Department's renewed motion to dismiss, and to the extent the Department is rehashing arguments from its resolved motion, the Court sees no reason to readdress those claims. Instead, the Court will focus on two new arguments advanced by the Department -- a newer version of its American Pipe tolling argument and an additional argument regarding Ward Jordan and Megginson's failure to exhaust administrative remedies.

To provide context, the Court will briefly recap the argument previously asserted by the

---

[3]The Court need not determine whether Howard administratively exhausted her other twenty-four administrative complaints because the Department has not demonstrated that Howard 6 cannot provide a basis for Howard's individual claim in this action.

Department in the renewed motion to dismiss.  The Department originally argued that

Megginson's individual claims were barred by Title VII's filing deadline.  See Def.'s Renewed

Mem. at 49.  Title VII requires federal employees to file a civil action within ninety days of the

receipt of a final agency decision.  See 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407 (2006).  In

rejecting this argument, however, the Court noted that the ninety-day filing deadline in Title VII is

subject to equitable tolling.  See Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 95 (1990); Zipes

v. Trans World Airlines, Inc., 455 U.S. 385, 398 (1982).  It is well-settled that "'the

commencement of a class action suspends the applicable statute of limitations as to all asserted

members of the class who would have been parties had the suit been permitted to continue as a

class action.'"  Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 353-54 (1983) (quoting Am. Pipe

& Constr. Co. v. Utah, 414 U.S. 538, 554 (1974)).  The Court saw no reason to apply a different

rule with respect to the filing of administrative class complaints.  See, e.g., Williams v.

Owens-Illinois, Inc., 665 F.2d 918, 923 (9th Cir. 1982) ("In a class action, a class representative's

EEOC complaint tolls the statute of limitations for all class members."); Barrett v. U.S. Civil

Serv. Comm'n, 439 F. Supp. 216, 217-18 (D.D.C. 1977) ("Although American Pipe dealt with a

judicial complaint as tolling the statute, the policy behind Rule 23 and the need to protect all

'purported' class members even if they do not rely upon the class complaint are equally applicable

to a Title VII case at the administrative level.").

        The EEO class complaint in this action was filed on February 22, 1995, a date that plainly

preceded Megginson's receipt of the relevant individual final agency decision on either September

23, 1997, or October 19, 1997.  Within days of the dismissal of the EEO class complaint,

plaintiffs filed their class complaint in this Court.  See Def.'s Renewed Mot. to Dimiss Ex. L

(Notice of Withdrawal, EEOC No. 100-2001-07429X (Sept. 30, 2005)); Howard v. Gutierrez, No. 05-cv-1968 (Oct. 5, 2005). Thus, the Court determined that the filing of the EEO class complaint, and later the complaint in this action, operated to toll the ninety-day filing period for Megginson's individual claim. See Howard, 474 F. Supp. 2d at 52.

The Department now agrees that the American Pipe tolling doctrine applies with respect to the filing of administrative class complaints. Def.'s Mem. at 24. However, the Department argues that the administrative complaints that Ward Jordan and Megginson filed before a class certification decision was made are barred by Title VII's filing deadline. The Department argues that "when an employee brings an individual administrative complaint when class certification is pending in an administrative class complaint alleging similar claims, the employee should lose the benefit of American Pipe tolling as to his individual administrative complaint." Id. at 25.

The Department's position, however, has been soundly rejected by the Second and Ninth Circuits in the context of class action lawsuits. See In re Hanford Nuclear Reservation Litig., 521 F.3d 1028 (9th Cir. 2008); In re WorldCom Sec. Litig., 496 F.3d 245 (2d Cir. 2007); but see Wyser-Pratte Mgmt. Co., Inc. v. Telxon Corp., 413 F.3d 553 (6th Cir. 2005). In In re WorldCom Securities Litigation, the Second Circuit reasoned that "[t]he American Pipe tolling doctrine was created to protect class members from being forced to file individual suits in order to preserve their claims. It was not meant to induce class members to forgo their right to sue individually." 496 F.3d at 256 (emphasis in original). The Second Circuit therefore held that plaintiffs' "limitations period was tolled under the doctrine of American Pipe until such time as they ceased to be members of the asserted class, notwithstanding that they also filed individual actions prior to the class certification decision." Id.

