UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANET HOWARD, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>REBECCA BLANK,<br>  Secretary, U.S. Department of Commerce,<br><br>  Defendant. | Civil Action No.  05-1968 (JDB) |

## MEMORANDUM OPINION

Plaintiffs Janet Howard and Joyce Megginson brought this action against Gary Locke, Secretary of the United States Department of Commerce ("Department").[1] This Court previously dismissed one count of plaintiffs' complaint; the sole surviving count alleges a disparate impact claim of racial discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. Now, nearly seven years after the commencement of this litigation, the Department seeks to dismiss the remaining count for lack of subject matter jurisdiction. For the reasons explained herein, the Court must grant the Department's motion.

## BACKGROUND

This case has a lengthy history, which the Court recounted more fully in a prior opinion. See Howard v. Gutierrez, 571 F. Supp. 2d 145 (D.D.C. 2008). In brief, Janet Howard, an African American female, was employed at the Department from 1983 to 2008. Joyce Megginson, also an African American female, has been employed by the Department since 1971. Both filed a number of formal administrative complaints with the Department. Plaintiffs (along with a third

---

[1] The complaint originally named as defendant Carlos M. Gutierrez in his capacity as Secretary of the United States Department of Commerce. Pursuant to Federal Rule of Civil Procedure 25(d), current Acting Secretary Rebecca Blank is automatically substituted.

1

plaintiff, Tanya Ward Jordan, who has since settled with defendant) filed their original complaint with this Court on October 5, 2005, and their First Amended Complaint on June 13, 2006. The First Amended Complaint asserted employment discrimination claims on behalf of plaintiffs individually and on behalf of a putative class of African American, non-supervisory Department employees; it also asserted a disability discrimination claim under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 et seq., on Jordan's behalf. The Court granted the Department's motion to strike the class claims, denied the Department's motion to dismiss plaintiffs' individual claims, and granted plaintiffs leave to file a Second Amended Complaint. See Howard v. Gutierrez, 474 F. Supp. 2d 41 (D.D.C. 2007). After the Court denied plaintiffs' motion for reconsideration regarding class certification, plaintiffs filed their Second Amended Complaint. On August 18, 2008, the Court granted the Department's motion to dismiss Count Two of the complaint under the Rehabilitation Act, but allowed Count One under Title VII to proceed. See Howard, 571 F. Supp. 2d at 163.

As it stands, plaintiffs' central claim is that the Department has violated Title VII by using overly subjective performance-appraisal criteria that result in a disparate impact on African American employees with respect to promotions and promotion-related opportunities. Sec. Am. Compl. [Docket Entry 70] ¶¶ 1-4, 6, 217-27; see also Howard, 571 F. Supp. 2d at 150.

## STANDARD OF REVIEW

"The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006) (citation omitted); see also Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." (emphasis added)). Accordingly, despite the long

pendency of this litigation, the Court must consider the Department's argument and dismiss the action if jurisdiction is lacking.

"[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993). Therefore, the factual allegations must be presumed true, and plaintiffs must be given every favorable inference that may be drawn from the allegations of fact. See Scheuer, 416 U.S. at 236; Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). However, the Court need not accept as true "a legal conclusion couched as a factual allegation," nor inferences that are unsupported by the facts set out in the complaint. Trudeau v. Federal Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

## ANALYSIS

**1. Subject Matter Jurisdiction**

28 U.S.C. § 2401(a) is "a general catchall statute," Felter v. Norton, 412 F. Supp. 2d 118, 124 (D.D.C. 2006), that sets a six-year limitation period on non-tort civil claims against the United States. The Department contends that § 2401(a) creates a jurisdictional bar, that this action violates its six-year limitation, and that the Court must hence dismiss the action. See Fed. R. Civ. P. 12(h)(3). Plaintiffs[2] respond that § 2401(a) does not apply to Title VII actions. Alternatively, they argue that even if § 2401(a) does apply, it remains subject to equitable tolling and hence permits this action.

---

[2] Plaintiff Howard, proceeding pro se, filed a nonresponsive opposition. This Court will treat her as having joined plaintiff Megginson's opposition in full.