-14-

In In re Hanford Nuclear Reservation Litigation, the Ninth Circuit adopted the reasoning of the Second Circuit to reach the same conclusion. See 521 F.3d at 1038. As the Ninth Circuit explained, applying American Pipe tolling to such a situation is in accord with the purpose of the underlying statutes of limitations to provide timely notice to defendants. Id. (citing In re WorldCom Sec. Litig., 496 F.3d at 255). "[T]he filing of a timely class action provides defendants with notice of the claim, so a follow-on individual suit cannot surprise defendants." Id. The Court agrees with this reasoning and again sees no reason why a different rule should apply with respect to the filing of administrative complaints. Indeed, the Department agrees that "American Pipe tolling for administrative complaints should be governed by the same rules as American Pipe tolling for civil class actions." Def.'s Mem. at 24. Accordingly, the filing of the EEO class complaint, and later the complaint in this action, operated to toll the ninety-day filing period for plaintiffs' individual claims, notwithstanding the fact that their administrative complaints were filed while the class certification decision was pending.

In arguing that the American Pipe tolling doctrine should not apply to the administrative complaints plaintiffs filed while the class certification decision was pending, the Department admits that those individual administrative complaints alleged claims that were similar to those alleged in the administrative class complaint, Howard 6. Id. at 25. And, as explained above, the class complaint clearly asserted a disparate impact claim based upon the Department's performance appraisal system. However, the administrative class complaint also encompassed claims relating to promotions, awards, career enhancement work assignments, and training opportunities. The Department therefore argues that Ward Jordan and Megginson's individual administrative complaints cannot support any individual claims in this action because they do not

articulate a disparate impact theory of discrimination based upon the Department's subjective

performance evaluation system.

When an individual plaintiff attempts to raise a disparate impact claim in federal court, the

courts often closely scrutinize the underlying administrative charge to ensure the disparate impact

claim was properly exhausted. But "an administrative charge is not a blueprint for the litigation to

follow . . . [and] the exact wording of the charge of discrimination need not presage with literary

exactitude the judicial pleadings which may follow . . . . Rather, the critical question is whether

the claims set forth in the civil complaint come within the scope of the EEOC investigation which

can reasonably be expected to grow out of the charge of discrimination." White v. New

Hampshire Dep't of Corrs., 221 F.3d 254, 263 (1st Cir. 2000) (alterations in original) (quoting

Powers v. Grinnell Corp., 915 F.2d 34, 38 (1st Cir. 1990)). In Pacheco v. Mineta, the Fifth

Circuit held "that a disparate-impact investigation could not reasonably have been expected to

grow out of [the plaintiff's] administrative charge because of the following matters taken together:

(1) it facially alleged disparate treatment; (2) it identified no neutral employment policy; and (3) it

complained of past incidents of disparate treatment only." 448 F.3d 783, 792 (5th Cir. 2006).

In Ward Jordan and Megginson's individual administrative complaints, they raised several

claims of discrimination in connection with allegedly unfair performance appraisals at the

Department. See Notice of Pl. Jordan's Admin. Compls. Exs. 1 ("Ward Jordan 1"), 2 ("Ward

Jordan 2"), 4 ("Ward Jordan 4"), and 8 ("Ward Jordan 8"); Notice of Pl. Megginson's Admin.

Compls. Exs. 5 ("Megginson 5"), 12 ("Megginson 12"), and 14 ("Megginson 14"). Upon a review

of the relevant administrative complaints, it appears that Ward Jordan 1, 2, and 4 satisfy the test

set forth in Pacheco v. Mineta. In these administrative complaints, Ward Jordan alleged that "a

select group of individuals -- white employees primarily those under 40 -- have been given preferential treatment" in the "[a]pplication of performance ratings," Ward Jordan 1 at 2; that she had "been treated differently from non-minority employees" based upon the Department's distribution "of 'Outstanding' Performance Ratings," Ward Jordan 2 at 2; and that the Department "has a predisposition to assign white employees (often management level) with 'outstanding' ratings over African-American employees," id. at 3. Ward Jordan specifically referred to the Department's "quota rating system," Ward Jordan 4 at 2, and the "subjectivity of the appraisal system," Ward Jordan 2 at 3. These administrative complaints therefore adequately put the Department on notice of a disparate impact theory of discrimination. The Department, however, contends that all of these administrative complaints were resolved by a settlement agreement dated June 17, 1998, and that they therefore cannot provide a basis for Ward Jordan's individual claim in this action. See Anderson Decl. ¶ 6; Def.'s Mem. at 22, 29-30.