3

A critical threshold question is whether § 2401(a) is, indeed, jurisdictional. Statutes of limitations generally fall into two broad categories: affirmative defenses that can be waived and "jurisdictional" statutes that are not subject to waiver or equitable tolling. See John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 133-34 (2008). Statutes of limitations in suits against the United States have had a checkered history in the Supreme Court. For many years, they were placed in the latter, jurisdictional category. See Soriano v. United States, 352 U.S. 270, 276 (1957); Finn v. United States, 123 U.S. 227, 232-33 (1887). The Supreme Court then departed from that approach in a series of cases culminating in Irwin v. Department of Veterans Affairs, which held that the "same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." 498 U.S. 89, 95-96 (1990). Most recently, the Supreme Court indicated that at least some of the historical presumption survives Irwin: in John R. Sand, 552 U.S. 130, it held that § 2401's companion statute, 28 U.S.C. § 2501, which creates a six-year statute of limitations for claims against the United States brought before the Court of Federal Claims, is jurisdictional. If this Court were considering § 2401(a)'s jurisdictional status on a blank slate, these developments would raise challenging questions. See id. at 145-46 (2008) (Ginsburg, J., dissenting) (noting that circuits are split about the jurisdictional status of the "materially identical" § 2401(a) and arguing that "[t]oday's decision hardly assists lower courts endeavoring to answer this question" because its reasoning points in conflicting directions). But the task at hand is much easier, as binding authority in this circuit answers the question.

In 1987, the D.C. Circuit held that, "[u]nlike an ordinary statute of limitations, § 2401(a) is a jurisdictional condition attached to the government's waiver of sovereign immunity." Spannaus v. U.S. Dep't of Justice, 824 F.2d 52, 55 (D.C. Cir. 1987). And the circuit only

recently reaffirmed that, at least for the time being, Spannus remains binding, explaining that "[t]he court has long held that section 2401(a) creates 'a jurisdictional condition attached to the government's waiver of sovereign immunity.' On appeal, neither [party] has challenged this circuit's precedent; therefore, we need not question our prior authority." P & V Enters. v. U.S. Army Corps of Eng'rs, 516 F.3d 1021, 1026-27 (D.C. Cir. 2008) (quoting Spannaus, 824 F.2d at 55) (citations omitted). Examining these developments in some depth, this Court previously concluded that it "is compelled to hold that § 2401(a) is jurisdictional." W. Va. Highlands Conservancy v. Johnson, 540 F. Supp. 2d 125, 143 (D.D.C. 2008). The Court remains so compelled today.

The next question is whether § 2401(a) by its terms bars this action. The statute provides: "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). A "cause of action against an administrative agency first accrues, within the meaning of § 2401(a), as soon as (but not before) the person challenging the agency action can institute and maintain a suit in court." Spannus, 824 F.2d at 56 (internal quotation marks omitted); see also Felter v. Kempthorne, 473 F.3d 1255, 1259 (D.C. Cir. 2007) ("Actions usually accrue when they come into existence." (alterations and internal quotation marks omitted)).

The Department contends that plaintiffs' right of action first accrued on August 21, 1995. Plaintiffs never dispute this date, and with good reason. Howard's February 22, 1995 formal EEO class complaint provides the basis for her claim. See Howard, 571 F. Supp. 2d at 154. Accordingly, she could have brought her claim as early as 180 days after filing that complaint, i.e., on August 21, 1995. See 42 U.S.C. § 2000e-16(c) (allowing suits "after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit"). Six years

5

after her right of action first accrued—the last day for Howard to file the complaint within the bounds of § 2401(a)—was August 21, 2001. Instead, she filed this action on October 5, 2005, more than four years too late.

Megginson's claim runs afoul of § 2401(a) for the same reason. This Court previously held that, although Megginson's own administrative complaints "potential[ly] fail[ed]" to identify the theory she seeks to pursue in this action, Howard, 571 F. Supp. 2d at 158, Megginson could join her claims with Howard's under the doctrine of vicarious exhaustion, which allows "a Title VII plaintiff who has failed to file an EEO charge . . . , under some circumstances, [to] join his claim with that of another plaintiff who has filed properly an EEO charge." Moore v. Chertoff, 437 F. Supp. 2d 156, 163 (D.D.C. 2006). Vicarious exhaustion cannot, of course, operate to circumvent otherwise-applicable statutes of limitations; hence, insofar as Megginson relies on Howard's exhaustion, her right of action accrued at the same time as Howard's did. And, although the Court previously concluded only that Megginson's own EEO complaints "potential[ly]" failed, it need not now determine whether Megginson's own EEO complaints could themselves support this action: her most recent EEO complaint was filed on March 27, 1998. Assuming both that it sufficed to allow Megginson's suit, and that it was the first administrative complaint to do so, her cause of action would have first accrued on September 23, 1998, and § 2401(a) would have allowed suit until September 23, 2004. Even with these favorable assumptions, this action was filed more than a year too late.