The remainder of Ward Jordan and Megginson's administrative complaints appear to facially allege disparate treatment in connection with the Department's unfair performance appraisals. Of course, the administrative class complaint (Howard 6) undeniably put the Department on notice of the pending disparate impact claim regarding the performance appraisal system, and Ward Jordan and Megginson's claims were encompassed by the class complaint. When Ward Jordan and Megginson filed their individual administrative complaints, then, there was plainly further opportunity for investigation regarding the disparate impact theory. It is conceivable, therefore, that the disparate impact claim came within the scope of the relevant EEOC investigations that reasonably grew out of plaintiffs' charges of discrimination. See White, 221 F.3d at 263.

-17-

In any event, the potential failure of Ward Jordan and Megginson's administrative complaints to identify specifically a disparate impact theory related to the allegedly subjective performance appraisal system does not defeat their individual claims in this action. "Under the doctrine of vicarious exhaustion, a Title VII plaintiff who has failed to file an EEO charge may, under some circumstances, join his claim with that of another plaintiff who has filed properly an EEO charge." Moore, 437 F. Supp. 2d at 163 (citing Foster v. Gueory, 655 F.2d 1319, 1322 (D.C. Cir. 1981)); see also Coghlan v. Peters, 2008 WL 2191212, at *11 (D.D.C. May 28, 2008) ("The [single filing rule] allows an individual plaintiff, who has not [filed or exhausted a timely] EEOC charge, to satisfy the administrative exhaustion requirements . . . by relying on a charge filed by another plaintiff.") (citation omitted).

In Foster v. Gueory, three people who had not filed EEOC charges moved to intervene as plaintiffs in a Title VII action after the district court denied class certification. 655 F.2d 1319. The district court denied the motion to intervene on two grounds, one of which was the prospective plaintiffs' failure to exhaust administrative remedies. On appeal, the D.C. Circuit held that "it was error for the district court to deny appellants' motion to intervene as to the Title VII cause of action for the reason that the action had not been certified as a class action and appellants had not filed charges with EEOC." Id. at 1323. The D.C. Circuit further explained that the "critical factor in determining whether an individual Title VII plaintiff must file an EEOC charge, or whether he may escape this requirement by joining with another plaintiff who has filed such a charge, is the similarity of the two plaintiffs' complaints." Id. at 1322. As long as the "claims are so similar that it can fairly be said that no conciliatory purpose would be served by filing separate EEOC charges, then it would be 'wasteful, if not vain,' . . . to require separate EEOC filings." Id.

(citation omitted).

Here, the Department concedes that Ward Jordan and Megginson's allegations were sufficiently similar to the allegations in Howard 6 that some were in fact "subsumed into the Janet Howard class action (Howard 6)." Anderson Decl. ¶ 6. Now, Ward Jordan and Megginson are seeking to proceed on a claim that is identical to Howard's disparate impact claim of discrimination regarding the Department's performance appraisal system. There was plainly an opportunity for investigation regarding the disparate impact theory, and there was ample time to encourage resolution of the claim. Thus, the purposes of exhaustion were fulfilled by Howard's administrative complaint, and the Court concludes that under the doctrine of vicarious exhaustion Ward Jordan and Megginson may join their claims with Howard's.[4] See Cook v. Boorstin, 763 F.2d 1462, 1466 (D.C. Cir. 1985) (applying the doctrine of vicarious exhaustion where "each of the employees plans to prove his or her allegations by demonstrating the same thing: a pervasive 'pattern and practice' of racial discrimination in promotion and advancement of administrative and professional employees").

**B.    Title VII: Disparate Impact Claim**

The Department next argues that plaintiffs have insufficiently pled a disparate impact claim under Title VII in Count One of the Complaint. A disparate impact cause of action

---

[4]Because the Complaint includes allegations as to how Ward Jordan and Megginson were impacted and injured in terms of promotions and promotion-related opportunities, the Court finds no merit to the Department's argument that Ward Jordan and Megginson lack standing to assert their individual claims in this action. See Def.'s Mem. at 16-17 (citing Melendez v. Illinois Bell Tel. Co., 79 F.3d 661, 668 (7th Cir. 1996) ("In order for an individual plaintiff to have constitutional standing to bring a Title VII action, he must show that he was personally injured by the defendant's alleged discrimination and that his injury will likely be redressed by the requested relief.")).