In response, plaintiffs first contend that § 2401(a) simply doesn't apply to this case because Title VII cases are subject only to Title VII's own statute of limitations, 42 U.S.C. § 2000e-16(c). This argument faces a major hurdle: the language of § 2401(a), which states that it applies to "every civil action commenced against the United States," 28 U.S.C. § 2401(a), with

6

a specific exception for tort claims not applicable here, see 28 U.S.C. § 2401(b). See also Price v. Bernanke, 470 F.3d 384, 387 (D.C. Cir. 2006) ("28 U.S.C. § 2401(a)[] [is a] six year catch-all statute of limitations for non-tort civil claims against the United States[.]"). "The law of this circuit is clear: the words 'every civil action' mean what they say." Spannaus, 824 F.2d at 55. The D.C. Circuit has accordingly applied the statute to "all civil actions whether legal, equitable, or mixed." Kempthorne, 473 F.3d at 1259 (internal quotation marks omitted).[3]

Arguing that § 2401(a) nonetheless fails to reach this action, plaintiffs rely on Price v. Bernanke, 470 F.3d 384. In Price, the D.C. Circuit considered the statute of limitations that should apply to the Age Discrimination in Employment Act (ADEA). It held that federal employees who bring a civil action after pursing administrative remedies under the ADEA are subject to the 90-day statute of limitations period for similar suits filed under Title VII, rejecting those plaintiffs' arguments that § 2401(a) should supply the only limit. Plaintiffs read Price to hold that "28 U.S.C. § 2401(a) does not necessarily apply to causes of actions without specific limitations periods," Opp'n to Def.'s Mot. to Dismiss [Docket Entry 158] at 4 (June 27, 2011), and they accordingly reason that its application should be even more dubious to statutes, like Title VII, that have their own limitations. This argument rests on a misreading of Price: rather than rejecting § 2401's applicability, Price held that "[t]hough § 2401(a) sets an outside time limit on suits against the United States, there is nothing to suggest that Congress intended it to govern any time a court finds a cause of action without a specific limitations period." 470 F.3d at 388. Price thus recognized § 2401(a)'s applicability as an "outside limit" to such actions, while holding that Title VII's 90-day limit, which is normally far more restrictive, will govern in most

---

[3] The D.C. Circuit has declined to apply § 2401(a) only to actions seeking relief under 5 U.S.C. § 706(1) to compel agency action unlawfully withheld or unreasonably delayed because those actions complain about what the "agency has yet to do" rather than "what the agency has done." Wilderness Soc'y v. Norton, 434 F.3d 584, 589 (D.C. Cir. 2006) (internal quotation marks omitted). That circumstance is inapplicable here.

circumstances. Because Title VII's limit was tolled in this case, the outside limit is at issue here, and § 2401(a) supplies the governing bar. See also Pailes v. U.S. Peace Corps, 783 F. Supp. 2d 1, 9 (D.D.C. 2009) (holding that § 2401(a) bars claims under several statutes normally subject to shorter limitations periods, including the Americans with Disabilities Act and the Rehabilitation Act), aff'd, No. 09-5400, 2010 WL 2160012 (D.C. Cir. May 27, 2010) (citing § 2401(a)).[4]

Plaintiffs also contend that even if § 2401(a) applies, equitable tolling stopped the clock just as it did for the Title VII limitations period. This argument need not detain us long. Plaintiffs rely on Irwin's holding that the presumption of equitable tolling applies to suits against the United States. 498 U.S. at 95-96. By definition, however, the fact that § 2401(a) is jurisdictional means that equitable tolling cannot apply: jurisdictional time limits are precisely those that "forbid[] a court to consider whether certain equitable considerations warrant extending a limitations period." John R. Sand, 552 U.S. at 134; see also Bowles v. Russell, 551 U.S. 205, 214 (2007) ("this Court has no authority to create equitable exceptions to jurisdictional requirements"). And insofar as plaintiffs seek to argue that, given Irwin, § 2401(a) is not jurisdictional, that argument fails for the reasons discussed above.

**2. Leave to Amend**

Plaintiffs have moved for leave to file a third amended complaint. Federal Rule of Civil Procedure 15(a) states in relevant part that, absent the opposing party's written consent, "a party may amend its pleading only with . . . the court's leave" and that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "It is within the sound discretion of the

---

[4] Nor is Title VII's statute of limitations a later-enacted statute that effects a partial repeal of § 2401(a): Title VII's significantly shorter limitations period never purports to set the exclusive limit on a suit's timing. See 42 U.S.C. § 2000e-16(c) ("Within 90 days of receipt of notice of final action taken by a department, agency, or unit . . . an employee or applicant for employment . . . may file a civil action . . . ."). "[W]hen two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective," J.E.M. Ag Supply, Inc. v. Pioneer Hi–Bred Int'l, Inc., 534 U.S. 124, 143–44 (2001) (internal quotation marks omitted), and there is nothing inconsistent in having an outer bar to suit in addition to a short statute of limitations subject to equitable tolling.

district court to decide whether to grant such leave." Williamsburg Wax Museum, Inc. v. Historic Figures, Inc., 810 F.2d 243, 247 (D.C. Cir. 1987); see also Abdullah v. Washington, 530 F. Supp. 2d 112, 114 (D.D.C. 2008). The Court must use a generous standard determining the propriety of the proposed amendment based on the circumstances of a case. Harris v. Sec'y, U.S Dep't of Veterans Affairs, 126 F.3d 339, 344 (D.C. Cir. 1997). Among the reasons that may justify denying leave to amend are undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and the futility of the amendment. Foman v. Davis, 371 U.S. 178, 182 (1962).