challenges a facially-neutral employment practice that functions to disproportionately affect a protected class. See Griggs v. Duke Power Co., 401 U.S. 424, 431 (1971). The disparate impact analysis has been applied in the context of subjective employment criteria as well as objective or standardized tests. See Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 989 (1988). The Department points out that to carry their prima facie case burden with respect to the disparate impact claims, plaintiffs must first identify the specific employment practice that is challenged. Id. at 994. Then, plaintiffs must prove causation -- that is, they must amass "statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion" of members of the protected class from obtaining promotions and promotional opportunities. Id.

The Department argues that plaintiffs' disparate impact claim must be dismissed for failure to identify a neutral employment practice that has a disparate impact on African American employees and for failure adequately to plead causation. However, "Title VII plaintiffs need not plead each element of this prima facie case to survive a motion to dismiss." Rattigan, 503 F. Supp. 2d at 71-72 (quoting Swierkiewicz, 534 U.S. at 515). Instead, plaintiffs "must allege facts that, if true, would establish the elements of each claim." Id. at 72 (citing Major v. Plumbers Local Union No. 5., 370 F. Supp. 2d 118, 128-29 (D.D.C. 2005)). Moreover, "[a] document filed pro se is 'to be liberally construed,'" and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (internal citations omitted) (citing Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice.")).

Applying these principles here, the Court finds that plaintiffs have sufficiently identified and challenged a specific employment practice of the Department. Plaintiffs challenge the

performance evaluation process alleged to be excessively subjective, which causes a disparate

impact on promotions and promotion-related opportunities for African Americans.  According to

the Complaint, Commerce Headquarters has the responsibility for issuing department-wide

personnel policies and directives that are applied across the Bureaus of Commerce.  Sec. Am.

Compl. ¶ 150.  "The Office of the Secretary/[Human Resources Management Office] mandates a

uniform set of policies and protocols for the DOC bureaus' personnel practices, including

evaluations and promotions."  Id. ¶ 152.  All three plaintiffs were evaluated using a five-level

performance evaluation system.  See Def.'s Mem. at 8-9.  "For bureaus using five rating levels, the

standards . . . are generic and cannot be changed."  Sec. Am. Compl. ¶ 160.[5]  The Court therefore

finds that plaintiffs have sufficiently identified a specific employment practice to survive the

Department's motion to dismiss.  See Cook v. Billington, 1992 WL 276936, at *4 (D.D.C. Aug.

14, 1992) (finding that plaintiffs challenged a specific employment practice -- "the Library's

excessive use of subjective decision-making in the establishment and measurement of the criteria

used to evaluate candidates for promotion").

Dr. David Martin, a professor of Management and Human Resources Management at the

Kogod School of Business Administration of American University, who specializes in

performance appraisal systems, reviewed the Department's performance evaluation process and

_____

[5]The performance appraisal system here may properly fall under 42 U.S.C. § 2000e-2, which states that when "the elements of a respondent's decisionmaking process are not capable of separation for analysis, the decisionmaking process may be analyzed as one employment practice."  See McReynolds v. Sodexho Marriott Servs., Inc., 349 F. Supp. 2d 1, 29 (D.D.C. 2004) (finding that defendant's promotion practices were "not capable of separation for analysis"); see also McClain v. Lufkin Indus., Inc., 187 F.R.D. 267, 275 (E.D. Tex. 1999) (finding that "[t]he discriminatory effects of the constellation of suspect employment practices used by [the defendant] cannot be isolated individually").

identified a number of flaws in the system.  Sec. Am. Compl. ¶¶ 161-64.  He generally noted that

the "subjectivity [in the performance appraisal system] allows raters to inject any non-work related

issue such as bias, discrimination, personal like/dislike, or any other characteristic which would

wrongly influence an employee's performance rating."  Id. ¶ 164.  According to the Complaint, Dr.

Martin ultimately concluded that the Department's performance appraisal system was "probably

the worst system [he had] critiqued."  Id. ¶ 166.

Citing the website of the Human Resources Management Office, plaintiffs explain the

importance of the performance appraisals and the impact they have on advancement opportunities.