Plaintiffs' proposed amended complaint would add six counts—a disparate treatment claim, a hostile work environment claim, and a retaliation claim as to each plaintiff. These counts, which revolve around specific instances of alleged discrimination, are entirely distinct from the operative complaint's single count alleging disparate impact caused by the Department's generally applicable policy. Adding them after years of dispositive motions that have narrowed this case to a single count would "radically alter the scope and nature of this case." Leggett v. Powers, No. 09-0558, 2009 WL 4032664, at *1 n.1 (D.D.C. Nov. 20, 2009) (internal quotation marks and alteration omitted).

Plaintiffs, who themselves emphasize that the relevant facts have been known since the 1990s, Pls.' Joint Mot. for Leave to File Third Am. Compl. [Docket Entry 135] at 7 (July 16, 2010), have offered no reason for failing to assert these claims earlier in this action. As another judge from this District aptly put it, "[t]hese are claims [plaintiff] certainly knew of at the outset of this litigation, and, even if they had a shred of merit, they should have been brought then." Stanko v. Fed. Bureau of Prisons, 842 F. Supp. 2d 132, 140 (D.D.C. 2012); see also Williamsburg Wax Museum, 810 F.2d at 247 ("[W]hen so much time has passed and where the

9

movant has had abundant opportunity over the course of a half-dozen years to raise the issue, the district court's denial of the motion for leave to amend was fully warranted."); Acri v. Int'l Ass'n of Machinists & Aerospace Workers, 781 F.2d 1393, 1398 (9th Cir. 1986) ("[L]ate amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action."). Nor have plaintiffs offered any justification for failing to add these counts despite two prior opportunities to amend. See Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (leave to amend may be denied for "'repeated failure to cure deficiencies by previous amendments'" (alteration omitted) (quoting Foman, 371 U.S. at 182)).

Moreover, plaintiffs have brought other actions against the Department based on many of the allegations they seek to add here. The Court will not allow amendments that merely force defendant to respond to ever-changing targets, while attempting to revive claims dismissed or abandoned in prior proceedings. See Miss. Ass'n of Coops. v. Farmers Home Admin., 139 F.R.D. 542, 544 (D.D.C. 1991) (denying leave to amend because "plaintiffs in the instant case would have the sun never set on their's or any case," and granting leave to amend "would do far more than allow plaintiff to fully litigate all the legal dimensions of their initial action, it would permit plaintiff to transform their case into something entirely new").

Finally, the vast majority of the proposed amendments would be futile for the same reason dismissal of the operative complaint is proper. All of Megginson's proposed new claims, which are based on alleged events that occurred from 1995 to 1997 and were the subject of administrative EEO complaints filed between 1995 and 1998, are barred by § 2401(a) because they accrued more than six years before the date of the original complaint.[5] Many of Howard's

---

[5] Megginson offers no support for her novel argument that her claims relate back to an earlier action or to her administrative complaint, rather than to the 2005 complaint in this case. On the contrary, she cites Federal Rule of

claims are also barred under § 2401(a). This offers yet another reason to deny leave to amend as to such claims.[6] See In re Interbank Funding Corp. Sec. Litig., 629 F.3d 213, 218 (D.C. Cir. 2010) ("[A] district court may properly deny a motion to amend if the amended pleading would not survive a motion to dismiss.").

Accordingly, the Court will deny leave to amend.

## CONCLUSION

For these reasons, defendant's motion to dismiss for lack of jurisdiction will be granted, plaintiffs' motion for leave to amend will be denied, and this action will be dismissed with prejudice in its entirety. A separate order has been issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: September 19, 2012

---

Civil Procedure 15(c)(1), which provides that, in certain circumstances, "[a]n amendment to a pleading relates back to the date of the original pleading." Fed. R. Civ. P. 15(c)(1).

[6] Because ample reasons exist to deny leave to amend, the Court need not resolve whether all of Howard's remaining claims would also be futile as untimely, barred by res judicata or collateral estoppel, barred by failure to exhaust, or for failing to state a claim.