The website explains that:

> [Performance appraisals] are used in a variety of critically important ways.  For
> example performance ratings have an impact during a reduction-in-force (RIF).  A
> performance rating is also a factor in making promotion selections, and in most
> cases in determining who will receive a performance award. . . . In short, the
> performance rating that you give an employee can have a major impact on the
> employee's career.

Id. ¶ 158.  The website further notes that performance appraisal results "are to be used as a basis

for training, rewarding, reassigning, promoting, reducing in grade, retaining, or removing

employees."  Id. ¶ 159.

Plaintiffs present five pages of statistical evidence purporting to demonstrate the disparate

impact of the system on African Americans.  Id. ¶¶ 167-91.  Plaintiffs mainly rely on statistics

demonstrating that the percentage of African Americans employed at the Department declines as

the GS level increases.  For example, to demonstrate the disparity between African Americans

and white employees at the Department, plaintiffs include the following data regarding the

general composition of the Department:

| GS Level | African American | White |
|----------|------------------|-------|
| GS 5 - GS 8 | 35.9% | 57.3% |
| GS 9- GS 12 | 20.2% | 69.5% |
| GS 13- GS 15 | 7.1% | 83.3% |

Id. ¶ 173.

In an attempt to bring these "cold numbers convincingly to life," plaintiffs also provide anecdotal evidence.  See Int'l Broth. of Teamsters v. United States, 431 U.S. 324, 339 (1977); see also McReynolds, 349 F. Supp. 2d at 17.  Dennis Gosier, Chief Steward and EEO representative at the Department, "has personally attempted to assist more than 100 African-Americans redress discrimination suffered at the DOC."  Sec. Am. Compl. ¶ 192.  He claims to have witnessed a pattern at the Department of "[a]rbitrary and subjective negative personnel review of African-Americans that ha[s] resulted in thwarting of employment advancement."  Id. ¶ 194.  Plaintiffs also cite to the experiences of several other Department employees to demonstrate the alleged widespread impact of poor performance evaluations and denial of promotions.  Id. ¶¶ 195-205.

Evaluating plaintiffs' evidence, the Department correctly notes that the disproportionate representation of African Americans in high-level GS positions may not be exclusively due to the subjective performance appraisal system.  It is true that plaintiffs' statistical evidence suffers from a number of flaws, and plaintiffs will surely have to provide a tighter statistical showing to prevail on the merits.  However, based upon the information from the Department's website explaining the role of performance appraisals in promotional opportunities, the anecdotal evidence regarding the pattern of alleged discrimination in assessments and promotions, and the statistical information presented by plaintiffs, the Court finds that the Complaint raises an

inference of discrimination sufficient to overcome the Department's motion to dismiss for failure to adequately plead causation.  See McReynolds, 349 F. Supp. 2d at 30 (holding that "the wealth of anecdotal evidence, when coupled with the testimony of [plaintiffs' experts], is certainly enough to raise a jury question as to the causal link between [the defendant's] allegedly subjective practices and the race disparity at the managerial level"); Cook, 1992 WL 276936, at *5 (rejecting the "defendant's argument that no causal nexus has been established between this subjectivity and the observed racial disparities in promotion" and noting that "excessive subjectivity in employment decisions is traditionally viewed with skepticism by courts, as subjectivity is often a convenient pretext for discriminatory practices").  In sum, plaintiffs have pled "enough facts to state a claim for relief that is plausible on its face." Twombly, 127 S. Ct. at 1974.

C.    Rehabilitation Act

In Count Two, Ward Jordan alone asserts a failure to accommodate claim under the Rehabilitation Act, which the Department contends is inadequately pled.  The Rehabilitation Act provides that "no otherwise qualified individual with a disability" may be discriminated against by a federal agency "solely by reason of her or his disability."  29 U.S.C. § 794(a).  Section 501 of the Act further mandates that federal agencies take affirmative steps to provide for qualified persons with disabilities.  See 29 U.S.C. § 791; Carr v. Reno, 23 F.3d 525, 528 (D.C. Cir. 1994); Dage v. Johnson, 537 F. Supp. 2d 43, 49 (D.D.C. 2008); Scarborough v. Natsios, 190 F. Supp. 2d 5, 19 (D.D.C. 2002).

To establish a prima facie case of discrimination under the Rehabilitation Act for failure to accommodate, a plaintiff must show "(1) that [she] was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of [her] disability; (3) that with

-24-

reasonable accommodation [she] could perform the essential functions of the position; and (4) that the employer refused to make such accommodations." Scarborough, 190 F. Supp. 2d at 19 (quoting Rhoads v. FDIC, 257 F.3d 373, 387 n. 11 (4th Cir. 2001)); see also Thompson v. Rice, 422 F. Supp. 2d 158, 165-66 (D.D.C. 2006).

The entirety of Ward Jordan's claim consists of the following allegation in the Complaint: "Commerce has discriminated against Ms. Ward Jordan by denying her reasonable accommodation for her disabilities, including respiratory problems and occupational stress, in violation of the Rehabilitation Act of 1973." Sec. Am. Compl. ¶ 229. Ward Jordan makes no effort to explain how the Department had notice of her disabilities, how she requested reasonable accommodation for her conditions, or how the Department refused to make such accommodation. In short, Ward Jordan's claim consists of nothing beyond an asserted legal conclusion. Because the Complaint is devoid of any factual allegations to provide the Department with fair notice of this claim and to raise Ward Jordan's right to relief above a speculative level, the Court will dismiss Count Two of the Complaint.

## II.    Motion for Summary Judgment

Lastly, the Department moves for summary judgment on Count One, plaintiffs' Title VII claim, on the ground that there is no "single centrally defined system for performance evaluations." Def.'s Mem. at 21. The Department attaches representative samples of plaintiffs' performance appraisals and asserts that each individual was evaluated based upon particular job duties necessary for the bureau in which she was employed. Although the Department's performance appraisal process may be decentralized in certain respects, this fact alone does not carry the day for the Department at the summary judgment stage. See Morgan v. United Parcel

Serv. of Am., Inc., 169 F.R.D. 349, 356 (E.D. Mo. 1996) (rejecting the defendant's argument regarding decentralized decisionmaking because the defendant's promotional policies were "promulgated by the national corporate office" and the policies included "the subjective, decentralized system of decisionmaking" alleged to be discriminatory).

Plaintiffs contend that the Assistant Secretary at the Department of Commerce plays a significant role in promulgating the shared subjective policies alleged to have a disparate impact on African Americans at the Department.  Plaintiffs attach to their opposition a Department of Commerce order, which generally states that the Assistant Secretary shall "[d]evelop and administer the personnel management policies and programs of the Department, including the direction, administration, and processing of all matters involving personnel, payroll, and occupational safety and health."  Pls.' Opp. Ex. 10 (DOO 10-5) at 2-3.  And the order specifically states that the Assistant Secretary shall "[c]onduct activities to ensure equal employment opportunity in the Department, including affirmative action for employees and job applicants, and to ensure nondiscrimination in Federally-assisted programs, activities, and projects."  Id. at 3.  Plaintiffs also attach the Department's generic performance standards for the five-tier system, under which each plaintiff was evaluated as a Department employee.  Pls.' Opp. Ex. 6 at 1-2.  After Dr. Martin reviewed a sample of the Department's performance reviews, he concluded that the appraisals were "flawed by the excessive amount of subjectivity which is permitted in arriving at the rating for the individual elements."  Sec. Am. Compl. ¶ 165.

Even the Department admits that "each bureau's system shared basic tenets" in common, Def.'s Mem. at 8, that each plaintiff was subject to a five-level performance evaluation system, id. at 8-9, and that "the performance evaluation systems applied to Plaintiffs may share some . . .

-26-

structural, base-line elements," Def.'s Reply at 9. Based upon the evidence before this Court, then, there is a genuine issue of material fact as to whether there are common elements of the performance appraisal system that allow decision-makers to exercise excessive subjectivity, leading to a disparate impact on plaintiffs. See McReynolds, 349 F. Supp. 2d at 20 (stating that "[g]iven the inconsistencies in [the defendant's] own evidence, and in light of the substantial testimony offered by plaintiffs, the Court must, for summary judgment purposes, credit plaintiffs' contention that [the defendant] used a decentralized, subjective promotions process"). Summary judgment is therefore precluded at this time.

## CONCLUSION

For the foregoing reasons, the Court will grant the Department's motion to dismiss Count Two under the Rehabilitation Act, but will deny the Department's motion as to Count One under Title VII. A separate order accompanies this memorandum opinion.

_____/s/ John D. Bates_____
JOHN D. BATES
United States District Judge

Dated: August 18, 2008